UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CARMEN MÁRQUEZ-MARIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 3:16-cv-01706-JAW |
| | ) | |
| LORETTA LYNCH, | ) | |
| | ) | |
| Defendant | ) | |

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL
## PRODUCTION OR FOR IN CAMERA REVIEW

In this action, Plaintiff Carmen Márquez-Marin alleges that Defendant retaliated against her for initiating equal opportunity proceedings, and that Defendant discriminated against her based on her disability and need for accommodation in her employment.

The matter is before the Court on Plaintiff's Motion for In Camera Review of Documents and Request to Compel Production of Documents as to Which Privilege is Asserted. (ECF No. 31.) Through the motion, Plaintiff seeks the production of documents redacted or withheld in discovery by Defendant based on the attorney–client and work product privileges.

## Background

In 2005, Plaintiff, an Assistant United States Attorney, filed a civil action against Attorney General Alberto Gonzales. *Márquez-Marin v. Gonzalez et al*., No. 3:05-cv-01619-SJM (the prior action). In the prior action, Plaintiff alleged she was the victim of gender and national origin discrimination, and that in 2004, she was dismissed from her

position as an Assistant United States Attorney, in retaliation for complaining about the discrimination.  She also asserted a due process claim.

In support of her claims, Plaintiff alleged that upon appointment to the position of United States Attorney for the District of Puerto Rico, Humberto Garcia discriminated against her on the basis of her gender, which discrimination included paying higher salaries to male attorneys with less seniority than Plaintiff.  According to Plaintiff, after she objected to the salary differential, she experienced a hostile work environment created by Mr. Garcia and by David Rivera, her immediate supervisor.  Subsequently, Plaintiff disclosed her concerns to persons outside her local agency in the context of an agency review conducted by the Evaluation and Review Staff (EARS) of the Executive Office of the United States Attorneys.  Plaintiff alleged that the conditions of her employment worsened following her participation in the EARS review.  Plaintiff then filed a charge of discrimination with the EEOC.  Shortly thereafter, her employment was terminated.

At the conclusion of a jury trial in the prior action in March 2007, the jury found the defendants had retaliated against Plaintiff, but had not engaged in gender or national origin discrimination.  The jury awarded Plaintiff $136,325.00 in compensatory damages, but denied a back pay award.  Based on the verdict, Plaintiff sought additional equitable remedies, including front pay and reinstatement.  In October 2007, the Court (McAuliffe, J.) granted Plaintiff's request for reinstatement to her probationary Assistant United States Attorney position, and ordered that documents in her employment record related to the

termination of her employment be expunged from the record.[1]  (No. 3:05-cv-01619-SJM: ECF No. 81.)

The Department of Justice reinstated Plaintiff in March 2008.  (*Id.* ¶ 5.4.)  Plaintiff maintained that after her reinstatement, the discrimination continued.  (*Id.* ¶¶ 5.8, 5.15, 5.17.)  The parties entered into a Stipulation of Compromise Settlement and Release in July 2010, which stipulation resolved matters then outstanding.  (ECF No. 44-1.)

Plaintiff filed the instant action on April 13, 2016.  According to Plaintiff, she "has been subjected to ongoing retaliation and disparate treatment, on the part of the current interim United States Attorney, Rosa Emilia Rodriguez, and her closest associates and advisors."[2]  (Complaint ¶ 1.5.)  Plaintiff asserts retaliation based on her prior EEO activity and based on a more recent appearance as a witness in an EEO proceeding brought by a coworker.  (*Id.* ¶¶ 1.8 – 1.10.)  Plaintiff also alleges a violation of the Rehabilitation Act, citing adverse employment actions based on medical leave and her need to telework.  (*Id.* ¶¶ 1.6 – 1.7.)

Plaintiff contends that in the four-year period preceding the filing of this action, she has experienced a number of serious physical ailments and illnesses.  (*Id.* ¶ 6.1.)  Plaintiff alleges that management used her condition to retaliate against her by withholding

---

[1] The Court did not specify the effective date of reinstatement in its order.

[2] According to the complaint, United States Attorney Rodriguez served as Mr. Garcia's First Assistant United States Attorney during the time period relevant to the prior action, and succeeded Mr. Garcia sometime in or around 2006.  (*Id.* ¶¶ 4.7 – 4.8.)  Ms. Rodriguez had succeeded to her current position when the Court issued its order of reinstatement.  (*Id.* ¶ 4.20.)

authorization to telework and by increasing her work load. (*Id.* ¶¶ 6.11, 6.13, 6.15.) Eventually, Plaintiff received permission to telework and was assigned to work on appeals while teleworking. (*Id.* ¶¶ 6.20, 6.22.) In this capacity, Plaintiff came under the direct supervision of Nelson Pérez, Supervisor of the Appellate Division. (*Id.* ¶ 6.22.)

While she was teleworking for the Appeals Division, Plaintiff received an evaluation from Mr. Pérez. Mr. Pérez graded Plaintiff as outstanding. (*Id.* ¶¶ 10.4 – 10.7.) Plaintiff contends that Jacqueline Novas, an executive assistant within the Office of the United States Attorney, insisted that Mr. Pérez lower the evaluation. (*Id.* ¶ 10.8.)

In 2013, another employee filed an EEO complaint. After the employee named Plaintiff a witness in the EEO proceeding, José Ruiz, Chief of the Criminal Division, issued to Plaintiff a letter of admonishment for certain conduct. (*Id.* ¶¶ 7.1 – 7.4.)

In 2014, Jose Capó Iriarte, a supervisor, evaluated Plaintiff's performance for 2013. Plaintiff objected to the assessment of her productivity; Plaintiff asserts management's review was unreasonable because it considered her sick leave as a negative factor. (*Id.* ¶¶ 8.6 – 8.9.) In 2016, Ms. Rodriguez appointed Mr. Capó to serve as Chief of the Criminal Division. (*Id.* ¶ 8.15.)

Plaintiff filed an administrative EEO complaint with the Department of Justice in 2014, in which complaint she alleged disparate treatment and hostile work environment based on disability, parental status, and EEO retaliation. (*Id.* ¶ 9.2.) The Department denied Plaintiff's complaint in February 2016. (*Id.* ¶ 9.5.)

In April 2015, Plaintiff, with support from her physician, requested a modified work assignment to accommodate Plaintiff's return to work in the office. Among other things,

Plaintiff requested a transfer to the Civil Division, which was granted on July 13, 2015. (*Id.* ¶¶ 10.10 – 10.15.)  After she returned to the office, Plaintiff perceived the work environment as hostile and that management was unjustifiably critical of her performance. (*Id.* ¶ 10.16.)  Plaintiff subsequently filed an administrative complaint with the EEO Office of the Department of Justice, in which complaint she alleged a hostile work environment. (*Id.* ¶ 10.21.)  In 2016, management excluded Plaintiff from participation in an EARS review.  (*Id.* ¶¶ 11.2 – 11.3.)

### Plaintiff's Motion to Compel Discovery

In response to Plaintiff's request for documents, citing the attorney-client and work product privileges, Defendant objected to the production of some of the documents. Defendant, however, produced a privilege log in which Defendant identified the withheld documents.  Plaintiff challenges Defendant's assertion of privilege.

The record before the Court consists of a glossary of names included in Plaintiff's motion (ECF No. 31 at 12 – 15),[3] 158 pages of redacted documents filed as Exhibit I to

---

[3] The individuals identified are as follows:

José Capó – current Chief of the Criminal Division.  Previously Plaintiff's direct supervisor.  Mr. Capó provided a declaration in support of Defendant's opposition.  (ECF No. 44-3.)

Migdalia Carballo – Legal Assistant to the First Assistant.  Ms. Carballo is not an attorney.

Maria Dominguez – former First Assistant United States Attorney; left the Office in February 2015. Ms. Dominguez provided a declaration in support of Defendant's opposition.  (ECF No. 44-2.)

Carole Fernández – the attorney who handled the defense in the prior civil action, then an Assistant United States Attorney in the Southern District of Florida.  Ms. Fernández was also involved with matters related to Plaintiff's reinstatement.

Miguel Fernández – Assistant United States Attorney and former chief of the Civil Division.

David Gaouette – Executive Assistant U.S. Attorney, District of Colorado, and leader of the 2016 EARS team.  Mr. Gaouette provided a declaration in support of Defendant's opposition.  (ECF No. 44-4.)

Timothy Henwood – current First Assistant U.S. Attorney, District of Puerto Rico.  Mr. Henwood provided a declaration in support of Defendant's opposition.  (ECF No. 44-4.)

Kimya Jones – Senior Legal Counsel in the Office of General Counsel in the Executive Office of U.S. Attorneys.  Ms. Jones provided a declaration in support of Defendant's opposition.  (ECF No. 44-3.)

Plaintiff's motion (ECF No. 31-2), 49 pages of redacted documents filed as Exhibit J to Plaintiff's motion (ECF No. 31-3), the exhibits to Defendant's response in opposition to the motion (ECF No. 44-1 through 44-4), the parties' status reports concerning their efforts to resolve the dispute (ECF Nos. 65 and 66), and Defendant's post-conference, final privilege log itemizing 49 documents that remain in dispute (ECF No. 66-1).

## Standard of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Additionally, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The party asserting a privilege to withhold documents responsive to a legitimate discovery request bears the burden of demonstrating the applicability of the privilege. *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 69 (1st Cir. 2011). The standard requires

---

Carmen (Pura) López-Gay – Human Resources Specialist; not an attorney. Ms. López provided a declaration in support of Defendant's opposition to the motion. (ECF No. 44-2.)

Jacqueline Novas – Executive Assistant United States Attorney in Puerto Rico. Ms. Novas provided a declaration in support of Defendant's opposition. (ECF No. 44-3.)

Nelson Pérez – former Chief of Appeals.

Héctor Ramirez – current Civil Chief and plaintiff's current supervisor. Mr. Ramirez provided a declaration in support of Defendant's opposition. (ECF No. 44-4.)

Rosa Emilia Rodríguez – current U.S. Attorney and former First Assistant.

José Ruiz – Senior Litigation Counsel, USAO, District of Puerto Rico, and former Criminal Chief. Mr. Ruiz provided a declaration in support of Defendant's opposition. (ECF No. 44-3.)

Kenneth Shaitelman – AUSA and counsel for Defendants.

Jacqueline Schesnol – attorney at the General Counsel's Office of the Executive Office for the U.S. Attorneys. Ms. Schesnol provided a declaration in support of Defendant's opposition. (ECF No. 44-3.)

Jill Weissman – attorney in the Executive Office for the U.S. Attorneys.

Lisa Western – Administrative Officer at the Office of the U.S. Attorney, not an attorney, and supervisor of the Human Resources specialist, Pura López. Ms. Western provided a declaration in support of Defendant's opposition. (ECF No. 44-3.)

"sufficient information to allow the court to rule intelligently on the privilege claim." *Marx v. Kelly, Hart & Hallman*, *P.C.*, 929 F.2d 8, 12 (1st Cir. 1991).

Assuming the withholding party makes an adequate showing that the documents in question are subject to a privilege, the party seeking production may assert that an exception to the privilege applies under the circumstances. *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012). Recognizing that a party seeking production often will not be able to prove an exception to a privilege without having access to the document(s) in question, a party can request that the court conduct an *in camera* review in order to insure the proper balance is struck between one party's assertion of privilege and another's need for relevant documents. *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984).

"[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court." *United States v. Zolin,* 491 U.S. 554, 572 (1989). The standard is not stringent. *Id.* If it appears that the asserted privilege "is subject to legitimate dispute, the desirability of *in camera* review is heightened." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 70. "The interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources." *Ass'n for Reduction of Violence*, 734 F.2d at 66. However, an adequate request for *in camera* review requires more than speculative guesswork. *Id.* For example, in circumstances where "[c]ommon sense says that a sophisticated employer would invariably consult closely with legal counsel on [the] matter, and that the line between legal advice about what to do and business advice about whether to do it is more abstract than concrete,"

the proponent of discovery must do more than simply "allege[] that the lawyers were acting not as lawyers, but as decision-makers on the business side," *U.S. ex rel. Hamrick v. GlaxoSmithKline LLC*, 814 F.3d 10, 17 (1st Cir. 2016), particularly where the employer has provided a record demonstrating that counsel's involvement consisted of the provision of legal advice, rather than the outsourcing of administrative responsibilities.

### 1. Attorney client privilege

Federal Rule of Evidence 501 defines, in the first instance, the application and scope of the attorney-client privilege. The Rule provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. As the Rule reflects, where state law applies to the claim or defense, the privilege would likely be governed by state law. In this action, however, Plaintiff asserts federal claims. Because federal law governs, federal common law controls Defendant's assertion of the attorney-client privilege. *Id.*; *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 2 (D. Me. 2000).

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383,

389 (1981). It is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "By safeguarding communications between attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present legitimate arguments when litigation arises." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011). However, "the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). A relatively narrow construction is appropriate because the privilege "comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id.*

The elements of the attorney–client privilege are as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro,* 284 F.3d at 245 (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)). As the party invoking the privilege, Defendant "must show both that it applies and that it has not been waived." *Lluberes,* 663 F.3d at 24.

## 2. Work product privilege

"The attorney work-product privilege, codified in Fed. R. Civ. P. 26(b)(3), shields from disclosure materials prepared by attorneys 'in anticipation of litigation.'" *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 435 (D.P.R. Dec.

2, 2016) (citing *Maine v. United States Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002)). In particular, the privilege protects "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

Under certain circumstances, "documents and tangible things" prepared in anticipation of litigation may be discovered if they are discoverable generally and if the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

The work product doctrine does not extend to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for nonlitigation purposes," even if the materials were prepared by a lawyer and reflect "legal thinking." *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 30 (1st Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory comm.'s note (1970)).

### Discussion

The Court will address the documents that remain in dispute as reflected by the final privilege log filed by Defendant.

**1. February 23, 2010, email regarding pay and leave from P. López to C. Fernández**

Bates # 6398
Timely Review of Employee Pay and Leave Documents
Author: Pura López
Recipients: López, Carole Fernández, Miguel Fernández (cc), Jacqueline Novas (cc), Rosa Emilia Rodriguez (cc), Lisa Western (cc), Maria Dominguez (cc)

Defendant contends the document is protected from discovery by the attorney-client privilege. Plaintiff argues that because the communication relates to an "administrative" matter, it is not privileged. (Motion at 16.) Ms. López, in her capacity as a human resources officer, sought advice from Carole Fernández, defense counsel in the prior action, regarding a legal dispute that resulted from the prior action and Plaintiff's reinstatement. (Declaration of Carmen Pura López-Gay ¶ 3.a, ECF No. 44-2.) The recipients of the communication were Assistant United States Attorneys, except for Ms. Western, who supervised Ms. López in human resources. Given that the prior action involved Plaintiff's employment, the participation of human resources personnel in the defense of the claim and in the implementation of the remedy was essential to the representation of the defendants in the prior action. The email thus constitutes a communication between client representatives and counsel. The Court discerns no reason for in camera inspection, and denies Plaintiff's request for an order compelling the production of the document.

## 2.     April 3 – 4, 2014, emails regarding "unnerving pattern"

Bates # 6417 – 6418
Consultation
Author: Dominguez
Recipients: Jacqueline Schesnol, López (cc), Jose Capó (cc), Jose Ruiz (cc), Novas (cc)

Bates # 6421 – 6424, 6469 – 6473, 6478 – 6481
Proposed Response to Carmen Márquez Email
Author: Dominguez
Recipients: Schesnol, López (cc), Novas (cc), Capó (cc), Ruiz (cc), Migdalia Carballo (cc)

Defendant contends the documents are protected from discovery by the attorney-client privilege. Defendant also cites the work product privilege as to the April 4 email

communication.  Plaintiff argues the emails are not privileged because Ms. Dominguez, the First Assistant United States Attorney, consulted Jacqueline Schesnol, an attorney with the General Counsel's Office of the Executive Office for the U.S. Attorneys, about an administrative matter and no litigation was pending at the time.  (Motion at 17.)  Plaintiff also argues Defendant has waived any privilege because Defendant has asserted the reasonableness of the conduct as an affirmative defense.  (*Id.* at 5, 11 – 12, 17.)

Through the emails, Ms. Dominguez seeks legal advice about an email received from Plaintiff, in which email Plaintiff claimed she was experiencing "an unnerving pattern of disparate treatment and retaliation" and referenced her prior court case.  (Declaration of Maria Dominguez ¶ 3.a, ECF No. 44-2.)  Ms. Schesnol, in her capacity as "duty attorney" within the General Counsel Office, along with her colleague Kimya Jones, also with the General Counsel Office, then corresponded with Ms. Dominguez and/or Jacqueline Novas, the Executive Assistant United States Attorney in Puerto Rico, for the purpose of providing legal counsel.  (Declaration of Jacqueline Schesnol ¶ 7.a.)  All the recipients of the email, including Ms. López (HR) and Migdalia Carballo (non-attorney legal assistant to Ms. Dominguez) appear to be within the appropriate client group[4] and, particularly given the history of litigation, the communication can fairly be characterized as confidential communication with counsel.  The communication is thus within the attorney-client privilege.  *Lluberes*, 663 F.3d at 24 – 25 ("If the communication contains only client

---

[4] Review of a privileged communication by an executive assistant or legal assistant in whom confidence is bestowed by the client does not result in waiver, and the advice of counsel often is "more significant to noncontrol group members than to those who officially sanction the advice." *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981).  Thus, the fact that a legal assistant or member of human resources had access to the advice of counsel does not alter the analysis.

confidences made in pursuit of legal advice—or legal advice based on such client confidences—that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one."). Given the likelihood of litigation at the time, the April 4 communication is also potentially within the work product privilege.

Plaintiff contends, however, that Defendant asserted an affirmative defense that waives any privilege applicable to correspondence between the United States Attorney's Office and the General Counsel's Office that was designed to obtain or provide legal counsel on human resource matters. Specifically, Plaintiff cites Defendant's First Amended Answer (ECF No. 14), affirmative defense 8:

> 8. The United States Attorney's Office (District of Puerto Rico) and the United States Department of Justice have in place clear and well-disseminated policies against discrimination and retaliation and reasonable and available procedures for handling complaints thereof, which provide for prompt and effective responsive action. The United States Attorney's Office (District of Puerto Rico) and/or the United States Department of Justice exercised reasonable care to prevent and to correct promptly any alleged discriminatory and retaliatory conduct, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the United States Attorney's Office (District of Puerto Rico) and/or the United States Department of Justice or to avoid harm otherwise.

In an employment discrimination case, a defendant may waive in whole or in part a privilege to withhold documents in discovery by raising what is known as the *Faragher/Ellerth* defense. The defense applies if the person alleged to have engaged in unlawful conduct was a supervisor but no "tangible employment action" occurred, and the employer succeeds in establishing that "(1) the employer exercised reasonable care to prevent and correct any-harassing behavior and (2) that the plaintiff unreasonably failed to

take advantage of the preventive or corrective opportunities that the employer provided."

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (citing *Faragher v. City of Boca Raton*,

524 U.S. 775, 807 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

In particular, where an employer defends itself based on the reasonableness of its

investigation and response to allegations of unlawful conduct, "the adequacy of the

employer's investigation becomes critical to the issue of liability," *McGrath v. Nassau Cty.*

*Health Care Corp.*, 204 F.R.D. 240, 248 (E.D.N.Y. 2001), and the employer waives "any

privilege that might otherwise apply to documents concerning that investigation."

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y. 2013), *aff'd*, 29 F.

Supp. 3d 142 (E.D.N.Y. 2014). *See also Walker v. N.H. Admin. Office of the Courts*, No.

1:11-cv-00421, 2013 WL 672584, at *6 (D.N.H. Feb. 22, 2013).[5]

In support of her waiver argument, Plaintiff cites *Walker v. County of Contra Costa*,

227 F. R. D. 529 (N.D. Cal. 2005). In *Walker*, the court considered a motion to compel

production of a report prepared by counsel who was hired to investigate and report on the

facts and the merits of the plaintiff's administrative charge. *Id.* at 532, 534. The court

rejected the claim of privilege and compelled production of the majority of the report

because the defendants relied on the investigation and report as evidence of the

reasonableness of their response to allegations of employment discrimination. *Id.* at 535.

---

[5] For example, counsel's exchange of emails with managers and human resources personnel in order to coordinate an investigation or summarize and share investigative findings would not constitute legal advice and would likely serve only an ordinary business function. However, emails exchanged to gain counsel's guidance, where counsel is not placed at the helm of a fact-finding investigation, would be protected absent express reliance on counsel's advice to support the *Faragher/Ellerth* defense. *Koumoulis*, 295 F.R.D. at 41 – 42; *Walker v. N.H. Admin. Office of the Courts*, 2013 WL 672584, at *8.

According to the court: "If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation ..., then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation." *Id.* However, because the defendants did not rely on counsel's "legal analysis of the adequacy of Defendants' investigation," the court did not order production of counsel's findings and conclusions at the conclusion of the report. *Id.* Similarly, the court ordered production of a report prepared by a human resources officer at the direction of counsel, because the defendants cited the report as evidence of the reasonableness of their response to a charge of discrimination, and because the report did not contain the mental impressions, opinions or legal theories of an attorney. *Id.* at 536.

Unlike in *Walker*, in this case, supervisory managers forwarded Plaintiff's allegations of unlawful conduct to general counsel to obtain contemporaneous advice on the matter. The emails cannot fairly be described as a report of investigation or as evidence Defendant would rely on in an attempt to prove the reasonableness of their management of the issues regarding Plaintiff. Defendant does not rely on the content of the communications with Ms. Schesnol or the fact that she was consulted to support the reasonableness of its actions. That is, although Defendant relies on the representatives' alleged reasonable care to prevent and correct any alleged discriminatory or retaliatory conduct, Defendant does not cite the advice of counsel to support its defense. *See*, *e.g.*, *In re Itron, Inc.*, ___ F.3d ___, No. 17-60733, 2018 WL 1001545, at *4 (5th Cir. Feb. 21, 2018) ("This holding aligns with the numerous cases across jurisdictions finding waiver when a client asserts reliance on an attorney's advice as an element of a claim or defense,

and the many dozens of cases finding no waiver when no such reliance has occurred."

(quotation marks and citation omitted, collecting cases in footnotes)); *U.S. Fire Ins. Co. v.*

*Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999) (advice of counsel not placed in issue

merely by client's assertion that its conduct was reasonable); *Williams v. Sprint/United*

*Mgmt. Co.*, 464 F. Supp. 2d 1100, 1107 – 1108 (D. Kan. 2006); *Weinberg v. William Blair*

*& Co., LLC*, No. 1:12-cv-09846, 2014 WL 2699714, at *1 (N.D. Ill. June 13, 2014) (citing

*Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004) ("[T]he party to whom

the privilege belongs must affirmatively put at issue the specific communication, document

or information to which the privilege attaches.")); *Frazier v. Bd. of Cty. Comm'rs of Cty.*

*of Arapahoe*, No. 1:08-cv-02730, 2010 WL 447785, at *2 – 3 (D. Colo. Feb. 3, 2010),

*objections overruled*, 2010 WL 11553297 (D. Colo. June 24, 2010).

Because Defendant does not point to the advice of counsel, or the participation of

the General Counsel's Office to support Defendant's assertion of reasonable care,

Defendant has not waived the attorney-client privilege or work product privilege.

Furthermore, the record lacks any information to suggest that the General Counsel's Office

conducted a fact-finding investigation for Defendant.[6]

Plaintiff also argues that counsel in the General Counsel's Office have

administrative support and oversight duties and are not necessarily providing legal advice

when they are consulted about an employee matter that could later result in litigation.

---

[6] Defendant has disavowed reliance on the advice of counsel to support its *Faragher/Ellerth* defense. In the event Defendant later relies on the fact that members of management looked to counsel for advice regarding Plaintiff's concerns, Plaintiff can ask the Court to revisit the issue.

Plaintiff maintains that communications regarding counsel's administrative responsibilities are not protected by the attorney-client privilege.

The attorney-client privilege protects confidential communication seeking and providing "legal advice of any kind … from a professional legal adviser in [her] capacity as such." *Cavallaro*, 284 F.3d at 245. The mere fact that an employment matter could be labeled "administrative" as well as "legal" is not dispositive. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014). In this case, the record contains no evidence that would support a finding that the General Counsel's Office was involved administratively, or evidence that contradicts the assertion that the General Counsel was consulted for legal advice. To the contrary, the nature of the parties' relationship, the issues generated by Plaintiff's complaints, and the timing of the communications all support the conclusion that the communications are within the attorney-client privilege. The Court discerns no reason for an in camera review of the documents, and denies Plaintiff's request for an order compelling the production of the documents.

### 3. April 7, 2014, email concerning recent evaluation

> Bates # 4279, 6430
> Consultation re: Carmen Márquez
> Author: Novas
> Recipients: Kimya Jones, Ruiz (cc), Dominguez (cc)

Ms. Novas, in her capacity as Executive Assistant United States Attorney, sought legal advice from Kimya Jones, Senior Legal Counsel, Office of General Counsel. (Declaration of Jacqueline Novas, ¶ 3.a, ECF No. 44-3.)

Defendant contends the document is protected from discovery by the attorney-client privilege. Plaintiff reiterates her contention that General Counsel was acting as a consultant in an administrative capacity, and that the *Faragher/Ellerth* defense waives any privilege that might otherwise apply. (Motion at 17.)

Given the history of employment-related litigation involving Plaintiff, the decision to seek legal advice under the circumstances is understandable. In addition, as explained above, Plaintiff's argument regarding the *Faragher/Ellerth* defense is unavailing. The Court discerns no reason for an in camera review of the documents, and denies Plaintiff's request for an order compelling the production of the documents.

**4.      April 9 – 10, 2014, emails concerning "unnerving pattern"**

Bates # 6431 – 6436, 6468 – 6469, 6477 – 6478
RE: Proposed Response to Carmen Márquez Email

Bates # 4701 – 4702, 4707 – 4708, 4713, 6438 – 6439, 6444 – 6445, 6450
Re: Response to Your Email

Bates # 6452
RE: Response to Your Email

Authors: Dominguez, Jones
Recipients: Jones, Dominguez, Novas (cc), Ruiz (cc), Schesnol (cc)

The communications relate to an email authored by Plaintiff, in which Plaintiff asserted, among other things, that there existed "an unnerving pattern of disparate treatment and retaliation," and in which emails Plaintiff referenced her prior court case. The April 10, 2014, log entry also notes that Plaintiff's response informed Defendant that "both I and my attorney know the EEO address and how to proceed."

Defendant contends the documents are protected from discovery by the attorney-client and work product privileges. Plaintiff argues one of the authors, Ms. Jones, Senior Legal Counsel in the Office of General Counsel in the Executive Office of U.S. Attorneys, was acting as an administrator and that Defendant waived any privilege based on the *Faragher/Ellerth* affirmative defense. (Motion at 17 – 18.) Ms. Jones provided legal advice to Ms. Dominguez regarding the response to Plaintiff's communication, which communication appeared to be a precursor to litigation. (Declaration of Maria Dominguez ¶ 3.a, ECF No. 44-2; Declaration of Kimya Jones ¶ 5, ECF No. 44-3.)

Given the history of employment-related litigation involving Plaintiff, Defendant's consultation with counsel is understandable. In fact, given the likelihood of litigation at the time, the communications are also potentially within the work product privilege. The Court discerns no reason for an in camera review of the documents, and denies Plaintiff's request for an order compelling the production of the documents.

**5.      May 19 – 23, 2014, emails concerning hostile work environment**

Bates # 3114, 4718
RE: Reconsideration of evaluation rating given for Productivity in 2013
Author of redacted portion: *unknown*
Recipient: *unknown*

Bates # 6459 – 6460
Fwd: Reconsideration of evaluation rating given for Productivity in 2013
Author: Dominguez
Recipients: Jones, Novas (cc)

Bates # 6465 – 6466, ECF No. 31-2
RE: Carmen Márquez
Authors: Schesnol, Dominguez
Recipients: Dominguez, Schesnol, Novas (cc)

Bates # 6467, 6476
RE: Proposed Response to Carmen Márquez Email
Authors: Schesnol, Dominguez
Recipients: Dominguez, Schesnol

Defendant contends the documents are protected from discovery by the attorney-client privilege. Plaintiff argues that Ms. Dominguez sought administrative advice, in part based on the fact that Ms. Novas was included among the recipients, and that a privilege cannot apply to advice on administrative matters. (Motion at 18.) The communications involve Ms. Schesnol's legal advice regarding an email in which Plaintiff alleged, among other things, disparate treatment and a hostile work environment. (Declaration of Jacqueline Schesnol ¶ 7.b.)

Given the history of employment-related litigation involving Plaintiff and because, as discussed above, Plaintiff's argument that the consultation was on an administrative, non-legal, matter fails, most of the email communications are within the attorney-client privilege. Because documents with Bates # 3114 and 4718 lack any information, including the authors, from which the Court could determine whether a privilege applies, Defendant shall submit the documents to the Court for an in camera review.

**6.      June 24, 2014, emails concerning productivity rating**

Bates # 6484
FW: Performance Appraisal for 2013
Author:  Schesnol, Dominguez
Recipients: Dominguez, Schesnol, Novas (cc)

Defendant contends the documents are protected from discovery by the attorney-client privilege.  Plaintiff argues the attorney-client privilege does not apply because "General Counsel's Office is offering administrative advice." (Motion at 18.) The email

communication chain reflects that Ms. Dominguez forwarded a letter authored by Plaintiff to Ms. Schesnol and Ms. Novas, and that Ms. Schesnol responded shortly thereafter.

While the email exchange could involve legal advice regarding Plaintiff's challenge to the ability of a manager to review her productivity rating, because none of the declarations filed by Defendant appears to address the purpose of the email exchange, Defendant shall submit the email communications to the Court for an in camera review.

**7.    July 23, 2014, emails concerning admonishment**

> Bates # 4235, 6486, 6493 – 6498
> RE: CM Admon Letter.docx
> Authors: Dominguez, Schesnol
> Recipients: Schesnol, Dominguez, Carballo (cc), Novas (cc), Ruiz (cc), López (cc), Pura (cc)

> Bates # 6503 – 6504
> Authors: said to be Dominguez and/or Ruiz
> Recipients: said to be Ruiz and/or Dominguez

Defendant contends the documents are protected from discovery by the attorney-client privilege. Defendant also maintains that the email authored by Ms. Dominguez and sent to José Ruiz, senior litigation counsel with the United States Attorney's Office, is within the work product privilege. Defendant describes the documents as (1) an email chain to counsel providing legal advice regarding the proposed letter of admonishment, and (2) an attachment to the email containing legal advice from counsel regarding the proposed letter of admonishment. Plaintiff argues that "[t]he giving of the admonishment letter was an administrative decision … [s]upposedly based on legitimate criteria" and therefore should not be privileged. (Motion at 19.)

In July 2014, Ms. Dominguez sought legal advice from Ms. Schesnol after Ms. Dominguez and Mr. Ruiz determined it would be appropriate to admonish Plaintiff for certain conduct. (Declaration of Maria Dominguez ¶ 3.c, ECF No. 44-2; Declaration of Jacqueline Schesnol ¶ 7.c, ECF No. 44-3.) Mr. Ruiz issued the letter of admonishment on July 24, 2014. (Declaration of José Ruiz ¶ 2, ECF No. 44-3.) Ms. Schesnol also provided advice on subsequent occasions, based on Plaintiff's response. (Declaration of Jacqueline Schesnol ¶ 7.c.) In effect, the record reflects that managers wanted to admonish Plaintiff for certain conduct, but sought the advice of counsel before acting and after receiving Plaintiff's response.

Upon review of the record, the Court is satisfied that most of the communications are within the attorney-client privilege and that an in camera review is not required. Because document Bates # 6503 – 6504 does not appear to include Ms. Schesnol, however, the Court is uncertain whether the attorney-client privilege applies to the document. Defendant, therefore, shall submit document Bates # 6503 – 6504 to the Court for an in camera review.

**8.    July 24 – 25, 2014, emails concerning disappearance of cell phone**

Bates # 3122 – 3123,
Fwd: disappearance of Cellular phone as part of pattern of retaliation
Author: Dominguez
Recipient: Novas

Bates # 6507 – 6508, 6510
Fwd:/RE: disappearance of Cellular phone as part of pattern of retaliation
Authors: Ruiz, Schesnol
Recipients: Schesnol, Ruiz, Rodriguez (cc), Dominguez (cc), Capó (cc), Novas (cc), López (cc)

Bates # 6512 – 6513
Fwd:/RE: disappearance of Cellular phone as part of pattern of retaliation
Authors: Rodriguez,
Recipients: Dominguez, Ruiz (cc), Schesnol (cc)
(Forwarding Schesnol – Ruiz emails (above), as well as Rodriguez and Dominguez
authored content)

Bates # 6839 – 6840 (not included in the record)

Defendant contends the documents are protected from discovery by the attorney-client privilege. The day after Mr. Ruiz issued the letter of admonishment discussed above, Plaintiff sent an email to Mr. Ruiz and others suggesting that someone in the office had taken her cell phone in an act of retaliation. Mr. Ruiz sought advice from Ms. Schesnol and they copied other office managers in their email correspondence. (Declaration of José Ruiz ¶¶ 2 – 3; Declaration of Jacqueline Schesnol ¶ 7.c.) Ms. Rodriguez and Ms. Dominguez each authored an email on the topic, and included managers and Ms. Schesnol, as recipients.

Upon review of the record, the Court is satisfied that most of the communications are within the attorney-client privilege and that an in camera review is not required. The Court, however, is uncertain as to the nature of documents Bates # 3122 – 3123 and 6512 – 6513. Defendant shall submit the documents to the Court for an in camera review.

The Court has been unable to locate in the record documents with Bates # 6582 and higher. The Court thus denies without prejudice Plaintiff's request for an order compelling production of Bates # 6839 – 40.

## 9. July 30 – 31, 2014, emails concerning Pérez / Reyes EEO

Bates # 3125 – 3126
Re: Carmen Márquez

Authors:  Rodriguez
Recipients: Novas, Dominguez (cc)

Bates # 4231
RE: Carmen Márquez
Authors: Schesnol, Dominguez
Recipients: Dominguez, Schesnol, Novas (cc)


Bates # 4719, 6516, 6517, 6519
Re: Carmen Márquez
Authors: Dominguez, Sofia Haque (USAEO)[7], Novas, Schesnol
Recipients: Schesnol, Novas, Haque, Dominguez

Defendant contends the documents are protected from discovery by the attorney-client privilege.  The communications concern a report by Nelson Pérez (Appellate Chief) that someone told management that Mr. Pérez helped another employee with the employee's EEO complaint.  Ms. Dominguez sought Ms. Schesnol's advice on the matter. (Declaration of Maria Dominguez ¶ 3.d; Declaration of Jacqueline Schesnol ¶ 7.d.)

Upon review of the record, the Court is satisfied that most of the communications are within the attorney-client privilege and that an in camera review is not required.  The Court, however, is uncertain as to the nature of documents Bates # 3125 – 3126.  Defendant shall submit the documents to the Court for an in camera review.

**10.    October 29 – November 19, 2014, emails concerning litigation hold and EEO**

Bates # 3141 – 3142
Fwd: Carmen Márquez
Bates # 3153 – 3154
Re: Carmen Márquez
Author: Dominguez
Recipients: Novas, Rodriguez

---

[7] On July 31, 2014, Sofia Haque, a colleague of Ms. Schesnol, took responsibility for responding to the latest inquiry regarding Plaintiff.  Bates # 4719, 6516.

Bates # 3150A – 3151
Fwd: AMENDED LITIGATION HOLD NOTICE
Author: Héctor Ramirez, Assistant U.S. Attorney, Litigation Hold Coordinator
Recipients:  Dominguez
Draft amended litigation hold notice (redacted)

Bates # 3152
Re: AMENDED LITIGATION HOLD NOTICE
Draft amended litigation hold notice (redacted)

Bates # 4720 – 4722
RE: Carmen Márquez
Draft litigation hold notice (redacted)

Bates # 6521 – 6522
Fwd: Carmen Márquez
Authors: Schesnol, Dominguez
Recipients: Dominguez, Novas

Bates # 6523 – 6526
Litigation Hold Implementation; Complainant Carmen Márquez
Author: Ramirez
Instruction concerning implementation of litigation hold (redacted)

Bates # 6527 – 6531
AMENDED LITIGATION HOLD NOTICE – AUSA CARMEN MÁRQUEZ
Author: Ramirez
Recipient: Ramirez

Bates # 6532 – 6539
RE: Litigation Hold
Authors: Schesnol, Ramirez
Recipients: Ramirez, Schesnol, Novas (cc), Dominguez (cc)

Bates # 6543 – 6544
Re: AMENDED LITIGATION HOLD NOTICE
Authors: Ramirez, Schesnol
Recipients: Schesnol, Dominguez, Haque (cc)

Defendant contends the documents are protected from discovery by the attorney-

client privilege.  Defendant also maintains that the original and amended litigation hold

notices and Ms. Schesnol's related advice are within the work product privilege. Plaintiff argues Defendant was essentially required to issue a litigation hold and, therefore, the litigation hold and communications related to it are not privileged. Plaintiff also argues the privilege was waived because the hold notice must have been widely distributed. (Motion at 20 – 21.)

A review of the record reveals that Ms. Schesnol contacted Mr. Ramirez on November 4, 2014, and advised him regarding the creation and dissemination of a litigation hold for Plaintiff's case, following Plaintiff's commencement of EEO proceedings. Ms. Schesnol also provided Mr. Ramirez a draft litigation hold notice. Mr. Ramirez then issued a notice to members of the United States Attorney's Office. On November 12, 2014, Ms. Schesnol advised Mr. Ramirez to issue an amended notice and provided him a draft, after Plaintiff filed her EEO complaint. Mr. Ramirez issued an amended notice on November 13. As reflected in the unredacted portion of the subject emails, Plaintiff sent an email to Mr. Ramirez on November 19, 2014, advising that she believed he had a conflict of interest. Mr. Ramirez forwarded the email to Ms. Schesnol and sought her legal advice on the matter. (Declaration of Jacqueline Schesnol ¶ 7.e.)

The litigation hold notices are within the attorney-client and work product privileges. *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 – 24 (N.D. Ga. 2007); *Mcdevitt v. Verizon Servs. Corp.*, No. 2:14-cv-04125, 2016 WL 1072903, at *1 (E.D. Pa. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 1056702 (E.D. Pa. Mar. 17, 2016). To determine,

however, whether there is any basis for Plaintiff's waiver claim, Defendant shall submit the documents to the Court for an in camera review.

**11.  March 25, 2015, emails concerning contacts with Plaintiff during EEO investigation**

> Bates # 3878, 6548 – 6550
> RE: Carmen Márquez
> Authors: Schesnol, Pérez, Capó
> Recipients: Capó, Pérez, Schesnol

Ms. Schesnol provided advice regarding contacts with Plaintiff as Plaintiff's EEO case proceeded.  Ms. Schesnol's advice resulted in additional email correspondence with Mr. Capó and Mr. Pérez.  (Declaration of Jacqueline Schesnol ¶ 7.g.)  Both Mr. Pérez and Mr. Capó had supervisory involvement with Plaintiff.

Defendant contends the documents are protected by the attorney-client privilege. Plaintiff argues that "the chain … was sent, evidently unsolicited, to a wide array of employees." (Motion at 22.)  Based on the record, the Court is satisfied that Ms. Schesnol's advice regarding contact with Plaintiff during the EEO process is within the attorney-client privilege.  The Court also does not believe the involvement of Mr. Capó and Mr. Pérez constitutes a waiver of the privilege.  The Court thus discerns no reason for an in camera review of the documents, and denies Plaintiff's request for an order compelling the production of the documents.

**12.  April 14 – 15, 2015, emails concerning reasonable accommodation**

> Bates # 4270 – 4271, 4272, 4274 – 4275, 6551, 6552 – 6553, 6555 – 6556
> RE: Request for reasonable accommodation
> Authors: Western, Novas, Schesnol, Timothy Henwood
> Recipients: López, Schesnol, Western, Novas (cc), Rodriguez (cc), Henwood (cc)

Defendant contends the documents are protected from discovery by the attorney-client privilege, and that certain documents are also within the work product privilege. Plaintiff argues the documents are not privileged because the involvement of the General Counsel's Office in the response to a request for accommodation is not case specific, but is based on a general advisory bulletin that encourages U.S. Attorney's Offices "to contact the General Counsel's Office to help navigate the steps and decisions that need to be made during the process." (Motion at 22, citing U.S. Attorney's Bulletin 55:3.)

On April 14, 2015, Ms. López emailed Ms. Schesnol seeking legal advice on a request for accommodation submitted by Plaintiff. Ms. Schesnol provided advice. (Declaration of Jacqueline Schesnol ¶ 7.h.)

Ms. Schesnol's advice regarding the response to Plaintiff's request for accommodation is within the attorney-client privilege. Plaintiff has not identified any evidence to suggest that the General Counsel's Office assumed decision-making authority for the U.S. Attorney's Office, and any information inconsistent with Ms. Schesnol's declaration. The Court thus discerns no reason for an in camera review of the documents, and denies Plaintiff's request for an order compelling the production of the documents.

**13.    May 20, 2015, note to file**

Bates # 4221 – 4222, 6560 – 6561

The documents consist of two pages of hand-written notes from a conference among office managers to discuss Plaintiff's accommodation request. The Court cannot determine from the current record whether a privilege protects the entirety of the documents from

discovery.  Defendant, therefore, shall submit the documents to the Court for an in camera review.

**14.    May 22, 2015, and June 2, 2015, emails on request for accommodation**

Bates # 4263, 6558, 6842
RE: Request for Reasonable Accommodation
Authors: Schesnol, López
Recipients: López, Schesnol, Western (cc), Novas (cc)

Bates # 4261, 6562
RE: Reasonable Accommodation Request Carmen Márquez
Authors: Western, Schesnol
Recipients: Schesnol, Western, Novas (cc), López (cc), Ramirez (cc)

Defendant contends the documents are protected from discovery by the attorney-client privilege and that certain documents are also within the work product privilege.  The communications are directed to or authored by Ms. Schesnol and relate to requests for legal advice regarding Plaintiff's request for accommodation. (Declaration of Jacqueline Schesnol ¶ 7.h.)  Ms. Schesnol's advice concerning Plaintiff's request for accommodation is within the attorney-client privilege. The Court thus discerns no reason for an in camera review of the documents, and denies Plaintiff's request for an order compelling the production of the documents.

Because the Court has been unable to locate in the record a document with Bates # 6842, the Court denies without prejudice Plaintiff's motion to compel production of Bates # 6842.

**15.    July 31, 2015, email concerning meeting with Plaintiff**

Bates # 4250, 6565, 6844
RE: Meeting on July 17, 2015 – Memo
Author: Schesnol

Recipient: Rodriguez, Novas

Ms. Schesnol asserts that the documents relate her observations or advice regarding Mr. Pérez's report of his meeting with Plaintiff. (Declaration of Jacqueline Schesnol ¶ 7.i.) Defendant contends the documents are protected from discovery by the attorney-client privilege. The redacted communication is authored by Ms. Schesnol and relates legal advice regarding a potential disciplinary matter involving an employee engaged in litigation against the United States Attorney's Office. (Declaration of Jacqueline Schesnol ¶ 7.h.) The Court is satisfied that the document is within the attorney-client privilege, and discerns no reason for an in camera review. The Court thus denies Plaintiff's request for an order compelling the production of the documents.

**16.   January 28, 2016, file entry concerning EARS**

Bates # 6569
Author:  David Gaouette

Defendant contends the document is protected from discovery by the attorney-client privilege. The Court cannot determine based on the current record whether the privilege applies to all or any portion of the document. Defendant, therefore, shall submit the document to the Court for an in camera review.

**17.   Additional documents**

According to Defendant's final privilege log, a number of additional documents remain in dispute.[8] The documents, however, do not appear to be part of the current record.

---

[8] The documents in question are identified as January 11, 2016, email concerning interview of Plaintiff, Bates # 6582; February 2008, emails concerning background investigation, Bates # 6582, 6583, 6585 – 6586, 6852; November 19, 2007, email concerning salary determination, Bates # 6587; November 15 – 16, 2007, emails concerning 2008 EARS evaluation, Bates # 6588 – 6589; October 19, 2007, email concerning

To the extent Plaintiff seeks the production of the documents, Plaintiff can file a separate motion with copies of the redacted documents for the Court's review.

## Conclusion

Based on the foregoing analysis, the Court grants in part and denies in part Plaintiff's Motion for In Camera Review of Documents and Request to Compel Production of Documents as to Which Privilege is Asserted. (ECF No. 31.) On or before March 28, 2018, Defendant shall submit for the Court's in camera review the documents identified herein as warranting an in camera review by the Court. The Court otherwise denies Plaintiff's motion to compel.

## NOTICE

Any objections to this Decision and Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of March, 2018.

---

reinstatement, Bates # 6591; July 2 – 3, 2007, emails concerning post-judgment issues, Bates # 6593 – 6594; March 25, 2008, fax concerning eQIP, Bates# 6595 – 6596; February 27 – 28 and March 6 & 10, 2008, emails on post-judgment Issues, Bates # 6602, 6603 – 6604, 6856 – 6857; April 11, 2008, emails concerning death penalty matter, Bates # 6830, 6831, 6833, 6858.