UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

CARMEN MÁRQUEZ-MARÍN,           )
                               )
          Plaintiff,           )
                               )
     v.                        )        3:16-cv-01706-JAW-JCN
                               )
WILLIAM P. BARR, Attorney      )
General of the United States,  )
                               )
          Defendant.           )

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

This unusual case involves multiple employment-based claims by an Assistant
United States Attorney (AUSA) against a United States Attorney's Office (USAO).
Presented with an extraordinarily complex, dense, and contentious factual record,
but remarkably straightforward legal issues, the Court concludes that the AUSA
raises genuine issues of fact that must be resolved by a jury and prevent summary
judgment for the defendant.

**I.    BACKGROUND**

**A.    Procedural History**

On April 13, 2016, Carmen Márquez-Marín, a former AUSA, filed a complaint
in this Court against Loretta Lynch, then Attorney General of the United States,
alleging that the U.S. Department of Justice (DOJ) retaliated against her for her prior
Equal Employment Opportunity (EEO) Act activity and created a hostile work
environment for her for the same reasons, violated the 1973 Rehabilitation Act by
failing to provide her with reasonable accommodations for her disability, and

discriminated against her due to her disability.[1]   *Compl.* (ECF No. 1).   Attorney General Lynch, now William P. Barr,[2] answered the Complaint on June 30, 2016, *Def.'s Answer to Pl.'s Compl.* (ECF No. 5), and filed an amended answer on August 12, 2016.   *Def.'s First Am. Answer to Pl.'s Compl.* (ECF No. 13).

The case began in the ordinary course with the Court issuing a scheduling order on July 27, 2016, and for various reasons, the parties required periodic extensions of the deadlines.   *Scheduling Order* (ECF No. 11); *Pl.'s Unopposed Mot. for Extension of All Deadlines* (ECF No. 16); *Order Granting Mot. for Extension of Deadlines* (ECF No. 17); *Joint Mot. for Extension of Deadlines* (ECF No. 18); *Order Granting Mot. for Extension of Deadlines* (ECF No. 20); *Joint Mot. Requesting Extension of Deadlines* (ECF No. 26); *Order Granting Mot. for Extension of Time* (ECF No. 27); *Def.'s Unopposed Mot. for Extension of Time to Respond to Pl.'s Mot. for* in Camera *Review and to Compel* (ECF No. 34); *Order Granting Unopposed Mot. for Extension of Time to File Resp.* (ECF No. 35).   On August 24, 2017, the Magistrate Judge suspended all deadlines until a privilege issue was resolved.   *Report of Telephone Conference and Order* (ECF No. 38).

In September 2017, however, Puerto Rico was struck in quick succession with two disastrous hurricanes: Hurricane Irma and Hurricane Maria, the latter a deadly Category 5 hurricane.   This case was placed on hold as Puerto Rico recovered from

---

[1]     The Court interchangeably refers to the Defendant as the Attorney General, the DOJ, and the USAO as the context requires.

[2]     Loretta Lynch was the Attorney General of the United States in 2016 when AUSA Márquez-Marín initiated her Complaint.   *Compl.* ¶ 3.5.   Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General William P. Barr was "automatically substituted as a party" upon his confirmation as Attorney General of the United States.

the devastating impact of the hurricanes. *See Mot. Resubmitting (with /S/ for Elec. Signature) Informative Mot. Concerning Conditions Faced by Pl.'s Counsel* (ECF No. 49). As late as October 30, 2017, for example, AUSA Márquez-Marín's counsel was still without electricity in her law office, and when she regained electricity by generator, it could be operated only six hours per day. *Mot. for Extension of Time* (ECF No. 53). The privilege issue was finally resolved by the Magistrate Judge on June 28, 2018. *Decision and Order on Pl.'s Mot. to Compel Produc. or for in Camera Review* (ECF No. 69); *Suppl. Decision and Order on Pl.'s Mot. to Compel* (ECF No. 71).

By October 25, 2018, the parties completed discovery and the Magistrate Judge issued a procedural order, establishing deadlines for the parties to file and respond to a prospective motion for summary judgment. *Procedural Order* (ECF No. 77). After the parties filed a joint motion, the Magistrate Judge reset the deadlines on February 7, 2020. *Joint Mot. for Revised Scheduling Order* (ECF No. 84); *Order Granting Joint Mot. for Revised Scheduling Order* (ECF No. 85).

On April 18, 2019, the Defendant filed a motion for summary judgment, a statement of material facts, and a joint stipulation. *Def.'s Mot. for Summ. J.* (ECF No. 92) (*Def.'s Mot.*); *Def.'s Statement of Material Facts* (ECF No. 93) (DSMF); *Joint Stips.* (ECF No. 91) (*Stip.*). On June 27, 2019, AUSA Márquez-Marín filed a statement of facts in opposition to the Defendant's statement of material facts. *Pl.'s Statement of Facts in Opp'n to Summ. J.* (ECF No. 122) (PSAMF). On July 17, 2019, AUSA Márquez-Marín filed a response to the Defendant's statement of material facts.

*Pl.'s Opp'n Statement of Facts Admitting, Denying or Clarifying Facts Submitted by Def. at Docket 93* (ECF No. 126) (PRDSMF).  On July 30, 2019, AUSA Márquez-Marín filed an opposition to the Defendant's Motion for Summary Judgment.  *Pl.'s Opp'n to Mot. for Summ. J.* (ECF No. 134) (*Pl.'s Opp'n*).

On September 6, 2019, the Defendant filed a reply to AUSA Márquez-Marín's statement of additional material facts, *Def.'s Resp. to Pl.'s Statement of Additional Material Facts* (ECF No. 138) (DRPSAMF), and a reply to AUSA Márquez-Marín's response to the motion for summary judgment.  *Def.'s Reply in Supp. of Mot. for Summ. J.* (ECF No. 139) (*Def.'s Reply*).

On October 1, 2019, AUSA Márquez-Marín filed a motion for leave to file a sur-reply and the sur-reply, which the Court granted permission to file on October 2, 2019.  *Pl.'s Second Req. for Leave to Respond to New Arguments Contained Def.'s Reply to Opp'n to Mot. for Summ. J.* (ECF No. 149); *id.*, Attach. 1, *Pl.'s Resp. to Def.'s Reply to Opp'n to Mot. for Summ. J.* (*Pl.'s Sur-resp.*); *Order Granting Mot. for Leave to File Resp.* (ECF No. 151)  On October 15, 2019, the Defendant sur-replied to AUSA Márquez-Marín's sur-response to his motion for summary judgment.  *Def.'s Sur-Reply to Pl.'s Resp. to Def.'s Reply* (ECF No. 152) (*Def.'s Sur-reply*).

## B.    The Facts

### 1.    Carmen Márquez-Marín's Professional Background

Carmen Márquez-Marín, licensed as an attorney in 1996, is a graduate of the University of Puerto Rico School of Law.[3]  PSAMF ¶ 1; DRPSAMF ¶ 1; *Stip.* ¶ 1;

---

[3]    This statement of facts encompasses nearly two decades of AUSA Márquez-Marín's employment at the USAO in San Juan, Puerto Rico.  The statements of fact mention over sixty

DSMF ¶ 1; PRDSMF ¶ 1.  She has a Master's Degree in Environmental Law from Vermont Law School and a Master's Degree in Anthropology from Texas A&M. PSAMF ¶ 1; DRPSAMF ¶ 1.  On December 16, 2001, AUSA Márquez-Marín started working as an AUSA at the USAO for the District of Puerto Rico in San Juan, Puerto Rico.[4]  *Stip.* ¶ 2; DSMF ¶ 2; PRDSMF ¶ 2; PSAMF ¶ 2; DRPSAMF ¶ 2.  Then United States Attorney Guillermo Gil hired AUSA Márquez-Marín subject to a background investigation.  *Stip.* ¶ 2; DSMF ¶ 2; PRDSMF ¶ 2.

For salary purposes, she was placed in an AD 25-26 (Administratively Determined) grade based on her level of experience as an attorney and given a starting salary of $60,000 per year.[5]  *Stip.* ¶ 2; DSMF ¶ 2; PRDSMF ¶ 2; PSAMF ¶¶ 2, 4; DRPSAMF ¶¶ 2, 4.  AUSA Jenifer Hernández began work at the office on the exact same day as AUSA Márquez-Marín.  PSAMF ¶ 3; DRPSAMF ¶ 3.  Based on her years

individuals.  But the more confusing aspect of the facts is the ever-changing roles these individuals played over the last two decades.  To assist the reader, the Court included a cast of individuals at the end of this opinion, which clarifies each mentioned individual and his or her various roles as best as the Court could make them out.

[4]    Paragraph two of AUSA Márquez-Marín's statement of additional material facts states that "[AUSA] Márquez[-Marín] was first hired as an AUSA on December 16, 2001."  PSAMF ¶ 2; DRPSAMF ¶ 2.  The Defendant issues a qualified response, arguing that AUSA Márquez-Marín started work on that date rather than being hired on this date.  Given that AUSA Márquez-Marín admits paragraph two of the Defendant's statement of material facts, which lists this date as when she started work, the Court accepts this qualification.

[5]    The Defendant disputes AUSA Márquez-Marín's statement that she was placed in an AD 25-26 paygrade.  PSAMF ¶ 2; DRPSAMF ¶ 2.  The Defendant claims that the pay table upon which AUSA Márquez-Marín relies upon for her paygrade was not properly produced in discovery.  DRPSAMF ¶ 2.

It does not matter.  In her sworn statement that she cites in support of her paragraph two, AUSA Márquez-Marín stated that her original paygrade was AD 25-26.  PSAMF, Attach. 1, *Ex. 1: Decl. by Pl. Carmen Márquez-Marín under Penalty of Perjury* ¶ 8 (*Márquez-Marín Decl.*).  As this fact is within her personal knowledge, her sworn statement is competent evidence of the fact.  *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000).  As the Court is required to view disputed facts in the light most favorable to the non-movant, the Court does not accept the Defendant's denial of the paygrade level at which AUSA Márquez-Marín entered the USAO in 2001.

The Defendant denies paragraph four in the AUSA Márquez-Marín's statement of additional material facts.  DRPSAMF ¶ 4.  However, for the same reasons set forth above, the Court rejects the denial.

of experience, AUSA Hernández's paygrade at the beginning of 2002 was AD 21-24.[6]
PSAMF ¶ 3; DRPSAMF ¶ 3.   AUSA Márquez-Marín had several years more
experience as an attorney than AUSA Hernández.[7]   PSAMF ¶¶ 4, 212; DRPSAMF
¶¶ 4, 212.  During the year 2002, the difference between AUSA Márquez-Marín and
AUSA Hernández was reflected in their salaries and AD ranges.   PSAMF ¶ 213;
DRPSAMF ¶ 213.   AUSA Márquez-Marín was deemed an AD grade of 25 to 26
(reflecting five to seven years of experience) and she had a salary of $64,100.  PSAMF
¶ 213; DRPSAMF ¶ 213.  AUSA Hernández had an AD grade of 21 to 24 and a salary
of $48,000.[8]  PSAMF ¶ 213; DRPSAMF ¶ 213.

According to Judge Steven McAuliffe, then Chief Judge of the United States
District Court for the District of New Hampshire, who presided over the case of
*Márquez-Marín v. González, Attorney General*, 3:05-cv-01619-SJM,[9] during AUSA
Márquez-Marín's first two and a half years as an AUSA from late 2001 to August
2004, she

> seemingly enjoyed unqualified and enthusiastic support among the
> federal and commonwealth law enforcement personnel with whom she

---

[6]     The Defendant admits that AUSA Hernández was hired at the same time as AUSA Márquez-Marín.  DRPSAMF ¶ 3.  But the Defendant denies that AUSA Hernández's paygrade was AD 21-24 in 2002.  DRPSAMF ¶ 3.  The Defendant points out that a DOJ employee can only have one paygrade at a time.  DRPSAMF ¶ 3.  For purposes of the motion for summary judgment, the Court must view disputed facts in the light most favorable to the non-movant, namely AUSA Márquez-Marín, and it therefore included the level of AUSA Hernández's paygrade as sworn to by AUSA Márquez-Marín and declines to accept the Defendant's denial.

[7]     AUSA Márquez-Marín makes the same allegation she makes in her additional paragraph four in slightly different language in her additional paragraph two hundred and twelve.  PSAMF ¶ 212.  The DOJ denies the paragraph for similar foundational reasons.  DRPSAMF ¶ 212.  The Court overrules the DOJ's denial.

[8]     The DOJ denies AUSA Márquez-Marín's additional paragraph two hundred and thirteen.  DRPSAMF ¶ 213.  The Court overrules the DOJ's denial for the reasons in notes 5 and 6 above and because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

[9]     The parties stipulate that the docket number was 05-1619.  *Stip.* ¶ 5.  Although not incorrect, the Court inserted the complete docket number reflected in the Court's CM-ECF filing system.

worked.   Indeed, law enforcement officers testified persuasively and emphatically [at trial] that it was the new and inexperienced Márquez[-Marín] who quickly established a reputation as a "go-to" prosecutor, while her more experienced supervisors seemed content to let their cases languish unattended.[10]

PSAMF ¶ 5 (some alterations in original); DRPSAMF ¶ 5.[11]

## 2.    Carmen Márquez-Marín Is Terminated: August 27, 2004

In mid-2002, Humberto (Bert) García became the United States Attorney for the District of Puerto Rico. *Stip.* ¶ 3; DSMF ¶ 3; PRDSMF ¶ 3.   United States Attorney García appointed Rosa Emilia Rodríguez, then Executive Assistant United States Attorney (EAUSA), to be the First Assistant United States Attorney (FAUSA). *Stip.* ¶ 3.   In August 2004, United States Attorney García sent a letter to the director of the Executive Office of the United States Attorneys (EOUSA) in the DOJ recommending that AUSA Márquez-Marín's employment be terminated.   DSMF ¶ 4; PRDSMF ¶ 4; PSAMF ¶ 8; DRPSAMF ¶ 8.   United States Attorney García sent his letter to the EOUSA with its termination recommendation after AUSA Márquez-

---

[10]     The Defendant issues a qualified response to this paragraph.   DRPSAMF ¶ 5.   In its response, the Defendant posits more statements in then Chief Judge McAuliffe's order following the civil trial. DRPSAMF ¶ 5.   The portions of the McAuliffe post-trial order that the Defendant quotes are accurate; however, reading the entire order, the Court declines to include them in the statement of facts because there are other portions of the same order favorable to AUSA Márquez-Marín.   To selectively include unfavorable portions of the order would violate the Court's obligation to view contested facts in the light most favorable to AUSA Márquez-Marín.

[11]     The Defendant objects to AUSA Márquez-Marín's paragraph six of her additional facts on the ground that it is not supported by a citation to the record in violation of District of Puerto Rico Local Rule 56(c).   PSAMF ¶ 6; DRPSAMF ¶ 6.   The Court agrees.   Local Rule 56(c) requires that each opposing statement must be "supported by a record citation as required by subsection (e) of this rule." D.P.R. Loc. R. 56(c).   Local Rule 56(e) states that the Court "may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."   D.P.R. Loc. R. 56(e).   AUSA Márquez-Marín's paragraph six contains no record citation at all and the Court disregards it to the extent its assertions are not properly made elsewhere.

Of note, despite the lack of record citation, the Defendant admits the portion of the paragraph stating that Rosa Emilia Rodríguez became the United States Attorney in 2006 and was still in that position as of September 2019.   DRPSAMF ¶ 6.   The Court does not find this fact relevant and did not include it.

Marín complained of discrimination, which is protected activity, in the USAO.[12] PSAMF ¶ 12; DRPSAMF ¶ 12.

In August 2004, the director of the EOUSA in the DOJ issued a letter of termination for AUSA Márquez-Marín.[13] *Stip.* ¶ 4; DSMF ¶ 4; PRDSMF ¶ 4; PSAMF ¶ 10; DRPSAMF ¶ 10. The termination letter was delivered to AUSA Márquez-Marín on August 27, 2004, effective immediately. *Stip.* ¶ 4; DSMF ¶ 4; PRDSMF ¶ 4; PSAMF ¶ 7; DRPSAMF ¶ 7. As of August 27, 2004, United States Attorney García had already named Rosa Emilia Rodríguez as the FAUSA.[14] PSAMF ¶ 9; DRPSAMF ¶ 9.

### 3. Carmen Márquez-Marín's First Federal Lawsuit: 2005-07

After completing the required EEO process, on June 9, 2005, AUSA Márquez-Marín filed a complaint in this Court alleging discrimination based on gender and

---

[12]    In paragraph twelve of her additional facts, AUSA Márquez-Marín asserts that United States Attorney García's termination letter was issued after she complained about national origin and gender discrimination in the USAO. PSAMF ¶ 12. The Defendant admits that the letter was sent after AUSA Márquez-Marín complained of "discrimination." DRPSAMF ¶ 12. The Court agrees in part and disagrees in part with the Defendant's objection. AUSA Márquez-Marín's citation does not mention discrimination based on national origin or gender, but it does mention that she engaged in "protected activity." PSAMF ¶ 12. The Court included that portion of paragraph twelve of her additional facts as is supported by the record citation and the Defendant's admission.

[13]    In paragraph ten of her additional facts, AUSA Márquez-Marín asserts that the EOUSA's termination decision was "based on" United States Attorney García's recommendation letter. PSAMF ¶ 10. The Defendant objects on the ground that the citation does not support this assertion. DRPSAMF ¶ 10. The Court agrees and did not include this portion of the facts in its recitation.

[14]    In paragraph eleven of her additional facts, AUSA Márquez-Marín asserts that the termination letter contained allegations of dishonesty which, according to the DOJ, were based on a "perception" held by then FAUSA Rodríguez. PSAMF ¶ 11. The Defendant objects on the ground that the citation does not support the assertion. DRPSAMF ¶ 11. The Court agrees with the Defendant.

AUSA Márquez-Marín does not cite the termination letter. Instead, she cites a portion of Chief Judge McAuliffe's October 11, 2007, post-trial order, which discusses the termination letter and concludes that it should be expunged. PSAMF ¶ 11. The problem is that Judge McAuliffe's order does not state that then FAUSA Rodríguez's perception of AUSA Márquez-Marín's dishonesty led to the termination letter or was present in the letter. The Court declines to include AUSA Márquez-Marín's additional paragraph eleven because it is not supported by the record.

national origin as well as retaliation. *Stip.* ¶ 5; DSMF ¶ 5; PRDSMF ¶ 5. The case was titled, *Márquez-Marín v. Gonzalez, Attorney General*, and was given docket number 3:05-cv-1619-SJM. *Stip.* ¶ 5; DSMF ¶ 5; PRDSMF ¶ 5. After the judges of the District of Puerto Rico recused themselves, the case was assigned to the then Chief Judge McAuliffe from the District of New Hampshire and was given the additional New Hampshire docket number, 05-cv-247, as well. *Stip.* ¶ 5; DSMF ¶ 5; PRDSMF ¶ 5. After United States Attorney García retired in June 2006, Rosa Emilia Rodríguez became the next person to hold the United States Attorney position while the *Márquez-Marín* case was still pending trial.[15] DSMF ¶ 6; PRDSMF ¶ 6; PSAMF ¶ 13; DRPSAMF ¶ 13.

AUSA Márquez-Marín's case went to trial before a jury in San Juan, Puerto Rico in March 2007. *Stip.* ¶ 6; DSMF ¶ 7; PRDSMF ¶ 7; PSAMF ¶ 14; DRPSAMF ¶ 14. Testifying at trial was then United States Attorney Rodríguez,[16] who had been FAUSA at the time of the dismissal and was the one with the "perception" that AUSA Márquez-Marín had been dishonest. PSAMF ¶ 15; DRPSAMF ¶ 15. United States Attorney Rodríguez had been deposed in the course of the pretrial proceedings in the first discrimination case before this Court, PSAMF ¶ 16; DRPSAMF ¶ 16, and was cross-examined in the trial regarding her role in AUSA Márquez-Marín's termination

---

[15]    The Defendant qualifies AUSA Márquez-Marín's additional paragraph thirteen by stating that Rosa Emilia Rodríguez became United States Attorney "while the Court was still assessing Defendant's motion for summary judgment." DRPSAMF ¶ 13. The Court does not see a conflict between the Defendant's statement and the case pending trial, so the Court rejects the qualification.

[16]    While Rosa Emilia Rodríguez was United States Attorney at the time of these filings, she is no longer in the position. The Court referred to her as United States Attorney Rodríguez throughout the rest of the facts.

that the jury determined had been illegally retaliatory.[17]  PSAMF ¶ 17; DRPSAMF ¶ 17.

As soon as United States Attorney Rodríguez was appointed as United States Attorney, and by the time of the trial in AUSA Márquez-Marín's case, she appointed María Domínguez to the position of FAUSA.[18]  PSAMF ¶ 18; DRPSAMF ¶ 18. Although FAUSA Domínguez did not testify at the 2007 trial, she attended frequently and listened to the testimony as part of the public in spite of her other extensive duties as FAUSA.[19]  PSAMF ¶ 19; DRPSAMF ¶ 19.

The jury rejected AUSA Márquez-Marín's claims of discrimination and found in her favor on her retaliation claim.  *Stip.* ¶ 6; DSMF ¶ 7; PRDSMF ¶ 7.  The jury found that AUSA Márquez-Marín had been the victim of unlawful retaliation in connection with the termination of her employment in violation of the EEO Act.[20]

---

[17]   AUSA Márquez-Marín's additional paragraph seventeen states that United States Attorney Rodríguez was cross-examined about AUSA Márquez-Marín's "illegal termination." PSAMF ¶ 17. The Defendant objects on the ground that at the time United States Attorney Rodríguez was cross-examined, the termination had not been established as illegal. DRPSAMF ¶ 17. The Court altered the statement to reflect that the jury later found the termination to have been illegally retaliatory.

[18]   AUSA Márquez-Marín's additional paragraph eighteen states that the position of FAUSA is a "trust position." PSAMF ¶ 18. The Defendant objects on the ground that the proposition that the FAUSA is a trust position is not supported by the record citation. DRPSAMF ¶ 18. The Court agrees with the Defendant and eliminated that phrase from AUSA Márquez-Marín's additional paragraph eighteen.

[19]   The Defendant objects to a portion of this additional statement on the ground that FAUSA Domínguez has a slightly different recollection of her attendance. DRPSAMF ¶ 19. The Court overrules the Defendant's objection because paragraph seventeen is supported by AUSA Márquez-Marín's sworn declaration and this is a matter presumably within her personal knowledge. In evaluating conflicting evidence, the Court must view the record in the light most favorable to AUSA Márquez-Marín.

[20]   AUSA Márquez-Marín's original additional paragraph twenty states that the jury found that she had been the victim of unlawful retaliation in violation of the "Equal Employment Opportunity law." PSAMF ¶ 20. Noting that the jury made no mention of the "Equal Employment Opportunity law," the Defendant feigns ignorance, stating that it "is unclear to what [AUSA] Márquez[-Marín] is referring." DRPSAMF ¶ 20. This objection is frivolous. As the Defendant well knows, 42 U.S.C. § 2000e et al. is variously referred to as "Title VII of the Civil Rights Act of 1964," *see* PSAMF, Attach. 1, *Ex. C: Judge McAuliffe's Order Denying Summ. J.* at 1-2, and "Equal Opportunity Act of 1972." P.L.

PSAMF ¶ 20; DRPSAMF ¶ 20.  Although the jury awarded compensatory damages of $136,325, it found that AUSA Márquez-Marín was not entitled to an award of back pay.  *Stip.* ¶ 6; DSMF ¶ 7; PRDSMF ¶ 7.  The Court did not immediately enter judgment on the verdict and entertained post-trial motions from the parties.  *Stip.* ¶ 6; DSMF ¶ 7; PRDSMF ¶ 7.

On October 10, 2007, Chief Judge McAuliffe ordered the USAO to reinstate AUSA Márquez-Marín, but consistent with the jury verdict Judge McAuliffe declined to award back pay to AUSA Márquez-Marín.  *Stip.* ¶ 6; DSMF ¶ 8; PRDSMF ¶ 8. Judge McAuliffe found that the charges against AUSA Márquez-Marín leading to her termination were "unwarranted and unfair . . .."  PSAMF ¶ 22; DRPSAMF ¶ 22.  He explained that the "charges against [AUSA] Márquez[-Marín], and offered as justification by the DOJ for her termination, were patently without merit . . ..  These charges were, at best, unfair exaggerations bearing only the most passing and strained relationship to reality, and at worst, were trumped up."  PSAMF ¶ 22; DRPSAMF ¶ 22.  In his post-trial order, Judge McAuliffe affirmed that "the evidence did not support the charges (made in the termination letter) that [AUSA] Márquez[-Marín] engaged in a pattern of dishonesty or misconduct."  PSAMF ¶ 23; DRPSAMF ¶ 23.  Judge McAuliffe went on to state that "those charges were not only unwarranted and unfair, but certainly professionally devastating and no doubt personally devastating as well."  PSAMF ¶ 23; DRPSAMF ¶ 23.

---

92-261, § 1, 86. Stat. 103 (Mar. 24, 1972) ("[T]his Act may be cited as the 'Equal Employment Opportunity Act of 1972'").

Judge McAuliffe ordered the DOJ to reinstate AUSA Márquez-Marín to the USAO "with the same status, rights and privileges she had as of the date she was unlawfully terminated" and to "remove from [AUSA] Márquez[-Marín]'s Official Personnel File and any other government files into which they may have been placed: (1) the United States Attorney's letter recommending [AUSA] Márquez[-Marín]'s termination; (2) the termination letter itself; and (3) all documents referencing or alluding to those letters, or the substantive charges involving a pattern of dishonesty or misconduct leveled against [AUSA] Márquez[-Marín] and supposedly warranting her termination."[21]  PSAMF ¶ 24; DRPSAMF ¶ 24.  In ordering reinstatement, Judge McAuliffe stated that once AUSA Márquez-Marín was reinstated, he expected United States Attorney Rodríguez to "proceed in a lawful, fair, non-vindictive and non-discriminatory manner with regard to [her] employment and future career."  PSAMF ¶ 25 (alteration in original); DRPSAMF ¶ 25.

Judge McAuliffe ordered payment of attorney's fees and litigation expenses in an amount exceeding $420,000.  *Stip.* ¶ 6; DSMF ¶ 8; PRDSMF ¶ 8.  Approximately one week later, Judge McAuliffe issued a judgment incorporating the terms of his October 10, 2007, order.  *Stip.* ¶ 6; DSMF ¶ 8; PRDSMF ¶ 8.

AUSA Márquez-Marín is aware of no other case in the history of the USAO in the DOJ wherein a court has ordered the reinstatement of an AUSA who alleged and

---

[21]   AUSA Márquez-Marín's additional paragraph twenty-four is a bit garbled.  PSAMF ¶ 24.  The Defendant interposes a qualified response, positing Judge McAuliffe's actual language.  DRPSAMF ¶ 24.  To avoid any controversy, the Court quoted the exact language in Judge McAuliffe's order.

proved that she had been subject to illegal retaliation.[22]   PSAMF ¶ 26; DRPSAMF ¶ 26. The DOJ admitted that "[AUSA] Márquez[-Marín] is the only AUSA in Puerto Rico, who, in the last ten years, obtained a jury verdict against the United States (represented by the Attorney General) determining that she had been retaliated against in violation of federal law." PSAMF ¶ 29; DRPSAMF ¶ 29. Aside from AUSA Márquez-Marín's case, United States Attorney Rodríguez has not had to handle a situation where an AUSA has been reinstated to her position following a jury verdict.[23]   PSAMF ¶ 30: DRPSAMF ¶ 30.

### 4. Post-Judgment Controversy and Reinstatement: 2007-08

The DOJ (with United States Attorney Rodríguez) opposed AUSA Márquez-Marín's request for reinstatement but did not oppose her request for expungement of the termination letter and the United States Attorney's letter recommending

---

[22]    In AUSA Márquez-Marín's additional fact paragraph twenty-seven, she states that she requested the DOJ to admit that there had been no similar case in the last ten years and that the DOJ stated that after reasonable inquiry, it did not know if there was another such case. PSAMF ¶ 27. The Defendant interposes a qualified response, noting that in fact it answered that it could "neither admit nor deny this information. Defendant makes reasonable inquiry, and the information she knows or can readily obtain is insufficient to enable her to admit or deny. To the extent a [response] is required, the request is denied." DRPSAMF ¶ 27 (alteration in original). However unsatisfactory the DOJ's response, the Court agrees with the DOJ that it did not admit the requested fact and the Court excluded it. While the Defendant admits that AUSA Márquez-Marín asked the question, it is not relevant without the answer and the Court also excluded that portion of the paragraph.
    In the same vein, in AUSA Márquez-Marín's additional fact paragraph twenty-eight, she asserts that it is a "reasonable inference" that no such case exists because Attorney General Lynch (now Barr) would have been "in a position to know" whether this had happened or not. PSAMF ¶ 28. AUSA Márquez-Marín provides no citation for this statement.
    The Defendant objects, noting that the DOJ is a "large government agency" and there is no "centralized database" to track this information. DRPSAMF ¶ 28. Taking the Defendant's response at face value, the Court agrees with the DOJ that it is not a "reasonable inference" that there has been no other similar case in the last ten years within the DOJ and declines to include this asserted fact.
[23]    The Defendant quibbles about AUSA Márquez-Marín's exact language in her additional fact paragraph thirty and notes that the asserted is not supported by a record citation. DRPSAMF ¶ 30. The Court agrees that as there is no citation to the record, the Court could ignore the paragraph, but in light of the DOJ's admission, the Court included the assertion only to the extent that the DOJ admits it.

13

termination from her Official Personnel File.[24]  PSAMF ¶ 31; DRPSAMF ¶ 31.  Judge McAuliffe rejected the DOJ position, noting that the United States (Government) had "not offered any compelling reasons why [AUSA Márquez-Marín] could not be successfully returned to the position she would have occupied had the DOJ not unlawfully discriminated against her."  PSAMF ¶ 32; DRPSAMF ¶ 32.  On October 29, 2007, AUSA Carole Fernández, an attorney with the Southern District of Florida and counsel for the USAO, wrote to Judith Berkan, counsel for AUSA Márquez-Marín, that "the United States Attorney for the District of Puerto Rico has asked that [AUSA Carole Fernández] convey that [United States Attorney Rodríguez] and her Office respect the judicial process and are committed to complying fully in good faith with the Court's order and judgment."[25]  *Stip.* ¶ 7; DSMF ¶ 9; PRDSMF ¶ 9.

---

[24]     AUSA Márquez-Marín's original additional paragraph thirty-one reads:

> The DOJ (with Rosa Emilia Rodríguez as the U.S. Attorney for Puerto Rico) opposed [AUSA] Márquez[-Marín]'s request for reinstatement and the expungement of the dismissal letter containing the false allegations against her.

PSAMF ¶ 31.  In support, AUSA Márquez-Marín cites Exhibit E as the DOJ response to her motion for post-trial equitable relief.  PSAMF ¶ 31.

In response, the Defendant points out that Exhibit E is not the DOJ response.  DRPSAMF ¶ 31.  The DOJ is correct.  However, AUSA Márquez-Marín cites the docket number of the filing for *Márquez-Marín v. Gonzalez Attorney General*, No. 05-cv-1619-SJM, and although under no obligation to do so, the Court located the DOJ filing to clarify the dispute.

The DOJ interposes a qualified response to AUSA Márquez-Marín's assertion that it opposed her request for reinstatement, saying that it "argued that reinstatement was not an appropriate remedy following the jury's verdict."  DRPSAMF ¶ 31.  The Court rejects the DOJ's qualified response.  The difference between opposing reinstatement and claiming it was not appropriate is too subtle to be credited.

The DOJ denies that it opposed expungement of the recommendation and termination letters.  DRPSAMF ¶ 31.  Here, the DOJ is correct and the Court did not include this claim in its statement of facts because AUSA Márquez-Marín's assertion is not supported by the record.

The DOJ denies that United States Attorney Rodríguez "orchestrated the alleged opposition."  DRPSAMF ¶ 31.  AUSA Márquez-Marín's paragraph thirty-one does not allege that United States Attorney Rodríguez orchestrated the alleged opposition, only that the DOJ, including United States Attorney Rodríguez, opposed reinstatement.  The Court overrules the DOJ's denial as non-responsive.

[25]     This fact appears in the Joint Stipulation of the parties.  *Stip.* ¶ 7.  The same fact appears in the Defendant's statement of material facts.  DSMF ¶ 9.  In her response to the Defendant's statement

There was, however, a delay in AUSA Márquez-Marín's return to the USAO. DSMF ¶ 10; PRDSMF ¶ 10.  AUSA Carole Fernández also informed Attorney Berkan that the Government, as part of the reinstatement process, needed to conduct a background investigation on AUSA Márquez-Marín since her initial background check had been conducted in 2001 and she was overdue for a reinvestigation.  *Stip.* ¶ 8.  All AUSAs are not only required to undergo detailed background investigations prior to commencing employment but also are required to submit to reinvestigations of their backgrounds five years after initial employment and every five years thereafter.  *Stip.* ¶ 8.  AUSA Márquez-Marín, assuming the reinvestigation would be conducted quickly and that it would allow her a brief period to wrap up certain outstanding obligations, initially agreed.  *Stip.* ¶ 9.  From AUSA Márquez-Marín's perspective, however, for a period of five months, the DOJ simply failed to reinstate her, alleging that it could not comply immediately with the Court's order because it purportedly had to complete a background investigation.[26]  PSAMF ¶ 33; DRPSAMF ¶ 33.

Eventually, AUSA Márquez-Marín became frustrated with the length of time the investigation was taking and on February 25, 2008, she filed a motion for

---

of material fact paragraph nine, AUSA Márquez-Marín objects to the same fact she earlier stipulated to on the ground that the letter is not admissible for the truth of its contents and is inadmissible to prove motive. PRDSMF ¶ 9.  The Court overrules AUSA Márquez-Marín's objection.  AUSA Márquez-Marín may not object to a fact to which she has stipulated without qualification.

[26]    The DOJ interposes a qualified response in part and a denial in part.  DRPSAMF ¶ 33.  The DOJ qualifies its response by objecting to the words "simply failed to reinstate" and "purportedly" on the ground that they are argumentative.  DRPSAMF ¶ 33.  The Court slightly amended the paragraph to confirm that this statement represents AUSA Márquez-Marín's perspective.

    In response to the DOJ denial of the assertion that it maintained it could not comply with the Court's order, DRPSAMF ¶33, the Court slightly amended the paragraph to state that the DOJ could not comply "immediately" with the Court's order.

contempt based on the USAO's alleged failure to comply with the Court's order.  *Stip.* ¶ 10.  The delay and AUSA Márquez-Marín's salary were discussed by the parties in various correspondence, as well as in various motions that AUSA Márquez-Marín and the DOJ filed with the Court.  DSMF ¶ 12; PRDSMF ¶ 12.  In one of her letters to Attorney Berkan, AUSA Carole Fernández wrote:

> Let me assure again that the delay in reinstating [AUSA Márquez-Marín] is the result of the process involved and not any intent to avoid complying with the Judgment.  The United States Attorney and her Office have continuously expressed their commitment to reinstating [AUSA Márquez-Marín] as smoothly, fairly, and expediently as possible and have done all that could be done by them to insure that this is accomplished.[27]

DSMF ¶ 12; PRDSMF ¶ 12.

On February 27, 2008, two days after AUSA Márquez-Marín filed her motion for contempt, AUSA Carole Fernández contacted Attorney Berkan and told her that AUSA Márquez-Marín could return to work on March 17, 2008.  *Stip.* ¶ 11.  AUSA Carole Fernández suggested the possibility of paying AUSA Márquez-Marín back pay to account for the delay and indicated that AUSA Márquez-Marín would receive a base salary of $85,000 (plus a cost of living allowance or COLA).  *Stip.* ¶ 11.

On February 28, 2008, AUSA Carole Fernández filed a response to the motion for contempt.  *Stip.* ¶ 12.  AUSA Carole Fernández explained the Government's reasoning for the delay in AUSA Márquez-Marín's return to work, noted that counsel for the parties had discussed the possibility of an agreement to compensate AUSA

---

[27]     AUSA Márquez-Marín interposes a qualified response to the Defendant's paragraph twelve on the ground that it should not be admitted for the truth. PRDSMF ¶ 12.  The Court did not include this letter for its truth but for DOJ's statement of its then position on reinstatement.

Márquez-Marín for a portion of the delay, and provided a specific date for her return to work, March 17, 2008.  *Stip.* ¶ 12.  AUSA Carole Fernández also confirmed the substance of the February 27, 2008, communication in a letter to Attorney Berkan dated February 29, 2008, including mention of the $85,000 (plus COLA) salary AUSA Márquez-Marín would be receiving.  *Stip.* ¶ 13.  AUSA Carole Fernández wrote:

> Let me assure again that the delay in reinstating [AUSA] Márquez[-Marín] is the result of the process involved and not any intent to avoid complying with the Judgment.  The United States Attorney and her Office have continuously expressed their commitment to reinstating [AUSA] Márquez[-Marín] as soon as smoothly, fairly, and expediently as possible and have done all that could be done by them to insure that this is accomplished.

*Stip.* ¶ 13.  On March 6, 2008, Attorney Berkan wrote back to AUSA Carole Fernández and argued that the proposed pay for AUSA Márquez-Marín was less than that to which she was entitled.  *Stip.* ¶ 14.  Attorney Berkan followed up with a second letter and an email on March 12, 2008.  *Stip.* ¶ 14.

### 5.   Reinstatement Salary Dispute and Settlement: 2008-10

Judge McAuliffe ordered AUSA Márquez-Marín reinstated by order dated October 10, 2007, and AUSA Márquez-Marín returned to work at the USAO pursuant to that order on March 17, 2008.[28]  *Stip.* ¶ 15; PSAMF ¶¶ 21, 34; DRPSAMF ¶¶ 21, 34; DSMF ¶ 13; PRDSMF ¶ 13.  There was a discussion about what AUSA Márquez-Marín's salary would be upon her return to the USAO.[29]  DSMF ¶ 11; PRDSMF ¶ 11.

---

[28]    The Defendant objects to AUSA Márquez-Marín's additional paragraphs twenty-one and thirty-four, stating that AUSA Márquez-Marín was reinstated on October 10, 2007, and returned to work at the USAO in March 2008.  DRPSAMF ¶¶ 21, 34.  The Court agrees and adjusted the language in the paragraphs to make clear that March 2008 was when AUSA Márquez-Marín began working, not when she was reinstated by the Court's order.

[29]    AUSA Márquez-Marín admits the Defendant's paragraph eleven but lists numerous comments including clarifications, additions, and a qualification.  The Court does not view any of these comments

AUSA Carole Fernández informed Attorney Berkan that AUSA Márquez-Marín would receive a base salary of $85,000 (plus COLA). DSMF ¶ 11; PRDSMF ¶ 11. In March 2008, upon her reinstatement, AUSA Márquez-Marín was given the highest pay grade in the AD system, AD-29, being credited with "9 or more full years of service." PSAMF ¶ 214; DRPSAMF ¶ 214. At that time, AUSA Márquez-Marín was given a salary of $85,000 (plus COLA). PSAMF ¶ 215; DRPSAMF ¶ 215. This salary was purportedly set in compliance with the Order of Reinstatement issued by Judge McAuliffe.[30] PSAMF ¶ 215; DRPSAMF ¶ 215.

The USAO arrived at this salary in the following manner: United States Attorney Rodríguez told her Human Resources Officer, Pura López, to determine the salary range that AUSA Márquez-Marín would be in had her employment never been terminated. DSMF ¶ 11; PRDSMF ¶ 11. Officer López, on her own, performed a calculation that sought to give AUSA Márquez-Marín credit for the years of professional experience gained when she had been out of the office (raising her to the AD-29 level, the highest level) and to provide AUSA Márquez-Marín with pay increases that by executive order were provided to all federal employees every January. DSMF ¶ 11; PRDSMF ¶ 11. Officer López did not, however, provide AUSA Márquez-Marín with any discretionary increases that AUSAs can receive because she believed, from her reading of the applicable procedures, that one needed to have a

_____

as contradicting the information in paragraph eleven, so the Court disregarded them for the purposes of this Order.

[30] AUSA Márquez-Marín's additional paragraph two hundred and fifteen refers to the DOJ's compliance with Judge McAuliffe's Order of Reinstatement and "subsequent orders." PSAMF ¶ 215. The DOJ interposes a qualified response, indicating that Judge McAuliffe's subsequent orders were after March 2008 and therefore could not have affected her March 2008 return to work. DRPSAMF ¶ 215. The Court agrees with the DOJ and did not include the phrase, "and subsequent orders."

rating of record in an annual evaluation to qualify for such increases, and AUSA Márquez-Marín had not had any evaluations during the time she was out of the office. DSMF ¶ 11; PRDSMF ¶ 11.   Officer López arrived at a final salary of $78,976.88. DSMF ¶ 11; PRDSMF ¶ 11.  After, however, Officer López brought the results of her calculations to United States Attorney Rodríguez, United States Attorney Rodríguez instructed her to raise AUSA Márquez-Marín's salary to $85,000.   DSMF ¶ 11; PRDSMF ¶ 11.

On March 17, 2008, the date AUSA Márquez-Marín returned to work (and the date of her "Notification of Personnel Action"), her salary was $85,000, and AUSA Hernández's salary in March 2008 was $91,220, about $6000 more than AUSA Márquez-Marín's.[31]  PSAMF ¶ 216; DRPSAMF ¶ 216.

AUSA Márquez-Marín returned to work with the understanding that salary adjustments could be made later if her salary-related arguments were determined to have merit.  *Stip.* ¶ 15; DSMF ¶ 13; PRDSMF ¶ 13.  On March 17, 2008, AUSA Márquez-Marín filed a motion entitled, "Motion for Order regarding Plaintiff's Salary and the Expungement of Letter and Other Post-Trial Remedies."  *Stip.* ¶ 16.  In the

---

[31]     The DOJ interposes a qualified response, noting that on March 16, 2008 (the day before AUSA Márquez-Marín returned to work), AUSA Hernández's salary was $83,200, but that on March 30, 2008, AUSA Hernández was elevated to a new AD Grade and her salary was raised to $91,220. DRPSAMF ¶ 216.  The Court declines to accept the DOJ's qualified response because AUSA Márquez-Marín's additional paragraph two hundred and sixteen does not state that AUSA Hernández's $91,220 salary was as of March 16, only that it was $91,220 "in March 2018," and is therefore accurate.

In AUSA Márquez-Marín's additional paragraph two hundred and seventeen, AUSA Márquez-Marín makes assertions about the differences in salary between herself and AUSA Hernández as of 2011.  PSAMF ¶ 217.  The DOJ denies this paragraph because the record citation does not support the factual assertion.  The Court reviewed the record citation and agrees with the DOJ that it does not support the assertion.  The Court omitted AUSA Márquez-Marín's additional paragraph two hundred and seventeen from its statement of facts.

motion, AUSA Márquez-Marín argued that the Government's determined salary did not place her in the position in which she reasonably could have expected to be had it not been for the discharge. *Stip.* ¶ 16. The problem with the Government's salary determination, according to AUSA Márquez-Marín, was that it failed to take into account properly her years in practice, and hence her AD grade was incorrect. *Stip.* ¶ 16. AUSA Márquez-Marín also complained that the parties were unable to reach an agreement concerning back pay to cover the Government's delay in implementing the Court's reinstatement order. *Stip.* ¶ 16. On April 3, 2008, the Government filed a response. *Stip.* ¶ 17.

AUSA Márquez-Marín did not file a reply to the Government's response. *Stip.* ¶ 18. Rather, on May 13, 2008, she filed a motion entitled, "Motion Supplementing Information Related to Request for Contempt or Order to Show Cause." *Stip.* ¶ 18. On June 2, 2008, the Government filed a response to AUSA Márquez-Marín's supplemental motion. *Stip.* ¶ 19. On July 1, 2008, Chief Judge McAuliffe issued an order denying all of AUSA Márquez-Marín's pending motions (the motion for contempt, the motion for order regarding her salary, and the supplemental motion), but without prejudice to refiling if, after ninety days and good faith mediation efforts by the parties, any disputes were not resolved. *Stip.* ¶ 20; DSMF ¶ 14; PRDSMF ¶ 14.

Following the denial of AUSA Márquez-Marín's motions, the parties attempted to resolve their disagreements on their own. DSMF ¶ 15; PRDSMF ¶ 15. These efforts did not, however, yield a final resolution. DSMF ¶ 15; PRDSMF ¶ 15. The parties then agreed to mediate their differences before a magistrate judge. DSMF

¶ 15; PRDSMF ¶ 15.  On August 27, 2009, AUSA Márquez-Marín filed a motion before Chief Judge McAuliffe for an order of reference to a magistrate judge.  *Stip.* ¶ 21.  Although AUSA Márquez-Marín filed the motion, both parties agreed to ask Chief Judge McAuliffe to refer the case to a magistrate judge for mediation.[32]  DSMF ¶ 15; PRDSMF ¶ 15.

However, rather than grant AUSA Márquez-Marín's motion, Chief Judge McAuliffe conducted a telephonic hearing to address the underlying disputes.  *Stip.* ¶ 21; DSMF ¶ 15; PRDSMF ¶ 15.  This was followed by an order dated January 28, 2010, in which Chief Judge McAuliffe wrote that "the parties now have a clear understanding of what the judgment ordering reinstatement requires" and that AUSA Márquez-Marín was entitled to all pay and benefits that would have accrued to her benefit during a four-month period after the judgment.  *Stip.* ¶ 21; DSMF ¶ 15; PRDSMF ¶ 15.  In the January 28, 2010, order, Chief Judge McAuliffe also wrote that "the delay associated (with the process of reinstating [AUSA] Márquez[-Marín]) is entirely attributable to the government—after all, the government wrongfully terminated [AUSA Márquez-Marín] in the first place, and had it not acted wrongfully, no deprivations would have accompanied the security investigation."[33]  DSMF ¶ 15; PRDSMF ¶ 15.

---

[32]    AUSA Márquez-Marín interposes a qualified response, emphasizing that although she made the motion, both parties agreed to mediate before a magistrate judge.  PRDSMF ¶ 15.  To view the facts in the light most favorable to AUSA Márquez-Marín, the Court added her statement.

[33]    In her qualified response, AUSA Márquez-Marín adds this quotation from Chief Judge McAuliffe's order.  PRDSMF ¶ 15.  The Court included the quoted sentence because it is required to view contested matters in the light most favorable to AUSA Márquez-Marín.

On July 9, 2010, the parties signed a settlement agreement.[34]   *Stip.* ¶ 22; DSMF ¶ 16; PRDSMF ¶ 16.  The settlement agreement provided for a payment of $38,600 to AUSA Márquez-Marín as well as fifty-eight hours of annual leave and thirty-six hours of sick leave.  DSMF ¶ 16; PRDSMF ¶ 16.  As part of the settlement agreement, AUSA Márquez-Marín released claims she had up to that point "in or in connection with [her lawsuit] or any claims raised in [that] action," including but not limited to those related to reinstatement, wages, salary, and benefits.  DSMF ¶ 16 (alterations in original); PRDSMF ¶ 16.

It was well over two years later, by virtue of an agreement subscribed on July 9, 2010, that AUSA Márquez-Marín was finally paid for the time during which the DOJ failed to fully implement the Court's Order of Reinstatement, including restoration of her annual leave.[35]  PSAMF ¶ 35; DRPSAMF ¶ 35.  These issues were resolved only after AUSA Márquez-Marín requested a finding of contempt against the Government in the motion submitted on February 25, 2008.[36]  PSAMF ¶ 36; DRPSAMF ¶ 36.  In addition, Judge McAuliffe held a telephonic conference on

---

[34]   The Joint Stipulation contains an inaccurate date.  *Stip.* ¶ 22.  It says that parties signed a settlement agreement on July 19, 2010.  *Stip.* ¶ 22.  However, as Exhibit Twelve to the Joint Stipulation plainly reveals, AUSA Márquez-Marín signed the settlement agreement on July 7, 2010, Attorney Berkan on July 8, 2010, and AUSA Carole Fernández on July 9, 2010.  *Stip.*, Attach. 1, *Ex. 12: Stip. of Compromise Settlement and Release* at 97.  The Court used the last date of July 9, 2010, as the effective date of the settlement.

[35]   The DOJ qualifies and denies portions of this paragraph.  DRPSAMF ¶ 35.  The Court slightly altered the paragraph to soften the argumentative language and to correct the date of the last signatory.

[36]   The DOJ objects to AUSA Márquez-Marín's additional paragraph thirty-six on the ground that there was a causal connection between the filing of the motion for contempt and the settlement.  DRPSAMF ¶ 36.  The Court overrules the DOJ's denial because it is required to view contested facts and logical inferences from those facts in the light most favorable to AUSA Márquez-Marín.  It is a logical inference that the filing of a motion to hold the DOJ in contempt of court may have brought about the settlement of the issues that were the subject of the motion.

January 8, 2010, well over a year after reinstatement was ordered.[37]  PSAMF ¶ 37;

DRPSAMF ¶ 37.[38]   After the telephone conference, Judge McAuliffe issued the

following order on January 28, 2010:

<u>ORDER</u>

Re: Document No. 59, Assented-to Motion for Order Referring Post-Trial Matters to Magistrate Judge Bowler

Ruling:  Denied, without prejudice.  After conducting a hearing by telephone conference call, it appears that the parties now have a clear understanding of what the judgment ordering reinstatement requires. [AUSA Márquez-Marín] and the government agreed to a one month delay in reinstatement after judgment, for the benefit of both parties. Thereafter, [AUSA Márquez-Marín] was not reinstated for another four months, and, was not paid during that time.   While the government suggests that it could not reinstate her without first conducting another security investigation, the delay associated with that process is entirely attributable to the government—after all, the government wrongfully terminated [AUSA Márquez-Marín] in the first place, and had it not acted wrongfully, no deprivation would have accompanied the security investigation. [AUSA Márquez-Marín] is entitled to all pay and benefits that would have accrued to her benefit during that four month period, until the time her pay and benefits were actually restored and paid.  If further proceedings are required to enforce the judgment, and no

---

[37]   AUSA Márquez-Marín's original additional paragraph thirty-seven reads:

In a telephonic conference held on January 8, 2010, well over a year after reinstatement was ordered, Judge McAuliffe very strenuously called the DOJ to task for failing to comply with his orders.  Undersigned counsel for [AUSA Márquez-Marín], Judith Berkan, has a clear recollection of the Judge's reaction to the situation.  He made it very clear that his orders were to be followed.

PSAMF ¶ 37.  The DOJ denies all but the fact of the telephonic conference with Judge McAuliffe on or prior to January 28, 2010.  DRPSAMF ¶ 37.  The DOJ objects to Attorney Berkan, who is counsel for AUSA Márquez-Marín, assuming the role of witness.  DRPSAMF ¶ 37.

The Court agrees with DOJ that the best evidence of what Judge McAuliffe said during the telephone conference would be either a transcript or recording of the conference.  Moreover, the Court does not view Judge McAuliffe's tone of voice to be relevant to the issues presented in this motion for summary judgment.  The Court pared back the language in additional paragraph thirty-seven.

[38]   In AUSA Márquez-Marín's next additional paragraph thirty-eight, she accuses the DOJ of having been "*highly misleading*" in a reference the DOJ made in its statement of material facts. PSAMF ¶ 38.  The DOJ objects.  DRPSAMF ¶ 38.  The Court agrees with the DOJ and did not include AUSA Márquez-Marín's additional paragraph thirty-eight on the ground that it is argument, not fact.

reasonable grounds exist for noncompliance, sanctions will be imposed.[39]

DSMF ¶ 15; PRDSMF ¶ 15; PSAMF ¶ 39; DRPSAMF ¶ 39.

When AUSA Márquez-Marín's return to office was imminent, a meeting was held among all the managers in the USAO in San Juan.  PSAMF ¶ 41; DRPSAMF ¶ 41.  Supervisory Assistant United States Attorney (SUSA) Warren Vázquez, soon to be AUSA Márquez-Marín's supervisor, was present.  PSAMF ¶ 41; DRPSAMF ¶ 41.  At some point during the meeting, United States Attorney Rodríguez stated, "Now that woman is coming" ("Ahora que viene esa mujer").  PSAMF ¶ 41; DRPSAMF ¶ 41.  AUSA Márquez-Marín considered United States Attorney Rodríguez's remark about her return to have been derogatory.[40]  PSAMF ¶ 41; DRPSAMF ¶ 41.  Even after successfully challenging her 2004 dismissal, AUSA Márquez-Marín was hesitant to return to the USAO.[41]  PSAMF ¶ 42; DRPSAMF ¶ 42.  She knew about

---

[39]     In the DOJ's paragraph fifteen, the DOJ quotes a portion of Judge McAuliffe's January 28, 2010, order.  DSMF ¶ 15.  AUSA Márquez-Marín objects on the ground that the DOJ's paragraph fifteen contains only a small portion of the order.  PRDSMF ¶ 15.  In AUSA Márquez-Marín's additional paragraph thirty-nine, she quotes a larger section of the order.  PSAMF ¶ 39.  The DOJ admits the additional paragraph.  DRPSAMF ¶ 39.
        In additional paragraph forty, AUSA Márquez-Marín states that it is a reasonable inference from the language that Judge McAuliffe's order was directed against the DOJ.  PSAMF ¶ 40.  The DOJ objects.  DRPSAMF ¶ 40.  The Court agrees that AUSA Márquez-Marín's paragraph forty is argumentative.  To avoid unnecessary controversy, the Court reproduced the order in full.  *See Stip.*, Attach. 1, *Ex 11: Order* at 93.
[40]     AUSA Márquez-Marín's paragraph forty-one states as a fact that United States Attorney Rodríguez's remark was derogatory.  PSAMF ¶ 41.  The DOJ objects on the ground that whether it was derogatory is speculative.  DRPSAMF ¶ 41.  The Court altered the paragraph to clarify that in AUSA Márquez-Marín's view, the United States Attorney's remark was derogatory.
[41]     The DOJ interposes a qualified response, stating that the contention is at odds with AUSA Márquez-Marín's efforts to gain reinstatement.  DRPSAMF ¶ 42.  The Court disagrees.  A person could well fight for reinstatement and yet worry about how she will be received once she returns to work.
        The DOJ objects to the reference to other EEO complaints.  DRPSAMF ¶ 42.  But the reference to other EEO complaints does not make an assertion about their legitimacy.  It is merely to show that AUSA Márquez-Marín was worried about the climate in the USAO, regardless of the facts underlying the EEO complaints or even whether AUSA Márquez-Marín was correct about their number.

other EEO complaints employees had been filing, and she was concerned about a climate of fear in the office.  PSAMF ¶ 42; DRPSAMF ¶ 42.

For each pay grade, there is a "cap" (or maximum) in terms of salary.  PSAMF ¶ 218; DRPSAMF ¶ 218.   As Officer López explained it, there is a table that establishes years of experience . . . .  It ranges from zero through nine."  PSAMF ¶ 218; DRPSAMF ¶ 218.  After that, she explained that when the attorney has nine or more years of experience, "even though the attorney has nine years or twenty years, they are on the same salary scale . . . . AD 29."  PSAMF ¶ 218; DPSAMF ¶ 218.  If an AUSA is at the "cap," the only way he or she can obtain a greater salary is by obtaining a supervisory position or being named a Senior Litigation Counsel (SLC), which is not a supervisory position and has a greater salary.[42]   PSAMF ¶ 219; DRPSAMF ¶ 219.  Over the years, AUSA Márquez-Marín has become aware of other AUSAs who reached the cap in less than ten years.[43]   PSAMF ¶ 223; DRPSAMF ¶ 223.  It was not until year 2018 that AUSA Márquez-Marín was provided a salary that she understands is about $100 less than the cap and by that time, she had been an attorney for twenty-two years and had been in the USAO for seventeen years when calculated in accordance with Judge McAuliffe's orders.  PSAMF ¶ 224; DRPSAMF ¶ 224.

---

[42]     AUSA Márquez-Marín's additional paragraph two hundred and nineteen does not include the reference to SLC.  PSAMF ¶ 218.  However, the record citation, namely page seventeen of the López deposition, is not in the record.  The DOJ admits the paragraph subject to the reference to SLC, so the Court included both AUSA Márquez-Marín's paragraph and the qualified response.

[43]     The DOJ qualifies its response to AUSA Márquez-Marín's additional paragraph two hundred and twenty-three, asserting that without more specificity, it cannot assess the veracity of the statement.  DRPSAMF ¶ 223.  The Court overrules the DOJ's qualified response because AUSA Márquez-Marín is asserting what she believes to be true and the Court does not accept the statement for the truth of the matter asserted.

AUSA Márquez-Marín interviewed for two supervisory positions in 2013 for which she was not selected.  PSAMF ¶ 220; DRPSAMF ¶ 220.  For one of these positions, United States Attorney Rodríguez and her Special Counsel Jacqueline Novas, an AUSA, interviewed her.  PSAMF ¶ 220; DRPSAMF ¶ 220.  AUSA Márquez-Marín was asked whether she would be willing to work as a supervisor without additional pay to which she responded in the negative.  PSAMF ¶ 221; DRPSAMF ¶ 221.  During the same interview, AUSA Márquez-Marín questioned what she understood was the disparate salary that she was receiving.  PSAMF ¶ 222; DRPSAMF ¶ 222.  United States Attorney Rodríguez told her that she was earning the same salary as other AUSAs with similar experience.  PSAMF ¶ 222; DRPSAMF ¶ 222.  AUSA Márquez-Marín stated that she knew of no other attorneys who had the same or less pay than she did.[44]  PSAMF ¶ 222; DRPSAMF ¶ 222.  During the interview, in an email dated May 14, 2014, or both, AUSA Márquez-Marín asked United States Attorney Rodríguez to take a fresh look at the matter.  PSAMF ¶ 222; DRPSAMF ¶ 222.

---

[44]     The DOJ admits the first two sentences of AUSA Márquez-Marín's additional paragraph two hundred and twenty-two, but it denies that the cited authority supports the last two statements. DRPSAMF ¶ 222.  The DOJ says that AUSA Márquez-Marín made these statements in an email dated May 14, 2014.  DRPSAMF ¶ 222.  The Court reviewed the cited record and notes that AUSA Márquez-Marín's May 14, 2014, email states that she had "already brought this matter to [United States Attorney Rodríguez's] direct attention."  PSAMF ¶ 222 (citing PSAMF, Attach. 4, *Ex. GG, Emails from Carmen Márquez to Rosa Emilia Rodríguez, May 14, 2014* at 43-44).  Viewing the evidence in the light most favorable to AUSA Márquez-Marín, the Court included the entire paragraph because AUSA Márquez-Marín may have been referring to statements she made during the interview.

### 6. Carmen Márquez-Marín's Work in the United States Attorney's Office: 2008-2014

#### a. Violent Crimes Unit: March 17, 2008, to July 5, 2011

Upon her return to work on March 17, 2008, AUSA Márquez-Marín was assigned to the Violent Crimes Unit in the USAO's Criminal Division. *Stip.* ¶ 23; DSMF ¶ 17; PRDSMF ¶ 17. By the time AUSA Márquez-Marín was reinstated, the management team at the USAO was United States Attorney Rodríguez, FAUSA Domínguez, and Special Counsel Novas.[45] PSAMF ¶ 43; DRPSAMF ¶ 43. These were the three people who received AUSA Márquez-Marín when she returned. PSAMF ¶ 43; DRPSAMF ¶ 43. The Chief of the Criminal Division was José Ruiz. PSAMF ¶ 43; DRPSAMF ¶ 43. Although AUSA Márquez-Marín already knew United States Attorney Rodríguez, who had played a key role in her earlier dismissal, FAUSA Domínguez, and Chief Ruiz, she did not know Special Counsel Novas at that time. PSAMF ¶ 44; DRPSAMF ¶ 44.

AUSA Márquez-Marín's first-line supervisor was SUSA Vázquez. *Stip.* ¶ 23; DSMF ¶ 17; PRDSMF ¶ 17. On April 2, 2008, José Pizarro, then the Deputy Chief of the USAO's Civil Division, emailed all USAO employees to congratulate AUSA Ginette Milánes for obtaining summary judgment in an employment discrimination suit where the opposing party was represented by Attorney Berkan. *Stip.* ¶ 24; DSMF ¶ 18; PRDSMF ¶ 18; PSAMF ¶ 45; DRPSAMF ¶ 45. AUSA Márquez-Marín

---

[45]     The DOJ interposes a qualified response, asserting that these three people did not constitute the entire management team at the USAO. DRPSAMF ¶ 43. The Court overrules DOJ's qualification because AUSA Márquez-Marín's additional paragraph forty-three does not state or imply that these three individuals were the entire management team.

was surprised by the email.  PSAMF ¶ 46; DRPSAMF ¶ 46.  Although congratulatory emails are often sent in the USAO, it is extremely rare to see such emails specifically mention opposing counsel.[46]  PSAMF ¶ 46; DRPSAMF ¶ 46; DSMF ¶ 18; PRDSMF ¶ 18.  The email did not mention AUSA Márquez-Marín or her prior case.  *Stip.* ¶ 24; DSMF ¶ 18; PRDSMF ¶ 18.  It was well-known in the USAO that Attorney Berkan had represented AUSA Márquez-Marín in her successful jury trial against the DOJ and regarding the reinstatement order which was being enforced at the time of the email.[47]  PSAMF ¶ 47; DRPSAMF ¶ 47.

### b.    The Death Penalty Controversy

AUSA Márquez-Marín claims that in 2008, within a month of her return to work at the USAO and her assignment to the Violent Crimes Unit, she was assigned to assist SLC Antonio Bazán with two death penalty cases.[48]  *Stip.* ¶ 25; PSAMF

---

[46]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph forty-six, contesting whether it was in fact rare for the USAO to mention opposing counsel in a congratulatory email.  DRPSAMF ¶ 46.  The Court rejects the DOJ's qualified response because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.
          The DOJ posits in paragraph eighteen that Deputy Chief Pizarro had emailed all USAO employees with news of the victory, and AUSA Márquez-Marín adds information about the rarity of such an email mentioning the opposing counsel.  DSMF ¶ 18; PRDSMF ¶ 18.  To view contested matters in the light most favorable to AUSA Márquez-Marín, the Court included that asserted fact.

[47]     The DOJ denies AUSA Márquez-Marín's additional paragraph forty-seven on the ground that AUSA Márquez-Marín's statement that something was well known does not make it so.  DRPSAMF ¶ 47.  For support, the DOJ cites among other authority *Cruz v. Dart*, No. 12-CV-6665, 2017 US. Dist. LEXIS 37697, at *3, 2017 WL 1021992, at *1 (N.D. Ill. Mar. 16, 2017), for the proposition that it is not well known whether priapism is a reaction to certain medications.  DRPSAMF ¶ 47.  Although the Court acknowledges that a broader statement on a more esoteric matter, such as whether priapism is a well-known side-effect to certain medications, would not be admissible, here, it is only common sense that the fact that an AUSA sued the DOJ and was in part victorious at a jury trial would be common knowledge within the USAO, including the name of the lawyer who successfully represented the AUSA.  The Court rejects the DOJ's denial.

[48]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph forty-nine, questioning whether AUSA Márquez-Marín was assigned more than one death penalty case.  DRPSAMF ¶ 49.  Whether AUSA Márquez-Marín was assigned more than one death penalty case is something within AUSA Márquez-Marín's personal knowledge and the Court is required to

¶¶ 48-49; DRPSAMF ¶¶ 48-49; DSMF ¶ 19; PSDSMF ¶ 19.  AUSA Márquez-Marín also claims that during the same period, two or three death penalty cases were directly assigned to her.  *Stip.* ¶ 25.  SLC Bazán was not in AUSA Márquez-Marín's chain of command.  *Stip.* ¶ 26.

> 18 U.S.C. § 3597 provides:
>
> No employee of . . . the United States Department of Justice . . . shall be required, as a condition of employment or contractual obligation, to be in attendance at or to participate in any [death penalty] prosecution or execution under this section if such participation is contrary to the moral or religious convictions of the employee.  In this subsection, "participation in executions" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

*Stip.* ¶ 27; PSAMF ¶ 59; DRPSAMF ¶ 59.

This assignment was made despite management having knowledge that AUSA Márquez-Marín had a religious and moral opposition to the death penalty.[49]  PSAMF ¶ 50; DRPSAMF ¶ 50.  United States Attorney Rodríguez, who at the time of AUSA Márquez-Marín's application was the EAUSA, was one of the interviewers when

---

view contested factual matters in the light most favorable to AUSA Márquez-Marín.  The Court rejects the DOJ's qualified response.

    The DOJ also interposes a qualified response to AUSA Márquez-Marín's additional paragraph forty-eight, stating that the current name is the Violent Crimes Unit, not the Violent Crimes Division.  DRPSAMF ¶ 48.  The Court agrees and altered the paragraph to say unit rather than division.

[49]    The DOJ admits that when she was interviewed for an AUSA position, AUSA Márquez-Marín expressed her view that she was opposed to the death penalty.  DRPSAMF ¶ 50.  However, the DOJ denies that either United States Attorney Rodríguez or SUSA Vázquez was aware of her opposition to the death penalty.  DRPSAMF ¶ 50.  The Court declines to accept the DOJ's denial because AUSA Márquez-Marín's additional paragraph fifty does not claim that either United States Attorney Rodríguez or SUSA Vázquez was currently aware of her opposition.  The paragraph only claims that management knew, not even when management knew, and as AUSA Márquez-Marín voiced her opposition during her interview, the Court finds that there is a sufficient basis for concluding that management knew, looking at the asserted fact in the light most favorable to AUSA Márquez-Marín's.  At the same time, the Court omitted the adjective "full" because there is no basis to conclude that management had full knowledge of her opposition.

AUSA Márquez-Marín was interviewed for the AUSA job.  PSAMF ¶ 51; DRPSAMF ¶ 51.  In 2001, then EAUSA Rodríguez recommended that AUSA Márquez-Marín be hired.  PSAMF ¶ 52; DRPSAMF ¶ 52.  She did so despite knowing that AUSA Márquez-Marín was opposed to the death penalty.[50]  PSAMF ¶ 52; DRPSAMF ¶ 52.  Around early April 2008, in one of the cases to which AUSA Márquez-Marín was assigned, the defendant(s) were eligible for the death penalty.  *Stip.* ¶ 28.  AUSA Márquez-Marín informed SUSA Vázquez that she could not be assigned death penalty cases due to her religious and moral objections to the same.[51]  PSAMF ¶ 53; DRPSAMF ¶ 53; DSMF ¶ 19; PRDSMF ¶ 19.[52]

SUSA Vázquez testified that he learned about AUSA Márquez-Marín's opposition to the death penalty "shortly after this assignment" (the death penalty case) was made to her.  PSAMF ¶ 55; DRPSAMF ¶ 55.  He admits that AUSA Márquez-Marín approached him on April 10, 2008, (barely a month after she had returned to the USAO) and told him of her opposition.  PSAMF ¶ 55; DRPSAMF ¶ 55.

---

[50]     The Court struck the assertion that then EOUSA Rodríguez knew "full well," PSAMF ¶ 52, as argumentative.

[51]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph fifty-three, noting that AUSA Márquez-Marín told SUSA Vázquez about her opposition only after she was assigned a death penalty case.  DRPSAMF ¶ 53.  The Court declines to include the DOJ's qualification because AUSA Márquez-Marín's additional paragraph fifty-three does not allege when she told SUSA Vázquez.

[52]     In her additional facts, AUSA Márquez-Marín asserts that it can be "reasonably inferred" that United States Attorney Rodríguez either instructed the Violent Crimes Unit supervisor to assign AUSA Márquez-Marín a death penalty case or negligently failed to inform AUSA Márquez-Marín's supervisor of AUSA Márquez-Marín's religious opposition.  PSAMF ¶ 54.  The DOJ denies this assertion and objects.  DRPSAMF ¶ 54.

         Although the Court agrees with the DOJ that this assertion, as framed, is more argument than fact, later in the AUSA Márquez-Marín's additional facts paragraph sixty-four, AUSA Márquez-Marín asserts, as confirmed in her affidavit, that when asked why he had assigned her a death penalty case when her opposition to the death penalty was well-known, AUSA Vázquez told AUSA Márquez-Marín that United States Attorney Rodríguez instructed him to assign the death penalty case to AUSA Márquez-Marín.  *See* PSAMF ¶ 64.  This assertion, therefore, is better as direct evidence than as an inference and the Court declines to place this inference in the statement of facts.

AUSA Márquez-Marín's approach to SUSA Vázquez is memorialized in an email which SUSA Vázquez sent on April 10, 2008,[53] to United States Attorney Rodríguez and other members of upper management, including FAUSA Domínguez and Criminal Division Chief Ruiz.  PSAMF ¶ 56; DRPSAMF ¶ 56.  SUSA Vázquez stated that AUSA Márquez-Marín had asked him "if she could be relieved from prosecuting [the death penalty] case, due to her religious conviction and because she was against the imposition of the death penalty.  PSAMF ¶ 56 (alteration in original); DRPSAMF ¶ 56.  Instead of immediately removing AUSA Márquez-Marín from the death penalty case, SUSA Vázquez responded to the newly reinstated AUSA Márquez-Marín by telling her that he could not relieve her from prosecuting the case "because as sworn [AUSAs] we all had the duty to prosecute every type of case under Federal law and that . . . the prosecution of this type of cases [sic] is part of this office as well as the Department's mission."[54]  PSAMF ¶ 60 (alteration in original); DRPSAMF ¶ 60.

In the course of the discussion of this issue, AUSA Márquez-Marín asked SUSA Vázquez why he was doing this (the death penalty assignment), noting that she had never had such cases before and her opposition to the death penalty was well known in the office.  PSAMF ¶ 63; DRPSAMF ¶ 63.  She told him she had just come back to the office and that this was placing her in a difficult position.[55]  PSAMF ¶ 63;

---

[53]     Both AUSA Márquez-Marín and the DOJ refer to the Vázquez email as dated April 10, 20<u>18</u>.  PSAMF ¶¶ 56-58 (emphasis added); DRPSAMF ¶¶ 56-58.  This is incorrect.  The date is 2008.  *See* PSAMF, Attach. 2, *Ex. L: April 10, 2008 Email Chain* at 64.

[54]     The DOJ admits this additional fact but adds facts in response.  DRPSAMF ¶ 60.  As the DOJ's added facts do not contradict the AUSA Márquez-Marín's added fact and the Court is required to view the facts in the light most favorable to AUSA Márquez-Marín, the Court did not include the DOJ's added facts.

[55]     The DOJ admits that AUSA Márquez-Marín told SUSA Vázquez that her opposition to the death penalty was well-known in the USAO.  DRPSAMF ¶ 63.  But the DOJ denies the remainder of

DRPSAMF ¶ 63.   SUSA Vázquez replied that he was following instructions from United States Attorney Rodríguez.[56]   PSAMF ¶ 64; DRPSAMF ¶ 64.   This was the first of several times AUSA Márquez-Marín confronted SUSA Vázquez about adverse actions being taken against her over the years he supervised her after she returned to the USAO and on several occasions, SUSA Vázquez told her he was following instructions "from above" ("de arriba").[57]   PSAMF ¶ 65; DRPSAMF ¶ 65.

SLC Bazán provided AUSA Márquez-Marín with samples of written material to use in prosecuting death penalty cases.[58]   PSAMF ¶ 57; DRPSAMF ¶ 57.   AUSA

---

additional paragraph sixty-three on the ground that "[d]uring her deposition, [AUSA] Márquez[-Marín] testified that she told [SUSA] Vázquez only that her opposition to the death penalty was well-known in the office." DRPSAMF ¶ 63 (citing *Decl. of Kenneth Shaitelman*, Attach. 2, *Ex. 13: Continued Dep. of Carmen Márquez* at 174 (ECF No. 112)). The DOJ cites *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001), and *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994), for the proposition that a deponent cannot create a material fact by later contradicting, without explanation, a clear answer to an unambiguous question.

The Court rejects the DOJ's qualified response. A review of page one hundred and seventy-four of AUSA Márquez-Marín's cited deposition fails to reveal that she was asked whether her response was the only thing she said to SUSA Vázquez on the reason for the death penalty assignment. The asserted contradiction, in the Court's view, is not a contradiction at all.

[56]    The DOJ denies in part and qualifies in part AUSA Márquez-Marín's additional paragraph sixty-four. DRPSAMF ¶ 64. The DOJ qualifies its response because it asserts that there is no evidence United States Attorney Rodríguez acted for discriminatory or retaliatory reasons. DRPSAMF ¶ 64. The Court overrules this qualified response as frivolous. AUSA Márquez-Marín's additional paragraph sixty-four does not mention United States Attorney Rodríguez's motive. *See* PSAMF ¶ 64.

The DOJ denies the fact because SUSA Vázquez denied it. DRPSAMF ¶ 64. But the Court is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín. The Court rejects the DOJ's denial.

[57]    The DOJ admits in part and denies in part this additional statement. DRPSAMF ¶ 65. The DOJ admits only that during the period SUSA Vázquez supervised AUSA Márquez-Marín, she questioned him on various occasions about supervisory decisions, but she did not complain about discrimination due to her disabilities or about retaliation. DPRSAMF ¶ 65. The Court overrules this qualified response because AUSA Márquez-Marín does not allege in this additional paragraph that she complained about discrimination or retaliation.

The DOJ denies the remainder of the paragraph because it is too vague and is lacking in specificity. DRPSAMF ¶ 64. The Court disagrees and notes that the statement may lead to cross-examination but this does not make the paragraph inadmissible for purposes of summary judgment, especially when viewing the facts in the light most favorable to AUSA Márquez-Marín.

[58]    The DOJ interposes a qualified response, acknowledging that SUSA Vázquez's April 10, 2008, email stated that SLC Bazán did so, but questioning whether it was true. DRPSAMF ¶ 57. The Court declines to accept the DOJ's quibble.

Márquez-Marín also asked SLC Bazán to have her relieved from the case.[59]  PSAMF ¶ 58; DRPSAMF ¶ 58.

AUSA Márquez-Marín had to affirmatively locate the policies and code sections protecting her rights with respect to this matter, so as to present them to management.[60]  PSAMF ¶ 61; DRPSAMF ¶ 61.  Notwithstanding the fact that AUSA Márquez-Marín was plainly correct in her assertions regarding the impropriety of assigning her a death penalty case, the matter went up the supervisory chain and to Special Counsel Novas.[61]  PSAMF ¶ 62; DRPSAMF ¶ 62.  United States Attorney Rodríguez forwarded the Vázquez email to Special Counsel Novas later that same day.  PSAMF ¶ 62; DRPSAMF ¶ 62.  The following day, Special Counsel Novas forwarded the email to Neil White, an attorney in the EOUSA.  PSAMF ¶ 62; DRPSAMF ¶ 62.  By the afternoon of April 11, the email had made its way to yet another attorney in the EOUSA.  PSAMF ¶ 62; DRPSAMF ¶ 62.

Then Chief of the Appellate Division Nelson Pérez testified:

> But then they assigned her a death penalty case, when [AUSA] Márquez[-Marín] does not really believe in the death penalty, and she thought that was a way of harassing her . . ..  She said, "no, I cannot take these cases . . ..["]

---

[59]    The DOJ interposes a qualified response, acknowledging that SUSA Vázquez's April 10, 2008, email stated that SLC Bazán did so, but questioning whether it was true.  DRPSAMF ¶ 58.  The Court declines to accept the DOJ's quibble.

[60]    The DOJ admits AUSA Márquez-Marín's additional paragraph sixty-one but denies any causal connection between AUSA Márquez-Marín's research and the management response.  DRPSAMF ¶ 61.  As paragraph sixty-one does not assert a causal connection, the Court does not accept the DOJ's qualified response.

[61]    The DOJ admits the sequence of events in AUSA Márquez-Marín's additional paragraph sixty-two.  DRPSAMF ¶ 62.  However, the DOJ objects to the term, "plainly correct."  DRPSAMF ¶ 62.  The Court overrules the DOJ's objection.  Although the "plainly" could be considered argument, the Court views it plainly correct that under 18 U.S.C. § 3597, an AUSA employee may not be required, as a condition of employment or contractual obligation, to participate in any death penalty prosecution if such participation is contrary to the AUSA's moral or religious convictions.

> The situation was that she protested the fact that she, who is opposed
> to the death penalty, was assigned to handle a death penalty case.[62]

PSAMF ¶ 66; DRPSAMF ¶ 66.  When Chief Pérez was asked whether he knew "why

she was assigned this case," he responded:

> They knew that she had opposed the death penalty.  You reach your own
> conclusions . . ..  I think it was public, because during the interviews [to
> be hired as an AUSA], . . . if one is opposed to the death penalty, one
> voices that out.  And she voiced that out.[63]

PSAMF ¶ 67 (emphasis omitted); DRPSAMF ¶ 67.  After USAO management looked

into the matter, which was also after AUSA Márquez-Marín researched the policies,

it removed AUSA Márquez-Marín from death penalty cases and she was not assigned

any other death penalty cases until 2013, when she was assigned a new supervisor.

DSMF ¶ 19; PRDSMF ¶ 19; PSAMF ¶ 61; DRPSAMF ¶ 61.

### c.    The *Canales* Case

About a month after the death penalty controversy, in May or June 2008,

SUSA Vázquez assigned AUSA Márquez-Marín to assist another AUSA, Ilianys

Rivera, with a multi-defendant case, *United States v. Pagan-Narvaez*, No. 3:06-cr-

---

[62]    The DOJ admits Chief Pérez made the quoted statements, but it denies the statement about his roles, namely that Chief Pérez was "a member of Management and the Chief of Appeals for the [USAO] in Puerto Rico for some two decades . . .."  *See* PSAMF ¶ 66; DRPSAMF ¶ 66.  The Court notes that in its memorandum in support of the motion for summary judgment, the DOJ identifies Nelson Pérez as the Chief of the Appellate Division.  *Def.'s Mot.* at xv.  The Court agrees that there is no evidence in the cited portion of Chief Pérez's testimony that confirms he was part of management or how long he held the post of Appellate Chief, and the Court therefore excludes that portion of paragraph sixty-six from the statement of facts.

[63]    The DOJ admits that Chief Pérez made these statements but asserts his views were speculative.  DRPSAMF ¶ 67.  The Court disagrees and includes Chief Pérez's testimony.

AUSA Márquez-Marín's additional paragraph sixty-eight sets forth the allegations in her Complaint.  PSAMF ¶ 68.  In contravention of Local Rule 56(c), paragraph sixty-eight contains no record citation.  D.P.R. LOC. R. 56(c) ("The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule").  In view of the absence of any record citation, the Court did not include additional paragraph sixty-eight in its factual recitation.

00299 (D.P.R.), known informally as the *Canales* case.  *Stip.* ¶ 29; PSAMF ¶ 69; DRPSAMF ¶ 69; DSMF ¶ 20; PRDSMF ¶ 20.  AUSA Márquez-Marín formally submitted her appearance on June 10, 2018.  PSAMF ¶ 70; DRPSAMF ¶ 70.  This was a major multi-defendant case.[64]  PSAMF ¶ 71; DRPSAMF ¶ 71.  The case had previously been assigned to AUSA Rivera, a new AUSA, who had little prior criminal experience, having come to the office recently from a law firm where she had done civil cases.  PSAMF ¶ 72; DRPSAMF ¶ 72.  The case, filed in 2006, was set for trial shortly after the assignment was given to AUSA Márquez-Marín.[65]  PRSAMF ¶ 73; DRPSAMF ¶ 73.

The primary witness before the Grand Jury had been a cooperating witness who allegedly was an owner of a drug point ("Punta de Droga"—drug distribution place) at one of the major residential housing projects in San Juan.  PSAMF ¶ 74; DRPSAMF ¶ 74.  AUSA Márquez-Marín contacted the U.S. Marshal Service to bring this witness to the jurisdiction and for AUSA Márquez-Marín to interview him in preparation for trial.  PSAMF ¶ 75; DRPSAMF ¶ 75.  In the interview, AUSA Márquez-Marín discovered that this person had provided false testimony to the Grand Jury, a fact which made the prosecution of the case virtually impossible due to lack of evidence.  PSAMF ¶ 76; DRPSAMF ¶ 76.  AUSA Márquez-Marín was greatly concerned about this, since she had been assigned an extraordinarily difficult

---

[64]    The DOJ quibbles about whether the Court should accept AUSA Márquez-Marín's view that the *Canales* case was a "major" case.  DRPSAMF ¶ 71.  The Court overrules the DOJ's denial because the Court is required to view contested evidence in the light most favorable to AUSA Márquez-Marín.

[65]    The DOJ interposes a qualified objection on the ground that AUSA Márquez-Marín's additional paragraph seventy-three is ambiguous.  DRPSAMF ¶ 73.  The Court agrees that the statement is ambiguous but does not find that the ambiguity is meaningful, so the Court rejects the qualification.

case to help out an inexperienced prosecutor and the evidence was tainted.[66]  PSAMF

¶ 77; DRPSAMF ¶ 77.  Upon discovering this, AUSA Márquez-Marín notified the

court that she would be presenting a superseding indictment with additional evidence

and the court postponed the trial date.  PSAMF ¶ 78; DRPSAMF ¶ 78.  For more than

a year, AUSA Márquez-Marín's work on the case was spent on coordination of the re-

investigation of the entire case, identifying and preparing witnesses (since there was

none who could offer admissible trial evidence), presenting a superseding indictment

to the Grand Jury, and preparing the case for trial.  PSAMF ¶ 79; DRPSAMF ¶ 79.

The *Canales* case went to trial in the spring of 2010 and lasted approximately two

months, resulting in the convictions of four of the "leaders," who were sentenced to

lengthy prison terms.  PSAMF ¶ 81; DRPSAMF ¶ 81.

AUSA Rivera was very appreciative of AUSA Márquez-Marín and her work on

the *Canales* case.  PSAMF ¶ 82; DRPSAMF ¶ 82.  In an email on April 14, 2010,[67]

about another matter (the *Loiza* case), AUSA Rivera wrote of the "outstanding and

extraordinary  work  accomplished  by  [AUSA  Márquez-Marín]  as  co-counsel,  to

---

[66]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph
seventy-seven, admitting the general content of paragraph seventy-seven but objecting to some of the
adjectives and adverbs as argumentative.  DRPSAMF ¶ 77.  The Court agrees with the DOJ and toned
down the language without altering the overall content.
       In the AUSA Márquez-Marín's additional paragraph eighty, she proposes that it is a
reasonable inference that the USAO assigned this case to AUSA Márquez-Marín to set her up for
failure by assigning a case then set for trial with a principle witness who was to offer perjured
testimony and an AUSA who was inexperienced.  PSAMF ¶ 80.  The DOJ objects to the inferences.
DRPSAMF ¶ 80.  The Court will not consider AUSA Márquez-Marín's additional paragraph eighty
because she does not provide a record citation for the paragraph in violation of Local Rule 56(c).  Also,
based on this record, the Court is not able to make the inferences that AUSA Márquez-Marín suggests
should be made.

[67]    In the DOJ's response, it corrects the April 15, 2010, date in the AUSA Márquez-Marín's
additional paragraph eighty-two to April 14, 2010.  DRPSAMF ¶ 82.  Consistent with the record, the
Court inserted the correct date.

organize and secure extensive documentary evidence and reliable CW's, interview more than a hundred witness [sic], and supersede an indictment based, in part, on perjured evidence . . .."  PSAMF ¶ 82 (some alterations in original); DRPSAMF ¶ 82. On June 11, 2010, SUSA Vázquez sent an email to all USAO employees in the office congratulating AUSAs Márquez-Marín and Rivera for the guilty verdict and "for their excellent work in the re-investigation, trial preparation and trial prosecution of the Canales Drug Trafficking Gang," making reference to the "almost two (2) months of trial preceded by a grueling three year process of re-investigation and trial preparation."  PSAMF ¶ 83; DRPSAMF ¶ 83; DSMF ¶ 25; PRDSMF ¶ 25.  Later in December 2010, when the first defendant in the case was sentenced, SUSA Vázquez and FAUSA Domínguez also sent congratulatory emails.  DSMF ¶ 25; PRDSMF ¶ 25. AUSAs Márquez-Marín and Rivera received a Director's Award for their "Superior Performance as an Assistant United States Attorney, traveling to Washington to receive the award."  PSAMF ¶ 84; DRPSAMF ¶ 84.

In 2009, the USAO was handling a high-profile case involving the then governor of Puerto Rico, Anibal Acevedo-Vilá.  *Stip.* ¶ 30; DSMF ¶ 21; PRDSMF ¶ 21. FAUSA Domínguez was the lead prosecutor.  *Stip.* ¶ 30; DSMF ¶ 21; PRDSMF ¶ 21.

### d.    The *Loiza* Case

In June 2008, AUSA Márquez-Marín met with a DEA agent to discuss a matter he was investigating in the town of Loiza.  PSAMF ¶ 85; DRPSAMF ¶ 85.  She was informed that other prosecutors, including the head of the Strike Force, had

demonstrated no interest in the area.[68]  PSAMF ¶ 86; DRPSAMF ¶ 86.  AUSA Márquez-Marín, however, thought that the matter was worth pursuing, and she requested and obtained permission to open up an investigation.  PSAMF ¶ 87; DRPSAMF ¶ 87.  There was not even a cooperating witness at the time.  PSAMF ¶ 87; DRPSAMF ¶ 87.

AUSA Rivera, who by that time was already working with AUSA Márquez-Marín on the *Canales* case, joined the effort.  PSAMF ¶ 88; DRPSAMF ¶ 88.  AUSA Rivera stated that, having worked with AUSA Márquez-Marín on the *Canales* case, she "felt that working Loiza . . . with her was the right thing to do."  PSAMF ¶ 88; DRPSAMF ¶ 88.  After about a year of intense work, the case was ready for opening a grand jury investigation by June 2009.  PSAMF ¶ 89; DRPSAMF ¶ 89.  It was not until early 2010 that AUSAs Márquez-Marín and Rivera, against very tough odds, were able to secure the cooperation of a cooperating witness.  PSAMF ¶ 90; DRPSAMF ¶ 90.

On April 13, 2010, as AUSAs Márquez-Marín and Rivera were preparing for trial in the *Canales* case, SUSA Vázquez emailed them and told them that the *Loiza*

---

[68]     The DOJ interposes a qualified response, stating that earlier AUSA Márquez-Marín had stated that only one individual, Special Assistant United States Attorney (SAUSA) and former United States Attorney Guillermo Gil, expressed no interest in the case.  DRPSAMF ¶ 86.  Furthermore, the DOJ claims that whatever SAUSA Gil said is hearsay.  DRPSAMF ¶ 86.

The Court overrules the DOJ's hearsay objection.  AUSA Márquez-Marín mentioned SAUSA Gil's comment when protesting her reassignment from the *Loiza* case.  *See* PSAMF ¶ 92.  Therefore, the statement is not offered for the truth of what SAUSA Gil stated but to explain the basis for AUSA Márquez-Marín's objection to the reassignment.

In accordance with the DOJ's qualified response, the Court corrected the word "case" in AUSA Márquez-Marín's additional paragraph eighty-six and replaced it with "area," the word in AUSA Márquez-Marín's April 2010 email.

Regarding the DOJ's objection that SUSA Gil was the only federal prosecutor who expressed a lack of interest in the case, the Court overrules the DOJ objection.  In indicating a lack of interest in an area, it is reasonable to infer that the supervisor was not speaking just for himself.

investigation would be reassigned to the Strike Force (whose Chief had previously indicated no interest in the case).[69]   *Stip.* ¶ 31; PSAMF ¶ 91; DRPSAMF ¶ 91; DSMF ¶ 23; PRDSMF ¶ 23.   SUSA Vázquez wrote that the decision was based on their already heavy caseloads, as he was able to observe during his case reviews.   *Stip.* ¶ 31.   SUSA Vázquez extended his gratitude and appreciation for "the great amount of time and good work" that they had dedicated to the investigation.   *Stip.* ¶ 31.

AUSAs Márquez-Marín and Rivera, however, protested.   *Stip.* ¶ 31; DSMF ¶ 23; PRDSMF ¶ 23.   AUSA Márquez-Marín was stunned by the decision, made without consulting her or AUSA Rivera, since she and AUSA Rivera had been the ones to take a very difficult investigation regarding a case no one on the Strike Force had wanted.[70]   PSAMF ¶ 92; DRPSAMF ¶ 92.

---

[69]   The DOJ interposes a partially qualified response, asserting that the *Loiza* case was not assigned to the Chief of the Strike Force, but to AUSA Mariana Bauza, who was a member of the Strike Force at the time.   DRPSAMF ¶ 91.   The Court overrules the DOJ's qualified response.   AUSA Márquez-Marín's paragraph ninety-one does not state that the *Loiza* case was reassigned to the Chief; it states that it was reassigned to the Strike Force whose Chief previously indicated no interest in the area.

AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph twenty-three.   PRDSMF ¶ 23.   The qualification consists of additional information that AUSA Márquez-Marín includes in her additional facts and that does not contradict the DOJ's paragraph, so the Court rejects the qualification.

[70]   The DOJ interposes a qualified response.   DRPSAMF ¶ 92.   First, the DOJ says that it is unclear how AUSA Márquez-Marín knows that AUSA Rivera was not consulted.   DRPSAMF ¶ 92.   The Court overrules that qualification because AUSAs Márquez-Marín and Rivera were working together at the time and it is reasonable to infer that AUSA Márquez-Marín would have known if AUSA Rivera had been consulted before the reassignment.   The DOJ also points out that there had been some discussion with AUSAs Márquez-Marín and Rivera before reassignment.   DRPSAMF ¶ 92.   The Court rejects the DOJ's qualified response on this point because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.   Third, the DOJ denies that AUSA Márquez-Marín established that no one else in the USAO had wanted the *Loiza* investigation.   DRPSAMF ¶ 92.   The Court agrees that the record does not establish that no one in the USAO wanted the *Loiza* investigation but concludes that the record does establish that no one in the Strike Force had wanted the *Loiza* case.   The Court slightly altered AUSA Márquez-Marín's additional paragraph ninety-two to reflect this difference.

In an email sent to management after 9 p.m. on April 14, 2010, AUSA Rivera objected to the reassignment. PSAMF ¶ 93; DRPSAMF ¶ 93. She stated among other things that AUSA Márquez-Marín had spent many hours "sorting through the intelligence evidence . . . and securing an excellent [cooperating witness], that helped us identify several [Drug Trafficking Organizations] . . . and the hierarchy of individuals associated with each one. In addition, [AUSA Márquez-Marín] indicted recently one of the main leaders . . .. [She] met with the case agent and helped him organize a power point presentation for the GJ . . .." PSAMF ¶ 92 (some alterations in original); DRPSAMF ¶ 93. AUSA Rivera also noted that "[AUSA Márquez-Marín] knows the case and [that she and AUSA Márquez-Marín] were working diligently to secure a solid indictment." PSAMF ¶ 94 (some alterations in original); DRPSAMF ¶ 94. She said the case was "a very important decision in a very important case . . .. [W]ith all the work already accomplished it is hard to comprehend how a new AUSA with absolutely no knowledge about the investigation will somehow more efficiently and expeditiously secure the end goal: a solid indictment." PSAMF ¶ 94 (alterations in original); DRPSAMF ¶ 94.[71]

After AUSAs Márquez-Marín and Rivera protested and had various emails and a meeting with United States Attorney Rodríguez, although the case had briefly been assigned to AUSA Bauza, the decision to take the *Loiza* case away from them was reversed. PSAMF ¶ 96; DRPSAMF ¶ 96; DSMF ¶ 23; PRDSMF ¶ 23. United States

---

[71]    In her additional paragraph ninety-five, AUSA Márquez-Marín asserts that it is a reasonable inference management removed AUSA Rivera and her from *Loiza* not based on legitimate reasons. PSAMF ¶ 95. The DOJ denies this paragraph. DRPSAMF ¶ 95. The Court declines to make such an inference. It is not supported by a record citation as required by Local Rule 56(c) and is speculative.

Attorney Rodríguez decided that the case would remain with AUSA Márquez-Marín and AUSA Rivera.  DSMF ¶ 23; PRDSMF ¶ 23.  In October 2010, a federal grand jury indicted seventy-five defendants based on the work performed by the investigative agencies and AUSAs Rivera and Márquez-Marín.  PSAMF ¶ 97; DRPSAMF ¶ 97.

###### e.  The *Lloréns Torres* Case

At some point prior to June 2010, a similar discussion took place regarding the removal of AUSAs Márquez-Marín and Rivera from another high-profile investigation involving the Lloréns Torres housing project.[72]  *Stip.* ¶ 32; PSAMF ¶ 98; DRPSAMF ¶ 98; DSMF ¶ 24; PRDSMF ¶ 24.  Once again, AUSA Márquez-Marín had to lodge a protest to be able to continue working on a case on which she had dedicated months of work and to receive proper credit for her work.  PSAMF ¶ 98; DRPSAMF ¶ 98.  Thus, the result was the same: After AUSAs Márquez-Marín and Rivera protested, they were allowed to continue working on the investigation.  DSMF ¶ 24; PRDSMF ¶ 24.

###### f.  The USAO Mission Statement

In February 2010, United States Attorney Rodríguez emailed two of her supervising attorneys, FAUSA Domínguez and SUSA Mike Fernández.[73]  DSMF ¶ 22; PRDSMF ¶ 22.  The subject of the email was "Staff Meeting."  DSMF ¶ 22; PRDSMF ¶ 22.  United States Attorney Rodríguez stated, "Remember my

---

[72]     The DOJ denies AUSA Márquez-Marín's description of the *Lloréns Torres* investigation as "high-profile."  DRPSAMF ¶ 98.  The Court rejects the DOJ's denial since it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

[73]     AUSA Márquez-Marín denies the last sentence of the DOJ's paragraph twenty-two, which states that FAUSA Domínguez reported back to her that she had complied.  DSMF ¶ 22; PRDSMF ¶ 22.  The Court is unclear why this is so objectionable, but because it is required to view disputed facts in the light most favorable to the AUSA Márquez-Marín, it did not include the last sentence.

instructions to give a copy of the Office's Mission Statement at the meeting on the 11th." DSMF ¶ 22; PRDSMF ¶ 22.  She also instructed them to advise all employees against gossip in the office and the consequences of violating office policy.  DSMF ¶ 22; PRDSMF ¶ 22.

In February 2011, United States Attorney Rodríguez issued a new mission statement for the office.[74]  *Stip.* ¶ 33; DSMF ¶ 26; PRDSMF ¶ 26.  It stated in part:

> We will treat others with the same trust and respect that we expect for ourselves.  Our mutual trust and respect is a reflection of our dedication to the mission . . ..  It is through unity, trust and respect that we will best serve the community and achieve our goals.

*Stip.* ¶ 33; DSMF ¶ 26; PRDSMF ¶ 26.  The mission statement did not contain the words "malicious gossip" or "gossip."  DSMF ¶ 26; PRDSMF ¶ 26.  On June 5, 2011, during the Annual Pay Review (APR) process, FAUSA Domínguez gave AUSA Márquez-Marín a $7000 raise; however, AUSA Márquez-Marín was still earning less than counterparts, specifically AUSA Hernández, who had not engaged in protected EEO activity.[75]  *Stip.* ¶ 34; DSMF ¶ 28; PRDSMF ¶ 28.

### g.  Carmen Márquez-Marín's Personal Circumstances: 2008 to Date

During the years the *Canales*, *Loiza*, and *Lloréns Torres* cases were pending, AUSA Márquez-Marín was under extraordinary stress, which she believed was not

---

[74]  AUSA Márquez-Marín interposes a qualified response on the DOJ's paragraph twenty-six. PRDSMF ¶ 26.  AUSA Márquez-Marín states that "there are many other aspects to the 2011 Mission Statement" and that the words "malicious gossip" and "gossip" do not appear in the Mission Statement. PRDSMF ¶ 26.  The Court included these statements because it is obligated to view contested facts in the light most favorable to AUSA Márquez-Marín.

[75]  AUSA Márquez-Marín admits the DOJ's paragraph twenty-eight, which is consistent with Joint Stipulation paragraph thirty-four.  PRDSMF ¶ 28.  However, AUSA Márquez-Marín adds the phrase after "however" and the Court included AUSA Márquez-Marín's statement because it is obligated to view contested facts in the light most favorable to AUSA Márquez-Marín.

only related to the investigation of complex cases involving violent offenders, but also to management decisions that adversely affected her work conditions and were reversed only after AUSA Márquez-Marín had to invest considerable energy into assuring that her rights were protected.[76]  PSAMF ¶ 99; DRPSAMF ¶ 99.  By mid-2012, AUSA Márquez-Marín was a single mother with sole responsibility for two young children.  PSAMF ¶ 100; DRPSAMF ¶ 100.

Beginning in early 2012 to the present, AUSA Márquez-Marín has had a number of serious medical conditions and several surgeries as well as several rounds of chemotherapy.  PSAMF ¶ 101; DRPSAMF ¶ 101.  In AUSA Márquez-Marín's view, the conditions have a stress-related component.  PSAMF ¶ 101; DRPSAMF ¶ 101. The conditions include

- shoulder impingement syndrome, a painful condition that caused significant loss of movement of her right arm, first diagnosed about March 2012, a condition for which she underwent surgery shortly thereafter;

- ovarian cancer, diagnosed approximately August 2012 upon removal of her right ovary;

- a second diagnosis of life-threatening uterine cancer (unrelated to her earlier cancer diagnosis) detected during a surgical procedure in November 2012, which involved the removal of several major organs;

---

[76]    The DOJ interposes a qualified response, objecting to the assertion that AUSA Márquez-Marín's stress was in fact related to her work as an AUSA.  DRPSAMF ¶ 99.  The Court slightly amended AUSA Márquez-Marín's additional paragraph ninety-nine to clarify that AUSA Márquez-Marín believed that management decisions and her need to stand up for herself had caused her stress.

- chemotherapy treatments from mid-December 2012 through the first half of 2013;

- a post-operative hernia diagnosed in late 2013 for which she had surgery in February 2014; and

- a car accident in August 2014 in which AUSA Márquez-Marín's automobile was rammed by a car driven by another federal employee and, as a result, she suffered severe neck and back sprains with ongoing adverse effects.[77]

PSAMF ¶ 101; DRPSAMF ¶ 101.  AUSA Márquez-Marín fully informed the USAO management about her medical conditions, the extreme pain she was suffering, and her need to minimize stress.[78]  PSAMF ¶ 103; DRPSAMF ¶ 103.  Despite these major

---

[77]     The DOJ denies some and qualifies some of the statements in AUSA Márquez-Marín's additional paragraph one hundred and one.  DRPSAMF ¶ 101.  First, the DOJ notes that by Joint Stipulation paragraph fifty-nine, the parties agree that AUSA Márquez-Marín's chemotherapy began in mid-December 2012, not in November 2012.  *Stip.* ¶ 59.  The Court agrees and inserted the mid-December starting date.  Second, the DOJ contends that AUSA Márquez-Marín is not qualified to express a view that her medical conditions have a stress-related component.  DRPSAMF ¶ 101.  The Court slightly altered the statement to reflect that the stress-related component is from AUSA Márquez-Marín's perspective and is not an expert medical causation opinion.  Third, the DOJ says that the uterine cancer surgery took place on September 20, 2012, not in November 2012.  DRPSAMF ¶ 101.  It is true that Joint Stipulation paragraph fifty-one describes a surgery that took place on September 20, 2012, but this does not mean that this surgery was the one where cancer was discovered.  The Court cannot assume that AUSA Márquez-Marín does not know when she underwent surgery and it may be that there was more than one surgery, so the Court rejects this denial.

In AUSA Márquez-Marín's additional paragraph one hundred and two, AUSA Márquez-Marín states that "[her] physicians have informed her that stress on the job contributes to the medical conditions she suffers and should be avoided as much as possible."  PSAMF ¶ 102.  The DOJ objects on evidentiary grounds.  DRPSAMF ¶ 102.  The Court agrees, finds that what AUSA Márquez-Marín's physicians told her about the cause of her medical conditions is inadmissible hearsay, and declined to include the statement in its statements of fact.

[78]     The DOJ interposes a qualified response, saying that it cannot admit the paragraph based on AUSA Márquez-Marín's statements only.  DRPSAMF ¶ 103.  The Court disagrees.  This is within AUSA Márquez-Marín's personal knowledge.

The DOJ denies that AUSA Márquez-Marín informed management at USAO about her "need" to minimize stress as opposed to her desire to do so.  DRPSAMF ¶ 103.  The Court does not accept the DOJ's denial because it is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín.

health issues, AUSA Márquez-Marín continued to work at the USAO, except during authorized leaves of absence, under extremely strenuous conditions that in her view were caused by management.[79]  PSAMF ¶ 104; DRPSAMF ¶ 104.  Even though AUSA Márquez-Marín underwent three major surgeries during the year 2012, she continued to work even from the hospital, taking calls from defense attorneys while hospitalized.  PSAMF ¶ 105; DRPSAMF ¶ 105.  This was at a time when she was formally on sick leave.[80]  PSAMF ¶ 105; DRPSAMF ¶ 105.  During this same period of intense medical treatment and to this day, AUSA Márquez-Marín has sole responsibility for two preteen children.  PSAMF ¶ 106; DRPSAMF ¶ 106.

### h.   The March 2013 Work Evaluation

In mid-March 2013, SUSA Vázquez conducted evaluations for the Violent Crimes Unit for work performed during 2012.  DSMF ¶ 50; PRDSMF ¶ 50; PSAMF ¶ 107; DRPSAMF ¶ 107.   Although AUSA Márquez-Marín received an overall "outstanding" rating (the top rating), she complained because she did not receive an outstanding rating in the individual element relating to her productivity.  DSMF ¶ 50; PRDSMF ¶ 50.  SUSA Vázquez as evaluator and Criminal Division Chief Ruiz as reviewer initially gave AUSA Márquez-Marín only a "Successful" grade on the

---

[79]     The DOJ interposes a qualified response, noting that AUSA Márquez-Marín took leaves of absence.  DRPSAMF ¶ 104.  The Court agrees and amended AUSA Márquez-Marín's additional paragraph one hundred and four to reflect that AUSA Márquez-Marín took authorized leaves of absence.  The DOJ denies that management caused AUSA Márquez-Marín's work-related stress.  DRPSAMF ¶ 104.  In response, the Court amended AUSA Márquez-Marín's additional paragraph one hundred and four to clarify that it is AUSA Márquez-Marín's belief that management caused the stress at the workplace.

[80]     The DOJ denies AUSA Márquez-Marín's contention that she was formally on sick leave as unsupported by the cited authority.  DRPSAMF ¶ 105.  The Court overrules the DOJ's denial because whether she was on formal sick leave is a matter within AUSA Márquez-Marín's personal knowledge.

"productivity" element of the evaluation.[81]  DSMF ¶ 50; PRDSMF ¶ 50; PSAMF ¶ 108; DRPSAMF ¶ 108.  Successful is one of three evaluation grades—"Outstanding," "Successful," and "Unacceptable."  PSAMF ¶ 109; DRPSAMF ¶ 109.  The evaluation grades impact salary.  PSAMF ¶ 110; DRPSAMF ¶ 110.  A successful evaluation lowers the range of possible salary increases when compared to an outstanding evaluation.[82]  PSAMF ¶ 110; DRPSAMF ¶ 110.

AUSA Márquez-Marín felt she deserved a higher rating, particularly in light of her work that year in negotiating pleas for all of the (some seventy-five) *Loiza* defendants, despite having three major surgeries during calendar year 2012 and having AUSA Rivera working on another matter.  DSMF ¶ 50; PRDSMF ¶ 50; PSAMF ¶ 111; DRPSAMF ¶ 111.  AUSA Márquez-Marín talked to SUSA Vázquez and said:

> Listen . . . . I am exhausted.  I am really tired.  I have been going through a lot of surgeries.  I have the kids.  I am going to start chemo.  You know that I have been working even from the hospital, with the defense attorneys trying to find settlements for these cases [which included murderers]. . . .  You know everything I have done, and you are lowering my productivity.  This is nuts.  Do I have to sit down and write more memos.  I mean, what are we going to do?  Do I have to fight this too? . . . Does that make any sense, Mr. Vázquez?

---

[81]    In DOJ's paragraph fifty, it mentions only the fact that successful was one down from the top rating, and AUSA Márquez-Marín clarifies in her response that it is one up from the lowest rating. Viewing the record in the light most favorable to AUSA Márquez-Marín, the Court amended DOJ's paragraph fifty to reflect both facts.
    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and eight, noting that Criminal Division Chief Ruiz also signed the evaluation as reviewer. DRPSAMF ¶ 108.  The Court agrees with the DOJ and amended AUSA Márquez-Marín's additional paragraph one hundred and eight accordingly.

[82]    The DOJ interposes a qualified response, noting that the statement is true only for an overall evaluation, not when the evaluation is only for an individual evaluation element, such as productivity. DRPSAMF ¶ 110.  The Court rejects the DOJ's qualified response because AUSA Márquez-Marín's additional paragraph one hundred and ten does not state that differences in the individual evaluation elements affect salary.

PSAMF ¶ 112 (alterations in original) (internal citation omitted); DRPSAMF ¶ 112.

AUSA Márquez-Marín later explained that when she was making this plea to SUSA

Vázquez, she was referring to other situations in which she would receive an adverse

action ("every time they do something to me"), she would have to "send an email . . .

[having] to document everything, . . . [having] to argue.  And then they review it and

they put i[t] back (i.e. change the decision)."[83]  PSAMF ¶ 113 (alterations in original);

DRPSAMF ¶ 113.  SUSA Vázquez, who was about to retire, agreed to revisit the issue.

PSAMF ¶ 114; DRPSAMF ¶ 114.  SUSA Vázquez eventually changed the rating on

the "productivity" element.[84]  DSMF ¶ 50; PSDSMF ¶ 50; PSAMF ¶ 114; DRPSAMF

¶ 114.  SUSA Vázquez told AUSA Márquez-Marín, "I thought about what we talked

[about], and I think the correct thing to do is I am going to give you [an] outstanding

---

[83]     The DOJ interposes a qualified response, clarifying that this statement is AUSA Márquez-Marín's later explanation of her conversation with SUSA Vázquez.  DRPSAMF ¶ 113.  The Court altered the clauses in the paragraph to convey that this is AUSA Márquez-Marín's later explanation of what she said to SUSA Vázquez, not what she said at the time.

[84]     In her additional paragraph one hundred and fourteen, AUSA Márquez-Marín asserts that before changing her rating, SUSA Vázquez acknowledged that she had done an excellent job.  PSAMF ¶ 114.  The DOJ interposes a qualified response, clarifying that the evidence that SUSA Vázquez said that AUSA Márquez-Marín had done an excellent job is AUSA Márquez-Marín's deposition testimony about the contents of an email she received from SUSA Vázquez and is therefore inadmissible hearsay.  DRPSAMF ¶ 114.  The Court agrees with the DOJ that AUSA Márquez-Marín's statement about the contents of an email is not admissible but not because it is hearsay.  SUSA Vázquez was AUSA Márquez-Marín's supervisor and, as such, his statement to her about his evaluation of her performance would be an admission by a party-opponent.  See FED. R. EVID. 801(d)(2).

        The evidentiary problem is that AUSA Márquez-Marín's statement about the contents of SUSA Vázquez's email violates the Best Evidence Rule.  See FED. R. EVID. 1002.  This rule requires that "parties seeking to prove the content of a writing must introduce into evidence the original of that writing."  Gonzalez Morales v. Ashford Presbyterian Cmty. Hosp., Inc., CIV. NO. 13-1906 (PG), 2019 U.S. Dist. LEXIS 71202, at *6, 2019 WL 1923458, at *2 (D.P.R. Apr. 26, 2019).  There are four exceptions to the Best Evidence Rule, see id. (citing FED. R. EVID. 1004; Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 107 (1st Cir. 2011)), but none is applicable here.  The Court did not include the "excellent job" statement but observes that in light of SUSA Vázquez's statement, which the DOJ admits, that he gave AUSA Márquez-Marín an outstanding productivity rating because she deserved it, his earlier email about her excellent work is cumulative.

productivity [rating] because you deserve it." DSMF ¶ 50 (alterations in original); PRDSMF ¶ 50; PSAMF ¶ 114; DRPSAMF ¶ 114.

SUSA Vázquez then contacted Chief Ruiz, who was the reviewer for the evaluation, and asked him to reconsider AUSA Márquez-Marín's rating. DSMF ¶ 50; PRDSMF ¶ 50. Chief Ruiz agreed as well. DSMF ¶ 50; PRDSMF ¶ 50. Accordingly, on March 14, 2013, when AUSA Márquez-Marín received her final evaluation for her work in 2012, she received an overall "outstanding" rating with four "outstanding" ratings on the individual elements (including in productivity) and one "successful" rating (in writing). *Stip.* ¶ 65; DSMF ¶ 50; PRDSMF ¶ 50.

### i.   Carmen Márquez-Marín and Other Employees' EEO Complaints, Including Francisco Reyes Caparrós

After AUSA Márquez-Marín returned to the USAO, having won a jury trial and having been reinstated by order of Judge McAuliffe, over the years, she has been approached by several employees who had EEO concerns and wanted to know how to proceed.[85]   PSAMF ¶¶ 115-16; DRPSAMF ¶¶ 115-16. These employees included former AUSA Agnes Cordero, former AUSA Dina Ávila, former Appellate Division Chief Pérez, and former Human Resources Specialist Juan De Angel. PSAMF ¶ 116; DRPSAMF ¶ 116. One AUSA went to AUSA Márquez-Marín's office to complain

---

[85]   AUSA Márquez-Marín's additional paragraph one hundred and fifteen states that after she returned to the USAO having won a jury trial and reinstatement, it was "well-known" that she had an expertise in EEO matters. PSAMF ¶ 115. The DOJ denies the statement on the ground that simply because AUSA Márquez-Marín says that something was well-known does not mean that it was so. DRPSAMF ¶ 115. The DOJ position, though technically correct, seems ungenerous. The Court suspects that AUSA Márquez-Marín's successful lawsuit against DOJ was, in fact, well-known within the Puerto Rico USAO and that other AUSAs thought she had some expertise in EEO matters as a consequence. Nevertheless, the Court struck "well-known" and spliced the next paragraph into paragraph one hundred and fifteen.

about her then supervisor, AUSA José Capó Iriate, stating that he was discriminating against her and calling her diminutive names to harass her.[86]   PSAMF ¶ 117; DRPSAMF ¶ 117.   AUSA Márquez-Marín understood that the former AUSA in question went to consult with her because AUSA Márquez-Marín was "the only person in the office that has survived retaliation in connection to EEO . . . . [a]nd so, when people are facing this type of treatment, they end up in [her] office."[87]   PSAMF ¶ 118 (some alterations in original); DRPSAMF ¶ 118.

AUSA Márquez-Marín would listen to the concerns of these other employees and typically would inform them about the EEO process and how to file a complaint. PSAMF ¶ 119; DRPSAMF ¶ 119.   AUSA Márquez-Marín would also inform these other employees about the internet site where they could find relevant forms. PSAMF ¶ 119; DRPSAMF ¶ 119.   AUSA Márquez-Marín would tell these other employees that "if you believe that the treatment . . . . is discriminatory, because you are female or whatever, . . . or if you believe that's illegal treatment and you feel harassed, you need to contact EEO . . .[.]  There is a phone.  There is a poster.  Contact them and decide what to do."[88]   PSAMF ¶ 120; DRPSAMF ¶ 120.

---

[86]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and seventeen, denying the truth of the allegations against AUSA Capó.  DRPSAMF ¶ 117. The Court overrules the DOJ's qualified response.  AUSA Márquez-Marín's additional paragraph one hundred and seventeen does not state that the allegations against AUSA Capó were true, only that they were made to AUSA Márquez-Marín.

[87]     The DOJ admits that AUSA Márquez-Marín testified that this was true but denies that it was true.  DRPSAMF ¶ 118.  Again, the DOJ's position seems technical at best.  In any event, AUSA Márquez-Marín's additional paragraph one hundred and eighteen discusses AUSA Márquez-Marín's impressions about why other USAO employees were coming to see her about their EEO complaints. Thus, the Court rejects the DOJ's denial.

[88]     AUSA Márquez-Marín's additional paragraph one hundred and twenty-one states that Francisco Reyes Caparrós, an Intelligence Specialist for the USAO from 2009 until February 2015, sought out her counsel.  PSAMF ¶ 121.  The DOJ interposes a lengthy denial of the allegation, stating that the cited record does not support the alleged fact and asserting discovery violations.  DRPSAMF

In late 2013, AUSA Márquez-Marín was near the bank of elevators on the floor where her office was located when Francisco Reyes Caparrós, an Intelligence Specialist for the USAO from 2009 until February 2015, approached her and asked her to give him some advice about a number of management actions which he understood constituted retaliation for his prior cooperation with another AUSA who he later found out had an EEO matter with the USAO. PSAMF ¶¶ 121-22; DRPSAMF ¶ 122. AUSA Márquez-Marín noticed that SUSA José Capó, then supervisor of the Violent Crimes Unit and AUSA Márquez-Marín's supervisor, was in the area observing her and Specialist Reyes, and SUSA Capó may have been able to hear what they were discussing.[89] PSAMF ¶ 123; DRPSAMF ¶ 123. AUSA Márquez-Marín invited Specialist Reyes into her office where they discussed his EEO concerns. PSAMF ¶ 123; DRPSAMF ¶ 123. According to AUSA Márquez-Marín, the office "is a fishbowl" and everyone knows what people are doing and is always paying attention.[90] PSAMF ¶ 124; DRPSAMF ¶ 124.

---

[121] Although the Court reviewed the cited record and agrees with DOJ that the citation does not support the asserted fact and did not include it in its recitation of the facts, the Court notes that the DOJ admitted the next asserted fact, which confirms that Specialist Reyes did approach AUSA Márquez-Marín for EEO advice. *See* PSAMF ¶ 122; DRPSAMF ¶ 122. The Court is not sure of the point of the DOJ's lengthy objection to additional paragraph one hundred and twenty-one.

The DOJ admits the part of additional paragraph one hundred and twenty-one that states that Francisco Reyes Caparrós served as an Intelligence Specialist at the USAO from 2009 until February 2015. DRPSAMF ¶ 121. The Court incorporates this assertion into the following paragraph.

[89] The DOJ admits that SUSA Capó saw AUSA Márquez-Marín and Specialist Reyes talking, but it denies that he heard what they were saying. DRPSAMF ¶ 123. The Court overrules the DOJ's denial. AUSA Márquez-Marín's additional paragraph one hundred and twenty-three does not allege that SUSA Capó heard what they were saying, only that he was within earshot.

The DOJ also qualifies the part of additional paragraph one hundred and twenty-three that states that SUSA Capó was "new." DRPSAMF ¶ 123. The Court reviewed the cited portions of the record, agrees with the DOJ, and struck the word "new" from the paragraph.

[90] The DOJ admits that this is what AUSA Márquez-Marín believes but denies it is true. DRPSAMF ¶ 124. The Court overrules the DOJ's denial because the Court views additional paragraph one hundred and twenty-four as AUSA Márquez-Marín's personal opinion, not objective fact.

Specialist Reyes filed the first of two administrative EEO complaints against the DOJ on November 29, 2013.[91]   PSAMF ¶ 125; DRPSAMF ¶ 125.   Sometime thereafter, Specialist Reyes asked AUSA Márquez-Marín if she would be willing to be a witness in his EEO matter, and AUSA Márquez-Marín said she would do so.[92]   PSAMF ¶ 126; DRPSAMF ¶ 126.   In July 2014, AUSA Márquez-Marín ran into Wallace Bustelo, a former SAUSA, and SAUSA Bustelo asked her if she was going to be a witness in the *Reyes Caparrós* case.[93]   PSAMF ¶ 127; DRPSAMF ¶ 127.   AUSA Márquez-Marín indicated that she would be.   PSAMF ¶ 127; DRPSAMF ¶ 127.

On July 9, 2014, Specialist Reyes provided sworn testimony before Tsedey Behanu, an EEO investigator with the EOUSA, in his case (No. 2014-00043) in which the accepted issue for investigation was that "management officials of the [USAO] for the District of Puerto Rico discriminated against him for engaging in protected EEO Activity when [t]hey suspended him on or about April 10, 2014 (at the exact same time the issue of [AUSA] Márquez[-Marín]'s requested review of her evaluation was

---

[91]     The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and twenty-five on the ground that AUSA Márquez-Marín failed to reveal it during discovery.  DRPSAMF ¶ 125.  The Court overrules the DOJ's objection for purposes of the motion for summary judgment only.

Additional paragraph one hundred and twenty-five also says that "[SUSA] Capó was named as one of the discriminators in that complaint."  PSAMF ¶ 125.  The DOJ also denies this assertion.  DRPSAMF ¶ 125.  The Court agrees with the DOJ that AUSA Márquez-Marín's personal knowledge of what the complaint contained is hearsay and not admissible for purposes of this dispositive motion.  Therefore, the Court struck this portion of additional paragraph one hundred and twenty-five.

[92]     The DOJ interposes a qualified response, asserting that this event took place in July 2014.  DRPSAMF ¶ 126.  The Court overrules the DOJ's qualified response.  The DOJ's more specific date does not contradict AUSA Márquez-Marín's additional paragraph one hundred and twenty-six, which says that the conversation occurred sometime after November 29, 2013.

[93]     The DOJ admits that in July 2014, AUSA Márquez-Marín ran into former SAUSA Wallace Bustelo, but the DOJ denies that SAUSA Bustelo asked her whether she was going to be a witness in the *Reyes Caparrós* case.  DRPSAMF ¶ 127.  The DOJ points out that at other points, AUSA Márquez-Marín said that SAUSA Bustelo asked her whether she was going to be "helping" Specialist Reyes.  DRPSAMF ¶ 127.  The Court overrules the DOJ's denial because in its context, the Court does not perceive a meaningful difference between helping and testifying for Specialist Reyes.

being discussed) by the very same management team."[94]  PSAMF ¶ 173; DRPSAMF

¶ 173.  According to Specialist Reyes, there was a time he was "invited to the

supervisor's meeting and . . . heard how they retaliate against everyone."[95]  PSAMF

¶ 174; DRPSAMF ¶ 174.  Specialist Reyes testified that he knows how they think and

what they do when they want to retaliate because he has seen it before and heard it

before, such as when United States Attorney Rodríguez would be in a management

meeting and provide guidance on how to retaliate on people.   PSAMF ¶ 174;

DRPSAMF ¶ 174.  Specialist Reyes, who sat in on those meetings from 2009 to 2012,

stated that this was "a pattern that they do."[96]  PSAMF ¶ 175; DRPSAMF ¶ 175.  He

explained, "I have seen it personally.  This is not hearsay.  I sat [in] on those meetings

and I heard the orders that were being given by [United States Attorney Rodríguez

on] how to follow employees, how to make sure the retaliation was not see[n], so I

knew every step of what was going to happen to me."[97]  PSAMF ¶ 175; DRPSAMF

¶ 175.  Specialist Reyes provided specific examples of how management "retaliated

---

[94]     The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and seventy-three
on the ground that AUSA Márquez-Marín violated her discovery obligations.  DRPSAMF ¶ 173.  The
Court overrules the allegation of a discovery violation and will consider the paragraph's contents for
purposes of the pending summary judgment motion only.
         The DOJ further qualifies additional paragraph one hundred and seventy-three to the extent
it mentions AUSA Márquez-Marín in the accepted issue.  DRPSAMF ¶ 173.  The Court views the
mention of AUSA Márquez-Marín as her recollection, based on personal knowledge, that the review of
her evaluation was going on at the same time as Specialist Reyes' suspension.  Thus, the Court
overrules this qualification.
[95]     The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and seventy-four
on the same ground as its denial of paragraph one hundred and seventy-three.  DRPSAMF ¶ 174.  The
Court overrules the denial for the same reason.
[96]     The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and seventy-five
on the same ground as its denial of paragraph one hundred and seventy-three.  DRPSAMF ¶ 175.  The
Court overrules the denial for the same reason.
[97]     The DOJ also denies AUSA Márquez-Marín's additional paragraph one hundred and seventy-
five on the ground that AUSA Márquez-Marín is taking Specialist Reyes' comments out of context.
DRPSAMF ¶ 175.  The Court rejects the DOJ's objection because it is required to view contested facts
in the light most favorable to AUSA Márquez-Marín.

against people."[98]   PSAMF ¶ 176; DRPSAMF ¶ 176.   He talked about instructions from United States Attorney Rodríguez to then AUSA Capó to follow a particular AUSA, Idalia Mestey, but to "make sure she did not realize she was being followed . . . . and then if she was seen with . . . [AUSA] Cordero, one of [Specialist Reyes'] witnesses, because [AUSA] Cordero had prior complaints as well . . .." PSAMF ¶ 176; DRPSAMF ¶ 176.   Specialist Reyes went on to provide another example: Upper management would "ask [for] the parking access card for [AUSA] Márquez[-Marín], [AUSA] Mestey, [AUSA] Michael Bagge . . . to check their time and attendance when the specific regulations state[] that [parking access cards are] not allowed to be used for time and attendance purposes."[99]   PSAMF ¶ 177 (some alterations in original); DRPSAMF ¶ 177.

---

[98]    The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and seventy-six on the same ground as its denial of paragraph one hundred and seventy-three. DRPSAMF ¶ 176. The Court overrules the denial for the same reason.

   The DOJ further qualifies additional paragraph one hundred and seventy-six, arguing that the record on which the testimony relies consists of "speculative, foundationless opinions of one individual regarding the intentions of another, relying on no supporting evidence," and that the Court should disregard it.   DRPSAMF ¶ 176.   The DOJ admits that Specialist Reyes testified as stated, though.   DRPSAMF ¶ 176.   Specialist Reyes stated that he was physically present at these meetings, *see* PSAMF ¶ 175, so to the extent the DOJ's objections are based on his lack of understanding about what transpired, the Court overrules the objection since it goes to the weight of the testimony, not its admissibility.   The more serious objection is that Specialist Reyes is speculating about the intentions of others.   The way the Court views Specialist Reyes' statement is that it is an introductory statement for the specific examples that he gives in the following paragraphs.   The Court overrules the DOJ's objection.

[99]    The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and seventy-seven on the same ground as its denial of paragraph one hundred and seventy-three. DRPSAMF ¶ 177. The Court overrules the denial for the same reason.

   Additional paragraph one hundred and seventy-seven also asserts that Specialist Reyes said, "They check your cards, they check your time and attendance.   They send people to follow you to make sure you are in the office alone because if you are seen with someone else that is on the list that they have of people that have filed complaints, . . . they treat you as crazy."   PSAMF ¶ 177.   The DOJ denies this portion of additional paragraph one hundred and seventy-seven because AUSA Márquez-Marín has not included the page of the document she attributes this assertion to with her filing.   DRPSAMF ¶ 177.   The Court reviewed the cited portions of the record and agrees that the referenced page is not in the record.   Therefore, the Court struck this portion of the paragraph.

In September 2015, Specialist Reyes filed a lawsuit in the U.S. District Court for the District of Puerto Rico, alleging retaliation and constructive discharge.[100] PSAMF ¶ 128; DRPSAMF ¶ 128. This case was named *Reyes Caparrós v. Barr*, given the docket number 15-cv-02229-JNL, and assigned to Judge Joseph Laplante of the United States District Court for the District of New Hampshire. PSAMF ¶ 128; DRPSAMF ¶ 128. In May 2018, following a three-week trial, a jury found "by a preponderance of the evidence, that [Specialist Reyes'] supervisors at the [USAO] retaliated against him for engaging in protected [EEO] activity" and awarded him $300,000 in damages.[101] PSAMF ¶ 129 (some alterations in original); DRPSAMF ¶ 129. Judge Laplante later denied a motion for new trial or judgment as a matter of law; in his order denying post-trial relief, Judge Laplante observed that "[t]hroughout [Specialist Reyes'] employment at the USAO, its executive management team consisted of . . . United States Attorney . . . Rodríguez, [FAUSA] Domínguez, and [Special Counsel] Novas . . . ."[102] PSAMF ¶ 130; DRPSAMF ¶ 130. José Capó, then

---

The DOJ also qualifies the part of the paragraph concerning the parking access card regulations, arguing that its truth is unsupported. DRPSAMF ¶ 177. Since the Court views this statement as Specialist Reyes' testimony, not true fact, the Court rejects this qualification.

[100] The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and twenty-eight, alleging that AUSA Márquez-Marín committed a discovery violation in failing to disclose this lawsuit to the DOJ. DRPSAMF ¶ 128. As the *Reyes Caparrós* lawsuit is filed as a public record in this Court and the defendant is the Attorney General, the Court allows the statement for purposes of this motion for summary judgment.

[101] The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and twenty-nine, alleging that AUSA Márquez-Marín committed a discovery violation in failing to disclose this lawsuit to the DOJ. DRPSAMF ¶ 129. As the *Reyes Caparrós* lawsuit is filed as a public record in this Court and the defendant is the Attorney General, the Court allows the statement for purposes of this motion for summary judgment.

[102] The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and thirty alleging that AUSA Márquez-Marín committed a discovery violation in failing to disclose this lawsuit to the DOJ. DRPSAMF ¶ 130. As the *Reyes Caparrós* lawsuit is filed as a public record in this Court and the defendant is the Attorney General, the Court allows the statement for purposes of the motion for summary judgment.

Chief of the Criminal Division, testified at the *Reyes Caparrós* trial, as did United States Attorney Rodríguez, FAUSA Domínguez, and Special Counsel Novas.[103] PSAMF ¶ 131; DRPSAMF ¶ 131.

### j.      Work in the Environmental Crimes Unit from July 5, 2011, Through March 31, 2014

On July 5, 2011, then Criminal Division Chief Ruiz informed AUSAs Márquez-Marín and Hector Ramírez that they were being designated the environmental crimes prosecutors in the USAO's Criminal Division. *Stip.* ¶ 35; DSMF ¶ 29; PRDSMF ¶ 29. They would receive the cases and investigations of SAUSA Sylvia Carreño, who was about to become a United States Magistrate Judge. *Stip.* ¶ 35; DSMF ¶ 29; PRDSMF ¶ 29.  AUSA Márquez-Marín forwarded Chief Ruiz's email to SUSA Vázquez, who congratulated her: "As a trained environmentalist (which I know you are from way back) this is an assignment which you will enjoy working on.  Receive my most sincere wish for good luck and success in this new endeavor."  *Stip.* ¶ 35; DSMF ¶ 29; PRDSMF ¶ 29.

In  approximately  August  2011,  SUSA  Vázquez  recommended  AUSAs Márquez-Marín and Rivera for the EOUSA's prestigious Director's Award for their work on the *Canales* case.  DSMF ¶ 30; PRDSMF ¶ 30.  United States Attorney

---

The DOJ also questions whether there were other individuals within the management team and notes that Specialist Reyes had a different chain of command than AUSA Márquez-Marín. DRPSAMF ¶ 130.  To quell controversy, the Court quoted the Laplante order.  *See Mem. Order* at 6, *Reyes Caparrós v. Barr*, 15-cv-02229 (ECF No. 245).

[103]     The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and thirty-one alleging that AUSA Márquez-Marín committed a discovery violation in failing to disclose this lawsuit to the DOJ.  DRPSAMF ¶ 131.  As the *Reyes Caparrós* lawsuit is filed as a public record in this Court and the defendant is the Attorney General, the Court allows the statement for purposes of this motion for summary judgment.  The Court overrules the DOJ's relevance objection.  *See* DRPSAMF ¶ 131.

Rodríguez nominated them on behalf of the USAO.  DSMF ¶ 30; PRDSMF ¶ 30.  In late October 2011, after the EOUSA announced that AUSAs Márquez-Marín and Rivera would receive the EOUSA's prestigious Director's Award, United States Attorney Rodríguez emailed the entire office to congratulate them.  *Stip.* ¶ 36; DSMF ¶ 30; PRDSMF ¶ 30.  The award, when given in December 2011, stated that it was for "Superior Performance as an Assistant United States Attorney—Criminal."  *Stip.* ¶ 36.

On October 18, 2011, the EOUSA released the latest version of a United States Attorneys Procedure (USAP) on "flexible work options" (FWOs), including telecommuting from home.  *Stip.* ¶ 37; DSMF ¶ 31; PRDSMF ¶ 31.  The USAP was first issued in October 2004.  *Stip.* ¶ 37; DSMF ¶ 31; PRDSMF ¶ 31.  The updated USAP stated that "[t]here is no employee entitlement to a particular FWO" and that "[m]anagement has the sole authority to establish the basic working requirements, including core hours where appropriate, and the duty station of each employee."  *Stip.* ¶ 37 (some alterations in original); DSMF ¶ 31; PRDSMF ¶ 31.  It also stated that "[e]mployees shall submit an FWO Request Form to the supervisor to formally request consideration of one or more FWOs."  *Stip.* ¶ 37 (alteration in original).

On March 9, 2012, United States Attorney Rodríguez authorized an $8000 raise for AUSA Márquez-Marín during the APR process.  *Stip.* ¶ 38; DSMF ¶ 32; PRDSMF ¶ 32.  On March 20, 2012, United States Attorney Rodríguez approved AUSA Márquez-Marín for three hours of advanced sick leave in connection with the foster care and adoption of a child.  *Stip.* ¶ 39; DSMF ¶ 32; PRDSMF ¶ 32.  Also, in

March 2012, AUSA Márquez-Marín became afflicted with shoulder impingement, a condition that caused loss of movement of her right arm.  *Stip.* ¶ 40; DSMF ¶ 33; PRDSMF ¶ 33.  In April 2012, AUSA Márquez-Marín was diagnosed with carpal tunnel syndrome; that same month, she also underwent surgery for the shoulder impingement.  *Stip.* ¶ 40; DSMF ¶ 34; PRDSMF ¶ 34.

While AUSA Márquez-Marín was out of the office in connection with her surgery, members of the USAO management—in particular, SUSA Vázquez—ensured that her work was covered and excused her from work-related matters. DSMF ¶ 35; PRDSMF ¶ 35.  For example, on April 10, 2012, SUSA Vázquez and legal assistant Darlye Coronado arranged for another AUSA to cover a hearing for AUSA Márquez-Marín.  *Stip.* ¶ 41; DSMF ¶ 35; PRDSMF ¶ 35.  On April 12, 2012, SUSA Vázquez and USAO Human Resources Officer López corresponded with United States Attorney Rodríguez to confirm AUSA Márquez-Marín's advanced sick leave for adoption purposes and to let United States Attorney Rodríguez know that AUSA Márquez-Marín would be out for shoulder surgery.  *Stip.* ¶ 42.  United States Attorney Rodríguez said, "No problem."  *Stip.* ¶ 42.

On April 17, 2012, SUSA Vázquez excused AUSA Márquez-Marín from having to submit her "Significant Cases Report" because she was recovering from surgery. *Stip.* ¶ 43; DSMF ¶ 35; PRDSMF ¶ 35.  SUSA Vázquez told AUSA Márquez-Marín to submit the report when she could type again.  *Stip.* ¶ 43; DSMF ¶ 35; PRDSMF ¶ 35. He also told her that he hoped that she got well soon.  *Stip.* ¶ 43; DSMF ¶ 35; PRDSMF ¶ 35.  That same day, SUSA Vázquez separately emailed AUSA Márquez-

Marín, "We all wish and pray the best for you and hope you recover soon." *Stip.* ¶ 43; DSMF ¶ 35; PRDSMF ¶ 35.  On April 30, 2012, United States Attorney Rodríguez approved AUSA Márquez-Marín for ten additional hours of advanced sick leave for adoption purposes.  *Stip.* ¶ 44; DSMF ¶ 35; PRDSMF ¶ 35.

In connection with her carpal tunnel syndrome and shoulder impingement, AUSA Márquez-Marín filed a claim with the Department of Labor's Office of Workers' Compensation Programs (OWCP).  *Stip.* ¶ 45; DSMF ¶ 36; PRDSMF ¶ 36.  In late May and early June 2012, then United States Attorney Rodríguez approved AUSA Márquez-Marín for additional hours of advanced sick leave for adoption purposes. *Stip.* ¶ 46; DSMF ¶ 37; PRDSMF ¶ 37.

On July 20, 2012, the DOJ approved a "Policy Statement on Telework."  *Stip.* ¶ 47; DSMF ¶ 38; PRDSMF ¶ 38.  It stated in part that "[t]elework is not an employee right."  *Stip.* ¶ 47 (alteration in original); DSMF ¶ 38; PRDSMF ¶ 38.  The OWCP denied AUSA Márquez-Marín's workers' compensation claim at the end of July 2012. *Stip.* ¶ 48; DSMF ¶ 39; PRDSMF ¶ 39.  Over the years, the DOJ has had several telework policies pursuant to which an employee with medical needs can work from home, complying with his or her obligations in a manner consistent with the goal of a full recovery.[104]  PSAMF ¶ 132; DRPSAMF ¶ 132.  During AUSA Márquez-Marín's absence for her three major surgeries in 2012 and her later chemotherapy,

---

[104]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and thirty-two, noting that it has had several telework policies over the years.  DRPSAMF ¶ 132.  The Court agrees with the DOJ and amended AUSA Márquez-Marín's additional paragraph one hundred and thirty-two accordingly.

management in the USAO did not offer her the option of teleworking.[105]   PSAMF

¶ 133; DRPSAMF ¶ 133.  This was despite the fact that AUSA Márquez-Marín was

in frequent communication with Human Resources Officer López regarding her need

for sick leave and the possibility of receiving donations of leave from other employees

in 2012 and 2013 during the period of her illness.[106]  PSAMF ¶ 134; DRPSAMF ¶ 134.

When AUSA Márquez-Marín finally found out about the teleworking policies, it was

after she had already exhausted all of her leave time.[107]  PSAMF ¶ 135; DRPSAMF

¶ 135.

On August 23, 2012, AUSA Márquez-Marín had her right ovary removed in an

emergency surgery.[108]  *Stip.* ¶ 49; DSMF ¶ 40; PRDSMF ¶ 40.  Following the surgery,

AUSA Márquez-Marín emailed Officer López that she was scheduled for another

---

[105]   The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and thirty-three, noting first that AUSA Márquez-Marín fails to identify which persons constituted management.  DRPSAMF ¶ 133.  The Court overrules this objection because AUSA Márquez-Marín claims that no one in management did so, whoever was in management.  Second, the DOJ qualifies its response because the fact assumes that management had an obligation to do so.  The Court rejects this qualification because the fact stands regardless of whether management had such an affirmative obligation and the paragraph does not state or imply that DOJ had an obligation to do so.  Third, the DOJ qualifies its response because management publicized the existence of the telework policy within the USAO.  The Court rejects this qualification because it does not negate the contents of the paragraph.  Finally, the DOJ asserts that AUSA Márquez-Marín is incorrect.  The Court rejects this qualification because it is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín.

[106]   The DOJ repeats its qualified response to AUSA Márquez-Marín's additional paragraph one hundred and thirty-three.  DRPASMF ¶ 134.  The Court reiterates its response.  This paragraph comes closer to asserting that the DOJ had an affirmative obligation to inform AUSA Márquez-Marín about the availability of telework.  But the Court does not interpret the paragraph in that fashion.

[107]   The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and thirty-five on the ground that she had been placed on notice of the teleworking policy well before she ran out of leave time.  DRPSMF ¶ 135.  The Court rejects the DOJ's denial because the Court is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín.

[108]   AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph forty, inserting the actual date of the emergency surgery.  PRDSMF ¶ 40.  In accordance with its obligation to view the facts in the light most favorable to AUSA Márquez-Marín, the Court inserted the actual date of the emergency surgery in its recitation of the facts.

"major surgery" on September 20, 2012, and was anticipating being out of the office for four to six weeks.  *Stip.* ¶ 49; DSMF ¶ 40; PRDSMF ¶ 40.  AUSA Márquez-Marín guessed that she did not have enough leave to cover that time and leave without pay was not an option since she needed to pay bills.  *Stip.* ¶ 49; DSMF ¶ 40; PRDSMF ¶ 40.  AUSA Márquez-Marín asked Officer López for alternatives.  *Stip.* ¶ 49; DSMF ¶ 40; PRDSMF ¶ 40.  Officer López, whose email message indicated she was out of the office at the time of AUSA Márquez-Marín's email, communicated with AUSA Márquez-Marín about the Voluntary Leave Transfer Program and about her life insurance.[109]  *Stip.* ¶ 50; DSMF ¶ 41; PRDSMF ¶ 41.  Officer López's main concern was to ensure that AUSA Márquez-Marín had her salary paid during the time she was out of the office and she set in motion a plan to solicit leave donations on AUSA Márquez-Marín's behalf.  DSMF ¶ 41; PRDSMF ¶ 41.

On September 20, 2012, AUSA Márquez-Marín underwent surgery.  *Stip.* ¶ 51; DSMF ¶ 43; PRDSMF ¶ 43.  The Operation Report described the operation:

> Exam under anesthesia.  Exploratory laparotomy.  Peritoneal washings.  Total abdominal hysterectomy with left salpingo-oophorectomy.  Pelvic and periaortic node dissection.  Curettage of the diaphragm.  Infracolic omentectomy.   Multiple biopsies of the abdominal and pelvic peritoneum.

*Stip.* ¶ 51; DSMF ¶ 43; PRDSMF ¶ 43.  Right before surgery, someone called AUSA Márquez-Marín regarding a case.  *Stip.* ¶ 52; DSMF ¶ 43; PRDSMF ¶ 43.  AUSA

---

[109]    AUSA Márquez-Marín interposes a qualified response to the portion of this paragraph that states Officer López was out of the office.  PSAMF ¶ 41.  She adds that Officer López's out of office message informed AUSA Márquez-Marín that two other individuals could be contacted.  The Court is not clear about the relevance of the qualified response and did not include those facts because the parties agree that Officer López was the person who responded.  The Court altered the paragraph to indicate that Officer López had an out of office message to more accurately reflect the record.

Márquez-Marín in turn called FAUSA Domínguez for assistance. *Stip.* ¶ 52; DSMF ¶ 43; PRDSMF ¶ 43. AUSA Márquez-Marín told FAUSA Domínguez that she was about to have major surgery and could not be dealing with such matters. *Stip.* ¶ 52; DSMF ¶ 43; PRDSMF ¶ 43. FAUSA Domínguez told AUSA Márquez-Marín not to worry and said she would communicate with SUSA Vázquez to cover the case. *Stip.* ¶ 52; DSMF ¶ 43; PRDSMF ¶ 43.

On September 26, 2012, Officer López emailed AUSA Márquez-Marín and asked how her surgery went.[110] *Stip.* ¶ 53; DSMF ¶ 44; PRDSMF ¶ 44. On October 2, 2012, AUSA Márquez-Marín asked Officer López to establish a bank for leave donations because she was running out of sick leave. *Stip.* ¶ 54; DSMF ¶ 44; PRDSMF ¶ 44. Officer López replied that she could not ask for donations until AUSA Márquez-Marín ran out of sick leave on October 12, 2012, and after that was done, she would send an email to employees of the office indicating that AUSA Márquez-Marín needed donations. *Stip.* ¶ 54; DSMF ¶¶ 42, 44; PRDSMF ¶¶ 42, 44. Even though AUSA Márquez-Marín asked for alternatives, Officer López did not mention the possibility of teleworking during this period.[111] DSMF ¶ 42; PRDSMF ¶ 42.

---

[110]    AUSA Márquez-Marín admits the series of facts in Defendant's paragraph forty-four, but she objects to them as immaterial. PRDSMF ¶ 44. The Court disagrees and views management's favorable treatment of AUSA Márquez-Marín as material as its unfavorable treatment.

Paragraph forty-four also asserts that after the surgery, the USAO management "again checked on [AUSA] Márquez[-Marín]'s well-being and assisted her in various ways." DSMF ¶ 44. AUSA Márquez-Marín denies this portion of the paragraph, arguing that it is "editorializing by the DOJ." PRDSMF ¶ 44. The Court agrees and struck this portion of the paragraph from its recitation of facts.

[111]    AUSA Márquez-Marín interposes a qualified response to DOJ's paragraph forty-two, noting that Officer López did not mention teleworking even though AUSA Márquez-Marín asked for alternatives. PRDSMF ¶ 42 (citing DSMF ¶ 40). The Court added this fact because it is required to view the record in the light most favorable to AUSA Márquez-Marín.

On October 11, 2012, Officer López followed up with AUSA Márquez-Marín to tell her that she was submitting AUSA Márquez-Marín's request for a leave donation package to the EOUSA. *Stip.* ¶ 54; DSMF ¶ 44; PRDSMF ¶ 44. On October 15, 2012, Officer López emailed USAO employees to ask for leave donations for AUSA Márquez-Marín. *Stip.* ¶ 55; DSMF ¶ 44; PRDSMF ¶ 44. That same day, Officer López and AUSA Márquez-Marín exchanged a further series of emails discussing plans for handling AUSA Márquez-Marín's leave during her absence. *Stip.* ¶ 55; DSMF ¶ 44; PRDSMF ¶ 44. On October 16, 2012, Officer López emailed the USAO employees and said that they had received enough leave donations to ensure that AUSA Márquez-Marín got paid during her medical emergency. *Stip.* ¶ 56; DSMF ¶ 44; PRDSMF ¶ 44. Officer López also shared a message with employees that AUSA Márquez-Marín had sent to convey her appreciation. *Stip.* ¶ 56; DSMF ¶ 44; PRDSMF ¶ 44. On October 29, 2012, Officer López wrote to AUSA Márquez-Marín, "You mentioned you had an appointment last week and I wanted to know how it went." *Stip.* ¶ 57; DSMF ¶ 44; PRDSMF ¶ 44. On November 7, 2012, after AUSA Márquez-Marín returned to work and emailed the entire office to thank those who had donated leave, United States Attorney Rodríguez wrote to the entire office and welcomed AUSA Márquez-Marín back. *Stip.* ¶ 58; DSMF ¶ 44; PRDSMF ¶ 44.

AUSA Márquez-Marín underwent chemotherapy from mid-December 2012 through May or June 2013. *Stip.* ¶ 59; DSMF ¶ 45; PRDSMF ¶ 45. On several occasions in early 2013 (January 11, February 4, and May 30), Officer López emailed

USAO employees to solicit additional leave donations for AUSA Márquez-Marín.[112]

*Stip.* ¶ 60; DSMF ¶ 46; PRDSMF ¶ 46.   During this period, unnamed USAO

employees donated leave.[113]  DSMF ¶ 46; PRDSMF ¶ 46.

On January 29, 2013, Criminal Division Chief Ruiz emailed a number of

supervisors at the USAO, including United States Attorney Rodríguez and FAUSA

Domínguez, regarding a case in which AUSA Márquez-Marín had made an

appearance at a status conference.[114]  *Stip.* ¶ 61; DSMF ¶ 46; PRDSMF ¶ 46.  Chief

Ruiz wrote:

> As you know, [AUSA Márquez-Marín] has been receiving chemotherapy
> during the last couple of months and is scheduled to continue receiving
> such treatment up to May.  She is in a very weakened state right now.
> [The Court] recently had a status conference in which, for some reason
> I am not aware of, the defendant was present.  Trial had been set some
> time ago for April 16.  In the status conference, [AUSA Márquez-Marín]
> suggested to the Court to move the trial for May, sometime after
> finishing her chemotherapy sessions.  Defendant's attorney . . . was in
> agreement, but the defendant expressly opposed the continuance and
> the judge [left] the trial date for April 16.  I want the case assigned to
> two prosecutors for the sole purpose of trying the case.  There will be no
> deals with this defendant.  For purposes of tactical gain, he has
> exhibited no consideration for the health of our prosecutors; therefore,

---

[112]     AUSA Márquez-Marín admits that Officer López made the solicitations set forth in
Defendant's paragraph forty-six, but she objects to them as immaterial.  PRDSMF ¶ 46.  The Court
disagrees and views management's favorable treatment of AUSA Márquez-Marín as material as its
unfavorable treatment.  The requirement of viewing disputed facts in the light most favorable to the
nonmovant does not require the Court to strike all undisputed facts favorable to the movant.

[113]     AUSA Márquez-Marín denies as unsupported by the record citation the portion of DOJ's
paragraph forty-six that states employees of the USAO protected AUSA Márquez-Marín from people
outside the office who were trying to take advantage of her health condition.  PRDSMF ¶ 46 (citing
DSMF ¶ 46).  The Court reviewed the record citation and agrees that it does not support that part of
paragraph forty-six.  The Court did not include it in its recitation of the facts.

[114]     AUSA Márquez-Marín admits that Chief Ruiz wrote what is set forth in Defendant's
paragraph forty-six to supervisors within the USAO and that FAUSA Domínguez offered to try the
case without a second AUSA, but AUSA Márquez-Marín objects to the Ruiz email and the Domínguez
offer as immaterial.  PRDSMF ¶ 46.  The Court disagrees and views management's favorable
treatment of AUSA Márquez-Marín as material as its unfavorable treatment.  The requirement of
viewing disputed facts in the light most favorable to the nonmovant does not require the Court to
strike undisputed facts favorable to the movant.

we should have no consideration for any sentence less than life imprisonment for him.

*Stip.* ¶ 61 (some alterations in original); DSMF ¶ 46; PRDSMF ¶ 46. FAUSA Domínguez volunteered to try the case and said she needed no second chair. *Stip.* ¶ 61; DSMF ¶ 46; PRDSMF ¶ 46.

On May 16, 2013, a new USAP entitled "Telework" was issued, and an updated version was issued on August 20, 2013. *Stip.* ¶ 62; DSMF ¶ 47; PRDSMF ¶ 47. On May 31, 2013, Officer López informed AUSA Márquez-Marín about teleworking in an email and volunteered to help her "submit a package" for telework. *Stip.* ¶ 63; DSMF ¶ 48; PRDSMF ¶ 48.

On February 21, 2013, as AUSA Márquez-Marín was undergoing chemotherapy, she applied for a supervisory position in the USAO's Narcotics Unit that had been announced. *Stip.* ¶ 64; DSMF ¶ 49; PRDSMF ¶ 49. In late February 2013 or sometime in March 2013, AUSA Márquez-Marín was interviewed for the position. *Stip.* ¶ 64; DSMF ¶ 49; PRDSMF ¶ 49. The SUSA position, however, was awarded to another AUSA, Myriam Fernández. DSMF ¶ 49; PRDSMF ¶ 49.

Several months later, in early May 2013, AUSA Márquez-Marín learned about a new supervisory vacancy in the USAO's Narcotics Unit. *Stip.* ¶ 66; DSMF ¶ 51; PRDSMF ¶ 51. She applied and again she was interviewed for this position. *Stip.* ¶ 66; DSMF ¶ 51; PRDSMF ¶ 51. AUSA Hernández was selected for the position. *Stip.* ¶ 67; DSMF ¶ 51; PRDSMF ¶ 51. During her interview for one of the two supervisory positions in the spring of 2013, AUSA Márquez-Marín complained to

United States Attorney Rodríguez that her salary was too low.[115]   *Stip.* ¶ 68; DSMF ¶ 52; PRDSMF ¶ 52.   According to AUSA Márquez-Marín, United States Attorney Rodríguez responded that other similarly situated AUSAs were similarly paid.   *Stip.* ¶ 68; DSMF ¶ 52; PRDSMF ¶ 52.

In late March 2013, then AUSA José Capó was appointed supervisor of the Violent Crimes Unit in place of SUSA Vázquez, who was to retire on April 6, 2013. *Stip.* ¶ 69.   SUSA Capó became AUSA Márquez-Marín's supervisor and he assigned her cases.   *Stip.* ¶ 69; DSMF ¶ 53; PRDSMF ¶ 53.   AUSA Márquez-Marín testified that when SUSA Capó became her supervisor in 2013, he assigned her a death penalty case.[116]  DSMF ¶ 58; PRDSMF ¶ 58.  SUSA Capó, however, did not know that AUSA Márquez-Marín was opposed to the death penalty and, even if he once knew, he did not recall it when he assigned her the death penalty case.[117]   DSMF ¶ 58; PRDSMF ¶ 58.

On May 20, 2013, AUSA Márquez-Marín emailed SUSA Capó that she was not feeling well and would stay home.[118]   *Stip.* ¶ 70; DSMF ¶ 54; PRDSMF ¶ 54.   SUSA

---

[115]     The DOJ's begins its paragraph fifty-two with "[AUSA ]Márquez[-Marín] claims."  DSMF ¶ 52. AUSA Márquez-Marín objects to the implication that this statement was a claim and not what she in fact said.  PRDSMF ¶ 52.  The Court agrees with AUSA Márquez-Marín for the purposes of this summary judgement motion and omitted the phrase.

[116]     The DOJ begins its paragraph fifty-eight with "[AUSA ]Márquez[-Marín] claims."  DSMF ¶ 58. AUSA Márquez-Marín objects to the implication that her testimony was merely a claim since it is entitled to be credited as true for summary judgment purposes.  PRDSMF ¶ 58.  The Court agrees with AUSA Márquez-Marín and changed the word from claims to testified.

[117]     The parties dispute what precisely SUSA Capó said regarding his knowledge of AUSA Márquez-Marín's opposition to the death penalty.  *See* DSMF ¶ 58; PRDSMF ¶ 58.  The Court included AUSA Márquez-Marín's version since it is required to view disputed facts in the light most favorable to AUSA Márquez-Marín.

[118]     In its paragraph fifty-four, the DOJ prefaces a series of facts as evidence that it "supported [AUSA] Márquez[-Marín] after [her] appointment, as she completed her chemotherapy regimen." DSMF ¶ 54.  AUSA Márquez-Marín objects to the preface, the Court agrees with AUSA Márquez-Marín, and the Court struck this portion of the paragraph.  PRDSMF ¶ 54.  AUSA Márquez-Marín

Capó responded that this was not a problem.  *Stip.* ¶ 70; DSMF ¶ 54; PRDSMF ¶ 54. On May 27, 2013, AUSA Márquez-Marín emailed SUSA Capó and said she was sick and needed coverage.  *Stip.* ¶ 71; DSMF ¶ 54; PRDSMF ¶ 54.  When she did not hear back from him, she wrote to Chief Ruiz, who said he would take care of the matter and to get well soon.  *Stip.* ¶ 71; DSMF ¶ 54; PRDSMF ¶ 54.  The next day, SUSA Capó responded to AUSA Márquez-Marín, stating that his phone had not been working and that he hoped she was feeling better.  *Stip.* ¶ 71; DSMF ¶ 54; PRDSMF ¶ 54.  On May 29, 2013, AUSA Márquez-Marín wrote to Chief Ruiz and SUSA Capó and said she could not go to work the next day.  *Stip.* ¶ 72; DSMF ¶ 54; PRDSMF ¶ 54.  SUSA Capó responded, "We hope you get well soon!"  *Stip.* ¶ 72; DSMF ¶ 54; PRDSMF ¶ 54.

In June 2013, United States Attorney Rodríguez appointed AUSA Márquez-Marín to be the USAO's environmental crimes coordinator.  *Stip.* ¶ 73; DSMF ¶ 56; PRDSMF ¶ 56.  This was not a supervisory position.  *Stip.* ¶ 73; DSMF ¶ 56; PRDSMF ¶ 56.  On July 10, 2013, AUSA Márquez-Marín wrote to SUSA Capó that she had a cold, felt bad, and had to go home.[119]  *Stip.* ¶ 74; DSMF ¶ 55; PRDSMF ¶ 55.  SUSA Capó said okay.  *Stip.* ¶ 74; DSMF ¶ 55; PRDSMF ¶ 55.  On July 25, 2013, AUSA

---

also objects to the facts in paragraph fifty-four as immaterial.  PRDSMF ¶ 54.  The Court disagrees and views these facts as some evidence that the DOJ was not discriminating against AUSA Márquez-Marín since it accommodated her during her medical treatment, so the Court rejects this objection.

[119]     In its paragraph fifty-four, the DOJ prefaces two facts as evidence that "[e]ven after [AUSA] Márquez[-Marín] finished chemotherapy, [SUSA] Capó's support continued."  DSMF ¶ 55.  AUSA Márquez-Marín objects to the preface, the Court agrees with AUSA Márquez-Marín, and the Court struck this portion of the paragraph.  PRDSMF ¶ 55.  AUSA Márquez-Marín also objects to the facts in paragraph fifty-five as immaterial.  PRDSMF 55.  The Court disagrees and views these facts as some evidence that the DOJ was not discriminating against AUSA Márquez-Marín since it accommodated her time-off requests, so the Court rejects this objection.

Márquez-Marín wrote to SUSA Capó that she was not feeling well and would prepare a leave request the next day.  *Stip.* ¶ 75.  SUSA Capó said okay.  *Stip.* ¶ 75.  On August 12, 2013, AUSA Márquez-Marín corresponded by email with Howard Stewart, an AUSA with DOJ's Environmental and Natural Resources Division.[120] *Stip.* ¶ 76; DSMF ¶ 57; PRDSMF ¶ 57.  AUSAs Márquez-Marín and Stewart exchanged numerous emails, some of which AUSA Márquez-Marín forwarded to then Appellate Division Chief Pérez.  *Stip.* ¶ 76; DSMF ¶ 57; PRDSMF ¶ 57.  On September 11, 2013, SUSA Capó wrote to Officer López and USAO Administrative Officer Lisa Western to nominate AUSA Márquez-Marín for a time-off award for her high-quality performance during a case.  *Stip.* ¶ 77; DSMF ¶ 55; PRDSMF ¶ 55.  In late 2013, when Chief Ruiz reassigned the cases of AUSA Hector Ramírez, who was to become Chief of the USAO's Civil Division, AUSA Márquez-Marín received AUSA Ramírez's environmental cases.  DSMF ¶ 56; PRDSMF ¶ 56.  Other AUSAs received AUSA Ramírez's non-environmental cases.  DSMF ¶ 56; PRDSMF ¶ 56.

On January 27, 2014, AUSA Márquez-Marín emailed SUSA Capó that she was sick and would send him a leave request.  *Stip.* ¶ 78.  SUSA Capó said okay.  *Stip.* ¶ 78.  AUSA Márquez-Marín was planning to have surgery on February 18, 2014, to correct a hernia on the site of the incisions of one of her earlier surgeries.  *Stip.* ¶ 79; DSMF ¶ 59; PRDSMF ¶ 59.  On February 6, 2014, AUSA Márquez-Marín emailed Officer López, copying SUSA Capó, asking to work from home during her recovery.

---

[120]    AUSA Márquez-Marín objects to the DOJ's paragraph fifty-seven as immaterial.  PRDSMF ¶ 57.  The Court agrees with AUSA Márquez-Marín that its materiality, without more, seems marginal.  However, rather than excluding the paragraph, the Court included it in the recitation of facts to be given such weight as is appropriate.

*Stip.* ¶ 80; DSMF ¶ 60; PRDSMF ¶ 60.  AUSA Márquez-Marín noted that she had already mentioned this to SUSA Capó and he had agreed.  *Stip.* ¶ 80; DSMF ¶ 60; PRDSMF ¶ 60.  The next day, Officer López sent AUSA Márquez-Marín a USAP that explained the telework process and told her to submit three forms: (1) an FWO request form, (2) an FWO memorandum of understanding, and (3) a DOJ Telework Agreement form.  *Stip.* ¶ 81; DSMF ¶ 60; PRDSMF ¶ 60.  The last of these documents, when signed by AUSA Márquez-Marín, stated that telework was to be a "short period of time from February 24 up to an[d] including March 10, 2014."  *Stip.* ¶ 81 (alteration in original); DSMF ¶ 60; PRDSMF ¶ 60.  It also provided that AUSA Márquez-Marín's working hours would be from 8:30 a.m. to 5:30 p.m.  *Stip.* ¶ 81; DSMF ¶ 60; PRDSMF ¶ 60.

SUSA Capó went to the executive office suite at the USAO, where he recommended to United States Attorney Rodríguez that AUSA Márquez-Marín be allowed to work from home as she recovered from her surgery.  *Stip.* ¶ 83; DSMF ¶ 61; PRDSMF ¶ 61.  FAUSA Domínguez also advocated on behalf of AUSA Márquez-Marín.  DSMF ¶ 61; PRDSMF ¶ 61.  United States Attorney Rodríguez approved AUSA Márquez-Marín's telework request.  *Stip.* ¶ 82; DSMF ¶ 62; PRDSMF ¶ 62.  United States Attorney Rodríguez and FAUSA Domínguez directed Appellate Division Chief Pérez to give AUSA Márquez-Marín work that she could accomplish from home.  DSMF ¶ 62; PRDSMF ¶ 62.  United States Attorney Rodríguez also told Chief Pérez to assign AUSA Márquez-Marín "not very complicated stuff" so that it

would be easier for her as she recovered.[121]  DSMF ¶ 62; PRDSMF ¶ 62.  Although Chief Pérez thought it was "very intelligent and considerate on [United States Attorney Rodríguez's] part to do something like that," he also said that AUSA Márquez-Marín could "handle more difficult stuff" and he in fact provided her with more "important" cases due to the "implications" for the office.[122]  DSMF ¶ 62; PRDSMF ¶ 62.

On February 11, 2014, AUSA Márquez-Marín sent an email to SUSA Capó with a copy sent to her legal assistant, Alexis Ruiz, to which she attached her calendar for the period February 18 to March 10, 2014, including the hearings which she would not be able to attend during the period she would be recovering from surgery and teleworking from her home.  *Stip.* ¶ 84; PSAMF ¶ 140; DRPSAMF ¶ 140; DSMF ¶ 63; PRDSMF ¶ 63.  ASUA Márquez-Marín had been on duty shortly before she had the surgery, which meant that she had been assigned new cases which had come in shortly before her anticipated leave for medical reasons.  PSAMF ¶ 141; DRPSAMF ¶ 141.  Before leaving for her surgery, in order to assure coverage of her cases in her absence, AUSA Márquez-Marín asked SUSA Capó to reassign the cases which had just been opened while she was on duty.[123]  PSAMF ¶ 142; DRPSAMF ¶ 142; DSMF

---

[121]  The DOJ quotes United States Attorney Rodríguez as saying that AUSA Márquez-Marín should be given "not very complicated stuff" and AUSA Márquez-Marín objects, saying that the correct phrase is not to assign "too complex cases."  DSMF ¶ 62; PRDSMF ¶ 62 (citing *Decl. of Hilda Hudson*, Attach. 1 at 292 (ECF No. 102)).  The Court could not find the phrase AUSA Márquez-Marín quotes in the cited record and therefore used the DOJ's quoted phrase since it is supported by the DOJ's citation.  The Court does not view the difference between the two phrases as material.

[122]  AUSA Márquez-Marín adds facts to clarify Chief Pérez's view.  PRDSMF ¶ 62.  In accordance with its obligation to view the facts in the light most favorable to AUSA Márquez-Marín, the Court included those facts.

[123]  AUSA Márquez-Marín interposes a qualified response to the first sentence of the DOJ's paragraph sixty-four, clarifying that she only requested reassignment for her new cases, not all her

¶ 64; PRDSMF ¶ 64.  For a period of an entire month, SUSA Capó refused to reassign any of her cases or to assign other AUSAs to monitor them.[124]   PSAMF ¶ 143; DRPSAMF ¶ 143; DSMF ¶ 64; PRDSMF ¶ 64.  SUSA Capó told AUSA Márquez-Marín that her legal assistant would help with her cases.  DSMF ¶ 64; PRDSMF ¶ 64. SUSA Capó also told her not to worry about her Violent Crimes Unit cases and AUSA Márquez-Marín admitted that SUSA Capó could have mentioned this.  DSMF ¶ 64; PRDSMF ¶ 64.  However, AUSA Márquez-Marín did not believe that SUSA Capó was acting in a way that was empathetic or helpful.[125]  DSMF ¶ 64; PRDSMF ¶ 64.

On Tuesday, February 18, 2014, AUSA Márquez-Marín had surgery to correct a post-operative hernia.  *Stip.* ¶ 85; PSAMF ¶ 136; DRPSAMF ¶ 136; DSMF ¶ 65; PRDSMF ¶ 65.  She asked the USAO to use up what little sick leave she had left in order to cover her recovery for the remainder of the week, until Friday, February 21, 2014.[126]  PSAMF ¶ 137; DRPSAMF ¶ 137.  After the surgery, AUSA Márquez-Marín

---

cases.  PRDSMF ¶ 64.  Given the DOJ's admission of AUSA Márquez-Marín's additional paragraph one hundred and forty-two, the Court finds this point moot; the facts already make clear that she only asked for reassignment of the cases that had just been opened.

[124]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred forty-three, contending that SUSA Capó took other steps to ensure coverage during her absence.  DRPSAMF ¶ 143.  As the DOJ's additional facts do not contradict AUSA Márquez-Marín's additional paragraph one hundred forty-three, the Court declines to insert them.

AUSA Márquez-Marín interposes a qualified response to the second and third sentences of the DOJ's paragraph sixty-four on completeness grounds.  PRDSMF ¶ 64.  The Court does not view any of the proposed added facts as necessary to clarify the paragraph and does not find them to be contradictory, so the Court rejects this qualification.

[125]    AUSA Márquez-Marín interposes a qualified response to the fourth and fifth sentences of the DOJ's paragraph sixty-four, arguing that they must be put in the proper context.  PRDSMF ¶ 64.  The Court does not find all the proposed context relevant.  However, in accordance with its obligation to view contested matters in the light most favorable to AUSA Márquez-Marín, the Court added this sentence to clarify AUSA Márquez-Marín's reaction to SUSA Capó's actions.  PRDSMF ¶ 64.

[126]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred thirty-seven, asserting that AUSA Márquez-Marín did not in fact exhaust her sick leave balance that week.  DRPSMAF ¶ 37.  The Court overrules the DOJ's qualified response because AUSA Márquez-Marín's additional paragraph one hundred thirty-seven does not state or imply that she used up her sick leave that week.

took sick leave for this period through Friday, February 21, 2014 (part of pay period three). *Stip.* ¶ 85; DSMF ¶ 65; PRDSMF ¶ 65. At that time, AUSA Márquez-Marín expected to be back in the office by March 10, 2014. PSAMF ¶ 138; DRPSAMF ¶ 138. To cover the time she expected to be out of the office, AUSA Márquez-Marín used the Telework Agreement she had requested and obtained from Officer López to work from home while recuperating after Friday, February 21, 2014.[127] PSAMF ¶ 139; DRPSAMF ¶ 139; *Stip.* ¶¶ 81-82. On Monday, February 24, 2014 (the beginning of pay period four), AUSA Márquez-Marín was within her teleworking period. DSMF ¶ 65; PRDSMF ¶ 65.

The surgery turned out to be more complicated than expected, and her recovery time was extended until at least March 30. PSAMF ¶ 144; DRPSAMF ¶ 144. AUSA Márquez-Marín then requested additional time to complete work at home, pursuant to a new Telework Agreement.[128] PSAMF ¶ 145; DRPSAMF ¶ 145. The USAO granted her request. PSAMF ¶ 145; DRPSAMF ¶ 145. Upon SUSA Capó's request, AUSA Nicholas Cannon covered a hearing for AUSA Márquez-Marín.[129] DSMF ¶ 67;

---

[127]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred thirty-nine, including the actual dates that the Telework Agreement covered. DRPSAMF ¶ 139. As the information does not contradict AUSA Márquez-Marín's additional statement, the Court did not insert it.

[128]    The DOJ interposes a qualified response, noting that although it agrees that AUSA Márquez-Marín requested additional time to work at home and her request was granted, the DOJ does not believe this was done pursuant to a new Telework Agreement. DRPSAMF ¶ 145. Even though AUSA Márquez-Marín's sworn statement does not expressly refer to a new Telework Agreement, the Court infers that if she applied for additional time teleworking at home and if DOJ followed its own procedures in granting the request, it would have been pursuant to a new Telework Agreement. The Court does not accept the DOJ's qualified response because it is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín.

[129]    The DOJ's paragraph sixty-seven also states that "it was not just [SUSA] Capó who assisted." DSMF ¶ 67. AUSA Márquez-Marín admits that AUSA Cannon covered the hearings mentioned in the DOJ's paragraph sixty-seven but denies that covering these hearings "is probative of either [AUSA] Cannon or [SUSA] Capó 'assisting'" her because "[c]overing hearings for people who are out sick is

PRDSMF ¶ 67.  When two legal assistants emailed to find additional coverage for AUSA Márquez-Marín's cases, AUSA Cannon agreed to cover two hearings.  *Stip.* ¶ 86; DSMF ¶ 67; PRDSMF ¶ 67.  On March 3, 2014, SUSA Capó approved sick leave for AUSA Márquez-Marín for the dates February 24 through February 28, 2014.  *Stip.* ¶ 87.

At some point between February 24 and March 3, 2014, Officer López, Chief Pérez, and USAO Budget Officer Damaris Morales had a conversation in Officer López's office.  DSMF ¶ 69; PRDSMF ¶ 69.  Based on her understanding of what was said and wanting to ensure that AUSA Márquez-Marín was paid on time when timesheets were being certified, Officer Morales asked a student clerk to prepare a sick leave request for AUSA Márquez-Marín for February 24 through February 28, 2014.  DSMF ¶ 69; PRDSMF ¶ 69.  The prepared request was forwarded to SUSA Capó and he approved it on March 3, 2014.  DSMF ¶ 69; PRDSMF ¶ 69.

On March 7, 2014—the day before the end of pay period four (the pay period encompassing the dates February 23 through March 8)—AUSA Márquez-Marín asked Officer Morales for help with validating her time and attendance sheet (T&A).  DSMF ¶ 70; PRDSMF ¶ 70.  Officer Morales, believing that AUSA Márquez-Marín wanted help with validating her T&A for pay period four and believing that AUSA Márquez-Marín wanted her to validate the T&A on her behalf, agreed.  DSMF ¶ 70; PRDSMF ¶ 70.

---

commonly done." PRDSMF ¶ 67.  The Court, viewing the evidence in the light most favorable to AUSA Márquez-Marín, agrees with her and struck this portion of the paragraph.

On March 12, 2014, SUSA Capó wrote AUSA Márquez-Marín.  *Stip.* ¶ 88; DSMF ¶ 71; PRDSMF ¶ 71.  SUSA Capó was responsible for certifying AUSA Márquez-Marín's T&A for pay period four.  *Stip.* ¶ 88; DSMF ¶ 71; PRDSMF ¶ 71.  SUSA Capó asked AUSA Márquez-Marín to send him a brief summary of the work she performed "during the March 3-7 (40 hour) week."  *Stip.* ¶ 88; DSMF ¶ 71; PRDSMF ¶ 71.  AUSA Márquez-Marín responded in several emails on March 12 and March 13, 2014.[130]  *Stip.* ¶ 89; DSMF ¶ 72; PRDSMF ¶ 72.  She noted in part that her doctor told her on March 6, 2014, that she would need to stay home until March 30, 2014.  DSMF ¶ 72; PRDSMF ¶ 72.  Also, upset that SUSA Capó had continued in his refusal to reassign her cases, she wrote in an email sent to SUSA Capó on March 12, 2014:

> Since . . . I take my work very seriously I have been worried about the developments of the cases [assigned before I left].  It was exactly to avoid this situation, that I suggested to you, before I left for surgery, that it was better to assign[] those cases to [others].  I understood when you decided to leave the cases in my inventory because I was hoping to return to the office on March 10 and . . . my assistant . . . is very competent.

DSMF ¶ 72; PRDSMF ¶ 72; PSAMF ¶ 147; DRPSAMF ¶ 147.  Nevertheless, she was "worried about the developments of the cases" and about the deadlines expiring, especially since her assistant was not a lawyer or an AUSA and since her assistant and his backup would be out at training.  DSMF ¶ 72; PRDSMF ¶ 72; PSAMF ¶ 147; DRPSAMF ¶ 147.  She asked SUSA Capó to at least assign someone to monitor those cases until she returned, even if he insisted on leaving those cases assigned to her.

---

[130]    AUSA Márquez-Marín seeks to clarify that although paragraph eighty-nine of the Joint Stipulation said there were several emails, there was in fact only one.  PRDSMF ¶ 72.  Because the Joint Stipulation trumps the statements of fact, the Court did not change the paragraph.

DSMF ¶ 72; PRDSMF ¶ 72.  She also told SUSA Capó that she was going to see her physician on March 21, 2014, and would see if she could return before March 30, 2014.[131]  PSAMF ¶ 148; DRPSAMF ¶ 148.

Upon receipt of AUSA Márquez-Marín's messages, SUSA Capó realized that AUSA Márquez-Marín would be out for longer than anticipated and he was not certain when she would be coming back.  DSMF ¶ 73; PRDSMF ¶ 73.  With his supervisory responsibilities, he could not continue to monitor AUSA Márquez-Marín's cases as he had been doing.  DSMF ¶ 73; PRDSMF ¶ 73.  Therefore, he decided to assign co-counsel.  DSMF ¶ 73; PRDSMF ¶ 73.  On March 17, 2014, a month after the original request, SUSA Capó first began assigning co-counsels for the new cases AUSA Márquez-Marín had been given right before her initial sick leave in mid-February.  PSAMF ¶ 149; DRPSAMF ¶ 149; DSMF ¶ 73; PRDSMF ¶ 73.  For example, in a series of emails on March 17, 2014, SUSA Capó assigned SAUSA Vanessa Bonano as co-counsel in three of AUSA Márquez-Marín's cases, AUSA Evelyn Canáls as co-counsel in three of her cases, SAUSA Normary Figueroa as co-counsel in two of her cases, and AUSA Cannon as co-counsel in five of her cases.  *Stip.* ¶ 90; DSMF ¶ 73; PRDSMF ¶ 73.  AUSA Márquez-Marín thanked SUSA Capó as to at least one of these assignments.  DSMF ¶ 73; PRDSMF ¶ 73.

---

[131]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and forty-eight, noting that AUSA Márquez-Marín did not write that she "hoped to" return to work before March 30, but that she would "see if she could return before March 30."  DRPSAMF ¶ 148.  Although the Court is not sure there is a material difference between "hoped to" and "see if I can return," *see* PSAMF, Attach. 3, *Ex S: March 12, 2014 Email from Márquez to Capó*, the Court reviewed the cited portion of the record and inserted the language of the March 12, 2014, Márquez-Marín email in place of her paraphrase.

Although she was still in considerable pain, AUSA Márquez-Marín continued to work from home since she had no additional sick leave and, as a single mother, could not afford to be without an income.[132]  PSAMF ¶ 146; DRPSAMF ¶ 146.

SUSA Capó testified that at some point when AUSA Márquez-Marín was out of the office, he took steps to ensure coverage of her Violent Crimes Unit cases.[133] DSMF ¶ 66; PRDSMF ¶ 66.  He testified:

> I personally decided to check on all her cases.  I handled all of her cases during her time out on flexible work plan [telework].  So every day, I would go in, look at the calendar to make sure that there [were] no court hearings.  I would ask her legal assistant . . . every afternoon at 5:00 p.m. whether anything in the calendar reflected that she had a hearing. I would personally go into each and every single case that [AUSA] Márquez[-Marín] had to make sure that no deadlines were missed.  And in fact during that time I think I even had to call agents regarding the cases to make sure that everything was on track.  And I prepared discovery packages in her cases during her absence.

DSMF ¶ 66 (some alterations in original); PRDSMF ¶ 66.  SUSA Capó testified that he took these steps to help AUSA Márquez-Marín and to ensure that she "did not have to worry about [her cases] when she was out of the office."   DSMF ¶ 66 (alteration in original); PRDSMF ¶ 66.

Despite SUSA Capó's urging that she should not worry about her Violent Crimes Unit cases, AUSA Márquez-Marín continued to be concerned.  DSMF ¶ 68;

---

[132]     The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred forty-six on the ground that from the date she saw her doctor on March 6, 2014, until she returned to work on March 31, 2014, she in fact had sick leave.  DRPSAMF ¶ 146.  The Court declines to accept the DOJ's denial since it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

[133]     AUSA Márquez-Marín admits that this is what SUSA Capó said, but she argues that his testimony was not credible and is out of context.  PRDSMF ¶ 66.  To respond to AUSA Márquez-Marín's concern, the Court altered the paragraph to note that SUSA Capó's statements reflect his testimony and that he took these steps at some point while AUSA Márquez-Marín was out of the office, not necessarily the entire time.

PRDSMF ¶ 68.  AUSA Márquez-Marín asked Officer López to raise the issue of case assignment with SUSA Capó because she was concerned that the USAO would miss the indictment deadline on the new cases she was assigned shortly before surgery.[134] DSMF ¶ 68; PRDSMF ¶ 68.  Officer López spoke with SUSA Capó and she told AUSA Márquez-Marín that SUSA Capó said not to worry about her Violent Crimes Unit cases and he would make sure everything was covered.  DSMF ¶ 68; PRDSMF ¶ 68. AUSA Márquez-Marín then contacted SUSA Capó, who told her that she was expected to telework from 8:30 a.m. to 5:30 p.m.  DSMF ¶ 68; PRDSMF ¶ 68  This was contrary to what AUSA Márquez-Marín had previously understood; she thought that she would be able to work at any time during the day so long as she put in enough time. DSMF ¶ 68; PRDSMF ¶ 68.  SUSA Capó again refused to reassign her cases or assign co-counsel.  DSMF ¶ 68; PRDSMF ¶ 68.

On March 12, 2014, the same day he wrote to AUSA Márquez-Marín, SUSA Capó wrote to Appellate Division Chief Pérez questioning Chief Pérez's verbal certification of AUSA Márquez-Marín's work:

> I am in the process of certifying AUSA Márquez[-Marín]'s T&A and would like to get your input regarding work performed by her for the Appeals Unit between March 3-7, 2014.  [Officer López] informed me that you had verbally certified to her the facts that she had performed work during that period (her T&A reflects that she worked 40 hours last week).  Your input would be of great assistance in allowing me to certify her T&A.[135]

---

[134]   AUSA Márquez-Marín interposes a series of qualified responses to the DOJ's paragraph sixty-eight.  PRDSMF ¶ 68.  In accordance with its obligation to view contested facts in the light most favorable to the nonmovant, the Court amended the DOJ's paragraph sixty-eight in an effort to capture AUSA Márquez-Marín's extensive qualifications, including facts related to her reason for being concerned about case assignment and her understanding of her work schedule while teleworking.  *See* PRDSMF ¶ 68.

[135]   The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and sixty, contending that in doing so, SUSA Capó was properly documenting her time and

*Stip.* ¶ 91; DSMF ¶ 74; PRDSMF ¶ 74; PSAMF ¶ 160; DRPSAMF ¶ 160.  Chief Pérez responded by email the next day.  *Stip.* ¶ 92.  Chief Pérez testified that he was not entirely sure what SUSA Capó was asking and assumed that he was raising whether AUSA Márquez-Marín's hours were allotted on a daily basis.  DSMF ¶ 75; PRDSMF ¶ 75.  Therefore, after noting that AUSA Márquez-Marín had been working on two appeals and was willing to work on a third, he emailed in response:

> How . . . the working hours [are] to be allotted on a daily basis—which seems to be your real concern—[it] is very difficult to [be] precise.  This is even more difficult when one has been under excruciating pain, due to a certified serious medical condition.  I must say, however, that working on two appeals justifies the 40 hours of work.  I must also mention that AUSA Márquez[-Marín] informed me that she was trying to manage from a distance the cases that you had assigned to her.

DSMF ¶ 75; PRDSMF ¶ 75; PSAMF ¶ 161; DRPSAMF ¶ 161.

Having been made aware of this exchange, on March 14, 2014, FAUSA Domínguez emailed Officer López (copying others).  *Stip.* ¶ 93; DSMF ¶ 76; PRDSMF ¶ 76.  She stated in her email that management needed to implement a system whereby AUSA Márquez-Marín would report to Chief Pérez and SUSA Capó on a weekly basis the number of hours per day she was working and the tasks accomplished.  DSMF ¶ 76; PRDSMF ¶ 76.  FAUSA Domínguez noted that AUSA Márquez-Marín had not completed any of the briefs assigned to her, and it was impossible for SUSA Capó or Chief Pérez to certify her time without some reporting

---

attendance.  DRPSAMF ¶ 160.  The Court declines to include the DOJ's qualified response because it proffers why SUSA Capó did so but does not dispute that he did so.  Also the Court rejects the qualified response because the Court is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

from her.  DSMF ¶ 76; PRDSMF ¶ 76.  FAUSA Domínguez also convened a meeting among Officer López, SUSA Capó, Chief Pérez, and Officer Western to discuss the issue.  DSMF ¶ 76; PRDSMF ¶ 76.  At the meeting, Chief Pérez called for some flexibility in AUSA Márquez-Marín's telework arrangements, given her medical condition.  DSMF ¶ 76; PRDSMF ¶ 76.  The participants agreed that this was appropriate.  DSMF ¶ 76; PRDSMF ¶ 76.

On March 21, 2014, when AUSA Márquez-Marín met with her physician, she was told that she needed additional recovery time, meaning that she had to request additional time teleworking.[136]  PSAMF ¶ 150; DRPSAMF ¶ 150.  On the same day, FAUSA Domínguez emailed AUSA Márquez-Marín to communicate the decision of the group that had met to discuss her status and she stated in part: "We wish you a speedy recovery, and hope that you will be able to return to the office soon.  You are missed by all.  God bless."[137]  *Stip.* ¶ 94; DSMF ¶ 76; PRDSMF ¶ 76.

During the entire period of her teleworking assignment, AUSA Márquez-Marín was assigned to work on appeals under the direct supervision of Chief Pérez, and Chief Pérez assigned her several appeals during that period.[138]  PSAMF ¶ 151;

---

[136]  The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and fifty.  DRPSAMF ¶ 150.  The DOJ notes that any request for teleworking after the March 21, 2014, appointment did not result in a new Telework Agreement.  DRPSAMF ¶ 150.  As AUSA Márquez-Marín's paragraph one hundred-fifty does not assert that her request resulted in a new Telework Agreement, the Court declines to include DOJ's response.

[137]  AUSA Márquez-Marín admits the DOJ's paragraph seventy-six but notes that FAUSA Domínguez's statement that AUSA Márquez-Marín was "missed by all" and "God bless" does not mean that the group actually felt this way.  PRDSMF ¶ 76.  The Court dismisses this comment because the paragraph does not suggest the truth of the statement, but rather only that it was said.

[138]  The DOJ admits the majority of AUSA Márquez-Marín's additional paragraph one hundred and fifty-one but denies that Chief Pérez was AUSA Márquez-Marín's supervisor during this period, stating that SUSA Capó was her supervisor.  DRPSAMF ¶ 151.  As the Court is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín, the Court declines to credit the DOJ's denial.

DRPSAMF ¶ 151.  By March 12, 2014, AUSA Márquez-Marín had already written two drafts of two appeal briefs, *United States v. Figueroa-Cruz*, docket number 13-1526, and *United States v. Santiago Burgos*, docket number 13-2457, and was in the process of integrating comments by Chief Pérez.  PSAMF ¶ 152; DRPSAMF ¶ 152.

> ### k.   Carmen Márquez-Marín's March 31, 2014, Return to Work, Performance Evaluation, and Subsequent Events

On March 31, 2014, AUSA Márquez-Marín returned to the USAO.[139]  *Stip.* ¶ 95; PSAMF ¶ 153; DRPSAMF ¶ 153; DSMF ¶ 77; PRDSMF ¶ 77.  The following day, she met with SUSA Capó to review the status of her cases, after which he provided her with her evaluation for her work in 2013.  *Stip.* ¶ 95; DSMF ¶ 77; PRDSMF ¶ 77.

Within a few days, AUSA Márquez-Marín was hit with two difficult situations: (1) being told that SUSA Capó had certified as "sick leave" some of the time she had been teleworking, which she testified caused an "audit" against her for taking leave with a negative balance; and (2) a lower evaluation by SUSA Capó on the productivity element.[140]  PSAMF ¶ 154; DRPSAMF ¶ 154.

---

[139]    In her additional paragraph one hundred and fifty-three, AUSA Márquez-Marín states she returned to work at the USAO on April 1, 2014.  PSAMF ¶ 153.  The DOJ denies the assertion, stating that she returned to work on March 31, 2014.  DRPSAMF ¶ 153.  The parties stipulate that AUSA Márquez-Marín returned to work on March 31, 2014.  *Stip.* ¶ 153.  The Joint Stipulation controls over the statements of fact and the Court therefore used March 31, 2014, as the return to work date.

[140]    The DOJ admits in part and denies in part AUSA Márquez-Marín's additional paragraph one hundred and fifty-four.  DRPSAMF ¶ 154.  The DOJ objects to the portions of the paragraph which state that her taking sick leave caused the audit and that she was told about the issue rather than learning through the computer.  DRPSAMF ¶ 154.  As AUSA Márquez-Marín's statement is corroborated by her sworn declaration, the Court rejects the DOJ's denial because it is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín.  The Court altered the paragraph slightly to clarify that the causation element is based on AUSA Márquez-Marín's testimony.  The DOJ also contests AUSA Márquez-Marín's view of the circumstances surrounding her lower

On April 10, 2014, Budget Officer Morales informed AUSA Márquez-Marín that the "audit was now complete" and that there was a "discrepancy" with respect to her leave, and Officer Morales stated that AUSA Márquez-Marín's annual leave would have to be "readjusted" to cover the purported "deficit" for extra hours claimed as sick time. PSAMF ¶ 155; DRPSAMF ¶ 155. AUSA Márquez-Marín had no idea what Officer Morales was referring to when she mentioned the "audit." PSAMF ¶ 156; DRPSAMF ¶ 156. She said to Officer Morales, "[W]hat are you talking about? I mean, like I don't understand. I only used one week of sick leave. How can you say that I used more than I had?" PSAMF ¶ 156; DRPSAMF ¶ 156. Officer Morales said, "Well, we put you on sick leave that week." PSAMF ¶ 157; DRPSAMF ¶ 157. AUSA Márquez-Marín later found out that SUSA Capó had certified that AUSA Márquez-Marín was on (unaccrued) sick leave at a time when he plainly knew that she was teleworking.[141] PSAMF ¶ 158; DRPSAMF ¶ 158. This meant she would have been without income for a period of time.[142] PSAMF ¶ 159; DRPSAMF ¶ 159.

---

productivity rating. DRPSAMF ¶ 154. For the same reason, the Court rejects the DOJ's view of these contested facts and accepts AUSA Márquez-Marín's view.

[141] The DOJ admits that SUSA Capó approved the sick leave request, but it interposes a qualified response that the fact that someone is teleworking does not prevent the employee from taking sick leave. DRPSAMF ¶ 158. The Court declines to accept the DOJ's qualified response because it is non-responsive to whether AUSA Márquez-Marín's additional paragraph one hundred and fifty-eight is itself accurate.

[142] In her additional paragraph one hundred and fifty-nine, AUSA Márquez-Marín states that the treatment of her teleworking time as sick leave would have caused her to go without income for a period of time. PSAMF ¶ 159. The DOJ denies this allegation, stating that it would have affected her annual leave, which is what Officer Morales told AUSA Márquez-Marín. DRPSAMF ¶ 159. Based on AUSA Márquez-Marín's additional paragraph one hundred and fifty-five, the Court is skeptical that the DOJ would have made deductions from AUSA Márquez-Marín's salary, so that she would have been without income. *See* PSAMF ¶ 155. But the Court is required to view contested facts in the light most favorable to AUSA Márquez-Marín and therefore included the statement.

The second major problem AUSA Márquez-Marín encountered upon her return to work was when, on April 1, 2014, she met with SUSA Capó to review the status of her cases, and he handed her his evaluation for her work in 2013.[143]   *Stip.* ¶ 95; PSAMF ¶ 162; DRPSAMF ¶ 162; DSMF ¶ 77; PRDSMF ¶ 77.   AUSA Márquez-Marín received an overall "outstanding" rating, with "outstanding" ratings in three categories and "successful" ratings in two categories.   *Stip.* ¶ 95; DSMF ¶ 77; PRDSMF ¶ 77.   One of the "successful" ratings was for productivity.   *Stip.* ¶ 95; DSMF ¶ 77; PRSAMF ¶ 77.   This rating was the middle grade and was down from the "outstanding" AUSA Márquez-Marín had received the year before.[144]   PSAMF ¶ 162; DRPSAMF ¶ 162.   Both SUSA Capó and Chief Ruiz had signed the evaluation.   *Stip.* ¶ 95; DSMF ¶ 77; PRDSMF ¶ 77.

USAP 3-4.430.001 is titled "Performance Evaluation Handbook."   *Stip.* ¶ 96. SUSA Capó told AUSA Márquez-Marín that she was an excellent prosecutor but during the year 2013, she "could have done more."   PSAMF ¶ 163; DRPSAMF ¶ 163. AUSA Márquez-Marín was upset by the "successful" productivity rating even though

---

[143]   The DOJ denies the portion of AUSA Márquez-Marín's additional paragraph one hundred and sixty-two that states the meeting happened on April 2, 2014.   DRPSAMF ¶ 162.   The parties stipulate that AUSA Márquez-Marín returned to work on March 31, 2014.   *Stip.* ¶ 153.   The Joint Stipulation controls over the statements of fact and the Court therefore used March 31, 2014, as the return to work date.   This means that the date of the meeting with SUSA Capó is deemed April 1, not April 2.

The DOJ denies that the productivity evaluation was a "major problem" for AUSA Márquez-Marín.   DRPSAMF ¶ 162.   The Court rejects the DOJ's denial because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

[144]   The DOJ qualifies its response to AUSA Márquez-Marín's additional paragraph one hundred and sixty-two, asserting that a prior rating does not entitle an employee to the same rating the next year.   DRPSAMF ¶ 162.   The Court rejects the DOJ's qualified response because AUSA Márquez-Marín's additional paragraph does not state or imply that because an employee received a higher rating one year she is entitled to receive the same rating in subsequent years.

it had no effect on her overall rating.  *Stip.* ¶ 97; DSMF ¶ 77; PRDSMF ¶ 77.  She felt she deserved an "outstanding" rating.  *Stip.* ¶ 97; DSMF ¶ 77; PRDSMF ¶ 77.

Although he did not offer this explanation at the time, later in December 2014 during the EEO investigation, SUSA Capó explained how he evaluated AUSA Márquez-Marín's productivity.[145]  DSMF ¶ 78; PRDSMF ¶ 78.  He looked at AUSA Márquez-Marín's caseload at the time, as well as the number and complexity of the cases she had indicted.  DSMF ¶ 78; PRDSMF ¶ 78.  He also looked at how long it took these cases to come to an end "because one thing is indicting a case and the other one is how fast you can actually finalize the case either through a plea via agreement or through trial."  DSMF ¶ 78; PRDSMF ¶ 78.  Moreover, although he attempted to look at AUSAs individually (taking into account their level of experience and their caseload), he noted that he "also ha[s] to take into account some sort of comparison as to other AUSAs with similar experience or with less experience, how is it that their job compares to what others are doing."  DSMF ¶ 78; PRDSMF ¶ 78.  SUSA Capó noted that to get an "outstanding" rating, one has to perform work deserving of special recognition.  DSMF ¶ 78; PRDSMF ¶ 78.  Chief Ruiz expressed a similar sentiment. DSMF ¶ 78; PRDSMF ¶ 78.

Applying these standards, SUSA Capó noted that AUSA Márquez-Marín had about thirty cases with "probably 32, 33 defendants" that she had handled during the

---

[145]    AUSA Márquez-Marín interposes a qualified response, noting that SUSA Capó did not offer this explanation at the time but rather in December 2014 when he presented a factual averment during the EEO investigation.  PRDSMF ¶ 78.  The Court amended the statement accordingly.  The Court disregards AUSA Márquez-Marín's further qualification regarding completeness because the facts discussed are already in the record elsewhere.  *See* PSAMF ¶ 163.

entire year.[146]  DSMF ¶ 79; PRDSMF ¶ 79.  SUSA Capó clarified that his reference to thirty-two or thirty-three defendants was the number of defendants charged through indictments or informations.  DSMF ¶ 79; PRDSMF ¶ 79.  SUSA Capó understood that AUSA Márquez-Marín was out for part of the year because of health issues but stated that "based on the time she was here . . . her productivity levels were . . . below all of the AUSAs within the Violent Crimes Unit and she at the time was the most experienced AUSA within the [Unit]."  DSMF ¶ 79 (alterations in original); PRDSMF ¶ 79.

SUSA Capó also noted that AUSA Márquez-Marín was the environmental crimes coordinator, and part of her job was to seek cases from the different agencies involved in these issues.  DSMF ¶ 79; PRDSMF ¶ 79.  Given this duty, he was surprised that her caseload was so light when she was supposed to be seeking cases directly from other agencies.  DSMF ¶ 79; PRDSMF ¶ 79.  SUSA Capó further noticed it took a long time for some of AUSA Márquez-Marín's cases to actually be disposed of, either through a plea agreement or through trial.  DSMF ¶ 79; PRDSMF ¶ 79.  He stated he did not believe her work was deserving of special recognition.  DSMF ¶ 79; PRDSMF ¶ 79.

On April 2, 2014, AUSA Márquez-Marín requested reconsideration of the evaluation by directing an extensive email to Chief Ruiz, providing a number of

---

[146]    AUSA Márquez-Marín admits the DOJ's paragraph seventy-nine as an "adequate summary of the justifications which [SUSA] Capó has provided for his decision" but states that "this does not mean that these were, in fact, the reasons for his decisions."  PRDSMF ¶ 79.  The Court disregards this comment for the purposes of this summary judgment motion but altered the paragraph slightly to clarify that SUSA Capó provided these reasons during a deposition.

reasons why she believed that the evaluation on the productivity element was unfair and copying United States Attorney Rodríguez and FAUSA Domínguez. *Stip.* ¶ 97; PSAMF ¶ 165; DRPSAMF ¶ 165; DSMF ¶ 80; PRDSMF ¶ 80. AUSA Márquez-Marín questioned the lower rating, noting that she had been working through significant medical treatments and operations. PSAMF ¶ 164; DRPSAMF ¶ 164. She complained that SUSA Capó had refused to assign co-counsel in her cases when she was out of the office after her surgery and that he had refused to certify her hours when she had been teleworking. *Stip.* ¶ 97; DSMF ¶ 80; PRDSMF ¶ 80. She took note of the following: that SUSA Vázquez, not SUSA Capó, had been her supervisor for the first three months of 2013, that she had more than two hundred defendants in her inventory, that she had been in chemotherapy for the first five months with her recovery just beginning at the end of June 2013, and that she had handled the multi-defendant *Lloréns Torres* case, achieving pleas from every defendant. PSAMF ¶ 165; DRPSAMF ¶ 165. AUSA Márquez-Marín also stated that Chief Ruiz had named her as the environmental crimes coordinator and that in that role she had handled a multi-defendant investigation, which resulted in several indictments, and the investigation of another major environmental case which was very high-profile in Puerto Rico. PSAMF ¶ 165; DRPSAMF ¶ 165. Further, AUSA Márquez-Marín noted that on November 3, she was in trial in a very contentious matter, accompanying SAUSA Figueroa—who had never been on trial—for which she was commended by FAUSA Domínguez, who told her the Chief Judge of the District of Puerto Rico had told FAUSA Domínguez about the excellent job AUSA Márquez-Marín had done in

that trial.  PSAMF ¶ 166; DRPSAMF ¶ 166.  AUSA Márquez-Marín added complaints about her 2013 productivity rating, citing all of the work she had done while undergoing chemotherapy and caring for her children.  *Stip.* ¶ 97.

AUSA Márquez-Marín wrote in the email that based on these acts, she was "starting to see an unnerving pattern of disparate treatment and retaliation" on the part of SUSA Capó as evidenced by his lengthy delay in assigning co-counsel for her cases during her absence from the office, all of which was creating "unnecessary stress that without a doubt [wa]s making [her] recovery much more difficult."  *Stip.* ¶ 97; PSAMF ¶ 167; DRPSAMF ¶ 167; DSMF ¶ 80; PRDSMF ¶ 80.  She also wrote, "Since I don't know Mr. Cap[ó] on a personal level and my professional experience with him has been limited, I can only conclude that his actions and attitudes towards me arise from the fact that as everyone else in the office knows . . . I was reinstated by the Court after prevailing on a trial for retaliatory actions from this Office."  *Stip.* ¶ 97; DSMF ¶ 80; PRDSMF ¶ 80.  She affirmed her belief that these actions were retaliatory for her prior EEO activity.  PSAMF ¶ 164; DRPSAMF ¶ 164.  AUSA Márquez-Marín asked Chief Ruiz to reconsider not only her productivity rating but all of SUSA Capó's actions towards her, since she "kn[e]w they had to be known by all upper management."  *Stip.* ¶ 97; PSAMF ¶ 164; DRPSAMF ¶ 164; DSMF ¶ 80; PRDSMF ¶ 80.  By this time, it was just a few months after SUSA Capó had seen Specialist Reyes conversing with AUSA Márquez-Marín about his EEO concerns.[147] PSAMF ¶ 168; DRPSAMF ¶ 168.

---

[147]    The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred and sixty-eight. DRPSAMF ¶ 168.  The DOJ is troubled by the lack of specificity as to when the conversation between

Upon receipt of this email, FAUSA Domínguez emailed Officer López, Chief Ruiz, SUSA Capó, and Special Counsel Novas (and copied United States Attorney Rodríguez). *Stip.* ¶ 98; DSMF ¶ 81; PRDSMF ¶ 81.  FAUSA Domínguez wrote, "We need to schedule a meeting to discuss [the email] tomorrow.  These allegations cannot go unanswered.  [Chief Ruiz], as the reviewing official you will have to discuss the ratings with [SUSA] Capó and make a final call.  I am also concerned about the allegations of disparate treatment and retaliation.  I think the office has been more than fair to [AUSA Márquez-Marín] in helping her deal with her situation." *Stip.* ¶ 98; DSMF ¶ 81; PRDSMF ¶ 81.

The following day, April 3, 2014, Chief Ruiz wrote AUSA Márquez-Marín and informed her that he intended to take a fresh look at her productivity rating.[148] *Stip.* ¶ 99; DSMF ¶ 82; PRDSMF ¶ 82.  Chief Ruiz asked her to provide him with information about her cases—specifically (1) all criminal cases she had indicted during the 2013 rating period, (2) all criminal trials in which she had participated either as lead or second counsel, and (3) all grand jury investigations opened during the rating period.  DSMF ¶ 82; PRDSMF ¶ 82.  Chief Ruiz attached several tables to the email to assist her in this process.  DSMF ¶ 82; PRDSMF ¶ 82.  AUSA Márquez-

---

AUSA Márquez-Marín and Specialist Reyes took place.  DRPSAMF ¶ 168.  It also reiterates its concern that there is no evidence SUSA Capó heard what they were discussing.  DRPSAMF ¶ 168.

The Court overrules the DOJ's denial.  An earlier additional paragraph confirms that this conversation took place in late 2013, which could be thought of as "just a few months."  *See* PSAMF ¶ 122; DRPSAMF ¶ 122.  Another additional paragraph confirms that SUSA Capó saw them talking.  *See* PSAMF ¶ 123; DRPSAMF ¶ 123.  Furthermore, the paragraph does not allege that SUSA Capó heard what Specialist Reyes and AUSA Márquez-Marín were discussing, only that he "had seen" them talking.

[148]    AUSA Márquez-Marín admits the DOJ's paragraph eighty-two but clarifies that she "is not agreeing to the truth of the *contents* of what he wrote."  PRDSMF ¶ 82.  The Court disregards this comment for the purposes of this summary judgment motion.

Marín responded on April 4, 2014.[149]  *Stip.* ¶ 100; DSMF ¶ 83; PRDSMF ¶ 83.  She thanked Chief Ruiz for his prompt response to such an important matter.  DSMF ¶ 83; PRDSMF ¶ 83.  She sent him case data showing the number of defendants in the fifty-one cases she had been assigned in 2013, almost twice the number of the prior year; her 2013 calendar with all her hearings and medical appointments; and a transcript of a trial that she had worked on with SAUSA Figueroa.  DSMF ¶ 83; PRDSMF ¶ 83.  She also discussed indictments she had obtained, investigations she had opened, and other cases moving towards indictment.  DSMF ¶ 83; PRDSMF ¶ 83. She invited Chief Ruiz to speak with then Chief Judge Aida Delgado-Colón regarding her performance in a case that went to trial for which she had volunteered to act as lead counsel, despite prior "lack of action by [SUSA] Capó."  DSMF ¶ 83; PRDSMF ¶ 83.

During the period April 10 through April 15, 2014, Chief Ruiz and AUSA Márquez-Marín exchanged a series of emails about the indictments and informations that AUSA Márquez-Marín presented in 2013.  DSMF ¶ 84; PRDSMF ¶ 84.  After numerous emails back and forth and numerous updates of the tables that Chief Ruiz had provided, Chief Ruiz asked AUSA Márquez-Marín to review the data he had compiled and to let him know if any additions needed to be made.  DSMF ¶ 84; PRDSMF ¶ 84.  On April 15, 2014, AUSA Márquez-Marín responded that at plain view the information seemed to be correct—thirty-two defendants charged via

---

[149]    Although not denying the content of the DOJ's paragraph eighty-three, AUSA Márquez-Marín adds a series of facts to her qualified response to the DOJ's paragraph eighty-three.  PRDSMF ¶ 83. The Court incorporated AUSA Márquez-Marín's facts to more accurately reflect the record and because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

indictments and informations.  DSMF ¶ 84; PRDSMF ¶ 84.  At around the same time, Chief Ruiz inquired about AUSA Márquez-Marín's work on several environmental matters.  DSMF ¶ 84; PRDSMF ¶ 84.

On April 8, 2014, AUSA Márquez-Marín wrote to SUSA Capó to ask about her "duty day."[150]  *Stip.* ¶ 101; DSMF ¶ 89; PRDSMF ¶ 89.  She asked SUSA Capó if she could switch her duty assignment because her children were out of school and she was having difficulty finding people to take care of them.  DSMF ¶ 89; PRDSMF ¶ 89. SUSA Capó responded that he had no problem with the change.  DSMF ¶ 89; PRDSMF ¶ 89.

Meanwhile, FAUSA Domínguez spoke to SUSA Capó concerning AUSA Márquez-Marín's concerns about his supervision of her.[151]  DSMF ¶ 85; PRDSMF ¶ 85.  Based on what SUSA Capó told her, FAUSA Domínguez concluded that, although SUSA Capó and AUSA Márquez-Marín had not communicated well, SUSA Capó had not been unfair or abusive to her.  DSMF ¶ 85; PRDSMF ¶ 85.  FAUSA

---

[150]    AUSA Márquez-Marín objects to the DOJ's characterization of the facts in the DOJ's paragraph eighty-nine as indicative of its support for AUSA Márquez-Marín.  PRDSMF ¶ 89.  The Court agrees with AUSA Márquez-Marín and included just the facts, not DOJ's characterization of those facts.  AUSA Márquez-Marín also objects to the facts in paragraph eighty-nine as immaterial. PRDSMF ¶ 89.  The Court disagrees and views these facts as some evidence that the DOJ was not discriminating against AUSA Márquez-Marín since it congratulated her, so the Court rejects this objection.  The Court disregards AUSA Márquez-Marín's other qualifications of paragraph eighty-nine as irrelevant to the facts in the paragraph.

[151]    AUSA Márquez-Marín denies the DOJ's paragraph eighty-five, positing that it misrepresents FAUSA Domínguez's testimony.  PRDSMF ¶ 85.  Given its obligation to view disputed matters in the light most favorable to AUSA Márquez-Marín, the Court incorporated AUSA Márquez-Marín's objections into the DOJ's paragraph but did not strike it.

    AUSA Márquez-Marín also denies paragraph eighty-five because it directly contradicts SUSA Capó's sworn testimony concerning who was monitoring the cases, him or other AUSAs, and his refusal to assign co-counsel.  PRDSMF ¶ 85.  The Court rejects this denial because previous facts establish that SUSA Capó first monitored AUSA Márquez-Marín's cases himself and then assigned co-counsel once he realized AUSA Márquez-Marín would be teleworking for longer than originally planned.  *See* DSMF ¶¶ 64, 67, 72-73; PSAMF ¶ 142-44, 149.  Thus, the Court does not see FAUSA Domínguez's and SUSA Capó's statements as contradictory.

Domínguez noted that SUSA Capó had taken the necessary steps to ensure that nothing would "fall through the cracks" on AUSA Márquez-Marín's cases while she was out of the office.  DSMF ¶ 85; PRDSMF ¶ 85.

On April 9, 2014, FAUSA Domínguez wrote a lengthy email to AUSA Márquez-Marín in response to her allegations about SUSA Capó.[152]  *Stip.* ¶ 102; PSAMF ¶ 169; DRPSAMF ¶ 169; DSMF ¶ 86; PRDSMF ¶ 86.  At the outset of her email, FAUSA Domínguez told AUSA Márquez-Marín that if she felt she was the victim of disparate treatment or retaliation, she should contact an EEO counselor.  PSAMF ¶ 170; DRPSAMF ¶ 170; DSMF ¶ 86; PRDSMF ¶ 86.  FAUSA Domínguez encouraged SUSA Capó and AUSA Márquez-Marín "to maintain more open lines of communication."  DSMF ¶ 86; PRDSMF ¶ 86.  FAUSA Domínguez also stated that AUSA Márquez-Marín's email reflected a number of concerns that "appear to be made in the absence of the consideration of several facts."  DSMF ¶ 86; PRDSMF ¶ 86.  First, in response to AUSA Márquez-Marín's April 2 statement that she was "accustomed" to receiving an "outstanding" rating, FAUSA Domínguez pointed out that "[n]o employee is entitled to an outstanding rating merely because she may have received an outstanding rating in the past."  DSMF ¶ 86; PRDSMF ¶ 86.  This principle is enshrined in the USAP 3-4.430.001: "A rating or record . . . may not be assumed, e.g.,

---

[152]   AUSA Márquez-Marín admits the eleven sentences in DOJ's paragraph eighty-six as accurate reflections of FAUSA Domínguez's April 9 letter but asserts that FAUSA Domínguez's conclusions regarding the co-counsel issue are directly contradicted by various other sources on the record. PRDSMF ¶ 86.  The Court disregards this comment because paragraph eighty-six presents this conclusion as FAUSA Domínguez's statement rather than true fact.

by 'carrying over' the rating of record from any previous appraisal period." DSMF ¶ 86 (alteration in original); PRDSMF ¶ 86.

Second, FAUSA Domínguez enumerated what she stated were the various steps that SUSA Capó had taken to ensure that AUSA Márquez-Marín's cases were covered when she was out of the office. DSMF ¶ 86; PRDSMF ¶ 86. Third, she discussed AUSA Márquez-Marín's concern that many of her cases were not reassigned to other AUSAs. DSMF ¶ 86; PRDSMF ¶ 86. Fourth, in response to AUSA Márquez-Marín's claim that SUSA Capó had "put obstacles and did not want to certify the work [she] did while [teleworking]," FAUSA Domínguez noted that it had been SUSA Capó who had favorably recommended the approval of her telework request. DSMF ¶ 86 (alterations in original); PRDSMF ¶ 86. Moreover, FAUSA Domínguez explained that SUSA Capó could not responsibly certify AUSA Márquez-Marín's work hours unless she was reporting back to him the hours she was working from home while unsupervised. DSMF ¶ 86; PRDSMF ¶ 86. FAUSA Domínguez wrote, "This is not a question of lack of trust, it is a question of accountability by a supervisor who must have some basis to justify his certification of the hours you worked." DSMF ¶ 86; PRDSMF ¶ 86. Finally, FAUSA Domínguez stated, "I conclude by assuring you that you are a valued and esteemed member of this office, and that your dedication and work is appreciated by us. We are pleased to have you back, and hope your health continues to improve." DSMF ¶ 86; PRDSMF ¶ 86.

The next day, AUSA Márquez-Marín replied, referring to several matters. *Stip.* ¶ 103; PSAMF ¶ 171; DRPSAMF ¶ 171. AUSA Márquez-Marín wrote that she

"devote[s] a lot of effort to be productive and efficient because [she] know[s] that [she is] rendering a public service to [her] community and the end results of [her] efforts will have a positive effect in the island . . .. This conviction is what gives [her] peace and strength to keep working and to deal with all these continuous, unpleasant and unnecessary peripheral matters."  PSAMF ¶ 171; DRPSAMF ¶ 171.[153]  She also stated in part:

> I am sure that everyone in this Office knows that I am very familiar with the EEO process since I had to devote years of my life to make sure that it was enforced here.  Needless to say, both I and my attorney know the EEO address and how to proceed.

*Stip.* ¶ 103; DSMF ¶ 87; PRDSMF ¶ 87.

Also, on April 10, 2014, AUSA Márquez-Marín sent an email to SUSA Capó and Budget Officer Morales and stated that she intended to take annual leave the next day.  *Stip.* ¶ 104; DSMF ¶ 88; PRDSMF ¶ 88.  Officer Morales acknowledged the email but also noted that there had been a leave audit done.  *Stip.* ¶ 104; DSMF ¶ 88; PRDSMF ¶ 88.  Officer Morales said there were discrepancies with AUSA Márquez-Marín's sick leave and that they had to adjust her annual leave balance to cover the deficit.  *Stip.* ¶ 104; DSMF ¶ 88; PRDSMF ¶ 88.  The next week, after reviewing her leave records, AUSA Márquez-Marín pointed out to Officer Morales that she had been teleworking during the dates February 24-28, 2014, when she had been charged with sick leave.  *Stip.* ¶ 104; DSMF ¶ 88; PRDSMF ¶ 88.  Officer Morales agreed to correct

---

[153]     AUSA Márquez-Marín's additional paragraph one hundred and seventy-two points out that in its statement of material facts, the DOJ limited its discussion of her April 10, 2014, email.  PSAMF ¶ 172.  The Court declines to include paragraph one hundred and seventy-two because it is apparent that both parties are focusing on only portions of the April 10, 2014, email.

the error, and on April 16, 2014, she did so and informed AUSA Márquez-Marín.  *Stip.*
¶ 104; DSMF ¶ 88; PRDSMF ¶ 88.

On April 25, 2014, SUSA Capó emailed the entire USAO Criminal Division to
congratulate AUSA Márquez-Marín and SAUSA Figueroa on their victory at trial.
*Stip.* ¶ 105; DSMF ¶ 89; PRDSMF ¶ 89.  On April 26, 2014, United States Attorney
Rodríguez congratulated AUSA Márquez-Marín and SAUSA Figueroa.  *Stip.* ¶ 105;
DSMF ¶ 89; PRDSMF ¶ 89.  On April 28, 2014, Special Counsel Novas congratulated
AUSA Márquez-Marín.  *Stip.* ¶ 105; DSMF ¶ 89; PRDSMF ¶ 89.  Although AUSA
Márquez-Marín contends that even after the raise, she was still paid less than
comparable employees, in April or on one of the first three days of May 2014, United
States Attorney Rodríguez gave AUSA Márquez-Marín a raise of $6132 during the
APR process.[154]  *Stip.* ¶ 106; DSMF ¶ 90; PRDSMF ¶ 90.  On May 14, 2014, in follow-
up to an earlier conversation with United States Attorney Rodríguez, AUSA
Márquez-Marín emailed United States Attorney Rodríguez (copying Officer López) to
express her concerns about her pay.[155]  DSMF ¶ 91; PRDSMF ¶ 91.  According to
United States Attorney Rodríguez, she was unaware of the Márquez-Marín email
when—in accordance with her practice of meeting individually with each AUSA—she

---

[154]    AUSA Márquez-Marín admits the fact of the raise, but she points out that in her view, she was
still paid less than comparable employees.  PRDSMF ¶ 90.  Because it is required to view contested
facts in the light most favorable to AUSA Márquez-Marín, the Court added her assertion to its
statement of facts.

[155]    AUSA Márquez-Marín admits that she wrote the May 14, 2014, email, but she objects to the
DOJ's term that she "complained" about her level of pay.  PRDSMF ¶ 91.  She adds that she wrote this
email as a follow-up to her conversation with United States Attorney Rodríguez the year before.
PRDSMF ¶ 91.  In accordance with its obligation to view contested facts in the light most favorable to
AUSA Márquez-Marín, the Court altered the paragraph to reflect that she "expressed concern" about
her level of pay and that this email was a follow-up.

met with AUSA Márquez-Marín to inform her about the raise.[156]   DSMF ¶ 92; PRDSMF ¶ 92.  United States Attorney Rodríguez stated, "I just want to let you know that I have decided to give you a pay increase.  Thank you.  And it is one of the highest one[s]."  DSMF ¶ 92; PRDSMF ¶ 92.

When United States Attorney Rodríguez invited AUSA Márquez-Marín to respond, AUSA Márquez-Marín reiterated the concerns in her May 14, 2014, email. DSMF ¶ 92; PRDSMF ¶ 92.  She compared herself to certain other AUSAs within the USAO.  DSMF ¶ 92; PRDSMF ¶ 92.  According to AUSA Márquez-Marín, United States Attorney Rodríguez replied that the difference between AUSA Márquez-Marín and those other AUSAs was the fact that AUSA Márquez-Marín had been out of the office for several years when handling her prior lawsuit.  DSMF ¶ 92; PRDSMF ¶ 92. AUSA Márquez-Marín stated that it was improper for United States Attorney Rodríguez to consider that factor and pointed to the Court's prior reinstatement order.  DSMF ¶ 92; PRDSMF ¶ 92.  She urged United States Attorney Rodríguez to review it and said United States Attorney Rodríguez could talk to Officer López. DSMF ¶ 92; PRDSMF ¶ 92.  United States Attorney Rodríguez subsequently spoke

---

[156]    AUSA Márquez-Marín denies the first statement in paragraph ninety-two that asserts as a fact that United States Attorney Rodríguez did not see AUSA Márquez-Marín's email on the ground that it is not supported by the record citation.  PRDSAMF ¶ 92.  The Court reviewed the record citation and agrees that it does not support the proposition.  The Court excluded the first sentence.  AUSA Márquez-Marín also denies the second sentence on the same ground.  PRDSMF ¶ 92.  The Court reviewed the record citation and overrules AUSA Márquez-Marín's objection because the record citation supports United States Attorney Rodríguez's statement that she did not see the email.  The Court altered the paragraph to clarify that the statement is according to United States Attorney Rodríguez's testimony.

The Court rejects AUSA Márquez-Marín's further qualification of the paragraph, PRDSMF ¶ 92, because it does not find a contradiction between the paragraph and the qualification.

to Officer López, who affirmed that AUSA Márquez-Marín's salary had been properly calculated.  DSMF ¶ 92; PRDSMF ¶ 92.

On May 16, 2014, AUSA Márquez-Marín met with Chief Ruiz to discuss a case.  *Stip.* ¶ 107; DSMF ¶ 93; PRDSMF ¶ 93.  At the end of the discussion, Chief Ruiz gave her a seven-page letter with the outcome of his review of her 2013 productivity evaluation.  *Stip.* ¶ 107; DSMF ¶ 93; PRDSMF ¶ 93.  Chief Ruiz's letter did mathematical comparisons between AUSA Márquez-Marín's work and that of three unidentified AUSAs and, to AUSA Márquez-Marín's knowledge, none of them had worked through chemotherapy and three operations during the year.[157]  PSAMF ¶ 178; DRPSAMF ¶ 178.  Chief Ruiz upheld the original "successful" rating.  *Stip.* ¶ 107; PSAMF ¶ 178; DRPSAMF ¶ 178; DSMF ¶ 93; PRDSMF ¶ 93.

Later that afternoon, AUSA Márquez-Marín sent an email to FAUSA Domínguez in which she complained about Chief Ruiz's review.  *Stip.* ¶ 108; DSMF ¶ 94; PRDSMF ¶ 94.  She argued that Chief Ruiz did not take into consideration that she had in her inventory close to three hundred defendants from complex cases that were assigned to her before 2013, which she also had to manage.  DSMF ¶ 94; PRDSMF ¶ 94; PSAMF ¶ 179; DRPSAMF ¶ 179.  AUSA Márquez-Marín stated among other things that Chief Ruiz was "comparing apples to oranges," that he was

---

[157]   The DOJ denies that AUSA Márquez-Marín's cited authority addresses whether the three unknown AUSAs had worked through chemotherapy and three operations during the year.  DRPSAMF ¶ 178.  The Court reviewed the cited authority and finds that it does not directly support AUSA Márquez-Marín's statement.  *See* DSMF ¶ 94.  Nevertheless, it is highly implausible that three AUSAs in the Puerto Rico USAO underwent chemotherapy and three surgical operations during the same period that AUSA Márquez-Marín underwent these treatments.  The Court amended the paragraph to reflect that it is based on AUSA Márquez-Marín's personal knowledge of the AUSA workforce at the Puerto Rico USAO.

using criteria that do not appear in any DOJ manual, and that he had committed serious errors in his listing of her cases and her caseload, failing to take into account complex cases which were started before that year but which required considerable attention.[158]  PSAMF ¶ 179; DRPSAMF ¶ 179.  AUSA Márquez-Marín criticized Chief Ruiz for giving a "highly improper and negative connotation to the fact that she was 'absent from the office for a considerable amount of time'" and she pointed out that he failed to consider that she had undergone chemotherapy in 2013.  DSMF ¶ 94; PRDSMF ¶ 94; PSAMF ¶ 179; DRPSAMF ¶ 179.  To support her productivity, she attached the "Alcatraz" Program list to her email.  PSAMF ¶ 179; DRPSAMF ¶ 179.  She concluded by saying that Chief Ruiz's evaluation added to the hostile work environment and asked FAUSA Domínguez to reconsider her productivity rating.  DSMF ¶ 94; PRDSMF ¶ 94.

Management did not change Chief Ruiz's evaluation.  PSAMF ¶ 180; DRPSAMF ¶ 180.  Instead, it used a unique formula which to AUSA Márquez-Marín's knowledge was applied only to her, which did not appear in DOJ policies, and which purported to show that AUSA Márquez-Marín was not "productive" enough for an "outstanding" rating.[159]  PSAMF ¶ 180; DRPSAMF ¶ 180.

---

[158]    The DOJ denies that AUSA Márquez-Marín stated in her email that Chief Ruiz's evaluation had used criteria that do not appear in any DOJ manual.  DRPSAMF ¶ 179.  AUSA Márquez-Marín's May 16, 2014, email states that Chief Ruiz's analysis was "clearly predicated in formulas and considerations that were only designed and created for me."  PSAMF, Attach. 4, *Ex. X: Email from Márquez to Domínguez* at 1.  This is another way of saying that Chief Ruiz did not base his analysis on a DOJ manual.  The Court declines to accept the DOJ's denial.

[159]    The DOJ denies this portion of AUSA Márquez-Marín's additional paragraph one hundred and eighty, arguing that AUSA Márquez-Marín cannot rely on her own testimony alone to show that the formula was unique or used only for her since it is not within her personal knowledge.  DRPSAMF ¶ 180.  The Court declines to accept the DOJ's denial in full because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín and she had personal knowledge of the DOJ

On May 23, 2014, FAUSA Domínguez responded:

> If you are grieving your performance appraisal, then please follow the grievance procedures as set forth in USAP 3-4.771.001.  Your grievance should be directed to the undersigned as the FAUSA.  If you believe that your performance appraisal is based on discrimination or retaliation, then you may contact the EEO staff . . ..

*Stip.* ¶ 109 (alteration in original); DSMF ¶ 95; PRDSMF ¶ 95.

Also, on May 16, 2014, AUSA Márquez-Marín emailed SUSA Capó.[160]  *Stip.* ¶ 110; DSMF ¶ 96; PRDSMF ¶ 96.  AUSA Márquez-Marín stated that she had not used her lunch hour.  *Stip.* ¶ 110; DSMF ¶ 96; PRDSMF ¶ 96.  Since she needed to pick up her children an hour prior to the usual end of her work day, she asked SUSA Capó whether she could use the time she had available for lunch or whether he wanted her to request leave for an hour.  *Stip.* ¶ 110; DSMF ¶ 96; PRDSMF ¶ 96.  SUSA Capó responded that there was no need to submit a leave slip.  *Stip.* ¶ 110; DSMF ¶ 96; PRDSMF ¶ 96.  On June 10, 2014, United States Attorney Rodríguez approved a forty-hour (one week) time-off award for AUSA Márquez-Marín for her outstanding overall performance evaluation for 2013.  *Stip.* ¶ 111; DSMF ¶ 96; PRDSMF ¶ 96.  On June 20, 2014, AUSA Márquez-Marín emailed SUSA Capó that she had to leave thirty minutes early to pick up her children from camp, so she planned to take only a half-hour lunch to compensate.  *Stip.* ¶ 112; DSMF ¶ 96;

---

policies.  The Court slightly altered the paragraph to reflect that it is based on AUSA Márquez-Marín's knowledge.

The DOJ also denies that Chief Ruiz's review purported to show that AUSA Márquez-Marín was not productive.  The Court altered the paragraph to reflect the record on this point more accurately.

[160]    AUSA Márquez-Marín objects to the DOJ's characterization of the facts in its paragraph ninety-six as evidence of the DOJ's "continued support" of AUSA Márquez-Marín.  PRDSMF ¶ 96.  The Court agrees with AUSA Márquez-Marín and included the facts but not the DOJ's characterization of those facts.

PRDSMF ¶ 96.  She asked SUSA Capó if this arrangement was okay and he responded, "It's fine."  *Stip.* ¶ 112; DSMF ¶ 96; PRDSMF ¶ 96.

### l.   The Letter of Admonishment

At some point after July 14, 2014 (about a week before July 24, 2014), FAUSA Domínguez spoke with Special Agent Wallace Bustelo via telephone.  DSMF ¶ 97; PRDSMF ¶ 97.  Until May 31, 2014, Special Agent Bustelo had served as a SAUSA on detail from his regular position as a Special Agent at the Office of the Inspector General for the Department of Health and Human Services (HHS-OIG).  DSMF ¶ 97; PRDSMF ¶ 97.  His detail, however, had since ended, and he had returned to HHS-OIG.  DSMF ¶ 97; PRDSMF ¶ 97.  Special Agent Bustelo and FAUSA Domínguez knew each other; they had worked together on a fraud case in early 2014.  DSMF ¶ 97; PRDSMF ¶ 97.  During their telephone call, Special Agent Bustelo related to FAUSA Domínguez that Specialist Reyes and AUSA Márquez-Marín, in separate encounters, had asked him about an apartment rented by FAUSA Domínguez during the 2009 *Acevedo-Vilá* case.  DSMF ¶ 98; PRDSMF ¶ 98.

When first questioned about this conversation, Special Agent Bustelo denied that AUSA Márquez-Marín had asked him about the propriety of the apartment rental and whether it had been used by two USAO supervisors for romantic encounters.[161]  DSMF ¶ 98; PRDSMF ¶ 98.  Later, after considerable pressure from

---

[161]    In the DOJ's paragraph ninety-eight, it refers only to Special Agent Bustelo's second statement implicating AUSA Márquez-Marín, not his first statement in which he said she had not made this inquiry about the apartment.  DSMF ¶ 98.  AUSA Márquez-Marín objects and asks that both statements be included as well as her contention that FAUSA Domínguez pressured Special Agent Bustelo to make the second statement.  PRDSMF ¶ 98.  In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included her version. The Court also notes that the DOJ admitted AUSA Márquez-Marín's additional paragraph one

FAUSA Domínguez, Special Agent Bustelo changed his version of these events and said that AUSA Márquez-Marín and Specialist Reyes had suggested that the apartment had been improperly rented and used by two USAO supervisors (SUSAs Capó and Hernández, who were both AUSAs in 2009) for amorous encounters.  DSMF ¶ 98; PRDSMF ¶ 98.  Special Agent Bustelo also communicated that AUSA Márquez-Marín had said that she and Appellate Division Chief Pérez were helping Specialist Reyes with issues he had been having with management.  DSMF ¶ 98; PRDSMF ¶ 98.  FAUSA Domínguez asked Special Agent Bustelo to put his account into writing.  DSMF ¶ 98; PRDSMF ¶ 98.

Before he spoke with FAUSA Domínguez, Special Agent Bustelo mentioned the Márquez-Marín conversation to Héctor Ramírez, now Chief of the Civil Division, with whom he spoke frequently.  PSAMF ¶ 194; DRPSAMF ¶ 194.  Chief Ramírez, in turn, told him that he had to talk with FAUSA Domínguez, which he did.  PSAMF ¶ 194; DRPSAMF ¶ 194.  This was followed by a phone call from Chief Ruiz.  PSAMF ¶ 194; DRPSAMF ¶ 194.  The upper echelon of the USAO, FAUSA Domínguez, Chief Ruiz, and Special Counsel Novas, became involved in this matter and in drafting an admonishment letter to AUSA Márquez-Marín.[162]  PSAMF ¶ 195; DRPSAMF ¶ 195.  Before issuing the admonishment letter to AUSA Márquez-Marín, the USAO had not

---

hundred and ninety-seven, which describes Special Agent Bustelo's first statement the same way.  *See* PSAMF ¶ 197; DRPSAMF ¶ 197.

     The Court rejects AUSA Márquez-Marín's further qualification regarding being a witness for Specialist Reyes in his EEO process, PRDSMF ¶ 98, because it is not relevant to this paragraph.

[162]    The DOJ denies in part and qualifies in part AUSA Márquez-Marín's additional paragraph one hundred and ninety-five.  DRPSAMF ¶ 195.  The DOJ adds facts specifying the involvement of each named individual.  DRPSAMF ¶ 195.  As AUSA Márquez-Marín's paragraph only asserts that they were each involved and does not characterize their individual involvement, the Court rejects the DOJ's denial and qualified response.

interviewed AUSA Márquez-Marín and had not obtained a written version from Special Agent Bustelo regarding the conversation he had with AUSA Márquez-Marín.[163]  PSAMF ¶ 196; DRPSAMF ¶ 196.

FAUSA Domínguez reached out to members of the USAO management.  DSMF ¶ 99; PRDSMF ¶ 99.  For example, FAUSA Domínguez spoke with Chief Ruiz and told him that she wanted him to speak with Special Agent Bustelo as well.  DSMF ¶ 99; PRDSMF ¶ 99.  FAUSA Domínguez also spoke with Chief Pérez on July 21, 2014.  DSMF ¶ 99; PRDSMF ¶ 99.  Concerned that false allegations were possibly being made about Chief Pérez, who was a close friend, FAUSA Domínguez wanted him to know that it had been said that he had been helping Specialist Reyes.  DSMF ¶ 99; PRDSMF ¶ 99.  FAUSA Domínguez, however, refrained from speaking to AUSA Márquez-Marín.  DSMF ¶ 99; PRDSMF ¶ 99.

FAUSA Domínguez and Chief Ruiz consulted with then Special Counsel Novas about what should be done.  DSMF ¶ 100; PRDSMF ¶ 100.  Special Counsel Novas became involved because she supervised Specialist Reyes, but she was not involved in the decision-making process for AUSA Márquez-Marín.  DSMF ¶ 100; PRDSMF ¶ 100.  The EOUSA's General Counsel's Office (GCO) was also consulted on the matter.  DSMF ¶ 100; PRDSMF ¶ 100.  FAUSA Domínguez spoke with Chief Ruiz about AUSA Márquez-Marín in particular and they believed that an admonishment was sufficient because this was the first time she had been involved in an incident of

---

[163]      Although the DOJ admits AUSA Márquez-Marín's additional paragraph one hundred ninety-six, it seeks to add explanatory facts.  DRPSAMF ¶ 196.  The Court declines to include the DOJ's additional facts in the statement of facts because they do not contradict AUSA Márquez-Marín's paragraph one hundred ninety-six.

this nature and an admonishment was not formal discipline.  DSMF ¶ 101; PRDSMF ¶ 101.  They tentatively determined that Chief Ruiz would issue a letter of admonishment to AUSA Márquez-Marín but confirmed that he should also speak with Special Agent Bustelo directly, both to verify the allegations and since Chief Ruiz would be signing the letter.  DSMF ¶ 101; PRDSMF ¶ 101.  It was also tentatively decided, with Special Counsel Novas, to issue Specialist Reyes a letter of reprimand—a more severe sanction than a letter of admonishment—because he had a prior disciplinary history and progressive discipline merited a more serious sanction.  DSMF ¶ 101; PRDSMF ¶ 101.

On July 23, 2014, FAUSA Domínguez and Chief Ruiz worked to draft the admonishment letter for AUSA Márquez-Marín.  *Stip.* ¶ 114; DSMF ¶ 102; PRDSMF ¶ 102.  Special Counsel Novas assisted only in making minor edits that sought to protect the names of the supervisors involved.  DSMF ¶ 102; PRDSMF ¶ 102.

While the drafting process was ongoing, on July 23, 2014, Chief Ruiz spoke with Special Agent Bustelo.  *Stip.* ¶ 113; DSMF ¶ 103; PRDSMF ¶ 103.  Special Agent Bustelo confirmed that AUSA Márquez-Marín had been inquiring about the rental of the apartment by FAUSA Domínguez and about the possible improper use of the apartment.  DSMF ¶ 103; PRDSMF ¶ 103.

While the letter of admonishment process was proceeding, in July 2014, Specialist Reyes called AUSA Márquez-Marín and asked her if she could be a witness in connection with his EEO complaint.[164]  PSAMF ¶ 182; DRPSAMF ¶ 182.  She said

---

[164]   AUSA Márquez-Marín's additional paragraph one hundred and eighty-one states, "The issue of the admonishment letter, which is discussed at length at paragraphs 97 to 108 of defendants

that he could include her given that that she had been a victim of retaliation (including that determined by a federal court jury) and also because one of the reasons offered by management to justify his suspension in April 2014 involved his conduct with regard to a trial in which he helped her, but no one had called her to ask for her version of the events in which she was directly involved. PSAMF ¶ 182; DRPSAMF ¶ 182. AUSA Márquez-Marín told Specialist Reyes that the reason was "false" and to "include [her] because she []will clarify that." PSAMF ¶ 182 (alteration in original); DRPSAMF ¶ 182.

During the same period, Specialist Reyes consulted with AUSA Márquez-Marín with respect to a possible referral to the Office of Inspector General (OIG) and/or to the Special Counsel regarding the possible ethical violations related to an apartment which had been used by the office during a high-profile trial in 2009 against the then Governor.[165] PSAMF ¶ 183; DRPSAMF ¶ 183. Specialist Reyes believed that the apartment had been rented from a prominent defense attorney who also had a contract in the office, and he was concerned about the legality and ethical implications of this situation. PSAMF ¶ 183; DRPSAMF ¶ 183. AUSA Márquez-Marín responded by saying that these were serious allegations for which he should

---

Statement of Facts, at pages 30 to 34. The background of this complicated matter is discussed below." PSAMF ¶ 181. The DOJ denies AUSA Márquez-Marín's additional paragraph one hundred eighty-one on the ground that it is not a statement of fact. DRPSAMF ¶ 181. The Court agrees with the DOJ and did not include this paragraph in the statement of facts.

[165]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and eighty-three, stating that the "same period" she is referring to is vague and that AUSA Márquez-Marín's own testimony establishes that Specialist Reyes consulted with her before asking her to be a witness for his EEO complaint. DRPSAMF ¶ 183. The Court rejects this qualification because the paragraph does not specify whether the consultation was before or after Specialist Reyes asked AUSA Márquez-Marín to be a witness but rather that it happened during the same general period.

be certain he had evidence as well as clarity as to who the defense attorney was. PSAMF ¶ 184; DRPSAMF ¶ 184.   Shortly thereafter, on July 14, 2014, AUSA Márquez-Marín ran into Special Agent Bustelo who, according to Specialist Reyes, had provided the information with respect to the apartment and had also stated that it was used for improper trysts in the office.[166]   PSAMF ¶ 185; DRPSAMF ¶ 185.

According to Special Agent Bustelo, he asked AUSA Márquez-Marín, "Are you helping [Specialist Reyes]?" and AUSA Márquez-Marín replied, yes, that she and Chief Pérez were "helping him, but don't tell anyone."   PSAMF ¶ 186; DRPSAMF ¶ 186.  Special Agent Bustelo did not consider the conversation with AUSA Márquez-Marín to be anything of particular importance or particularly relevant or significant.[167]   PSAMF ¶ 187; DRPSAMF ¶ 187.   During the conversation, AUSA Márquez-Marín did not mention either SUSA Hernández or SUSA Capó.[168]   PSAMF ¶ 188; DRPSAMF ¶ 188.  According to Special Agent Bustelo, there was a lot of office

---

[166]    The DOJ interposes a qualified response, noting that it has not been established that Special Agent Bustelo was the person who provided the information about the apartment.  DRPSAMF ¶ 185. The DOJ objects on the ground of hearsay, but it acknowledges that AUSA Márquez-Marín is not offering the statement for the truth but to explain AUSA Márquez-Marín's motive in asking Special Agent Bustelo about the matter.  DRPSAMF ¶ 185.  The Court receives the statement not for its truth but to explain AUSA Márquez-Marín's motive.  Therefore, the Court rejects the qualification.

[167]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph one hundred and eighty-seven, admitting that Special Agent Bustelo testified as the paragraph states but adding that he testified to feeling this way at the time of the conversation with AUSA Márquez-Marín. DRPSAMF ¶ 187.  As the DOJ's added fact does not contradict AUSA Márquez-Marín's paragraph one hundred and eighty-seven, the Court rejects the qualification.

[168]    The DOJ interposes a long, qualified response to AUSA Márquez-Marín's additional paragraph one hundred and eighty-eight, explaining the significance of this paragraph and challenging its veracity.  DRPSAMF ¶ 188.  Although the Court appreciates the DOJ's effort to provide context, the Court is required to view contested facts in the light most favorable to AUSA Márquez-Marín and there is sufficient evidence in the record to support her not mentioning SUSAs Capó and Hernández during the conversation.  The Court declines to alter AUSA Márquez-Marín's additional paragraph one hundred and eighty-eight.

gossip that SUSA Capó and SUSA Hernández were in a relationship.[169]   PSAMF ¶ 189; DRPSAMF ¶ 189.

After the letter of admonishment was finalized, on July 24, 2014, at approximately 3:20 p.m., in his office, Chief Ruiz handed AUSA Márquez-Marín a letter of admonition signed by him.[170]   *Stip.* ¶ 115; DSMF ¶ 104; PRDSMF ¶ 104; PSAMF ¶ 190; DRPSAMF ¶ 190.   Officer López was present when Chief Ruiz handed AUSA Márquez-Marín the letter of admonishment.   *Stip.* ¶ 117; DSMF ¶ 104; PRDSMF ¶ 104.   In the admonition letter, AUSA Márquez-Marín was accused of "asking questions about the rental of an apartment for the [FAUSA] paid by the [USAO] to a local attorney, [during] the trial of a high-profile case" and also "suggest[ing] that the apartment had been inappropriately used by other AUSAs." PSAMF ¶ 190 (some alterations in original); DRPSAMF ¶ 190.   The admonition letter stated in part:

> This form of gossip is unbecoming to the position of [AUSA].   Your conduct in disseminating such false information demonstrates poor judgment, creates disruption and is damaging to the mission of this office.   These false statements only serve to undermine the authority of supervisors in our office.   As you know, [AUSAs] are required to behave

---

[169]   The DOJ admits that Special Agent Bustelo testified that there was office gossip about the relationship, but it denies the part of AUSA Márquez-Marín's additional paragraph one hundred and eighty-nine that asserts that they did in fact have a romantic relationship while each was married to another person.   DRPSAMF ¶ 189.   The DOJ says that this part of the paragraph is not supported by the record citation.   DRPSAMF ¶ 189.   The Court reviewed page thirty-five of the Bustelo deposition and agrees with the DOJ that Special Agent Bustelo states only that the relationship was a matter of office gossip but states that he has no knowledge whether it was true.   PSAMF, Attach. 3, *Ex. Y: Excerpts from Dep. of Wallace Bustelo* at 35.   The Court excluded that portion of AUSA Márquez-Marín's additional paragraph one hundred and eighty-nine that is not supported by the record citation.

[170]   The DOJ interposes a qualified response, pointing out that Chief Ruiz gave AUSA Márquez-Marín the letter of admonishment ten days after her conversation with Special Agent Bustelo. DRPSAMF ¶ 190.   Since the Court included the DOJ's paragraph one hundred and four, which gives the date Chief Ruiz gave AUSA Márquez-Marín the letter, the Court finds this qualification moot.

themselves in a professional manner and are also expected to be team players.[171]

PSAMF ¶¶ 191, 200; DRPSAMF ¶¶ 191, 200.    Although the letter was an "admonishment," it stated that "the failure to behave [her]self in a professional manner in the future may result in formal disciplinary action against [her]."[172] PSAMF ¶ 192; DRPSAMF ¶ 192.

At 3:35 p.m. on July 24, 2014, at the meeting where Chief Ruiz handed AUSA Márquez-Marín the letter of admonition, AUSA Márquez-Marín wrote the following handwritten comment at the end of the admonishment letter:

> This is another example of the prohibited personnel practices utilized at USAO PR.  Moreover, these allegations are unfounded and false.  This is another example of the retaliation I [have] been subjected to by [Chief] Ruiz and upper management.  I considered this letter and the way in which it was given to me as an attempt to intimidate and threaten me as I have been announced as a witness in the case of [Specialist] Reyes against the office where he filed an EEO Complaint, the witness list where he announced me as a witness was sent to EEO on July 11, 2014.[173]

*Stip.* ¶ 116; PSAMF ¶ 193; DRPSAMF ¶ 193; DSMF ¶ 104; PRDSMF ¶ 104.

Afterwards, AUSA Márquez-Marín went to her office.  DSMF ¶ 105; PRDSMF ¶ 105.

---

[171]    The DOJ interposes a qualified response, stating that AUSA Márquez-Marín's additional paragraph one hundred and ninety-one was not an accurate quotation from the admonition letter. DRPSAMF ¶ 191.  The Court fully quoted those portions of the letter to which the parties referred. *See* PSAMF, Attach. 3, *Ex. Z: Admonishment Letter of July 24, 2014* at 1 (*Admonishment Letter*).

[172]    AUSA Márquez-Marín's additional paragraph one hundred and ninety-two states that further discipline was "promised" if she failed to behave in a professional manner. PSAMF ¶ 192.  The DOJ denies the paragraph on the ground that the letter did not promise further discipline but stated that further discipline could follow.  DRPSAMF ¶ 192.  The Court reviewed the July 24, 2014, letter, agrees with the DOJ, and altered the paragraph to match the language in the letter.  *See Admonishment Letter* at 1-2.

[173]    In her additional paragraph one hundred and ninety-three, AUSA Márquez-Marín excerpts some of the language in her handwritten response to the July 24, 2014, admonition letter.  PSAMF ¶ 193.  The DOJ challenges the accuracy of AUSA Márquez-Marín's excerpts.  DRPSAMF ¶ 193.  As the contents are set forth in full in paragraph one hundred and sixteen of the Joint Stipulation, the Joint Stipulation trumps both the additional paragraph and the qualified response.

Special Agent Bustelo first wrote up his version two weeks after AUSA Márquez-Marín was admonished.  PSAMF ¶ 197; DRPSAMF ¶ 197.  In that first written version, Special Agent Bustelo mentioned that AUSA Márquez-Marín had asked about the apartment and had also stated that she was helping Specialist Reyes with his EEO complaint.  PSAMF ¶ 197; DRPSAMF ¶ 197.  Special Agent Bustelo did not write that AUSA Márquez-Marín had asked about whether SUSAs Hernández and Capó had used the apartment for romantic encounters.  PSAMF ¶ 197; DRPSAMF ¶ 197.

FAUSA Domínguez, however, wanted this allegation to be included in Special Agent Bustelo's written version.[174]  PSAMF ¶ 198; DRPSAMF ¶ 198.  This is clear from an email exchange between Special Agent Bustelo and FAUSA Domínguez:

- On August 8, 2014, upon FAUSA Domínguez's requests, Special Agent Bustelo provided his first written statement in an email entitled, "conversation summary."  This was the written statement that included nothing about AUSA Márquez-Marín allegedly making inquiries about whether the apartment was used for love trysts between SUSAs Hernández and Capó.

- Six minutes after receiving Special Agent Bustelo's email, FAUSA Domínguez wrote back to him with one question: "Did AUSA Márquez[-

---

[174]     The DOJ interposes a qualified response in which it presents its own version of these exchanges and their timing.  DRPSAMF ¶ 198.  The Court declines to adopt the DOJ's version because it is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín and the facts AUSA Márquez-Marín includes are supported by the record.

Marín] indicate to you that [SUSAs] Capó and Hernández had used the apartment as well?"

- Later that day, Special Agent Bustelo affirmed, "I don't remember her mentioning it.  I do remember [Specialist Reyes] saying it.  Sorry, I've been going back and forth but I've been on surveillance all afternoon and evening."

- On August 26, 2014, FAUSA Domínguez again wrote to Special Agent Bustelo, this time copying her email to Special Counsel Novas.  She stated, "When we last spoke you indicated that you did, in fact, recall [AUSA] Márquez[-Marín] also mentioning that [SUSAs] Capó and [Hernández] allegedly used the apartment for their encounters.  It is important that you supplement your statement to indicate this, and that you also provide me with a synopsis of your recent conversation with [Specialist Reyes]."

- On September 2, 2014, almost a month after he wrote up this original version, Special Agent Bustelo sent FAUSA Domínguez his "Conversation Summary (Amended)," in which he stated among other things that AUSA Márquez-Marín has "also inquired whether that was the same apartment used by [SUSAs] Capó and . . . Hernández for personal encounters."[175]

---

[175]    In her additional paragraph one hundred ninety-nine, AUSA Márquez-Marín asserts what a jury would be entitled to find from this evidence.  PSAMF ¶ 199.  The DOJ objects to paragraph one hundred and ninety-nine on the ground that it is argumentative.  The Court agrees with the DOJ and struck AUSA Márquez-Marín's additional paragraph one hundred ninety-nine from the statement of facts.

*See* PSAMF ¶ 198 (emphasis omitted); DRPSAMF ¶ 198; *Stip.* ¶¶ 125-27, 130-31; DSMF ¶¶ 109, 112-13; PRDSMF ¶ 109.[176]

Though Special Agent Bustelo omitted any mention of AUSA Márquez-Marín talking with him about the apartment being used by SUSAs Capó and Hernández in his first summary of his conversation with AUSA Márquez-Marín on August 8, 2014, he later said that he had discussed this matter with FAUSA Domínguez on the telephone.[177] *Stip.* ¶ 125; DSMF ¶ 109; PRDSMF ¶ 109. Special Agent Bustelo also later explained that at the moment he responded to FAUSA Domínguez on August 8, 2014, he was probably just getting off from doing surveillance somewhere in Puerto Rico; he wrote a quick response to her from his cellphone since he thought that someone in FAUSA Domínguez's position would want a fast response.[178] DSMF ¶ 109; PRDSMF ¶ 109.

Although the admonition letter referred to gossip, the Mission Statement of the USAO in effect at the time said nothing about "gossip."[179] PSAMF ¶ 201;

<hr>

[176]   AUSA Márquez-Marín does not respond to the DOJ's paragraphs one hundred and twelve and one hundred and thirteen and they are therefore deemed admitted. *Compare* DSMF ¶¶ 112-13, *with* PRDSMF at 25-26.

[177]   AUSA Márquez-Marín qualifies this sentence of the DOJ's paragraph one hundred and nine to emphasize that Special Agent Bustelo had contradicted himself about whether she had mentioned the improper use issue. PRDSMF ¶ 109. The Court slightly amended the DOJ's paragraph to reflect AUSA Márquez-Marín's concern.

[178]   AUSA Márquez-Marín denies this sentence in the DOJ's paragraph one hundred and nine to the extent that it implies that Special Agent Bustelo left something out because he quickly responded. PRDSMF ¶ 109. The Court draws no such implication and therefore rejects the denial.

[179]   The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and one, admitting that the Mission Statement does not explicitly mention the word "gossip" but arguing that not engaging in gossip is inherent in the idea of maintaining a courteous and professional working environment and treating others with respect. DRPSAMF ¶ 201. The Court rejects this qualification because it does not contradict AUSA Márquez-Marín's paragraph.

AUSA Márquez-Marín denies and qualifies portions of the DOJ's paragraph one hundred and nine. PRDSMF ¶ 109. AUSA Márquez-Marín qualifies the first sentence to reflect that Special Agent Bustelo's first email on August 8 was not a quick response from a cellphone and that he did not mention that AUSA Márquez-Marín asked about the improper use of the apartment. PRDSMF ¶ 109. The

DRPSAMF ¶ 201.   It stated that employees would "maintain a courteous and professional working environment" and "treat others with the same trust and respect that [they] expect for [them]selves." PSAMF ¶ 201; DRPSAMF ¶ 201.   United States Attorney Rodríguez wrote the 2008 Mission Statement with FAUSA Domínguez and Special Counsel Novas.   PSAMF ¶ 202; DRPSAMF ¶ 202.   The Statement was not reviewed by the EOUSA.   PSAMF ¶ 203; DRPSAMF ¶ 203.   United States Attorney Rodríguez had "the final word on [the] Mission Statement, because it [wa]s hers." PSAMF ¶ 203; DRPSAMF ¶ 203.   She wrote the Mission Statement with the help of FAUSA Domínguez and Special Counsel Novas to substitute one that was in effect and had been written by then United States Attorney García.[180]   PSAMF ¶ 203; DRPSAMF ¶ 203.

The 2008 Mission Statement included the heading "Philosop[h]y."   PSAMF ¶ 204; DRPSAMF ¶ 204.   That section included the following language:

> Divisiveness and lethargy adversely affect morale and will have a negative impact on the office's overall performance.   It is through unity, trust and respect that we will best serve the community and achieve our goals.

---

Court rejects these qualifications because the first sentence does not state or imply either of those points.  AUSA Márquez-Marín denies the third sentence to the extent it attributes a certain motivation to FAUSA Domínguez.  PRDSMF ¶ 109.  The Court does not read a motivation into the quote and therefore rejects this denial.

[180]      The DOJ denies that the record supports the part of AUSA Márquez-Marín's additional paragraph two hundred and three that says former United States Attorney García wrote the earlier mission statement.  DRPSAMF ¶ 203.  AUSA Márquez-Marín cites a page from United States Attorney Rodríguez's deposition where United States Attorney Rodríguez confirms that the earlier mission statement was by former United States Attorney García.  PSAMF ¶ 203 (citing PSAMF, Attach. 4, *Ex. DD: Dep. of Rosa Emilia Rodríguez, Esq.* at 157:18-20).  The Court rejects the DOJ's denial because United States Attorney Rodríguez's testimony can be interpreted to mean that former United States Attorney García wrote the earlier mission statement.

PSAMF ¶ 204; DRPSAMF ¶ 204.  This same language was included in that section in the revision made in February 2011.[181]  PSAMF ¶ 205; DRPSAMF ¶ 205.  This Mission Statement was amended in June 2015, almost a year after AUSA Márquez-Marín received the admonishment letter, and at that time, the above language was changed to add the language below in italics and strike outs:

> Divisiveness ~~and lethargy,~~ ***often caused by malicious gossip*** adversely affect[s] morale and will have a negative impact on the office's overall performance.  It is through unity, trust and respect that we will best serve the community and achieve our goals.

PSAMF ¶ 206; DRPSAMF ¶ 206.   In her deposition, United States Attorney Rodríguez admitted that the principle change to the earlier Mission Statement was the inclusion of the "malicious gossip" language in 2015 after AUSA Márquez-Marín was admonished.[182]  PSAMF ¶ 207; DRPSAF ¶ 207.

The DOJ issued Human Resources Order 1200.1; Appendix I to that order is a Human Resources Dictionary dated September 23, 2004.  *Stip.* ¶ 118.

On July 24, 2014, at around 4:15 p.m., Appellate Division Chief Pérez came to see AUSA Márquez-Marín and confronted her about whether she had said that he was helping Specialist Reyes with his EEO complaint.  *Stip.* ¶ 119.  Several days later, on July 30, 2014, Chief Pérez wrote an email to FAUSA Domínguez describing

---

[181]    AUSA Márquez-Marín's original additional paragraph two hundred and five includes the assertion that the November 2009 revision included this same language.  PSAMF ¶ 205.  The DOJ denies this part of the paragraph because AUSA Márquez-Marín failed to attach the November 2009 revision and therefore the assertion is not supported by the record citation.  DRPSAMF ¶ 205.  The Court agrees and eliminated the reference to the November 2009 revision.

[182]    The DOJ admits AUSA Márquez-Marín's additional paragraph two hundred and seven but adds its view that the notion that one should not engage in malicious gossip was inherent in the 2011 Mission Statement.  DRPSAMF ¶ 207.  The Court did not include the DOJ's additional assertions because they do not contradict AUSA Márquez-Marín's additional paragraph two hundred and seven and because they are opinion, not fact.

his encounter with AUSA Márquez-Marín.  *Stip.* ¶ 120.  In his email, Chief Pérez stated that FAUSA Domínguez had called him on July 21, 2014, to inform him that it had been reported to upper management by two individuals that AUSA Márquez-Marín had expressed that she and Chief Pérez were "helping" Specialist Reyes.  *Stip.* ¶ 120.

After receiving the admonition letter and speaking with Chief Pérez, AUSA Márquez-Marín contacted her attorney and sent her the letter of admonishment.  *Stip.* ¶ 121.  When her attorney asked to see her, AUSA Márquez-Marín contacted Officer López and SUSA Capó to tell them that she was going to meet with her attorney to discuss the matter and would return as soon as she finished.  *Stip.* ¶ 121.

AUSA Márquez-Marín left her office (with the door open) around 4:40 p.m. on July 24, 2014, and she claims she left her purse and her cellphone at the office.  *Stip.* ¶ 121; DSMF ¶ 105; PRDSMF ¶ 105.  When she returned, she found the door of her office closed and her cellphone was not where she left it.  *Stip.* ¶ 121; DSMF ¶ 105; PRDSMF ¶ 105.  AUSA Márquez-Marín then sent an email to SUSA Capó and Marilyn Benitez, the Supervisory Information Technology Specialist, to inform them about the disappearance of her cellphone.  *Stip.* ¶ 121; DSMF ¶ 105; PRDSMF ¶ 105. The next morning, on July 25, 2014, Chief Ruiz emailed AUSA Márquez-Marín and said that he had just arrived in his office and noticed a cellphone.  *Stip.* ¶ 122; DSMF ¶ 106; PRDSMF ¶ 106.  Chief Ruiz had left the office immediately after their meeting the previous day.  *Stip.* ¶ 122; DSMF ¶ 106; PRDSMF ¶ 106.  Chief Ruiz told AUSA Márquez-Marín that if this was her phone, Specialist Benitez would contact her so

that she could get it back.  *Stip.* ¶ 122; DSMF ¶ 106; PRDSMF ¶ 106.  AUSA Márquez-Marín responded to Chief Ruiz's email, labeling the subject of her message, "Disappearance of cellular phone as part of pattern of retaliation."  *Stip.* ¶ 123; DSMF ¶ 106; PRDSMF ¶ 106.  She gave her account of the previous two days' events.  *Stip.* ¶ 123; DSMF ¶ 106; PRDSMF ¶ 106.

FAUSA Domínguez told Chief Ruiz that they should review the surveillance video footage of AUSA Márquez-Marín in the hall when she was going in and out of Chief Ruiz's office to see if AUSA Márquez-Marín had the phone with her.  DSMF ¶ 107; PRDSMF ¶ 107.  Although FAUSA Domínguez spoke with an office administrator to see whether video had been preserved, she did not follow up on the matter. DSMF ¶ 107; PRDSMF ¶ 107.  Chief Ruiz also discussed the matter with the GCO.  DSMF ¶ 107; PRDSMF ¶ 107.  Despite these discussions, Chief Ruiz, FAUSA Domínguez, and Special Counsel Novas all testified that they did not review any videotape footage of AUSA Márquez-Marín.  DSMF ¶ 107; PRDSMF ¶ 107.

### m. Carmen Márquez-Marín's Pre-Complaint Filing: July 30, 2014

On or about July 30, 2014, AUSA Carmen Márquez-Marín filed a pre-complaint (an informal EEO complaint).  *Stip.* ¶ 124; DSMF ¶ 108; PRDSMF ¶ 108. She complained in particular about the charge of sick leave when she was teleworking, her 2013 productivity rating, and the letter of admonishment.  DSMF ¶ 108; PRDSMF ¶ 108.  She claimed discrimination based on disability and parental status as well as retaliation.  DSMF ¶ 108; PRDSMF ¶ 108.

On August 11, 2014, Specialist Reyes encountered Special Agent Bustelo at a briefing at the OIG.  *Stip.* ¶ 128; DSMF ¶ 110; PRDSMF ¶ 110.  Specialist Reyes asked Special Agent Bustelo if he had spoken to AUSA Márquez-Marín as well as if he had spoken to anyone in USAO management because AUSA Márquez-Marín had received a letter of admonishment.  *Stip.* ¶ 128; DSMF ¶ 110; PRDSMF ¶ 110.  Either that day or the next day, Special Agent Bustelo contacted FAUSA Domínguez to inform her of his encounter.  DSMF ¶ 110; PRDSMF ¶ 110.  FAUSA Domínguez told Special Agent Bustelo to supplement his statement to include the incident with Specialist Reyes.  DSMF ¶ 110; PRDSMF ¶ 110.  After Special Agent Bustelo told her that he did in fact remember that AUSA Márquez-Marín had asked him about the use of the apartment by SUSAs Capó and Hernández, FAUSA Domínguez told him to include this information as well in the supplemental statement.[183]  DSMF ¶ 110; PRDSMF ¶ 110.

On August 15, 2014, USAO management issued Specialist Reyes a letter of reprimand signed by Special Counsel Novas.[184]  *Stip.* ¶ 129; DSMF ¶ 111.  As to AUSA Márquez-Marín, Special Agent Bustelo confirmed in his supplemental statement on September 2, 2014, that she had inquired about use of the apartment by SUSAs Capó and Hernández during her conversation with him.  DSMF ¶ 113.

---

[183]   AUSA Márquez-Marín admits the DOJ's paragraph one hundred and ten but qualifies this portion of it by quoting Special Agent Bustelo's testimony on his change in memory to add context.  PRDSMF ¶ 110.  The Court does not view the quoted testimony as adding important context to the fact and therefore rejects the qualification.

[184]   AUSA Márquez-Marín does not respond to the DOJ's paragraph one hundred and eleven and it is therefore deemed admitted.  However, the DOJ's paragraph one hundred and eleven is consistent with Joint Stipulation paragraph one hundred and twenty-nine.  *Compare* DSMF ¶ 111, *with Stip.* ¶ 129.

### n.    Carmen    Márquez-Marín's    August    11,    2014, Automobile Accident

On August 11, 2014, Carmen Márquez-Marín was involved in a car accident in the USAO parking lot.  *Stip.* ¶ 132; DSMF ¶ 114; PRDSMF ¶ 114.  AUSA Márquez-Marín was returning to the office from court.  PSAMF ¶ 225; DRPSAMF ¶ 225.  After she accessed the multi-level parking building, another car, driven by a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agent at a high rate of speed, rammed into her car.  PSAMF ¶ 225; DRPSAMF ¶ 225.  As a result of the accident, AUSA Márquez-Marín suffered serious injuries to her neck and back, suffering a cervical sprain, a right shoulder sprain, a dorsal sprain/strain, and a lumbosacral sprain/strain.  PSAMF ¶ 226; DRPSAMF ¶ 226; *Stip.* ¶ 132; DSMF ¶ 114; PRDSMF ¶ 114.

On the night of the accident, AUSA Márquez-Marín wrote to SUSA Capó about the accident and said she needed emergency coverage.[185]  *Stip.* ¶ 133; DSMF ¶ 115; PRDSMF ¶ 115.  SUSA Capó responded, "Take as much time as you need.  Hope you get well soon."  *Stip.* ¶ 133; DSMF ¶ 115; PRDSMF ¶ 115.  Two days later, on August 13, 2014, AUSA Márquez-Marín wrote to SUSA Capó.  DSMF ¶ 115; PRDSMF ¶ 115.  She said that she was not well, that she had MRIs scheduled for the next day, and that she had checked the calendar and noticed that she had two hearings the next day.  DSMF ¶ 115; PRDSMF ¶ 115.  She stated, "I am sure this was already solved

---

[185]    AUSA Márquez-Marín objects to the DOJ's introductory phrase for its paragraph one hundred and fifteen, namely that SUSA Capó "came to her assistance" after the accident.  PRDSMF ¶ 115.  The Court agrees with AUSA Márquez-Marín and it set forth the facts, not the DOJ's characterization of those facts.  However, the Court does not view the facts as immaterial, as AUSA Márquez-Marín suggests, so the Court did not strike any of the facts.

but I am sending this as a reminder that I am out . . . recovering from a work related trauma." DSMF ¶ 115; PRDSMF ¶ 115. SUSA Capó responded that another AUSA would cover her hearings and that he hoped that everything would go well the next day. DSMF ¶ 115; PRDSMF ¶ 115.

Following the accident, on August 12, 2014, Administrative Officer Western told AUSA Márquez-Marín that she was the USAO's reasonable accommodation coordinator, so if AUSA Márquez-Marín needed anything special for her injuries, she should advise her supervisor and let her know as well.[186] *Stip.* ¶ 134; DSMF ¶ 116; PRDSMF ¶ 116. In the days after the accident, Officer López also told AUSA Márquez-Marín that she would assist with her T&A and with filing a claim with the OWCP.[187] *Stip.* ¶ 135; DSMF ¶ 117. Officer López told AUSA Márquez-Marín that she was entitled to forty-five days of continuation of pay (COP) that would expire on September 25, 2014, and that after that, she would need to use her leave or be placed on leave without pay. *Stip.* ¶ 135; DSMF ¶ 117. For the first thirty days after the accident, AUSA Márquez-Marín was out of the office, confined to her home except for medical appointments, and being paid by OWCP, which eventually approved her claim.[188] PSAMF ¶ 227; DRPSAMF ¶ 227; DSMF ¶ 118; DRPSMF ¶ 118.

---

[186]     AUSA Márquez-Marín objects to the DOJ's introductory phrase for its paragraph one hundred and sixteen, namely that "others also mobilized to assist" her after the accident. PRDSMF ¶ 116. The Court agrees with AUSA Márquez-Marín and it stated the facts and not the DOJ's characterization of those facts. However, the Court disagrees with AUSA Márquez-Marín regarding the probative value of the paragraph, *see* PRDSMF ¶ 116, and did not strike the facts.

[187]     AUSA Márquez-Marín neglects to respond to the DOJ's paragraph one hundred and seventeen and it is therefore deemed admitted

[188]     The DOJ interposes a qualified response. DRPSAMF ¶ 227. It asserts that AUSA Márquez-Marín stated that she was out of the office for forty-five days. DRPSAMF ¶ 227. The Court declines to accept the DOJ's qualified response. There is a difference between being "confined at home" and being out of the office.

On August 28 and 29, 2014, AUSA Márquez-Marín, SUSA Capó, and AUSA Cannon corresponded regarding a case in which the government was supposed to designate a doctor for a mental competency hearing but failed to do so. DSMF ¶ 115; PRDSMF ¶ 115. The Court issued an order for the government to comply with the Court's previous order by a certain date or show cause why it should not be held in contempt. DSMF ¶ 115; PRDSMF ¶ 115. SUSA Capó asked AUSA Cannon to handle the order and the case during AUSA Márquez-Marín's absence. DSMF ¶ 115; PRDSMF ¶ 115. AUSA Cannon drafted a motion for an extension. DSMF ¶ 115; PRDSMF ¶ 115.

### o. Carmen Márquez-Marín's EEO Charge, OWCP Claims, and Other Developments

On September 10, 2014, AUSA Márquez-Marín provided oral testimony to the EEO investigator in Specialist Reyes' EEO case.[189] *Stip.* ¶ 136; DSMF ¶ 118; PRDSMF ¶ 118. On September 15, 2014, Attorney Berkan filed on AUSA Márquez-Marín's behalf a formal EEO complaint regarding the issues cited in her pre-complaint. *Stip.* ¶ 137; PSAMF ¶ 208; DRPSAMF ¶ 208; DSMF ¶ 118; PRDSMF ¶ 118. In the complaint form, AUSA Márquez-Marín marked the boxes supplied by the DOJ for "why you believe you were discriminated against." PSAMF ¶ 209; DRPSAMF ¶ 209. She marked "disability (physical)," "reprisal," and "parental

---

[189]   AUSA Márquez-Marín objects to the DOJ's "editorializing" about the facts, namely by juxtaposing her recuperative period with her testimony and thus implying that there was something "untoward" going on. PRDSMF ¶ 118. The Court agrees with AUSA Márquez-Marín and omitted any such implication.

status." PSAMF ¶ 209; DRPSAMF ¶ 209.  She also provided a written statement in which she mentioned the following:

- her 2004 retaliation complaint against then United States Attorney García and then FAUSA Rodríguez;

- the fact that she prevailed since "they fabricated a case to justify [her] illegal dismissal;"

- the fact that since her reinstatement she has been subject to retaliation "but things got worse after [she] was diagnosed with Shoulder Impingement Syndrome and later cancer;"

- her February 2014 surgery and Telework Agreement;

- SUSA Capó's presenting "obstacles to the certification of [her] work hours and . . . without [her] knowledge certif[ying] . . . . sick leave . . . despite the fact that [she] was working that week as per the telework agreement;"

- SUSA Capó's lower "productivity rating for the period [she] was receiving chemotherapy and recovering from a serious exploratory surgery;"

- Chief Ruiz's denial of reconsideration by referring to "formulas and factors that were created only for [her], as those formulas and considerations are not used to evaluate other AUSAs in the US DOJ;"

- the support SUSA Capó received from Chief Ruiz, FAUSA Domínguez, and United States Attorney Rodríguez;

- the EEO complaint presented by Specialist Reyes, who in 2018 provided his complaint before a jury, which awarded him $300,000 in damages, and the

fact that Specialist Reyes had "opposed the discriminatory practices of upper management against [her] and other AUSA[]s that had filed EEO complaints;"

- the fact that on July 11, 2014, Specialist Reyes had informed her that he had included her as a witness in his EEO case;

- the admonishment letter and AUSA Márquez-Marín's comments with respect thereto; and

- her need for "protection . . . as [she was] a witness with favorable information for [Specialist] Reyes and his EEO complaint," stating further that "[United States Attorney] Rodríguez and most of her management team are capable of anything as [her] own story has proven" and that on July 24, 2014, before she was given the admonishment letter, AUSA Márquez-Marín had seen United States Attorney Rodríguez, Chief Ruiz, Chief of the White Collar and General Crimes Unit Timothy Henwood, SUSA Capó, and Special Counsel Novas, "all of [whom] [we]re implied in the EEO Complaint of [Specialist] Reyes," meeting at the office of FAUSA Domínguez.[190]

---

[190]     The DOJ admits most of AUSA Márquez-Marín's additional paragraph two hundred and nine. DRPSAMF ¶ 209. However, the DOJ qualifies its response to make "three points." DRPSAMF ¶ 209. The first point is that the seventh bullet point contains an inaccurate quotation. DRPSAMF ¶ 209. The Court reviewed the EEO complaint and agrees with the DOJ that AUSA Márquez-Marín's quotation is slightly inaccurate, and the Court replaced "in the office" with "in the US DOJ." *See* PSAMF, Attach. 4, *Ex. BB: Formal EEO Compl., September 15, 2014* at 2 (*EEO Compl.*). The second point is that the tenth bullet point contains a slightly inaccurate statement. DRPSAMF ¶ 209. The Court reviewed the EEO complaint and agrees that AUSA Márquez-Marín wrote in the complaint that Specialist Reyes had informed her on July 11, 2014, that he had included her as a witness in his EEO case, not that he included her as a witness on July 11, 2014. *See EEO Compl.* at 3. The Court agrees with the DOJ and corrected the statement. The third DOJ point is that AUSA Márquez-Marín made

*See* PSAMF ¶ 209 (some alterations in original); DRPSAMF ¶ 209.  This formal EEO complaint was assigned case number USA-2014-00914.  *Stip.* ¶ 137; DSMF ¶ 118; PRDSMF ¶ 118.

From September 4 through September 19, 2014, Officer López and AUSA Márquez-Marín exchanged certain emails.  *Stip.* ¶ 138.  On September 18, 2014, AUSA Márquez-Marín wrote to Officer López and informed her that AUSA Márquez-Marín's doctor said that she would need at least three more weeks of physical therapy.  DSMF ¶ 119; PRDSMF ¶ 119.  Officer López explained AUSA Márquez-Marín's options to her.  DSMF ¶ 119; PRDSMF ¶ 119.  On September 19, 2014, Officer López sent AUSA Márquez-Marín information on the DOJ's reasonable accommodation policy as well as the form she needed to request an accommodation.  *Stip.* ¶ 139; DSMF ¶ 120; PRDSMF ¶ 120.  Officer López also stated that AUSA Márquez-Marín had "the option to work from home under the Flexible Work Schedule (Telecommuting) as [she] ha[d] done in the past."  DSMF ¶ 120; PRDSMF ¶ 120.  She wrote, "Both [options] need the justification from your doctor, with specific information under what conditions you can work, what work you can do, time frames, if you can walk to the courthouse, if you can carry files, if you need resting periods, etc."  DSMF ¶ 120 (alteration in original); PRDSMF ¶ 120.

On September 29, 2014, AUSA Márquez-Marín signed a "[FWO] Memorandum of Understanding."  *Stip.* ¶ 140; DSMF ¶ 121; PRDSMF ¶ 121.  On October 1, 2014,

---

a vague comment about having been retaliated against after her successful lawsuit and the DOJ objects to her referencing her "entire alleged history of retaliation."  DRPSAMF ¶ 209.  The Court disagrees and overrules this third objection.

OWCP denied AUSA Márquez-Marín's claim, though it reversed this decision on February 27, 2015. *Stip.* ¶ 141. On October 2, 2014, the EOUSA's EEO staff emailed United States Attorney Rodríguez a notice that AUSA Márquez-Marín had filed a formal EEO complaint. *Stip.* ¶ 142; DSMF ¶ 122; PRDSMF ¶ 122. Four days later, on October 6, 2014, United States Attorney Rodríguez signed the FWO Memorandum of Understanding, approving AUSA Márquez-Marín's telework request. *Stip.* ¶¶ 140, 143; DSMF ¶ 123; PRDSMF ¶ 123. According to United States Attorney Rodríguez, this document enabled AUSA Márquez-Marín to telework. DSMF ¶ 121; PRDSMF ¶ 121. AUSA Márquez-Marín teleworked until May 2015. DSMF ¶ 123; PRDSMF ¶ 123.

That same day, October 6, 2014, FAUSA Domínguez wrote to Chief Pérez (copying Chief Ruiz, Special Counsel Novas, SUSA Capó, and Officer López), "[United States Attorney Rodríguez] has approved [AUSA Márquez-Marín]'s request that she be allowed to work from home. Therefore, please begin assigning work from the Appellate Division to her so that she can complete this work from home. Also, please be advised that while [AUSA Márquez-Marín] is working from home she will be supervised directly by you, and not [SUSA Capó]." *Stip.* ¶ 144; DSMF ¶ 124; PRDSMF ¶ 124.

On October 24, 2014, the EOUSA's EEO staff notified AUSA Márquez-Marín, through her attorney, that her EEO complaint had been accepted for investigation. *Stip.* ¶ 145; DSMF ¶ 125; PRDSMF ¶ 125. Specifically, the three issues accepted for investigation were (1) the charge of sick leave when AUSA Márquez-Marín was

teleworking, (2) her 2013 productivity rating, and (3) the letter of admonishment. *Stip.* ¶ 145; PSAMF ¶ 210; DRPSAMF ¶ 210; DSMF ¶ 125; PRDSMF ¶ 125.  The author of the acceptance letter also stated, "If your client believes that the issues have not been correctly identified, please notify me, in writing, within five (5) calendar days after you receive this letter and specify why you believe we have not correctly identified the issues."  *Stip.* ¶ 145; PSAMF ¶ 210; DRPSAMF ¶ 210; DSMF ¶ 125; PRDSMF ¶ 125.

Attorney Berkan wrote within five days on October 27, 2014.  *Stip.* ¶ 146; DSMF ¶ 126; PRDSMF ¶ 126.  In the letter, Attorney Berkan noted that the issues accepted were "technically correct."  DSMF ¶ 126; PRDSMF ¶ 126.  However, she had concerns that there may be some confusion if those issues were considered jointly with the report of the EEO counselor since there were misstatements in that report. DSMF ¶ 126; PRDSMF ¶ 126.  She clarified "some of the events leading to the presentation of [AUSA Márquez-Marín's] claim."  DSMF ¶ 126; PRDSMF ¶ 126. Included in Attorney Berkan's clarification was the statement that AUSA Márquez-Marín was paid less than similarly situated counterparts.  DSMF ¶ 126; PRDSMF ¶ 126.  She followed up in an email on November 6, 2014.  *Stip.* ¶ 146; DSMF ¶ 126; PRDSMF ¶ 126.

In a letter dated November 10, 2014, the EOUSA's EEO staff characterized Attorney Berkan's October 27 letter and November 6, 2014, email as a request to amend AUSA Márquez-Marín's formal EEO complaint.  DSMF ¶ 127; PRDSMF ¶ 127.  Specifically, the EEO staff focused on Attorney Berkan's allegation regarding

AUSA Márquez-Marín's pay and determined that the allegation was "like or related to" the claims that had already been accepted. *Stip.* ¶ 147; PSAMF ¶ 211; DRPSAMF ¶ 211; DSMF ¶ 127; PRDSMF ¶ 127.   Therefore, on November 10, 2014, AUSA Márquez-Marín was deemed to have amended her EEO complaint to add a "new claim," namely an allegation regarding pay. *Stip.* ¶ 147; PSAMF ¶ 211; DRPSAMF ¶211; DSMF ¶ 127; PRDSMF ¶ 127.   The EEO staff enclosed an "amended statement of accepted issues," and AUSA Márquez-Marín's attorney was told once again to make contact within five days if she or her client believed the amended issues had not been correctly identified. *Stip.* ¶ 147; SMF ¶ 127; PRDSMF ¶ 127.   The amended claim accepted for investigation included "[w]hether management officials in the U[SAO] discriminated against Complainant, [AUSA] Márquez[-Marín], based on reprisal (protected EEO activity) when [AUSA Márquez-Marín] has allegedly received less pay than other similarly situated A[USA]s in the office." PSAMF ¶ 211; DRPSAMF ¶ 211; DSMF ¶ 127; PRDSMF ¶ 127.   Neither Attorney Berkan nor AUSA Márquez-Marín made contact to contest the amended statement of accepted issues in accordance with the instructions in the November 10 letter.  DSMF ¶ 127; PRDSMF ¶ 127.

### p.    Carmen Márquez-Marín's Appellate Work

As background, even though AUSA Márquez-Marín was not singled out, one of the judges of the United States District Court in Puerto Rico criticized the quality of

AUSA writing in the spring of 2011.[191]  DSMF ¶ 27; PRDSMF ¶ 27.  Based on this feedback, FAUSA Domínguez reviewed samples of written work and after this process was complete, SUSA Vázquez was instructed to send two AUSAs—AUSA Márquez-Marín and AUSA Justin Martin—to attend a course at the DOJ's National Advocacy Center (NAC) in Columbia, South Carolina.  DSMF ¶ 27; PRDSMF ¶ 27.  Although the course was geared toward civil attorneys, management believed that AUSAs Márquez-Marín and Martin, who both handled criminal cases at the time, would benefit from the emphasis on writing.  DSMF ¶ 27; PRDSMF ¶ 27.  According to AUSA Márquez-Marín's training record, she completed a "Motion Practice and Brief Writing for Civil Attorneys Seminar" on May 27, 2011.  DSMF ¶ 27; PRDSMF ¶ 27.

While being out of the office under OWCP following the August 11, 2014, motor vehicle accident, AUSA Márquez-Marín started teleworking from home on appeals and was supervised directly by Appellate Division Chief Pérez.[192]  PSAMF ¶ 228; DRPSAMF ¶ 228.  AUSA Márquez-Marín did a total of seventeen or eighteen appeal briefs during the period she was teleworking in February and March 2014 and the

---

[191]    AUSA Márquez-Marín admits the DOJ's paragraph twenty-seven but notes that the judge had not singled her out for criticism.  PRDSMF ¶ 27.  The Court added this clarification because it is required to view the facts in the light most favorable to AUSA Márquez-Marín.

[192]    The DOJ interposes a qualified response to add details about the relevant dates.  DRPSAMF ¶ 228.  As the dates do not contradict AUSA Márquez-Marín's additional paragraph two hundred and twenty-eight, the Court did not include them because it is required to view the facts in the light most favorable to AUSA Márquez-Marín.

period after the August 11, 2014, accident for approximately nine months.[193]  PSAMF ¶ 229; DRPSAMF ¶ 229.

On January 12, 2015, United States Attorney Rodríguez emailed USAO employees to announce  Jacqueline Novas' appointment as the EAUSA.  *Stip*. ¶ 154; DSMF ¶ 142; PRDSMF ¶ 142.  United States Attorney Rodríguez made the appointment.[194]  PSAMF ¶ 230; DRPSAMF ¶ 230.  This appointment took place while AUSA Márquez-Marín was still working from home under the direct supervision of Chief Pérez.  PSAMF ¶ 230; DRPSAMF ¶ 230.  EAUSA Novas retained her position as Special Counsel to the United States Attorney.  PSAMF ¶ 230; DRPSAMF ¶ 230. On or around February 21, 2015, FAUSA Domínguez left the USAO to work in private practice.  DSMF ¶ 143; PRDSMF ¶ 143.  Her departure had been planned for a long time, well before the *Guzman* meetings.  DSMF ¶ 143; PRDSMF ¶ 143.

In February 2015, upon the departure of FAUSA Domínguez from the USAO, United States Attorney Rodríguez named White Collar and General Crimes Chief Henwood as the FAUSA.[195]  PSAMF ¶ 231; DRPSAMF ¶ 231.  On February 23, 2015,

---

[193]    The parties disagree whether AUSA Márquez-Marín worked on seventeen or eighteen appeals during these time periods.  PSAMF ¶ 229; DRPSAMF ¶ 229.  Rather than attempt to resolve the dispute, the Court included both figures because the difference is immaterial.

[194]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and thirty, noting the exact title and date of Jacqueline Novas' appointment.  DRPSAMF ¶ 230.  The parties stipulate to these facts, *see Stip*. ¶ 154, and the Court included them already.  Thus, the Court views this qualification as moot.

[195]    Although the DOJ affirmatively states that United States Attorney Rodríguez announced her appointment of Chief Henwood as FAUSA on February 23, 2015, it interposes a qualified response asserting that AUSA Márquez-Marín does not make a proper record citation for her assertion that he was named "toward the end of February 2015."  DRPSAMF ¶ 231.  The Court is not clear why the DOJ feels compelled to make this point, since the DOJ's paragraph one hundred and forty-three says that United States Attorney Rodríguez announced Chief Henwood's appointment as FAUSA on February 23, 2015, a fact AUSA Márquez-Marín admits.  DSMF ¶ 143; PRDSMF ¶ 143.  But the DOJ is technically correct, so the Court altered AUSA Márquez-Marín's additional paragraph two hundred and thirty-one to state that United States Attorney Rodríguez appointed Chief Henwood as the new

United States Attorney Rodríguez sent an office-wide email to congratulate Timothy Henwood as the new FAUSA.  DSMF ¶ 143; PRDSMF ¶ 143.

United States Attorney Rodríguez also announced on February 23, 2015, that EAUSA Novas would supervise the Appellate Division and EAUSA Novas became Chief Pérez's supervisor on that date.  PSAMF ¶ 232; DRPSAMF ¶ 232; DSMF ¶ 143; PRDSMF ¶ 143.  EAUSA Novas, as Special Counsel, did not supervise attorneys before being appointed EAUSA.[196]  PSAMF ¶ 233; DRPSAMF ¶ 233.  In Texas, EAUSA Novas worked in small law firms and had limited appellate experience.[197]  PSAMF ¶ 235; DRPSAMF ¶ 235.  Also while in Texas, EAUSA Novas stayed in touch

_____

FAUSA sometime during the month of February, not in late February.  It used the DOJ's paragraph one hundred and forty-three to establish that the date of the announcement was February 23, 2015.

[196]    The first sentence of AUSA Márquez-Marín's additional paragraph two hundred and thirty-three asserts that EAUSA Novas had no experience supervising attorneys before becoming EAUSA.  PSAMF ¶ 233.  The DOJ denies this sentence as unsupported by the cited authority.  DRPSAMF ¶ 233.  The Court reviewed the record citation and agrees with the DOJ that the record citation does not support this proposition.  The record citation supports the assertion that EAUSA Novas had not supervised attorneys while she was Special Counsel (which the DOJ admits) and the Court included this part of the paragraph.

AUSA Márquez-Marín's additional paragraph two hundred and thirty-four asserts that before she became the EAUSA, Jacqueline Novas had "little experience" with appeals.  PSAMF ¶ 234.  The DOJ denies this assertion.  DRPSAMF ¶ 234.  Although the phrase, "little experience," is vague, the Court declines to insert this portion of AUSA Márquez-Marín's additional paragraph two hundred and thirty-four into the statement of facts.  The record citation reveals, among other things, that EAUSA Novas worked for a year in the Appellate Division of the USAO and handled about twenty appeals.  *Decl. of Kenneth Shaitelman*, Attach. 5, *Ex. 15: Dep. of Jacqueline Novas* at 32:22-33:04 (*Dep. of Novas*).  She also previously worked on appeals in civil litigation in Puerto Rico and Texas.  *Dep. of Novas* at 11:03-18, 23:22-24.  The DOJ affirmatively states that she served as Deputy Solicitor General of Puerto Rico in the early 1990s.  *Dep. of Novas* at 10:20-11:02, 14:10-15:10.  In light of this information, the Court concludes that "little experience" is not an accurate reflection of the record.

Similarly, the Court declines to include in the statement of facts that EAUSA Novas had "no trials under her belt" in her first stint in the USAO, which the DOJ denies.  *See* PSAMF ¶ 234; DRPSAMF ¶ 234.  This assertion is not supported by the cited record.  *See Dep. of Novas* at 9:24-10:3.  Therefore, the Court struck the entire paragraph from the statement of facts.

[197]    Again, AUSA Márquez-Marín's additional paragraph two hundred and thirty-five overstates EAUSA Novas' asserted lack of appellate experience.  PSAMF ¶ 235.  It states that EAUSA had virtually no appellate experience in Texas, PSAMF ¶ 235, and the DOJ denies this fact.  DRPSAMF ¶ 235.  Rather than saying she had "virtually no appellate experience" while in Texas, the Court inserted that she had limited appellate experience.

with United States Attorney Rodríguez, and she secured a position with the USAO upon her return to Puerto Rico without applying for the job.[198]   PSAMF ¶ 236; DRPSAMF ¶ 236.   It was then EAUSA Novas worked for about one year in the Appellate Division supervised by Chief Pérez.  PSAMF ¶ 237; DRPSAMF ¶ 237.  She testified that she handled about twenty appeals during that year.  PSAMF ¶ 237; DRPSAMF ¶ 237.  Then, ten years later and after being appointed as EAUSA, having limited additional experience with appeals, EAUSA Novas was assigned to supervise Chief Pérez.[199]  PSAMF ¶ 237; DRPSAMF ¶ 237.

After FAUSA Domínguez left, United States Attorney Rodríguez met with FAUSA Henwood and EAUSA Novas to implement remedial measures for the Appellate Division.  DSMF ¶ 144; PRDSMF ¶ 144.  On March 12, 2015, FAUSA Henwood circulated to the entire office an email with the subject line, "NEW MANDATORY APPELLATE AND TRIAL COORDINATION PROCEDURES."  *Stip.* ¶ 155; DSMF ¶ 144; PRDSMF ¶ 144.  Attached to the email was a memorandum containing policies, practices, and procedures (the protocol).  *Stip.* ¶ 155; DSMF ¶ 144; PRDSMF ¶ 144.  The purpose of the protocol was to improve certain

---

[198]     The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and thirty-six, asserting that even though EAUSA Novas did not apply for the job, she was interviewed by then United States Attorney García.  DRPSAMF ¶ 236.  The Court declines to accept the DOJ's qualified response because it does not contradict AUSA Márquez-Marín's additional paragraph two hundred and thirty-six.

[199]     AUSA Márquez-Marín's additional paragraph two hundred and thirty-seven says that EAUSA Novas had no additional appellate experience after one year of appellate work at the USAO.  PSAMF ¶ 237.  The DOJ denies this assertion.  DRPSAMF ¶ 237.  This assertion is contradicted by AUSA Márquez-Marín's additional paragraph two hundred and thirty-five and the record.  To remain consistent, the Court inserted "limited" experience with appeals in AUSA Márquez-Marín's additional paragraph two hundred and thirty-seven.

inefficiencies in workload and communication between the Criminal and Appellate Divisions of the USAO.  DSMF ¶ 144; PRDSMF ¶ 144.

### q.    The 2014 Evaluation

In late February 2015, USAO supervisors were preparing evaluations for AUSAs for the work they performed during 2014.  *Stip.* ¶ 156; DSMF ¶ 145; PRDSMF ¶ 145.   On February 19, 2015, before FAUSA Domínguez's departure from employment at the USAO, Appellate Division Chief Pérez wrote to Human Resources Specialist Rosemary Torres and stated that he had doubts about AUSA Márquez-Marín's evaluation because although she had been working on appeals on account of her health situation, the evaluation form—in actuality, the Performance Work Plan and Appraisal Record—she had signed at the beginning of the year was from the Criminal Division and employed criteria "different to the categories for the appellate attorneys."  *Stip.* ¶ 156; DSMF ¶ 145; PRDSMF ¶ 145.   Before she left the office, however, FAUSA Domínguez had instructed Chief Pérez to complete AUSA Márquez-Marín's evaluation.  DSMF ¶ 147; PRDSMF ¶ 147.

The next day, Appellate Division Chief Pérez emailed Criminal Division Chief Ruiz and said that he had met with former FAUSA Domínguez to discuss this issue.  *Stip.* ¶ 156; DSMF ¶ 146; PRDSMF ¶ 146.   In his email, Chief Pérez stated that he had told former FAUSA Domínguez that Chief Ruiz was the one who discussed with AUSA Márquez-Marín her performance work plan.  DSMF ¶ 146; PRDSMF ¶ 146. He also pointed out that the criteria in the performance work plan that Chief Ruiz had discussed with AUSA Márquez-Marín were different from the criteria for

appellate attorneys.  DSMF ¶ 146; PRDSMF ¶ 146.  He concluded, "I can assist you in completing the evaluation and can tell you that her performance during the time period she has been working on appeals is outstanding."  DSMF ¶ 146; PRDSMF ¶ 146.  On February 24, 2015, Chief Ruiz forwarded Chief Pérez's email to EAUSA Novas.  *Stip.* ¶ 157.  EAUSA Novas then wrote to Chief Pérez, who replied.  *Stip.* ¶ 157.

One of EAUSA Novas' first instructions to her new supervisee, Chief Pérez, was to tell him to complete AUSA Márquez-Marín's 2014 evaluation.[200]  PSAMF ¶ 238; DRPSAMF ¶ 238.  On February 24, 2015, EAUSA Novas wrote to Chief Pérez and stated that he had been instructed by former FAUSA Domínguez to complete AUSA Márquez-Marín's evaluation.  DSMF ¶ 148; PRDSMF ¶ 148.  She wrote, "Please complete the evaluation with the input you may need from [SUSA] Cap[ó] who was her direct supervisor in the Violent Crimes Unit [in the Criminal Division].  I will deliver the evaluation later on today."  DSMF ¶ 148; PRDSMF ¶ 148.  Chief Pérez agreed.  DSMF ¶ 148; PRDSMF ¶ 148.  Also on February 24, 2015, one day after having been appointed to supervise appeals, EAUSA Novas went to Chief Pérez's office and "directed that [he] must do [AUSA Márquez-Marín's] evaluation."[201]  PSAMF ¶ 238 (some alterations in original); DRPSAMF ¶ 238.

---

[200]    The DOJ denies the portion of AUSA Márquez-Marín's additional paragraph two hundred and thirty-eight that contends this was one of EAUSA's first instructions to her new supervisee, arguing that it is unsupported by the cited authority.  DRPSAMF ¶ 138.  The Court reviewed the cited portion of the record and finds that, though the record does not explicitly support this statement, it is a reasonable inference viewing the facts in the light most favorable to AUSA Márquez-Marín since EAUSA was assigned to supervise Chief Pérez the day before.  Thus, the Court rejects the denial.

[201]    The DOJ interposes a qualified response to the quoted portion of AUSA Márquez-Marín's additional paragraph two hundred and thirty-eight on the ground that it is hearsay.  DRPSAMF ¶ 238.  The Court overrules the qualified response.  In the Court's view, the statement of EAUSA Novas, as a

Nevertheless, when EAUSA Novas delivered the form to Chief Pérez, Chief Pérez—evidently anticipating some resistance on the part of EAUSA Novas—told his new supervisor, "I'm telling you now that I'm rating her as 'outstanding,' because that's the type of evaluation she deserves, given the type of work she has done during this period."[202] PSAMF ¶ 239; DRPSAMF ¶ 239; DSMF ¶ 149; PRDSMF ¶ 149. According to Chief Pérez, EAUSA Novas responded to Chief Pérez, "You cannot rate her as outstanding."[203] PSAMF ¶ 240 (emphasis omitted); DRPSAMF ¶ 240; DSMF ¶ 149; PRDSMF ¶ 149. Controlling himself, Chief Pérez replied, "I'm rating her as 'outstanding.' But since you are the evaluator, you can change the evaluation and carry whatever consequences stem from there." PSAMF ¶ 240 (emphasis omitted); DRPSAMF ¶ 240; DSMF ¶ 149; PRDSMF ¶ 149.

On February 25, 2015, Chief Pérez contacted Officer López to get an evaluation form of the type used to rate appellate attorneys to evaluate AUSA Márquez-Marín's performance during the time she had been working on appeals. *Stip.* ¶ 158; DSMF ¶ 150; PRDSMF ¶ 150. Chief Pérez informed Officer López that he had been asked

---

person in management, is attributable to the Defendant and the Court assumes, based on Chief Pérez's February 24, 2015, email to AUSA Márquez-Marín, that he would confirm the contents of the email. *See* PSAMF, Attach. 4, *Ex. KK: Email from Nelson Pérez to Carmen Márquez, February 24, 2015.*

[202] The DOJ and AUSA Márquez-Marín interpret very differently Chief Pérez's deposition testimony on this point. *See* DSMF ¶ 149; PRDSMF ¶ 149. The DOJ says that Chief Pérez said to EAUSA Novas that if he had to use the Violent Crimes Unit evaluation form, he would have to rate AUSA Márquez-Marín as outstanding. DSMF ¶ 149. AUSA Márquez-Marín says that he told EAUSA Novas, independent of the evaluation form, that he would have to rate her as outstanding. PRDSMF ¶ 149. The Court reviewed the portion of Chief Pérez's deposition testimony in dispute and concludes it is ambiguous. In accordance with its obligation to view conflicting evidence in the light most favorable to AUSA Márquez-Marín, the Court adopted her version.

[203] The DOJ denies that EAUSA Novas told Chief Pérez that he could not rate AUSA Márquez-Marín as "outstanding" in her 2014 evaluation. DRPSAMF ¶ 240. The Court rejects this denial because it is required to view conflicting evidence in the light most favorable to AUSA Márquez-Marín. However, the Court altered the paragraph slightly to indicate that this fact is based on Chief Pérez's testimony.

by EAUSA Novas the previous day to do the evaluation and that he needed to complete the evaluation as soon as possible. *Stip.* ¶ 158. Officer López clarified that Chief Pérez was to use appellate criteria in his evaluation of AUSA Márquez-Marín and that, as AUSA Márquez-Marín had not officially been transferred from the Violent Crimes Unit, Chief Pérez should send his evaluation to SUSA Capó.[204] DSMF ¶ 150; PRDSMF ¶ 150. SUSA Capó would give the evaluation to AUSA Márquez-Marín. DSMF ¶ 150; PRDSMF ¶ 150.

On March 5, 2015, Chief Pérez sent SUSA Capó his input for AUSA Márquez-Marín's evaluation. *Stip.* ¶ 159; DSMF ¶ 151; PRDSMF ¶ 151. Chief Pérez said he would give AUSA Márquez-Marín an "outstanding" rating for each element. *Stip.* ¶ 159; DSMF ¶ 151; PRDSMF ¶ 151. On the draft evaluation form Chief Pérez forwarded to SUSA Capó containing Chief Pérez's input, Chief Pérez noted that his input was for "the time AUSA Márquez[-Marín] ha[d] been working on appeals." *Stip.* ¶ 160. The performance elements listed on the form completed by Chief Pérez included the following: Conducts Legal Research and Writing; Develops Appellate Litigation Strategy; Presents Oral Argument; Review and Advises Others; and Productivity and Effectiveness in Dealing with Courts, Clients, and Others. *Stip.* ¶ 161. Chief Pérez provided written justification for each of the "outstanding" ratings he proposed for AUSA Márquez-Marín. *Stip.* ¶ 162.

---

[204]   AUSA Márquez-Marín denies the DOJ's paragraph one hundred and fifty, stating it misrepresents Chief Pérez's testimony. PRDSMF ¶ 150. Having reviewed Chief Pérez's deposition transcript and Officer López's sworn declaration, *see Decl. of Kenneth Shaitelman*, Attach. 4, *Ex. 14: Dep. of Nelson Pérez-Sosa* at 178:23-180:09; *Decl. of Carmen Pura López* ¶ 38 (ECF No. 104), the Court amalgamated the DOJ's paragraph one hundred and fifty and AUSA Márquez-Marín's response to reflect what likely happened, which lands between the two advocacy versions.

SUSA Capó took issue with Chief Pérez's recommendation as to the element related to AUSA Márquez-Marín's writing, stating he noticed that several documents prepared by AUSA Márquez-Marín had errors in legal citation, punctuation, and grammar. *Stip.* ¶ 163; DSMF ¶ 151; PRDSMF ¶ 151. Nevertheless, SUSA Capó agreed to defer to Chief Pérez since Chief Pérez had been reviewing AUSA Márquez-Marín's written work product during the previous months. *Stip.* ¶ 163; DSMF ¶ 151; PRDSMF ¶ 151. Three days later, on March 9, 2015, SUSA Capó recommended AUSA Márquez-Marín for a raise and forty-hour time-off award. *Stip.* ¶ 164; DSMF ¶ 152; PRDSMF ¶ 152. At the same time, SUSA Capó recommended the exact same for AUSAs Victor Acevedo, Max Pérez, Cannon, Alexander Alum, Luke Cass, and Canáls. *Stip.* ¶ 165. On March 12, 2015, SUSA Capó and Chief Ruiz signed AUSA Márquez-Marín's 2014 evaluation, and it was sent to AUSA Márquez-Marín. *Stip.* ¶ 166; DSMF ¶ 153; PRDSMF ¶ 153. AUSA Márquez-Marín received an "outstanding" rating on all of her elements and an "outstanding" rating overall. *Stip.* ¶ 166; DSMF ¶ 153; PRDSMF ¶ 153. In early April 2015, United States Attorney Rodríguez approved AUSA Márquez-Marín for a $5000 raise during the APR review process. *Stip.* ¶ 167; DSMF ¶ 154; PRDSMF ¶ 154.

### r.   April 2015 Request for Reasonable Accommodation

At some point after the August 2014 automobile accident, AUSA Márquez-Marín began seeing Dr. Dwight Santiago Pérez, FACSM, CEDIR, CIME, DipMED (Pain Management), a well-recognized specialist in Sports Medicine and Pain Management, as well as a Certified Independent Medical Examiner. PSAMF ¶ 278;

DRPSAMF ¶ 278.  Over several months, Dr. Santiago submitted periodic reports on AUSA Márquez-Marín's progress, including his observations about when she could return to work and in what circumstances.  PSAMF ¶ 279; DRPSAMF ¶ 279.  On April 14, 2015, after discussing the matter with her physician, AUSA Márquez-Marín requested reasonable accommodation in order to allow her to return to the USAO from her teleworking under circumstances that would not harm her health.[205] PSAMF ¶ 280; DRPSAMF ¶ 280.  Given that AUSA Márquez-Marín's physicians had emphasized to her the importance of diminishing her levels of stress, she believed that it was very important for her to be relieved of EAUSA Novas' supervision, which AUSA Márquez-Marín considered indirect but quite invasive.[206]  PSAMF ¶ 281; DRPSAMF ¶ 281.  The insertion of EAUSA Novas into AUSA Márquez-Marín's chain

---

[205]     The DOJ admits that AUSA Márquez-Marín made a demand for reasonable accommodation on April 14, 2015, but denies the remainder of AUSA Márquez-Marín's additional paragraph two hundred and eighty as not supported by the record citation.  DRPSAMF ¶ 280.  The Court rejects the DOJ's denial.  AUSA Márquez-Marín's record citation is to the Defendant's paragraph one hundred and fifty-five of his statement of facts.  This paragraph itself refers to Exhibit Sixty-Eight of the Joint Stipulation.  DSMF ¶ 155.  Exhibit Sixty-Eight is a three-paragraph email dated April 14, 2015, from AUSA Márquez-Marín to Officer Western with a copy to Officer López that contains sufficient information to support AUSA Márquez-Marín's additional paragraph two hundred and eighty in its entirety.  *See Stip.*, Attach. 2, *Ex. 68*.

[206]     The DOJ objects to much of AUSA Márquez-Marín's additional paragraph two hundred and eighty-one.  DRPSAMF ¶ 281.  Acknowledging that USA Márquez-Marín placed these facts in her sworn declaration, the DOJ argues that AUSA Márquez-Marín's sworn declaration contradicts her prior sworn statements.  DRPSAMF ¶ 281.  The Court declines to accept the DOJ's denials.  It is true that later than April 14, 2015, AUSA Márquez-Marín had made the same complaint about EAUSA Novas, but this does not preclude AUSA Márquez-Marín experiencing stress from earlier fearing EAUSA Novas' interference, knowing her management style and closeness with United States Attorney Rodríguez.  The Court views the differences between AUSA Márquez-Marín's statements as ground for cross-examination, not exclusion.  The DOJ also argues that AUSA Márquez-Marín's statement regarding her physicians emphasizing reducing her stress level is unsupported by the cited testimony.  DRPSAMF ¶ 281.  The Court views this information as within AUSA Márquez-Marín's personal knowledge.  Finally, the DOJ denies that EAUSA's supervision was "invasive."  DRPSAMF ¶ 281.  The Court altered the paragraph slightly to reflect that EAUSA Novas being invasive is AUSA Márquez-Marín's perception based on her testimony.

of command, which had taken place in February, had caused her significant stress, impeding her recovery.  PSAMF ¶ 281; DRPSAMF ¶ 281.

On April 14, 2015, AUSA Márquez-Marín emailed Officer Western (copying Officer López) with the subject line "Request for reasonable accommodation."  *Stip.* ¶ 168; PSAMF ¶ 282; DRPSAMF ¶ 282; DSMF ¶ 155; PRDSMF ¶ 155.  In this email, AUSA Márquez-Marín summarized a number of her medical issues, as well as her parental status as a single mother for two young children.  PSAMF ¶ 282; DRPSAMF ¶ 282.  Also in the email, AUSA Márquez-Marín asked to return to the USAO for four hours daily with "temporary assignment to the civil division" as a reasonable accommodation.[207]  PSAMF ¶ 282; DRPSAMF ¶ 282; DSMF ¶ 155; PRDSMF ¶ 155. AUSA Márquez-Marín also stated that she wanted to continue working her environmental (criminal) cases.  DSMF ¶ 155; PRDSMF ¶ 155.

Officer Western forwarded AUSA Márquez-Marín's request to United States Attorney Rodríguez, FAUSA Henwood, EAUSA Novas, and Officer López and stated, "[Officer López] is forwarding this to [the EOUSA's GCO] for their guidance . . ..  As the accommodation coordinator, I need specific information from the doctor regarding any sort of health requirements.  We always ask for this.  I'm sure [GCO] will be mentioning this."  *Stip.* ¶ 169 (some alterations in original); PSAMF ¶ 283; DRPSAMF ¶ 283; DSMF ¶ 156; PRDSMF ¶ 156.  The next day, April 15, 2015, Officer Western wrote to AUSA Márquez-Marín and referred her to a USAP that described

---

[207]    The DOJ denies that AUSA Márquez-Marín proposed four hours per day in the office as a reasonable accommodation.  DRPSAMF ¶ 282.  The Court examined the Márquez-Marín email and disagrees with the DOJ.  The Court declines to accept the DOJ's denial.

what information she needed to submit, including a reference to the intranet site where she could get the USAP applicable to her request.  *Stip.* ¶ 170; PSAMF ¶ 284; DRPSAMF ¶ 284; DSMF ¶ 157; PRDSMF ¶ 157.  AUSA Márquez-Marín responded, "Ok excellent."  *Stip.* ¶ 170; DSMF ¶ 157; PRDSMF ¶ 157.

On May 1, 2015, AUSA Márquez-Marín attempted to return to work at the USAO but she was not allowed to do so until she obtained further medical documentation.  PSAMF ¶ 286; DRPSAMF ¶ 286; DSMF ¶ 158; PRDSMF ¶ 158.  Officer López told her the latest medical certificate that management had for her stated, "Presently active in teleworking at home."[208]  DSMF ¶ 158; PRDSMF ¶ 158.  Officer López told her that management could not allow her to return until the doctor provided a certification stating the date and conditions under which she could do so.  DSMF ¶ 158; PRDSMF ¶ 158.

Also on May 1, 2015, Officer López sent an email to United States Attorney Rodríguez, FAUSA Henwood, and EAUSA Novas, describing AUSA Márquez-Marín's attempt to return to work, as well as her inquiries about her salary.  *Stip.* ¶ 171.  On Saturday, May 16, 2015, AUSA Márquez-Marín's physician, Dr. Santiago, wrote a "return to work" report for her, and on May 18, 2015, she submitted the doctor's completed form.[209]  *Stip.* ¶ 172; PSAMF ¶ 287; DRPSAMF ¶ 287; DSMF ¶ 159;

---

[208]   AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph one hundred and fifty-eight, providing background about Dr. Santiago's return to work recommendations and EAUSA Novas' supervision.  PRDSMF ¶ 158.  As the Court elsewhere addresses this factual issue, the Court will not do so again here.

[209]   The DOJ interposes a qualified response, noting that Dr. Santiago, not AUSA Márquez-Marín, wrote the doctor's report.  DRPSAMF ¶ 287.  The Court overrules the DOJ's qualified response.  The Court does not interpret AUSA Márquez-Marín's additional paragraph two hundred and eighty-seven as asserting that she wrote the doctor's report.  The DOJ also corrects the date AUSA Márquez-Marín submitted the report from May 16, 2015, to May 18, 2015, consistent with the record.  DRPSAMF

PRDSMF ¶ 159.  Dr. Santiago recommended that "as soon as authorized," AUSA Márquez-Marín return to work in the office for four hours per day, with the remainder conducted as telework.  *Stip.* ¶ 172; PSAMF ¶ 287; DRPSAMF ¶ 287; DSMF ¶ 159; PRDSMF ¶ 159.

Dr. Santiago reported, among other things, AUSA Márquez-Marín's pain conditions, need for analgesics, anti-inflammatory, and muscle relaxant medications, advanced joint osteoarthritis, aggravation of her right shoulder impingement, other severe systemic problems requiring surgeries and treatments over a period of several years, and limitations on her normal body movement capacity requiring stretching, standing, and the need to control pain exacerbation and aggravation.  PSAMF ¶ 288; DRPSAMF ¶ 288.  Dr. Santiago also stated that AUSA Márquez-Marín needed several reasonable accommodations, including an adjustable work chair and relief from carrying heavy objects and from work-related travel.  *Stip.* ¶ 172; DSMF ¶ 159; PRDSMF ¶ 159.

Dr. Santiago recommended a transfer to the Civil Division at a later point.  *Stip.* ¶ 172; DSMF ¶ 159; PRDSMF ¶ 159.  He recommended that AUSA Márquez-Marín be moved to work which removed her from "very stressful situations."[210]

---

¶ 287.  The Court reviewed the cited record, agrees with the DOJ on this point, and altered AUSA Márquez-Marín's paragraph accordingly.

In response to the DOJ's paragraph one hundred and fifty-nine, AUSA Márquez-Marín interposes a qualified response, objecting to the emphasis the DOJ added to the fact.  The Court does not adopt the DOJ's emphasis and therefore rejects this qualification.

[210]   The DOJ interposes a qualified response, noting that Dr. Santiago did not suggest the Civil Division based on his own knowledge of the organization of the USAO.  DRPSAMF ¶ 290.  The DOJ points out that AUSA Márquez-Marín told Dr. Santiago that the Civil Division was less stressful.  DRPSAMF ¶ 290.  The Court declines to accept the DOJ's qualified response.  AUSA Márquez-Marín's additional paragraph two hundred and ninety clearly states that Dr. Santiago made this

PSAMF ¶ 290; DRPSAMF ¶ 290.  After discussing this with AUSA Márquez-Marín,
Dr. Santiago proposed a reasonable accommodation assigning her to the Civil
Division, which "is less stressful physically and mentally."  PSAMF ¶ 290; DRPSAMF
¶ 290.  He wrote, "If possible, it is strongly recommended that when she returns to
full work duties to consider reassigning [AUSA Márquez-Marín] to this type of [Civil]
work."  *Stip.* ¶ 172 (some alterations in original); DSMF ¶ 159; PRDSMF ¶ 159.  Dr.
Santiago also provided a list of "OWCP accepted work-related injuries": cervical
sprain/strain, right shoulder joint sprain, dorsal sprain/strain, and lumbosacral
sprain/strain—all with the accompanying International Classification of Diseases,
Ninth Revision (ICD-9) codes.  *Stip.* ¶ 173.  In this report, as he had in several other
earlier reports, Dr. Santiago pointed out the need for reasonable accommodation in
order to successfully reintegrate AUSA Márquez-Marín back into the workplace.[211]
PSAMF ¶ 289; DRPSAMF ¶ 289.

On Monday, May 18, 2015, AUSA Márquez-Marín began to spend four hours
each working day in the office.[212]  DSMF ¶ 160; PRDSMF ¶ 160.  On the same day,
over a month after Officer Western had told her what she needed to submit, after

recommendation after discussing it with his patient and the Court does not assume that Dr. Santiago
is an expert in the USAO's organization and division duties.

[211]      The DOJ denies the portion of AUSA Márquez-Marín's additional paragraph two hundred and
eighty-nine that asserts that Dr. Santiago had previously pointed out the need for reasonable
accommodation.  DRPSAMF ¶ 289.  The Court declines to accept the DOJ's denial.  AUSA Márquez-
Marín's additional paragraph two hundred and eighty-nine is consistent with AUSA Márquez-Marín's
additional paragraph two hundred and seventy-nine, which the DOJ admits.  *See* PSAMF ¶ 279 ("Over
several months, Dr. Santiago submitted periodic reports on [AUSA] Márquez[-Marín]'s progress,"
including his "observations about when [she] could return to work and in what circumstances");
DRPSAMF ¶ 279.

[212]      AUSA Márquez-Marín denies the portion of the DOJ's paragraph one hundred and sixty that
states that this action was based on Dr. Santiago's report, arguing that it is unsupported by the cited
portion of the record.  PRDSMF ¶ 160.  The Court reviewed the cited portion of the record, agrees with
AUSA Márquez-Marín, and struck that portion of the paragraph.

reviewing the USAP and as required by the policy, AUSA Márquez-Marín sent to Chief Pérez—copying Officer Western—what she stated was "a request for reasonable accommodation in compliance with USAP No. 3-5, 101-001-6C." *Stip.* ¶ 174; PSAMF ¶ 285; DRPSAMF ¶ 285; DSMF ¶ 161; PRDSMF ¶ 161.  On one of the forms AUSA Márquez-Marín submitted, she requested the following specific accommodation: "[t]emporary assignment to the Civil Division once [she] start[s] working 8 hours at the office." *Stip.* ¶ 174; DSMF ¶ 161; PRDSMF ¶ 161.  She also incorporated by reference Dr. Santiago's "return to work" report, which listed other reasonable accommodation requests. *Stip.* ¶ 174; DSMF ¶ 161; PRDSMF ¶ 161.  The next day, Chief Pérez forwarded the request to EAUSA Novas. *Stip.* ¶ 175; DSMF ¶ 162; PRDSMF ¶ 162.  Chief Pérez wrote that although the request appeared to be justified, he did not think he had the authority to approve it. *Stip.* ¶ 175; DSMF ¶ 162; PRDSMF ¶ 162.  EAUSA Novas thanked him, pointed out that Officer Western was the district's reasonable accommodation official, and said that the request would be evaluated. *Stip.* ¶ 175; DSMF ¶ 162; PRDSMF ¶ 162.

On May 20, 2015, United States Attorney Rodríguez hosted a meeting during which AUSA Márquez-Marín's request for transfer to the Civil Division was discussed.  DSMF ¶ 163; PRDSMF ¶ 163.  At the meeting, Civil Division Chief Ramírez stated that he believed it would be a good idea to inform AUSA Márquez-Marín what her duties would be in the Civil Division so that she would know what an assignment to the Civil Division would entail.  DSMF ¶ 163; PRDSMF ¶ 163.  On the same day, Chief Ramírez sent Officer Western a summary of work in the Civil

Division.  *Stip.* ¶ 176; DSMF ¶ 163; PRDSMF ¶ 163.  Officer Western, in turn, forwarded this information to EAUSA Novas.  *Stip.* ¶ 176; DSMF ¶ 163; PRDSMF ¶ 163.  EAUSA Novas responded, "I'll meet with [Chief Pérez] and discuss with him what other accommodations we can do for her in Appellate Division.  Once we have that, then you, [Chief Pérez] and [Chief Ramírez] can meet with [AUSA Márquez-Marín] and present everything so that she can decide if she still wants to be transferred temporarily to the Civil Division."  *Stip.* ¶ 176; DSMF ¶ 163; PRDSMF ¶ 163.

Also on May 20, 2015, a meeting between Chief Pérez, EAUSA Novas, and Officer López was held in EAUSA Novas' office.  PSAMF ¶ 291; DRPSAMF ¶ 291.  With respect to AUSA Márquez-Marín's request for a temporary transfer, EAUSA Novas stated, "This is not reasonable accommodation.  This is a telework issue."[213] PSAMF ¶ 291; DRPSAMF 291.  On the same day, United States Attorney Rodríguez approved AUSA Márquez-Marín for a forty-hour time-off award, which had been recommended by Chief Pérez, who had included a specific justification therefor.  *Stip.* ¶ 177; DSMF ¶ 164; PRDSMF ¶ 164.  Officer López agreed, however, that a time-off award was given every year to every employee.[214]  DSMF ¶ 164; PRDSMF ¶ 164.

---

[213]   The DOJ interposes a qualified response, noting that AUSA Márquez-Marín misunderstands the nature and purpose of the May 20, 2015, meeting.  DRPSAMF ¶ 291.  The Court rejects the DOJ's qualified response because it does not contradict the contents of AUSA Márquez-Marín's additional paragraph two hundred and ninety-one.

[214]   AUSA Márquez-Marín objects to the implication of the DOJ's paragraph one hundred and sixty-four that it had given AUSA Márquez-Marín an unusual benefit and extensively quotes Officer López's testimony.  PRDSMF ¶ 164.  Consistent with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included the gist of Officer López's testimony.

On June 4, 2015, Officer Western wrote Officer López and EAUSA Novas, with copies to Jacqueline Schesnol of the EOUSA's GCO, FAUSA Henwood, and United States Attorney Rodríguez. *Stip.* ¶ 178; DSMF ¶ 165; PRDSMF ¶ 165. Officer Western wrote in part:

> [AUSA Márquez-Marín] asked me would she be switched to the Civil Division and I said I am not the decision maker on that one. I am not qualified to decide where the AUSAs would be assigned. . . . She told me not to rush. She had read the USAP and I was within my 30 day window. It is actually 20 business days. I told her I would respond soon. I let her know that per the USAP I had to fill out the required form 100B."[215]

DSMF ¶ 165; PRDSMF ¶ 165.

Later that same day, Officer Western sent AUSA Márquez-Marín a response to her request. DSMF ¶ 166; PRDSMF ¶ 166. The response (1) approved a plan for AUSA Márquez-Marín to telework and gradually transition into an eight-hour schedule, (2) approved the request for an adjustable work chair, (3) granted her relief from carrying heavy objects, and (4) granted her permission not to undertake any work-related travel. DSMF ¶ 166; PRDSMF ¶ 166. As to the transfer to the Civil Division, the response stated, "The request to transfer to the Civil Division is premature. Once AUSA Márquez[-Marín]'s doctor certifies that she is able to work [eight] hours every day and indicates what she can and cannot do, then the USAO can then better assess the request." DSMF ¶ 166 (some alterations in original);

---

[215]   AUSA Márquez-Marín admits the DOJ's paragraph one hundred and sixty-five; however, she interposes a qualified response, positing several clarifications. PRDSMF ¶ 165. Consistent with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included her clarifications. *See Decl. of Lisa Western*, Attach. 1, *Ex. 2* (ECF No. 115). AUSA Márquez-Marín also urges the Court not to infer that she was uninterested in having a quick resolution of her request for reasonable accommodation. PRDSMF ¶ 165. The Court draws no such inference.

PRDSMF ¶ 166.  AUSA Márquez-Marín acknowledged that, at the time, she had not yet started working eight hours at the office each day.  DSMF ¶ 166; PRDSMF ¶ 166.

On June 9, 2015, AUSA Márquez-Marín emailed Officer Western, copying Chief Pérez, EAUSA Novas, and her attorney, and expressed concern about the decision made regarding her assignment to the Civil Division.  *Stip.* ¶ 179; DSMF ¶ 167; PRDSMF ¶ 167.  AUSA Márquez-Marín wrote, "The type of work that I will be doing will determine when and how I return to work at the office for the complete 8 hours."[216]  DSMF ¶ 167 (emphasis omitted); PRDSMF ¶ 167.  AUSA Márquez-Marín also wrote that there was a "new chain of command" in appeals and this change was causing her "additional pressures and stress . . .."  DSMF ¶ 167; PRDSMF ¶ 167.  She wrote that in addition to the "short deadlines, [it] [wa]s not beneficial to [her] prompt recovery and full reintegration."  DSMF ¶ 167; PRDSMF ¶ 167.  She mentioned that she was "eager to reintegrate . . . given reasonable conditions" and that "the type of work that [she did would] directly impact [her] full return . . .."  DSMF ¶ 167; PRDSMF ¶ 167.

Officer Western responded later that day and explained management's rationale.[217]  *Stip.* ¶ 180; DSMF ¶ 168; PRDSMF ¶ 168.  She pointed out that AUSA Márquez-Marín was not working eight hours at the office every day; hence, a decision

---

[216]    AUSA Márquez-Marín interposes a qualified response, setting forth in greater detail the content of her June 9, 2015, response to Officer Western.  PRDSMF ¶ 167.  Consistent with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included her clarifications.  *See Stip.*, Attach. 2, *Ex. 74.*

[217]    AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph one hundred and sixty-eight, objecting to the phrase "explained management's rationale."  PRDSMF ¶ 168.  However, the phrase appeared in the Joint Stipulation and the Joint Stipulation trumps the statements of fact.  *See Stip.* ¶ 180.  The Court does not accept AUSA Márquez-Marín's qualification.

regarding a possible transfer to the Civil Division was premature. *Stip.* ¶ 180; DSMF ¶ 168; PRDSMF ¶ 168. She also told AUSA Márquez-Marín that the civil AUSA position would remain open, so it would be available to her "if that position [wa]s determined to be the best fit." *Stip.* ¶ 180; DSMF ¶ 168; PRDSMF ¶ 168.

On June 30, 2015, Dr. Santiago completed a medical status report for AUSA Márquez-Marín. *Stip.* ¶ 181; DSMF ¶ 169; PRDSMF ¶ 169. In his remarks, he wrote, "[Patient] has been recommended to start in the Civil Division as soon as possible." *Stip.* ¶ 181 (alteration in original); DSMF ¶ 169; PRDSMF ¶ 169. On July 9, 2015, AUSA Márquez-Marín wrote to Officer Western, copying Chief Pérez, EAUSA Novas, and Officer López. *Stip.* ¶ 182; DSMF ¶ 170; PRDSMF ¶ 170. She attached a copy of Dr. Santiago's June 30, 2015, report and stated that her doctor had clarified that she should be assigned to the Civil Division as soon as possible. *Stip.* ¶ 182; DSMF ¶ 170; PRDSMF ¶ 170. That same day, EAUSA Novas responded to AUSA Márquez-Marín and told her that Officer Western was out that day but they would discuss the matter the next day and let her know promptly thereafter. *Stip.* ¶ 183; DSMF ¶ 171; PRDSMF ¶ 171.

The next day, July 10, 2015, Officer Western sent AUSA Márquez-Marín a notice that her request for transfer to the Civil Division was approved that day on a temporary basis until she recovered from her medical condition. *Stip.* ¶ 184; DSMF ¶ 172; PRDSMF ¶ 172. This was about two months after AUSA Márquez-Marín first requested transfer to the Civil Division as a reasonable accommodation.[218] PSAMF

---

[218]   The DOJ interposes a qualified response, asserting that the reason for the delay was that AUSA Márquez-Marín did not provide a doctor's opinion that the transfer should be immediate until

¶ 292; DRPSMF ¶ 292.   United States Attorney Rodríguez was the management official who approved the transfer.   *Stip.* ¶ 184; DSMF ¶ 172; PRDSMF ¶ 172.   Civil Division Chief Ramírez became AUSA Márquez-Marín's first-line supervisor in the USAO's Civil Division.   *Stip.* ¶ 185.   United States Attorney Rodríguez personally told AUSA Márquez-Marín that she would continue as the environmental crimes coordinator while in the Civil Division.   *Stip.* ¶ 186; DSMF ¶ 173; PRDSMF ¶ 173.   Chief Ramírez also asked AUSA Márquez-Marín to coordinate all civil environmental matters, and she agreed.   *Stip.* ¶ 186; DSMF ¶ 173; PRDSMF ¶ 173.

### s.   May 2015 Child Care Issues

On May 19, 2015, AUSA Márquez-Marín wrote to Chief Pérez and asked permission to work from home full-time for the rest of that week and the following week.   *Stip.* ¶ 187; DSMF ¶ 174; PRDSMF ¶ 174.   AUSA Márquez-Marín asked because school had concluded for the year for her children, but summer camp was not scheduled to start until June 1.   *Stip.* ¶ 187; DSMF ¶ 174; PRDSMF ¶ 174.   She was having difficulty finding someone to watch her children during the work day.   *Stip.* ¶ 187; DSMF ¶ 174; PRDSMF ¶ 174.   Chief Pérez responded that although he would not object to the request, he needed to check first with Officer López (whom he copied on his response).   *Stip.* ¶ 187; DSMF ¶ 175; PRDSMF ¶ 175.

Officer López in turn forwarded Chief Pérez's email to United States Attorney Rodríguez, FAUSA Henwood, EAUSA Novas, and Officer Western.   *Stip.* ¶ 187; DSMF ¶ 175; PRDSMF ¶ 175.   Throughout the afternoon of May 19, 2015, Officer

---

July 9, 2015.   DRPSAMF ¶ 292.   The Court declines to accept the DOJ's qualified response as it does not contradict AUSA Márquez-Marín's additional paragraph two hundred and ninety-two.

López, Officer Western, EAUSA Novas, and Chief Pérez exchanged emails about how to handle AUSA Márquez-Marín's request.   DSMF ¶ 176; PRDSMF ¶ 176.   Chief Pérez, EAUSA Novas, and Officer López also met to discuss the request.   DSMF ¶ 177; PRDSMF ¶ 177.  They reviewed AUSA Márquez-Marín's Telework Agreement, as well as the office telework policy.  DSMF ¶ 177; PRDSMF ¶ 177.  The "takeaway" from that meeting was that AUSA Márquez-Marín should be required to take annual leave if she needed to take care of her children, as other employees in the office in the same position who were not teleworking would have been required to take leave. DSMF ¶ 177; PRDSMF ¶ 177.   This decision was also in accordance with the EOUSA's telework policies, which made clear that telework was not a substitute for leave.  DSMF ¶ 177; PRDSMF ¶ 177.  On May 20, 2015, Officer López wrote AUSA Márquez-Marín (copying Chief Pérez and EAUSA Novas) to state that AUSA Márquez-Marín would be allowed to take annual leave if she needed to take care of her children. [219] *Stip.* ¶ 188; DSMF ¶ 178; PRDSMF ¶ 178.  AUSA Márquez-Marín subsequently took annual leave to cover periods when her children were at home before summer camp started.  *Stip.* ¶ 189; DSMF ¶ 178; PRDSMF ¶ 178.

### t.     *United States v. Guzmán de los Santos*

*United States v. Guzmán de los Santos*, case number 14-2230, was assigned to AUSA Márquez-Marín while the case was on appeal to the First Circuit Court of

---

[219]      AUSA Márquez-Marín admits the DOJ's paragraph one hundred and seventy-eight but qualifies her response due to the heading of this section in the DOJ's statement of material facts.  The Court did not include the headings in its statement of facts, so it disregards this qualification.

Appeals after the conviction of the defendant.[220]   *Stip.* ¶ 148; PSAMF ¶ 242;
DRPSAMF ¶ 242; DSMF ¶ 128; PRDSMF ¶ 128.  This was while AUSA Márquez-
Marín was teleworking.  *Stip.* ¶ 148; DSMF ¶ 128; PRDSMF ¶ 128.  José Miguel
Guzmán-De los Santos was one of several defendants in a case involving narcotics;
he had been tried twice by the USAO and had been convicted at the second trial.  *Stip.*
¶ 148; DSMF ¶ 128; PRDSMF ¶ 128.  AUSA Dennise Longo was lead counsel at the
two trials and was in one of the USAO's narcotics units at the time of the two trials.
DSMF ¶ 129; PRDSMF ¶ 129.

Upon review of the record, including the transcripts of the two trials, AUSA
Márquez-Marín became convinced that there had been serious violations on the part
of the prosecution and there was not enough evidence to prosecute.[221]  DSMF ¶ 130;
PRDSMF ¶ 130; PSAMF ¶ 243; DRPSAMF ¶ 243.  According to AUSA Márquez-
Marín, the trial counsel hid testimony from the Magistrate Judge in the suppression
hearing that resulted in the Magistrate Judge finding probable cause, and the
Magistrate Judge made a note that some testimony was missing.  DSMF ¶ 130;
PRDSMF ¶ 130.  In addition, AUSA Márquez-Marín noted that the first trial resulted

---

[220]   The DOJ denies the portion of AUSA Márquez-Marín's additional paragraph two hundred and
forty-two that states this was the "first effort" to discredit her, arguing that it is unsupported and
argumentative.   DRPSAMF ¶ 242.   The Court agrees that this portion of the paragraph is not
supported by a citation to the record and struck it from the statement of facts.

AUSA Márquez-Marín's additional paragraph two hundred and forty-one discusses ongoing
attempts by management to demonstrate that AUSA Márquez-Marín was not performing her job well.
PSAMF ¶ 241.  The DOJ denies this paragraph.  DRPSAMF ¶ 141.  The Court did not include AUSA
Márquez-Marín's additional paragraph two hundred forty-one because it is not supported by a citation
to the record.

[221]   AUSA Márquez-Marín admits the DOJ's paragraph one hundred and thirty but adds a number
of facts for purposes of completeness and to place this fact in context.  PRDSMF ¶ 130.  In accordance
with its requirement to view conflicting evidence in favor of AUSA Márquez-Marín, the Court included
these added facts.  *See Decl. of Hilda Hudson*, Attach. 1, *Ex. 1* at 76-79.

in a hung jury and when the USAO decided to re-prosecute the case, the trial counsel and management decided not to present certain witnesses whose testimony would show that there was no evidence to arrest, the prosecutors hid evidence from the jury, and the prosecutors requested a higher sentence for the accused man than for other defendants in the case.  DSMF ¶ 130; PRDSMF ¶ 130.  AUSA Márquez-Marín was of the opinion these actions had been "unethical" and that she could not defend them. DSMF ¶ 130; PRDSMF ¶ 130.

In November 2014, AUSA Márquez-Marín went to Chief Pérez regarding her concerns and together they discussed the case with FAUSA Domínguez.[222]  DSMF ¶ 131; PRDSMF ¶ 131; PSAMF ¶ 244; DRPSAMF ¶ 244.  FAUSA Domínguez and Chief Pérez agreed with AUSA Márquez-Marín's analysis.  PSAMF ¶ 245; DRPSAMF ¶ 245.  On November 17, 2014, AUSA Márquez-Marín emailed Chief Pérez to memorialize their discussion with FAUSA Domínguez that day.  *Stip.* ¶ 149; DSMF ¶ 131; PRDSMF ¶ 131; PSAMF ¶ 244; DRPSAMF ¶ 244.

This first meeting was followed by a second meeting that included United States Attorney Rodríguez, FAUSA Domínguez, then Special Counsel Novas, Chief Pérez, Chief Ruiz, and AUSA Márquez-Marín.  DSMF ¶ 132; PRDSMF ¶ 132.  United States Attorney Rodríguez agreed with AUSA Márquez-Marín's analysis.[223]  PSAMF

---

[222]    AUSA Márquez-Marín's additional paragraph two hundred and forty-four states that she took her concerns to both Chief Pérez and FAUSA Domínguez.  PSAMF ¶ 244.  The DOJ interposes a qualified response, stating that AUSA Márquez-Marín went to Chief Pérez first and then they discussed the case with FAUSA Domínguez.  DRPSAMF ¶ 244.  Since AUSA Márquez-Marín admits the DOJ's paragraph one hundred and thirty-one, the Court included that version of events for this fact.

[223]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and forty-five, asserting that the record citation does not support the allegation that United States Attorney Rodríguez and FAUSA Domínguez agreed with AUSA Márquez-Marín's analysis.

¶ 245; DRPSAMF ¶ 245.  United States Attorney Rodríguez and FAUSA Domínguez made the decision to dismiss Mr. Guzmán's indictment.  DSMF ¶ 132; PRDSMF ¶ 132; PSAMF ¶ 246; DRPSAMF ¶ 246.  The dismissal of the indictment was the appropriate course of action and the decision to do so had to be made by upper management.[224]  PSAMF ¶ 246; DRPSAMF ¶ 246.  Before dismissing, Chief Pérez and FAUSA Domínguez, along with defense counsel, informed the district court judge about the decision.  PSAMF ¶ 246; DRPSAMF ¶ 246.  On January 9, 2015, Chief Pérez filed a motion to dismiss Mr. Guzmán's indictment.  DSMF ¶ 133; PRDSMF ¶ 133.

United States Attorney Rodríguez instructed Chief Ruiz to tell the two line trial prosecutors about the decision and why it had been made.  DSMF ¶ 132; PRDSMF ¶ 132; PSAMF ¶ 247; DRPSAMF ¶ 247.  FAUSA Domínguez specifically instructed her legal assistant to contact Chief Ruiz so that he could inform the AUSAs involved in the case what had been decided by upper management.  PSAMF ¶ 247;

---

DRPSAMF ¶ 245.  The Court overrules the qualified response.  It is logical that if AUSA Márquez-Marín's analysis of the record of the trials brought her to the conclusion that there was insufficient evidence to convict Mr. Guzmán and, upon hearing her presentation, United States Attorney Rodríguez and FAUSA Domínguez made the decision to dismiss Mr. Guzmán's indictment, they must have agreed with AUSA Márquez-Marín's analysis.

[224]    The DOJ denies that the decision to dismiss the indictment had to be made by upper management.  DRPSAMF ¶ 246.  The Court is extremely skeptical of the DOJ's denial.  This is a case, according to the record, that the USAO had tried twice and obtained a conviction in the second trial and that was on appeal.  It strikes the Court as unusual that the DOJ would implicitly assert that a line AUSA could dismiss an indictment in these circumstances without the decision having been made by management within the USAO, which in fact is what happened here.  In any event, the Court accepts AUSA Márquez-Marín's version because it is required to view contested facts in the light most favorable to her.

The DOJ also qualifies its response, objecting to AUSA Márquez-Marín's use of the word "appropriate" as argumentative and conclusory.  DRPSAMF ¶ 246.  The Court rejects this qualification because it is a reasonable inference given United States Attorney Rodríguez and FAUSA Domínguez's decision to dismiss the indictment.

DRPSAMF ¶ 247.  For AUSA Márquez-Marín, that ended the issue.  PSAMF ¶ 248;

DRPSAMF ¶ 248.  She had complied with her ethical responsibilities and her duty to

seek justice, and the office had agreed with her view of the case.  PSAMF ¶ 248;

DRPSAMF ¶ 248.

AUSA Longo received electronic notification of the motion.  DSMF ¶ 134;

PRDSMF ¶ 134.  Upset by the news and knowing that her supervisor, then White

Collar and General Crimes Chief Henwood, was not available, she went to the

USAO's executive suite, where she found FAUSA Domínguez.  DSMF ¶ 134;

PRDSMF ¶ 134.  AUSA Longo told FAUSA Domínguez that she was baffled by the

motion and was upset.  DSMF ¶ 134; PRDSMF ¶ 134.  She asked FAUSA Domínguez

if she knew what had happened.  DSMF ¶ 134; PRDSMF ¶ 134.  FAUSA Domínguez

attempted to explain, but AUSA Longo was not satisfied and requested a meeting to

learn more.  DSMF ¶ 134; PRDSMF ¶ 134.  FAUSA Domínguez was busy with a trial

at the time, so no meeting could take place until January 30, 2015.  DSMF ¶ 134;

PRDSMF ¶ 134.  Meanwhile the district judge dismissed the indictment on January

13, 2015.  DSMF ¶ 135; PRDSMF ¶ 135.

Ivette Figueroa, United States Attorney Rodríguez's assistant, sent a calendar

invitation for a meeting to take place on January 30, 2015.  *Stip.* ¶ 150.  Invited to

attend the meeting were United States Attorney Rodríguez, FAUSA Domínguez,

EAUSA Novas, Chief Ruiz, Chief Henwood, SUSAs (specifically Deputy Narcotics

Chiefs) Hernández and Myriam Fernández, and AUSAs Longo and Elba Gorbea.

*Stip.* ¶ 150; DSMF ¶ 136; PRDSMF ¶ 136.  On January 30, 2015, these individuals

discussed the dismissal.  DSMF ¶ 136; PRDSMF ¶ 136.  The discussion, however, did not satisfy AUSA Longo as to why the sanction of dismissal had been necessary.[225] DSMF ¶ 136; PRDSMF ¶ 136.  AUSA Longo and SUSAs Hernández and Myriam Fernández all complained that the dismissal had not been vetted with them first. DSMF ¶ 136; PRDSMF ¶ 136.  FAUSA Domínguez expressed concern that AUSA Márquez-Marín had failed to speak to AUSA Longo about the issues in the case before the dismissal in contradiction to what AUSA Márquez-Marín had previously indicated.  DSMF ¶ 136; PRDSMF ¶ 136.

Ms. Figueroa sent another calendar invitation for a meeting to take place on February 9, 2015.  *Stip.* ¶ 151; DSMF ¶ 137; PRDSMF ¶ 137.  Notwithstanding that she believed the issue had been resolved in mid-January, and while AUSA Márquez-Marín was still teleworking and recovering from her serious injuries from the car accident, she was unexpectedly called into the USAO to explain herself.[226]  DSMF ¶ 137; PRDSMF ¶ 137; PSAMF ¶ 249; DRPSAMF ¶ 249.  She assumed that the subject of the meeting was the *Gúzman* case when she received the email invitation

---

[225]    The DOJ's original paragraph one hundred and thirty-six contains the phrase, "draconian sanction," and AUSA Márquez-Marín denies that, in light of the circumstances, the dismissal was draconian.  PRDSMF ¶ 136.  The Court struck the adjective draconian because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.  AUSA Márquez-Marín also qualifies this paragraph, stating that United States Attorney Rodríguez gave Chief Ruiz, not AUSA Márquez-Marín, instructions to tell the trial prosecutors about the dismissal decision.  PRDSMF ¶ 136. This fact is already in the statement of facts, *see* DSMF ¶ 132, so the Court rejects this qualification.

[226]    The DOJ interposes several denials and qualifications to AUSA Márquez-Marín's additional paragraph two hundred and forty-nine.  DRPSAMF ¶ 249.  The Court declines to accept them.  To accept the DOJ's position would require the Court to violate its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín.  One exception is the DOJ's qualification that the issues around the dismissal had not in fact been resolved, DRPSAMF ¶ 249, and the Court modified the statement to reflect that AUSA Márquez-Marín believed they had been resolved.  The other is the dispute about whether the attendees were required to attend.  DRPSAMF ¶ 249.  The Court omitted the contention that they were required to attend, since the listed participants attended whether required to do so or not.

on February 9, 2015.  DSMF ¶ 137; PRDSMF ¶ 137; PSAMF ¶ 249; DRPSAMF ¶ 249.
Scheduled to attend the meeting were United States Attorney Rodríguez, FAUSA
Domínguez, EAUSA Novas, Chief Pérez, Chief Ruiz, Chief Henwood, SUSAs
Hernández and Myriam Fernández, and AUSAs Longo, Gorbea and Márquez-Marín.
*Stip.* ¶ 151; PSAMF ¶ 249; DRPSAMF ¶ 249.  Although United States Attorney
Rodríguez and FAUSA Domínguez had been planning to attend the meeting, both
were called away at the last minute; United States Attorney Rodríguez received an
emergency call from Chief Judge Delgado-Colón and FAUSA Domínguez was called
away by the FBI.  DSMF ¶ 138; PRDSMF ¶ 138.  Everyone else who was invited,
except AUSA Gorbea, was present at the meeting.  DSMF ¶ 138; PRDSMF ¶ 138;
PSAMF ¶ 250; DRPSAMF ¶ 250.

When AUSA Márquez-Marín arrived at the meeting, she found a hostile, mob-
like atmosphere.[227]  PSAMF ¶ 250; DRPSAMF ¶ 250.  AUSA Márquez-Marín was
attacked and several participants, including AUSA Longo and SUSAs Hernández and
Myriam Fernández, asked her to explain the decision in the case in a manner that
she felt was highly disrespectful.  PSAMF ¶ 250; DRPSAMF ¶ 250; DSMF ¶ 139;
PRDSMF ¶ 139.  Chief Pérez was dumbfounded as to the purpose of the meeting,
which was not at all defined, and saw the meeting as something "senseless."[228]

---

[227]   The DOJ denies these alleged facts, citing other attendees' testimony that the tone of the
meeting remained professional.  DRPSAMF ¶ 250.  The Court does not accept the DOJ's denial because
it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

[228]   The DOJ admits that Chief Pérez made these statements.  DRPSAMF ¶ 251.  However, the
DOJ seeks to qualify its response by asserting that Chief Pérez's response is not surprising because
he was not present at the January 30, 2015, meeting.  DRPSAMF ¶ 251.  Further, the DOJ proffers
other portions of Chief Pérez's recollection that present a slightly different account.  DRPSAMF ¶ 251.
The Court rejects the DOJ's qualified response because it does not contradict the paragraph and

PSAMF ¶ 251; DRPSAMF ¶ 251.  Chief Pérez further stated that he was "baffled at the fact that [it] was conducted."  PSAMF ¶ 251 (alteration in original); DRPSAMF ¶ 251.  He said that those present were simply challenging AUSA Márquez-Marín's analysis.  PSAMF ¶ 251; DRPSAMF ¶ 251.  Chief Pérez described the meeting as one of "dissonance everywhere, one talking here and one talking over there, and with not much sense . . .."  PSAMF ¶ 252; DRPSAMF ¶ 252.  Moreover, this was done in the absence of the two highest officials in the USAO, who had agreed with AUSA Márquez-Marín's analysis but were absent from the meeting.[229]  PSAMF ¶ 253; DRPSAMF ¶ 253.  Chief Pérez stated that "the questions should have been directed to [FAUSA] Domínguez and [United States Attorney] Rodríguez, who were the ones who made the determination, and they were not present."  PSAMF ¶ 253; DRPSAMF ¶ 253.

In an email AUSA Márquez-Marín wrote to United States Attorney Rodríguez, FAUSA Domínguez, EAUSA Novas, Chief Ruiz, and Chief Pérez later the next day expressing her views about the meeting, she described the fact that there were untrue accusations being thrown at her and creating "a stressful and unpleasant experience."[230]  *Stip.* 152; PSAMF ¶ 254; DRPSAMF ¶ 254; DSMF ¶ 140; PRDSMF

---

because the Court is required to view contested evidence in the light most favorable to AUSA Márquez-Marín.

[229]    The DOJ denies that United States Attorney Rodríguez and FAUSA Domínguez agreed with AUSA Márquez-Marín's analysis.  DRPSAMF ¶ 253.  The Court previously rejected this denial.  *See supra* note 223.

[230]    First, the DOJ corrects the date of the email, DRPSAMF ¶ 254, and, in reviewing the record, the Court agrees with the DOJ and altered AUSA Márquez-Marín's additional paragraph two hundred and fifty-three to reflect the fact that AUSA Márquez sent the email on February 10, 2015, the day after the February 9, 2015 meeting.  Next, although the DOJ says that AUSA Márquez-Marín said she had these feelings, the DOJ denies "these sentiments."  DRPSAMF ¶ 254.  Knowing that the Court must view contested facts in the light most favorable to AUSA Márquez-Marín, the Court cannot

¶ 140.   AUSA Márquez-Marín questioned the presence of SUSA Hernández (the significant other of SUSA Capó against whom she had filed the EEO complaint), given that SUSA Hernández had not been the supervisor of the AUSAs in the case against Mr. Guzmán.   PSAMF ¶ 254; DRPSAMF ¶ 254; DSMF ¶ 140; PRDSMF ¶ 140.   She also noted that SUSA Myriam Fernández was SUSA Hernández's best friend.   DSMF ¶ 140; PRDSMF ¶ 140.   In addition, she noted that such stressful situations were not helpful to her efforts to "improve [her] medical condition," especially when she was "not even given an opportunity to prepare for such an encounter . . .."   PSAMF ¶ 254 (alteration in original); DRPSAMF ¶ 254.

On the same day, FAUSA Domínguez responded.   *Stip.* ¶ 153; DSMF ¶ 141; PRDSMF ¶ 141.   FAUSA Domínguez apologized for not being present and said she had spoken with EAUSA Novas and Chief Pérez to get a sense of what had happened at the meeting.   DSMF ¶ 141; PRDSMF ¶ 141.   She wrote that the intent of the meeting was to allow AUSA Longo and the narcotics supervisors to gain insight as to why the decision to dismiss was made.   DSMF ¶ 141; PRDSMF ¶ 141.   She said that she regretted that AUSA Márquez-Marín felt that members of the meeting were disrespectful to her or addressed her in an accusatory tone.   DSMF ¶ 141; PRDSMF ¶ 141.   She wrote that she was certain that was not their intent.[231]   DSMF ¶ 141;

---

understand how the DOJ could deny that AUSA Márquez-Marín had the feelings that she said she had.  The Court rejects the DOJ's denial.

    AUSA Márquez-Marín denies the DOJ's use of the phrase "expressing her views about the meeting" in paragraph one hundred and forty.  PRDSMF ¶ 140.  Since AUSA Márquez-Marín stipulates to this phrase in the Joint Stipulation, *see Stip.* ¶ 152, the Court rejects this qualification. AUSA Márquez-Marín also lists added facts, some already in the statement of facts, and does not explain why they are necessary.  PRDSMF ¶ 140.  The Court declines to include them here.

[231]    This sentence of the DOJ's paragraph one hundred and forty-one states, "She was certain that was not their intent."   DSMF ¶ 141.  AUSA Márquez-Marín qualifies this sentence, stating that

PRDSMF ¶ 141.  She also wrote that the decision to dismiss the case was not AUSA Márquez-Marín's and was made by various members of senior management after consulting AUSA Márquez-Marín and Chief Pérez.  DSMF ¶ 141; PRDSMF ¶ 141.  FAUSA Domínguez concluded:

> Of paramount importance in all of this is your health.  We are all committed to supporting you in your recovery, and do not want to create situations that will interfere in that process.  In the future, we will avoid including you in similar events until you are fully recovered.  Please accept our apologies if the meeting was upsetting to you.  I found your input on the case to be most helpful.

DSMF ¶ 141; PRDSMF ¶ 141.  United States Attorney Rodríguez sent a subsequent email joining in FAUSA Domínguez's response.  DSMF ¶ 141; PRDSMF ¶ 141.

### u.    *United States v. Santiago-Lugo*

*United States v. Santiago-Lugo*, case number 14-2230, was an appeal to the First Circuit Court of Appeals that involved a criminal defendant who filed a motion to have his sentence reviewed after Congress passed Amendment 750, an amendment that changed the sentencing guidelines for crack cocaine convictions.[232]  *Stip.* ¶ 190; DSMF ¶ 179; PRDSMF ¶ 179.  FAUSA Henwood, then Chief of the White Collar and General Crimes Unit, was assigned to answer all the cases arising under Amendment 750.  PSAMF ¶ 257; DRPSAMF ¶ 257.  In *Santiago-Lugo*, however, then Chief

---

FAUSA Domínguez wrote this but the record does not provide independent support that it was true.  PRDSMF ¶ 141.  The Court agrees with AUSA Márquez-Marín and altered the sentence accordingly.

AUSA Márquez-Marín also adds a fact regarding what FAUSA Domínguez wrote in her email.  PRDSMF ¶ 141.  Since the Court is required to view the conflicting evidence in the light most favorable to AUSA Márquez-Marín, the Court included this fact in its statement of facts.

[232]    AUSA Márquez-Marín admits the DOJ's paragraph one hundred and seventy-nine but qualifies it to add details about the case.  PRDSMF ¶ 179.  These details are included elsewhere in the statement of facts, *see* PSAMF ¶ 256, so the Court rejects this qualification.

Henwood did not file a response in district court to Mr. Santiago-Lugo's request.[233] PSAMF ¶ 257; DRPSAMF ¶ 257. The district court denied Mr. Santiago-Lugo's motion and Mr. Santiago-Lugo appealed. *Stip.* ¶ 190; PSAMF ¶ 257; DRPSAMF ¶ 257; DSMF ¶ 179; PRDSMF ¶ 179.

AUSA Márquez-Marín was assigned to file an appellate brief on behalf of the United States.[234] *Stip.* ¶ 191; PSAMF ¶ 255; DRPSAMF ¶ 255; DSMF ¶ 180; PRDSMF ¶ 180. Mr. Santiago-Lugo was one of a number of defendants requesting reductions for sentences in crack cocaine cases after Amendment 750 was approved. PSAMF ¶ 255; DRPSAMF ¶ 255. The case had been originally prosecuted in approximately 1993 and the prosecutors at that time were long gone from the USAO. PSAMF ¶ 256; DRPSAMF ¶ 256. AUSA Márquez-Marín was concerned that she did not have access to the original file in the case and that she could not consult with the original prosecutors regarding her questions about the quantity of drugs involved. PSAMF ¶ 259; DRPSAMF ¶ 259. There was a deadline in early June 2015 for the filing of the brief in the case. PSAMF ¶ 258; DRPSAMF ¶ 258. It was customary in the USAO to request an extension, the First Circuit routinely granted such requests,

---

[233]   The DOJ admits AUSA Márquez-Marín's additional paragraph two hundred and fifty-seven. DRPSAMF ¶ 257. Nevertheless, the DOJ seeks to explain why then Chief Henwood did not file a response. DRPSAMF ¶ 257. The Court declines to accept the DOJ's additional facts because they are not properly presented and in any event are immaterial.

[234]   In AUSA Márquez-Marín's additional paragraph two hundred and fifty-five, she states that it was sometime in the first half of 2015 that she was assigned the *Santiago-Lugo* appeal. PSAMF ¶ 255. The DOJ denies this portion of the paragraph on the ground that it is not supported by the record citation. DRPSAMF ¶ 255. The Court reviewed the citation and agrees with the DOJ. It omitted the reference to when AUSA Márquez-Marín was assigned the appeal.

and ASUA Márquez-Marín had every intention to request one.[235]   PSAMF ¶ 258; DRPSAMF ¶ 258.

On June 3, 2015, five days before her brief was due to the First Circuit, AUSA Márquez-Marín went to see Chief Pérez to discuss the case.[236]   *Stip.* ¶ 191; DSMF ¶ 180; PRDSMF ¶ 180.   AUSA Márquez-Marín had a concern there was not enough crack cocaine to convict Mr. Santiago-Lugo following Amendment 750.   *Stip.* ¶ 191; DSMF ¶ 180; PRDSMF ¶ 180.   Chief Pérez said that the AUSAs who had tried the case had left the USAO but suggested that AUSA Márquez-Marín meet with FAUSA Henwood for advice, since he had been responsible before his appointment as FAUSA to respond on behalf of the USAO to various motions calling for reductions of sentences after Amendment 750.   *Stip.* ¶ 191; DSMF ¶ 180; PRDSMF ¶ 180.   Chief Pérez also proposed including EAUSA Novas.   *Stip.* ¶ 191; DSMF ¶ 180; PRDSMF

---

[235]   The DOJ denies the part of AUSA Márquez-Marín's additional paragraph two hundred and fifty-eight that asserts that she had every intention of requesting an extension, arguing that this portion of the paragraph is not supported by the record citation.   DRPSAMF ¶ 258.   The Court reviewed the cited record and disagrees with the DOJ.   Although not explicit, the Court finds that AUSA Márquez-Marín's intention to request an extension is implicit in the cited record.

Moreover, the Court realized that AUSA Márquez-Marín miscited the record.   The statement that AUSA Márquez-Marín had every intention of requesting an extension appears at paragraph one hundred and twenty-five of her sworn declaration.   *See* PSAMF, Attach. 1, *Ex. 1 to Ex. A: Márquez Sworn Statement* ¶ 125.   To do justice, the Court included the statement, which is supported by the record, despite the inaccurate citation.

[236]   AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph one hundred and eighty, objecting to the inference that she was negligent in waiting to express her concerns to her supervisors and failing to file for an extension earlier.   PRDSMF ¶ 180.   The Court makes no such inference and rejects this qualification.   AUSA Márquez-Marín also qualifies her response to add facts about then Chief Henwood's treatment of the *Santiago-Lugo* case.   PRDSMF ¶ 180.   These facts appear elsewhere in the statement of facts, so the Court does not include them here.

AUSA Márquez-Marín discusses the DOJ's paragraphs one hundred and eighty through one hundred and ninety-eight, arguing that they "do nothing more than show that there is a controversy as to the reasonable inferences which can be drawn with response to this controversy (one of which is that [AUSA] Márquez[-Marín] was subject to unwarranted, heightened supervision)."   PRDSMF ¶ 180 (emphasis omitted).   The Court disregards this note as argument because it does not contradict any of the referenced paragraphs.

¶ 180.    Together, AUSA Márquez-Marín and Chief Pérez contacted FAUSA Henwood's assistant to arrange a meeting and a meeting was set for the next day at 10:00 a.m.  *Stip.* ¶ 191; DSMF ¶ 180; PRDSMF ¶ 180.

While preparing the appeal, AUSA Márquez-Marín attempted to talk to FAUSA Henwood as the person in charge of the Amendment 750 cases, but he told her that he had not answered Mr. Santiago-Lugo's request at the district level. PSAMF ¶ 260; DRPSAMF ¶ 260.  Even though he had no direct involvement in the case, FAUSA Henwood requested to see a copy of the brief before it was filed.  PSAMF ¶ 262; DRPSAMF ¶ 262.  Furthermore, FAUSA Henwood continued to send AUSA Márquez-Marín emails containing research that AUSA Márquez-Marín believed was not related to the matter.[237]  PSAMF ¶ 262; DRPSAMF ¶ 262.

At 5:10 p.m. on June 3, 2015, FAUSA Henwood emailed Chief Pérez, AUSA Márquez-Marín and EAUSA Novas and said that he had another meeting on June 4, 2015, at 10:00 a.m., so if they were going to meet, it would need to be at 9:30 a.m. *Stip.* ¶ 192; DSMF ¶ 181; PRDSMF ¶ 181.  FAUSA Henwood also asked AUSA Márquez-Marín to refresh him as to the issue in the case so that the meeting could be productive.  *Stip.* ¶ 192; DSMF ¶ 181; PRDSMF ¶ 181.  FAUSA Henwood wrote AUSA Márquez-Marín and Chief Pérez the next morning at 8:55 a.m.  *Stip.* ¶ 193; DSMF ¶ 182; PRDSMF ¶ 182.  FAUSA Henwood wrote, "Although the Appellant's brief was docketed in December of 2014, I do not believe I have been consulted on this

---

[237]    The DOJ interposes a qualified response, asserting that FAUSA Henwood thought his research was related to the appellate issues in the case.  DRPSAMF ¶ 262.  The Court altered the language slightly to confirm that the irrelevance of FAUSA Henwood's research was AUSA Márquez-Marín's subjective belief.

matter until a meeting request was made through my legal assistant yesterday afternoon.  Please let me know if I am incorrect in this."[238]  *Stip.* ¶ 193; DSMF ¶ 182; PRDSMF ¶ 182.  He told them he had printed out the appellant's brief and provided three reasons for why he did not see any merit in it.  *Stip.* ¶ 193; DSMF ¶ 182; PRDSMF ¶ 182.  FAUSA Henwood forwarded this email to EAUSA Novas.  *Stip.* ¶ 193; DSMF ¶ 182; PRDSMF ¶ 182.

At 9:11 a.m. on June 4, 2015, Chief Pérez responded to FAUSA Henwood (copying EAUSA Novas) that AUSA Márquez-Marín had a concern that she would explain, and since FAUSA Henwood was the one coordinating the amendment cases, she wanted to ensure her analysis was consistent with his instructions in those cases.  *Stip.* ¶ 194; DSMF ¶ 183; PRDSMF ¶ 183.  At 9:16 a.m., FAUSA Henwood again wrote to AUSA Márquez-Marín, copying EAUSA Novas and Chief Pérez: "Please let me know the specific issue.  Frankly I don't see what my coordination of these cases has to do with the issue raised.  Especially where the Judge denied the petition 9 days after the probation officer filed his package (and before we were even required to respond), and since the exact relief was denied in both the district court and the court of appeals in 2008."  *Stip.* ¶ 195; DSMF ¶ 184; PRDSMF ¶ 184.

At 9:46 a.m., AUSA Márquez-Marín wrote to FAUSA Henwood and EAUSA Novas.  *Stip.* ¶ 196; DSMF ¶ 185; PRDSMF ¶ 185.  AUSA Márquez-Marín said that

---

[238]    AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph one hundred and eighty-two, asserting that "despite [FAUSA] Henwood's implication in the referenced email, . . . there was absolutely no requirement that [AUSA] Márquez[-Marín] consult with [FAUSA] Henwood on the *Santiago-Lugo* matter."  PRDSMF ¶ 182.  The Court does not read the paragraph as saying that AUSA Márquez-Marín was required to consult with FAUSA Henwood and thus did not alter the paragraph.

she believed there could be a problem in the denial of the motion. *Stip.* ¶ 196; DSMF ¶ 185; PRDSMF ¶ 185. She added, "Since it is 10:00 am already please let me know if we will meet." *Stip.* ¶ 196; DSMF ¶ 185; PRDSMF ¶ 185. FAUSA Henwood sent an official cancellation of the meeting. *Stip.* ¶ 197; DSMF ¶ 186; PRDSMF ¶ 186. Upon receiving the cancellation, AUSA Márquez-Marín again wrote FAUSA Henwood at 9:51 a.m., copying EAUSA Novas and Chief Pérez, and stated, "I just received the cancellation of today's meeting. As you all know, I will be at the office until 1:00 pm. Please let me know if you want and can meet to discuss this important matter before 1:00 pm." *Stip.* ¶ 197; DSMF ¶ 186; PRDSMF ¶ 186. At 9:59 a.m., FAUSA Henwood responded, copying EAUSA Novas and Chief Pérez: "[AUSA Márquez-Marín]: I have two interviews at 10:00 and 10:30. I'm not sure what time I'll finish. It is possible that I could squeeze a short meeting in. However, in anticipation of the meeting, could you please tell what the problem you believe there could be with the denial? I don't see any issues with this second denial of the crack reduction. But if you give me the precise concern I am sure I can help you resolve the issue." *Stip.* ¶ 198; DSMF ¶ 187; PRDSMF ¶ 187.

At 11:04 a.m., AUSA Márquez-Marín wrote to FAUSA Henwood: "As you know, Amendment 750 was approved retroactively. It increased the quantity threshold of crack from 50 to 280 grams. Once the amendment is applied to [Mr.] Santiago Lugo one of the elements of the offense of section 848 is not met. Therefore, the sentence can not . . . be mandatory as he was sentenced to mandatory life imprisonment." *Stip.* ¶ 199; DSMF ¶ 188; PRDSMF ¶ 188.

Later that morning, EAUSA Novas, having been copied on or forwarded a number of the prior emails, wrote to Chief Pérez in part:

> I have some concerns with the way this appeal is being handled which we can discuss later, but AUSA M[árquez-Marín] has not followed the Appellate and Trial Division Coordination Procedures [the protocol] in effect since March 12. This is something that you need to address with her. She was assigned to this matter since the April 9, 2015 calendar, and it had due dates of April 22 (extended) and May 22 (extended), now it is due on June 8. To the best of [FAUSA Henwood's] recollection, she did not consult this appeal with him until today's meeting was requested (yesterday afternoon). As you are aware, the policy calls for consultation within 5 days of receiving the appellant's brief. Moreover, if the brief will be filed on Monday, [FAUSA Henwood] should be afforded an opportunity to review the same (within 4 days of the due date as per the policy). Please make sure that AUSA M[árquez-Marín] complies with the established policy going forward, as this will avoid the type of last-minute issues we are now confronting with this matter.[239]

*Stip.* ¶ 200 (some alterations in original); PSAMF ¶ 265; DRPSAMF ¶ 265; DSMF ¶ 189; PRDSMF ¶ 189.

The protocol to which EAUSA Novas referred required appellate counsel to consult with trial counsel at a certain point in the appeals process. PSAMF ¶ 266; DRPSAMF ¶ 266. EAUSA Novas told Chief Pérez that AUSA Márquez-Marín had not "consulted with the trial attorney" before filing the brief. PSAMF ¶ 266; DRPSAMF ¶ 266. But, as noted earlier, FAUSA Henwood had not been trial counsel and had not responded to Mr. Santiago-Lugo's petition.[240] PSAMF ¶ 266; DRPSAMF

---

[239]   The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and sixty-five, asserting that the Court should disregard the phrase "[d]espite these facts" because it is not established and is argumentative and conclusory. DRPSAMF ¶ 265. The Court agrees that this phrase is argumentative and struck it.
          AUSA Márquez-Marín discusses additional facts related to the DOJ's paragraph one hundred and eighty-nine. PRDSMF ¶ 189. These facts relate to the veracity of EAUSA Novas' statements, not whether she said them, so the Court disregards these comments.
[240]   The DOJ admits the portion of AUSA Márquez-Marín's additional paragraph two hundred and sixty-six that states EAUSA Novas was referring to the part of the protocol that requires appellate

¶ 266.  EAUSA Novas admitted that the requirement of consulting trial counsel was for the purpose of "discuss[ing] the evidence that came out at trial . . ..  They were there at the trial court level . . . trial attorneys are a very important part of the appellate process.  You're defending their convictions."  PSAMF ¶ 267 (alterations in original); DRPSAMF ¶ 267.  FAUSA Henwood was not trial counsel.[241]  PSAMF ¶ 267; DRPSAMF ¶ 267.

At 12:41 p.m., AUSA Márquez-Marín emailed Chief Pérez.  *Stip.* ¶ 201; DSMF ¶ 190; PRDSMF ¶ 190.  She noted that she just saw FAUSA Henwood leaving for lunch with SUSA Capó and SLC Scott Anderson, so she "underst[ood] . . . that he d[id] not want to meet."  *Stip.* ¶ 201; DSMF ¶ 190; PRDSMF ¶ 190.  AUSA Márquez-Marín met with Chief Pérez before 1:27 p.m., after Chief Pérez called her to discuss EAUSA Novas' concerns.  *Stip.* ¶ 202; DSMF ¶ 191; PRDSMF ¶ 191.  Following the meeting, AUSA Márquez-Marín wrote to EAUSA Novas with a copy to Chief Pérez.  *Stip.* ¶ 202; DSMF ¶ 191; PRDSMF ¶ 191.  AUSA Márquez-Marín stated in part that

---

counsel to consult with trial counsel at a certain in the appeals process.  DRPSAMF ¶ 266.  The DOJ denies, however, the remainder of the paragraph as not supported by the citation.  DRPSAMF ¶ 266.  The Court declines to accept the DOJ's denial because the factual statements are elsewhere supported and place in context EAUSA Novas' objection to AUSA Márquez-Marín's actions.  The Court altered the paragraph slightly to clarify the point.

[241]     The parties are at odds about AUSA Márquez-Marín's additional paragraph two hundred and sixty-seven.  AUSA Márquez-Marín asserts that she was under no obligation to consult FAUSA Henwood because he was not trial counsel and because he had not responded to the defendant's petition.  PSAMF ¶ 267.  The DOJ says that she was still obligated to do so in order to obtain input from someone in the office who could have assisted her.  DRPSAMF ¶ 267.  But the DOJ admits that FAUSA was not trial counsel.  DRPSAMF ¶ 267.  Because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included enough of AUSA Márquez-Marín's paragraph to allow the inference that the consultation policy did not apply to this situation.  The Court excluded some of AUSA Márquez-Marín's language as more argument than fact.

On the same basis, the Court omitted AUSA Márquez-Marín's additional paragraph two hundred and sixty-eight, namely that it is argumentative, and the Court accepts the factual underpinning for the point.

she did not see why she had to follow the protocol since FAUSA Henwood had not replied to the motion filed by Mr. Santiago-Lugo in the district court.  DSMF ¶ 191; PRDSMF ¶ 191.  She stated, "The reason why I requested a meeting with [FAUSA Henwood] is because he was the supervisor in charge of replying to the motions for request of reduction of sentence under amendment 750 and I understand his input will be valuable to analyze this case . . .."  DSMF ¶ 191; PRDSMF ¶ 191.

EAUSA Novas responded at 1:50 p.m.  *Stip.* ¶ 203; DSMF ¶ 192; PRDSMF ¶ 192.  After noting that she had no issues with AUSA Márquez-Marín's requests for extensions (an issue also raised by AUSA Márquez-Marín in her prior email), EAUSA Novas stated:

> My specific concern was that, given the fact that you had the case assigned for some time (since April 11) it was not until recently that you realized there were issues, just a few days before the brief is due after a couple of extensions of time had been requested.  The spirit of the [protocol] is precisely to encourage early review of assigned cases, early communication with anyone in the office who may be able to assist, and finally, timely submission of drafts for review by trial AUSAs.  In this case, you proceeded correctly in consulting with [FAUSA Henwood] as he was in charge of the amendment 750 crack reduction of sentence motions, however, he was not given specifics as to what the concerns were in a timely manner such that he could assist you.  It is not our intention to increase anyone's stress levels at the office, and we certainly understand that you are re-incorporating and transitioning to a regular schedule as your physician recommends.  If completing this brief will require more time than you expected, I recommend that a final brief extension of time be requested from the court.  Finally, since [former FAUSA Domínguez] left I am [Chief Pérez's] supervisor so please feel free to consult appellate issues with me as they arise, obviously going through the chain of command and keeping [Chief Pérez] in the loop.

*Stip.* ¶ 203 (some alterations in original); DSMF ¶ 192; PRDSMF ¶ 192.

At 2:10 p.m., AUSA Márquez-Marín replied to EAUSA Novas, copying Chief Pérez and FAUSA Henwood:

> Once more, I am requesting a meeting to discuss the problems with the case. After all, we are all working to represent the United States adequately. Since I am not in a position to decide how to proceed, I am only complying with procedure by requesting a meeting to explain the problems encountered and obtain instructions on how to proceed. Please let me know, if you are amenable to the meeting so I can comply with my work. Thanks.[242]

*Stip.* ¶ 204; DSMF ¶ 193; PRDSMF ¶ 193. At 7:49 p.m. on June 4, 2015, FAUSA Henwood wrote AUSA Márquez-Marín, copying EAUSA Novas and Chief Pérez. DSMF ¶ 194; PRDSMF ¶ 194. He stated that he had done some quick research and found some guidance from the DOJ as well as language from four cases that seemed to be "on point." DSMF ¶ 194; PRDSMF ¶ 194. He provided this information to AUSA Márquez-Marín. DSMF ¶ 194; PRDSMF ¶ 194. He noted at the end, "I think that this should take care of the issue. However, if you would still like to meet I will be available late in the morning or early in the afternoon tomorrow." DSMF ¶ 194; PRDSMF ¶ 194.

At 1:54 p.m. on June 5, 2015, AUSA Márquez-Marín wrote FAUSA Henwood. *Stip.* ¶ 205; DSMF ¶ 195; PRDSMF ¶ 195. She thanked him for the information but suggested that the information he provided did not address her concerns. DSMF ¶ 195; PRDSMF ¶ 195. For example, she wanted to know why the government had

---

[242] The DOJ's original paragraph one hundred and ninety-three quotes portions of AUSA Márquez-Marín's email. DSMF ¶ 193. AUSA Márquez-Marín quotes the email more extensively. PRDSMF ¶ 193. The Court expanded the statement of facts to include AUSA Márquez-Marín's clarification because it is required to view contested facts in the light most favorable to AUSA Márquez-Marín.

not submitted a response to the motion filed by Mr. Santiago-Lugo in the district court (even though FAUSA Henwood had already suggested the reason the previous day in his email at 9:16 a.m.—namely, that the judge had denied the petition before the government was even required to respond).  DSMF ¶ 195; PRDSMF ¶ 195.  She wanted to know the amount and type of controlled substances used for the sentencing.  DSMF ¶ 195; PRDSMF ¶ 195.  She also stated, "After three unsuccessful and unanswered requests for a meeting with both you and EAUSA Novas, it was clear to me that I was not going to be given the benefit of the discussion of this matter."  DSMF ¶ 195; PRDSMF ¶ 195.

In response, FAUSA Henwood sent an email to AUSA Márquez-Marín, copying Chief Pérez and EAUSA Novas.  DSMF ¶ 196; PRDSMF ¶ 196.  He refuted AUSA Márquez-Marín's statement about "unsuccessful" and "unanswered" requests for a meeting and systematically went through the many instances over the previous few days when he had offered to meet with her.  DSMF ¶ 196; PRDSMF ¶ 196.  He then addressed the specific issues AUSA Márquez-Marín referenced, including why the government had not responded to Mr. Santiago-Lugo's motion and the amount and type of controlled substances used during sentencing.  DSMF ¶ 196; PRDSMF ¶ 196.  He concluded:

> Please forward me what you have drafted.  I would be happy to review it and discuss it with you.  If you have any more specific questions you can email me, call me, or stop in and see me.  I also would not object to seeking a further extension of time in order to review and collaborate on the issue.

DSMF ¶ 196; PRDSMF ¶ 196.

At 8:28 p.m. on June 5, 2015, AUSA Márquez-Marín wrote an email to FAUSA Henwood. *Stip.* ¶ 206; DSMF ¶ 197; PRDSMF ¶ 197.  She stated that when she had first requested a meeting, it was with the intention to have a brief discussion and get the benefit of input from FAUSA Henwood and EAUSA Novas.   DSMF ¶ 197; PRDSMF ¶ 197.  She continued, "That simple request turned into such an extensive exchange of email messages that it defeated its original purpose and consume[d] time and energy that I would have preferred to dedicate to my work.   I looked for alternative sources of information and I am sorry for having requested the meeting." DSMF ¶ 197 (alteration in original); PRDSMF ¶ 197.  AUSA Márquez-Marín thanked FAUSA Henwood for his research and his time and noted that she was already working on something else.  DSMF ¶ 197; PRDSMF ¶ 197.

Four days later, on June 9, 2015, FAUSA Henwood wrote to AUSA Márquez-Marín and asked whether she had been able to file for an extension in *Santiago-Lugo*. *Stip.* ¶ 207; DSMF ¶ 198; PRDSMF ¶ 198.  He wrote, "Again, please let me see what you have drafted already for my comment and review."  *Stip.* ¶ 207; DSMF ¶ 198; PRDSMF ¶ 198.  AUSA Márquez-Marín responded that she had finished the brief and had already filed it.  *Stip.* ¶ 207; DSMF ¶ 198; PRDSMF ¶ 198.  AUSA Márquez-Marín did not think there was any need for her to show FAUSA Henwood her brief before filing because FAUSA Henwood was not in her chain of command, had nothing to do with the original prosecution of Mr. Santiago-Lugo, and had not filed a response to Mr. Santiago-Lugo's motion at district court.  PSAMF ¶ 263; DRPSAMF ¶ 263. She also thought he provided no pertinent research assistance since her concern was

not a question of legal authority, but rather whether Mr. Santiago-Lugo had, as a factual matter, a certain amount of drugs or not.[243]  PSAMF ¶ 263; DRPSAMF ¶ 263.

At some point, ASUA Márquez-Marín and Chief Pérez came up with another idea to get the needed information.[244]  PSAMF ¶ 261; DRPSAMF ¶ 261.  They consulted with the prosecutors of the Appellate Division who had handled appeals by Mr. Santiago-Lugo's co-defendants.  PSAMF ¶ 261; DRPSAMF ¶ 261.  This consultation gave AUSA Márquez-Marín the information she needed concerning the drug quantity, to determine that Mr. Santiago-Lugo was not entitled to an adjustment, and to file the government's response on appeal.  PSAMF ¶ 261; DRPSAMF ¶ 261.  AUSA Márquez-Marín obtained an extension, filed the brief, and prevailed on appeal.[245]  PSAMF ¶ 264; DRPSAMF ¶ 264.

In the same June 9, 2015, email to Officer Western where AUSA Márquez-Marín had expressed concern about the decision made regarding her assignment to the Civil Division, AUSA Márquez-Marín stated that she had been subjected to additional stress due to the new chain of command that she had encountered in appeals.  *Stip.* ¶ 208; DSMF ¶ 199; PRDSMF ¶ 199.  This was a reference to EAUSA

---

[243]    The DOJ qualifies AUSA Márquez-Marín's additional paragraph two hundred and sixty-three, asserting that FAUSA Henwood believed his research to be on point.  DRPSAMF ¶ 163.  The Court rejects this qualification but altered the paragraph to clarify that the opinion on the relevance of FAUSA Henwood's research assistance was AUSA Márquez-Marín's.

[244]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and sixty-one, asserting that AUSA Márquez-Marín was still corresponding with FAUSA Henwood about the case.  DRPSAMF ¶ 261.  The Court rejects this qualification because it does not contradict additional paragraph two hundred and sixty-one.

[245]    The DOJ denies that AUSA Márquez-Marín "sought or obtained an extension from the First Circuit once she first brought the case to [FAUSA] Henwood's attention."  DRPSAMF ¶ 264.  But AUSA Márquez-Marín's additional paragraph two hundred and sixty-four does not say when she sought and obtained the extension, only that she did so.  PSAMF ¶ 264.  The Court declines to accept the DOJ's denial because it is non-responsive.

Novas.  *Stip.* ¶ 208; DSMF ¶ 199; PRDSMF ¶ 199.  EAUSA Novas, copied on the email, responded on June 10, 2015, at 9:26 a.m.  *Stip.* ¶ 209; DSMF ¶ 200; PRDSMF ¶ 200.  As to AUSA Márquez-Marín's claim of additional stress, she noted that because of AUSA Márquez-Marín's Telework Agreement and reasonable accommodation request, she had been very clear with Chief Pérez that AUSA Márquez-Marín should be assigned only the least complex matters in the Appellate Division to ensure that she could comfortably meet deadlines while she transitioned to a full eight-hour day at the office.  DSMF ¶ 200; PRDSMF ¶ 200.  After referencing several appellate cases in which AUSA Márquez-Marín had filed briefs, EAUSA Novas wrote, "All these cases were assigned to you by [Chief Pérez] because the issues on appeal were straightforward when compared to the more complex briefs handled by more experienced AUSAs in the [Appellate D]ivision."[246]  DSMF ¶ 200; PRDSMF ¶ 200.

EAUSA Novas also mentioned AUSA Márquez-Marín's work in the two previous months (an average of one brief per month in cases that involved simple sentencing issues) and the fact that she would not be traveling to Boston for any oral arguments.  DSMF ¶ 200; PRDSMF ¶ 200.  As for *Santiago-Lugo*, EAUSA Novas acknowledged that she had asked Chief Pérez to address with her the handling of the appeal and her failure to follow the procedure.  DSMF ¶ 200; PRDSMF ¶ 200.  She also pointed out that AUSA Márquez-Marín had filed the brief without showing it to

---

[246]    AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph two hundred, stating that even though EAUSA Novas wrote these statements, it does not mean that her words accurately reflect EAUSA Novas' beliefs or are true.  PRDSMF ¶ 200.  The Court does not draw these inferences and so disregards AUSA Márquez-Marín's qualification.

FAUSA Henwood, despite FAUSA Henwood's research assistance and his request to see a draft.   DSMF ¶ 200; PRDSMF ¶ 200.   However, given her belief that management had gone to lengths to alleviate AUSA Márquez-Marín's workload and given her own general non-involvement in AUSA Márquez-Marín's appellate work, EAUSA Novas stated that she was surprised that AUSA Márquez-Marín had felt the new chain of command in the Appellate Division had added stress to her work.  DSMF ¶ 200; PRDSMF ¶ 200.  EAUSA Novas proposed that they meet as soon as possible to discuss any concerns that AUSA Márquez-Marín had.  DSMF ¶ 200; PRDSMF ¶ 200.

At 10:38 a.m., AUSA Márquez-Marín replied.   *Stip.* ¶ 210; DSMF ¶ 201; PRDSMF ¶ 201.  AUSA Márquez-Marín said she felt "targeted, under attack, and not welcome."  DSMF ¶ 201; PRDSMF ¶ 201.  She noted that she was surprised to read that EAUSA Novas was reviewing her previous work on appeals and expressed that EAUSA Novas' impression of the type of work she had been doing was biased.  DSMF ¶ 201; PRDSMF ¶ 201.  She also said that she could not comprehend why EAUSA Novas said she had failed to follow the protocol in the *Santiago-Lugo* case.  DSMF ¶ 201; PRDSMF ¶ 201.  She explained that she had "voluntarily requested the meeting with [FAUSA] Henwood . . . because [Mr.] Santiago-Lugo had co-defendants that filed motions with similar requests and [she] wanted to benefit from [FAUSA] Henwood's input."  DSMF ¶ 201; PRDSMF ¶ 201.  In conclusion, she wrote:

> It is important to remember that I gave favorable testimony in support of the EEO complaint that former employee [Specialist] Reyes filed against you and other members of upper management.  I also have an EEO compliant filed against you and other members of upper

management.  I already received the transcripts of my interviews and I
know that they were sent to the USAO[] so I am sure you already know
the contents of my testimonies.  Therefore all this messages and
harassment are not happening in a void . . ..

DSMF ¶ 201; PRDSMF ¶ 201.

After the exchange of emails on June 10, 2015, AUSA Márquez-Marín met with
EAUSA Novas and Chief Pérez later that day.  *Stip.* ¶ 211; DSMF ¶ 202; PRDSMF
¶ 202.  At the meeting, AUSA Márquez-Marín communicated that she felt that
EAUSA Novas was harassing her as she was trying to reintegrate to the office after
her car accident.[247]  DSMF ¶ 202; PRDSMF ¶ 202.  She further said that EAUSA
Novas' retaliation was having an adverse and damaging effect on her health.  DSMF
¶ 202; PRDSMF ¶¶ 202-03.  She stated that EAUSA Novas had a conflict of interest
since AUSA Márquez-Marín was involved in EEO complaints related to her and she
had testified in support of Specialist Reyes' EEO complaint against upper
management, including EAUSA Novas.  DSMF ¶ 202; PRDSMF ¶¶ 202-03.  Also
raised was the applicability of the protocol in the *Santiago-Lugo* appeal and the
ability to request extensions.  DSMF ¶ 202; PRDSMF ¶ 202.

The parties also discussed the appellate cases AUSA Márquez-Marín had
remaining (including the *Manso-Cepeda* appeal) and the fact that she would not be
assigned additional appellate cases.  DSMF ¶ 202; PRDSMF ¶ 202.  AUSA Márquez-
Marín renewed her request for a transfer to the Civil Division and asked EAUSA

---

[247]    AUSA Márquez-Marín interposes a qualified response to DOJ's paragraph two hundred and
three.  PRDSMF ¶ 203.  Although her comments seem better directed to paragraph two hundred and
two, the Court integrated them into the description of the June 10, 2015, meeting because it is required
to view contested facts in the light most favorable to AUSA Márquez-Marín.

Novas to refrain from interfering with her work in the meantime. DSMF ¶ 202; PRDSMF ¶¶ 202-03. It was clarified that her request for transfer to the Civil Division would be expedited. DSMF ¶ 202; PRDSMF ¶¶ 202-03. EAUSA Novas admitted that the policies and protocols that she had accused AUSA Márquez-Marín of not following were not applicable to the *Santiago-Lugo* case.[248] DSMF ¶ 203; PRDSMF ¶ 203. Also, EAUSA Novas told AUSA Márquez-Marín that she had to send a copy of her next brief, the *Manso-Cepeda* brief, to trial counsel in that case, AUSA Cannon. DSMF ¶ 203; PRDSMF ¶ 203. AUSA Márquez-Marín testified that when she left the meeting, she found it to be productive. DSMF ¶ 203; PRDSMF ¶ 203. EAUSA Novas and Chief Pérez also found the meeting to be productive. DSMF ¶ 203; PRDSMF ¶ 203.

Following this meeting, EAUSA Novas emailed AUSA Márquez-Marín on the same day. *Stip.* ¶ 212; DSMF ¶ 204; PRDSMF ¶ 204. EAUSA Novas stated that because they had met, she would not address the contents of AUSA Márquez-Marín's email from earlier that day. DSMF ¶ 204; PRDSMF ¶ 204. EAUSA Novas, however, emphasized that she was reviewing not only AUSA Márquez-Marín's briefs, but everyone's briefs and workload on a daily basis. DSMF ¶ 204; PRDSMF ¶ 204. She also expressed that in no way were the emails of the previous week related to the

---

[248]     The DOJ's paragraph two hundred and three states only that AUSA Márquez-Marín, EAUSA Novas, and Chief Pérez all found the meeting productive. DSMF ¶ 203. AUSA Márquez-Marín clarifies that her view that the meeting was productive was in part based on EAUSA Novas' concession that the policies and protocols that she had accused AUSA Márquez-Marín of violating were not in fact applicable to the *Santiago-Lugo* case. PRDSMF ¶ 203. Also, AUSA Márquez-Marín said that EAUSA Novas told her that she would have to send a copy of her next brief to trial counsel. PRDSMF ¶ 203. The Court included these statements because without them there would be a misimpression that AUSA Márquez-Marín had acknowledged fault.

*Santiago-Lugo* appeal intended to be an attack on AUSA Márquez-Marín. DSMF ¶ 204; PRDSMF ¶ 204. Nor, according to EAUSA Novas, did the emails have anything to do with AUSA Márquez-Marín's EEO activity. DSMF ¶ 204; PRDSMF ¶ 204. With respect to AUSA Márquez-Marín's request for a transfer to the Civil Division, EAUSA Novas stated that (1) the request would be evaluated by Civil Division Chief Ramírez to determine what type of work would fit the limitations placed on AUSA Márquez-Marín by her doctor and the four-hour Telework Agreement and (2) the position in the Civil Division would not be filled until that evaluation was completed. DSMF ¶ 204; PRDSMF ¶ 204.

Five days later, on June 15, 2015, United States Attorney Rodríguez signed a Certificate of Appreciation for AUSA Márquez-Marín for her work in 2014.[249] *Stip.* ¶ 213; DSMF ¶ 205; PRDSMF ¶ 205.

### v.      *United States v. Manso-Cepeda*

On May 11, 2015, Chief Pérez assigned AUSA Márquez-Marín to submit an appellate brief to the Court of Appeals for the First Circuit on behalf of the United States in *United States v. Manso-Cepeda*, case number 14-2068. *Stip.* ¶ 214; DSMF ¶¶ 206, 208; PRDSMF ¶¶ 206, 208. AUSA Márquez-Marín was working on the *Manso-Cepeda* appeal, among others, in the spring of 2015. PSAMF ¶ 269; DRPSAMF ¶ 269. The case had been handled at trial by AUSA Cannon. PSAMF ¶ 269; DRPSAMF ¶ 269; DSMF ¶ 206; PRDSMF ¶ 206. AUSA Cannon had been in

---

[249]      AUSA Márquez-Marín admits the DOJ's paragraph two hundred and five but disputes its significance. PRDSMF ¶ 205. As AUSA Márquez-Marín admits the paragraph, the Court included it and will leave its significance to the pending dispositive motion for argument of counsel.

the Puerto Rico USAO for about one year and a half and had previously been an AUSA in Washington, D.C., for approximately four years.[250]   PSAMF ¶ 269; DRPSAMF ¶ 269.  AUSA Cannon had reviewed numerous appeals when he was an AUSA in Washington, D.C., and had also been an intern in the Appellate Division at the USAO in Washington, D.C., during law school.[251]  DSMF ¶ 214; PRDSMF ¶ 214.

One of the key issues in the case on appeal was whether knowledge of the fact that a passenger had a gun could be imputed to the driver of a car (the defendant in *Manso-Cepeda*).  *Stip.* ¶ 215; DSMF ¶ 207; PRDSMF ¶ 207.  On May 13, 2015, EAUSA Novas wrote to Chief Pérez and asked him to check with AUSA Márquez-Marín whether the case, which involved a trial before the district court, was something that she was able to handle.  *Stip.* ¶ 216; DSMF ¶ 208; PRDSMF ¶ 208.  Chief Pérez responded that AUSA Márquez-Marín had confirmed that she was comfortable handling the case.  *Stip.* ¶ 216; DSMF ¶ 208; PRDSMF ¶ 208.  AUSA Márquez-Marín's brief was originally due to be filed with the First Circuit by June 8, 2015, but the First Circuit extended this deadline to July 8, 2015.  DSMF ¶ 209; PRDSMF ¶ 209.

On July 1, 2015, AUSA Márquez-Marín met with AUSA Cannon and Chief Pérez to discuss the case.  DSMF ¶ 210; PRDSMF ¶ 210.  After AUSA Cannon

---

[250]   The parties dispute whether AUSA Cannon could fairly be described as "relatively inexperienced" when he tried the *Manso-Cepeda* case.  PSAMF ¶ 269; DRPSAMF 269.  Rather than enter the dispute and attempt to categorize his level of experience, the Court set forth AUSA Cannon's actual experience about which the parties do agree.

[251]   The DOJ's paragraph two hundred and fourteen states that AUSA Cannon had been involved in numerous appeals in his proper position as an AUSA in Washington, D.C.  DSMF ¶ 214.  AUSA Márquez-Marín quotes his actual testimony.  PRDSMF ¶ 214.  The Court inserted his actual testimony rather than the DOJ's description of his testimony.

described the long shotgun introduced as evidence at trial, AUSA Márquez-Marín asked him its exhibit number. DSMF ¶ 210; PRDSMF ¶ 210. AUSA Cannon indicated that he thought the weapon was Exhibit 19. DSMF ¶ 210; PRDSMF ¶ 210.

At 2:01 p.m. on July 7, 2015, AUSA Márquez-Marín sent an email to AUSA Cannon, copying Chief Pérez, informing him that she had left a draft brief in his office for his review. *Stip.* ¶ 217; PSAMF ¶ 270; DRPSAMF ¶ 270; DSMF ¶ 211; PRDSMF ¶ 211. This was the day before the brief was due and was the first notification AUSA Cannon received from AUSA Márquez-Marín that a draft brief was ready for his review in the case. DSMF ¶ 211; PRDSMF ¶ 211. This draft was the first of several drafts she eventually prepared. PSAMF ¶ 270; DRPSAMF ¶ 270.

AUSA Márquez-Marín submitted the draft to trial counsel as required, not to get comments on grammar or spelling, but "to see if [she] had identified the substantive issue properly."[252] PSAMF ¶ 270 (alteration in original); DRPSAMF ¶ 270. AUSA Márquez-Marín had not yet checked the draft for grammatical or spelling errors. PSAMF ¶ 270; DRPSAMF ¶ 270. Nor had AUSA Márquez-Marín included in this first draft any citations to the trial transcript. PSAMF ¶ 271; DRPSAMF ¶ 271. To remind herself where she obtained these facts, she noted that "the underlying facts are taken from the [Pre-Sentence Report (PSR)] dated August

---

[252]    The DOJ interposes a qualified response to AUSA Márquez-Marín's additional paragraph two hundred and seventy, noting that AUSA Márquez-Marín did not inform AUSA Cannon that she was requesting only a substantive review. DRPSAMF ¶ 270. The Court declines to accept the DOJ's qualified response. The email noted that she has dropped off a "(Draft)" brief and asked AUSA Cannon to let her know if she was "missing something." DRPSAMF ¶ 270 (quoting *Stip.*, Attach. 1, *Ex. 91*). Viewing this language in the light most favorable to AUSA Márquez-Marín, the Court interprets her review request as asking AUSA Cannon for a substantive review.

25, 2014."[253]  PSAMF ¶ 271; DRPSAMF ¶ 271.  It was obvious to AUSA Márquez-Marín, who had by then written over a dozen appellate briefs, that she did not intend to include the PSR as the record reference in substitution of the trial record.  PSAMF ¶ 271; DRPSAMF ¶ 271.

At 2:34 p.m. on July 7, 2015, AUSA Cannon wrote to AUSA Márquez-Marín, "Will look at it right away."  *Stip.* ¶ 218; DSMF ¶ 212; PRDSMF ¶ 212.  AUSA Márquez-Marín replied, "I am out of the office but you can leave it at my office when you finish."  *Stip.* ¶ 218; DSMF ¶ 212; PRDSMF ¶ 212.  AUSA Cannon then reviewed AUSA Márquez-Marín's draft and later that day at 4:38 p.m. sent AUSA Márquez-Marín an email, copying Chief Pérez, and an attachment with his comments on the brief.  *Stip.* ¶ 219; DSMF ¶ 213; PRDSMF ¶ 213.  He began by saying, "I think we should file for an extension in this case."  DSMF ¶ 213; PRDSMF ¶ 213.  He wrote that he had some "substantial feedback" that should be included.  DSMF ¶ 213; PRDSMF ¶ 213.

At the time of AUSA Cannon's July 7, 2015, emails to AUSA Márquez-Marín, he was not in AUSA Márquez-Marín's chain of command.  *Stip.* ¶ 220.  AUSA Cannon marked up her first draft as if it was a final draft, making AUSA Márquez-Marín feel that EAUSA Novas was involved.[254]  PSAMF ¶ 272; DRPSAMF ¶ 272.  AUSA Cannon

---

[253]    The DOJ interposes a qualified response to the second and third sentences of AUSA Márquez-Marín's additional paragraph two hundred and seventy-one, asserting that AUSA Márquez-Marín did not convey this information to AUSA Cannon.  The Court rejects this qualification because it does not contradict the paragraph, which discusses AUSA Márquez-Marín's intentions.

[254]    The DOJ interposes various qualifications and denials in its response.  DRPSAMF ¶ 272.  The Court declines to accept most of these qualifications and denials because it is required to view contested factual issues in the light most favorable to AUSA Márquez-Marín.  One exception is the DOJ's denial that AUSA Cannon discussed this matter with EAUSA Novas at the time of the emails.  DRPSAMF ¶ 272.  The Court agrees with the DOJ that the cited authority does not support this fact.

marked up the brief by hand, scanned his edits, and attached them to the email, DSMF ¶ 213; PRDSMF ¶ 213; he redlined the document, correcting minor grammatical and typographical errors, and formatted issues, a task usually handled by legal assistants. PSAMF ¶ 272; DRPSAMF ¶ 272. AUSA Cannon discussed the *Rosemond* case, suggested the caselaw analysis was not developed, and proposed addressing inaccuracies in Mr. Manso-Cepeda's brief. DSMF ¶ 213; PRDSMF ¶ 213. AUSA Cannon even questioned why AUSA Márquez-Marín was supposedly using a PSR for factual references rather than the trial transcript, although that was never her intention with respect to the first draft. PSAMF ¶ 272; DRPSAMF ¶ 272; DSMF ¶ 213; PRDSMF ¶ 213.

AUSA Márquez-Marín thought AUSA Cannon was being disrespectful.[255] DSMF ¶ 214; PRDSMF ¶ 214. She testified that "he had never done an appeal in his life and was in [the Violent Crimes Unit] for less than a year." DSMF ¶ 214 (alteration in original); PRDSMF ¶ 214. Believing that AUSA Cannon was inexperienced and finding it "really strange" that AUSA Cannon had scanned his corrections, she came to the conclusion that EAUSA Novas had to be behind the

---

Therefore, the Court altered the paragraph to more accurately reflect AUSA Márquez-Marín's testimony. *See* PSAMF, Attach. 3, *Ex. R: Excerpts from the Dep. of Carmen Márquez* at 118:05-119:21.

[255] The DOJ's original first sentence in paragraph two hundred and fourteen states that AUSA Márquez-Marín "took offense." DSMF ¶ 214. AUSA Márquez-Marín objects, saying that this statement is not supported by the record. PRDSMF ¶ 214. She says instead that she thought AUSA Cannon was being disrespectful. PRDSMF ¶ 214. The Court used AUSA Márquez-Marín's preferred language even though it seems obvious that AUSA Márquez-Marín did take offense because she thought AUSA Cannon was being disrespectful.

AUSA Márquez-Marín also notes that her belief that AUSA Cannon was inexperienced and that EAUSA Novas was behind AUSA Cannon's comments was accurate. PRDSMF ¶ 214. Elsewhere in its statement of facts, the Court discusses AUSA Cannon's level of experience and EAUSA Novas' involvement in the controversy between AUSA Márquez-Marín and AUSA Cannon. *See supra* notes 250, 254.

comments, that EAUSA Novas was not complying with the purported June 10 agreement to refrain from interfering in her cases, and that EAUSA Novas was "hunting [her] again."  DSMF ¶ 214 (alteration in original); PRDSMF ¶ 214.

Either that same afternoon or the next morning, ASUA Cannon discussed this draft directly with EAUSA Novas, who was not in his supervisory chain and was the second-line supervisor for AUSA Márquez-Marín, after Chief Pérez.[256]  PSAMF ¶ 273; DRPSAMF ¶ 273; DSMF ¶ 217; PRDSMF ¶ 217.  AUSA Cannon told EAUSA Novas that he was concerned because *Manso-Cepeda* was an important case for the USAO's Violent Crimes Unit, the brief was due, and it needed a lot of work.  DSMF ¶ 217; PRDSMF ¶ 217.  EAUSA Novas saw that AUSA Cannon was frustrated with the quality of the brief drafted by AUSA Márquez-Marín, so she requested that he send her his initial comments.  DSMF ¶ 217; PRDSMF ¶ 217.  AUSA Cannon provided the redlined draft to EAUSA Novas at her request.  PSAMF ¶ 274; DRPSAMF ¶ 274.  EAUSA Novas asked AUSA Cannon to do so in order to discuss the matter with Chief Pérez to demonstrate that AUSA Márquez-Marín was handing in substandard work.[257]  PSAMF ¶ 274; DRPSAMF ¶ 274; DSMF ¶ 217; PRDSMF ¶ 217.  AUSA

---

[256]  AUSA Márquez-Marín admits the DOJ's paragraph two hundred and seventeen, but she interposes a qualified response to note that it is highly unusual for a trial counsel to consult a second-line supervisor rather than going to her first and then going through the mandated chain of command.  PRDSMF ¶ 217.  The Court did not alter the paragraph because this point does not contradict the paragraph and is implied by the language the Court included from AUSA Márquez-Marín's additional paragraph two hundred and seventy-three.  Thus, the Court rejects the qualification as cumulative.

[257]  The DOJ denies the portion of AUSA Márquez-Marín's additional paragraph two hundred and seventy-four that states EAUSA Novas requested the redlined brief to "demonstrate that [AUSA] Márquez[-Marín] was handing in substandard work."  DRPSAMF ¶ 274.  The Court rejects the DOJ's denial because AUSA Márquez-Marín's assertion is a logical inference from the alleged facts that are supported by record citations.  The DOJ also denies that AUSA Cannon redlined the document, stating that he marked up the brief by hand, not computer.  DRPSAMF ¶ 274.  The Court rejects this qualification because redlining can be done by hand.

Cannon wrote to EAUSA Novas, "Per your request, this is the input I had for the Manso-Cepeda brief."   DSMF ¶ 217; PRDSMF ¶ 217.   AUSA Cannon forwarded EAUSA Novas an email which contained his feedback on AUSA Márquez-Marín's brief.  DSMF ¶ 217; PRDSMF ¶ 217.

The next morning, July 8, 2015, Chief Pérez, who had been copied on AUSA Cannon's 4:38 p.m. email, wrote to AUSA Márquez-Marín and AUSA Cannon and mentioned that they could ask for a short extension of five days. *Stip.* ¶ 221; DSMF ¶ 215; PRDSMF ¶ 215.  AUSA Márquez-Marín filed the proposed extension, which the First Circuit subsequently granted on July 9, 2015, extending the deadline until July 13, 2015.  *Stip.* ¶ 222; DSMF ¶ 215; PRDSMF ¶ 215.

Also, on the morning of July 8, 2015, AUSA Márquez-Marín emailed AUSA Cannon and asked if he could meet around 10:00 a.m.  *Stip.* ¶ 223; DSMF ¶ 216; PRDSMF ¶ 216.  He replied that even though he was busy, he could try.  *Stip.* ¶ 223; DSMF ¶ 216; PRDSMF ¶ 216.  After 10:00 a.m. on July 8, 2015, and at some point during the morning that day, AUSA Márquez-Marín and AUSA Cannon met.  *Stip.* ¶ 224; DSMF ¶ 218; PRDSMF ¶ 218.  At 1:17 p.m. that day, AUSA Márquez-Marín wrote to AUSA Cannon.  *Stip.* ¶ 225; DSMF ¶ 219; PRDSMF ¶ 219.  In part, she thanked him for his input and noted that she would provide him with a revised draft. DSMF ¶ 219; PRDSMF ¶ 219.  At 1:46 p.m., AUSA Márquez-Marín provided AUSA Cannon with a revised draft.  *Stip.* ¶ 226.  She asked him not to share the draft with anyone until the brief was ready, stating, "Remember that this is an informal process so you can leave me the printout copy at my office chair, as I told you yesterday, you

don't have to scan it, as the draft is still a work in process . . .." *Stip.* ¶ 226; DSMF ¶ 219; PRDSMF ¶ 219.

The following morning, July 9, 2015, in a separate email, AUSA Márquez-Marín asked AUSA Cannon if he was sure that the shotgun in question was labeled as Exhibit 19. *Stip.* ¶ 227; DSMF ¶ 220; PRDSMF ¶ 220. On July 10, 2015, at 2:05 p.m., AUSA Cannon emailed AUSA Márquez-Marín regarding her revised draft, copying SUSA Hernández, his supervisor, and Chief Pérez. *Stip.* ¶ 228; DSMF ¶ 221; PRDSMF ¶ 221. AUSA Cannon addressed the email to "all." DSMF ¶ 220; PRDSMF ¶ 220. The 2:05 p.m. AUSA Cannon email contained a portion in which AUSA Cannon stated, "here are my comments/suggestions." *Stip.* ¶ 229. This was followed by language and certain points that he suggested should be incorporated into the brief. *Stip.* ¶ 229. He began by saying, "I took a look at the revised brief and have cc'd my supervisor to pull her into the loop. I think this is an important case for our section, particularly because of the aiding and abetting aspect. The First Circuit has been hot on this lately . . .." DSMF ¶ 221 (alteration in original); PRDSMF ¶ 221. He stated his belief that the government needed to address certain cases; that certain record excerpts should be added to the brief's statement of facts; that the government[258] had properly instructed the jury about knowledge, contrary to Mr. Manso-Cepeda's contentions; and that they should draw from the district judge's memorandum and order denying Mr. Manso-Cepeda's motion for judgment of

---

[258] The Court included the DOJ's paragraph two hundred and twenty-one as drafted, but the government does not instruct the jury. Presumably the DOJ meant that it presented proper instructions to the Court or that the Court properly instructed the jury.

acquittal.  DSMF ¶ 221; PRDSMF ¶ 221.  AUSA Cannon concluded by saying, "As always, I am available to assist in the preparation of the brief anytime, so please let me know."  DSMF ¶ 221; PRDSMF ¶ 221.  Chief Pérez testified that AUSA Cannon's comments "made a lot of sense."  DSMF ¶ 221; PRDSMF ¶ 221.

Within ten minutes, AUSA Márquez-Marín responded, copying Chief Pérez and SUSA Hernández.  *Stip.* ¶ 230; DSMF ¶ 222; PRDSMF ¶ 222.  She began by saying, "This is a first but not surprising."  DSMF ¶ 222; PRDSMF ¶ 222.  This was a reference to how AUSA Cannon had included his supervisors on his prior email.  DSMF ¶ 222; PRDSMF ¶ 222.  AUSA Márquez-Marín continued by noting that although she was happy to read the language that AUSA Cannon wanted to incorporate, her main concern was the AUSA Cannon had given her the wrong exhibit list and exhibit number for the shotgun.  DSMF ¶ 222; PRDSMF ¶ 222.  She wanted to include the exhibit list and exhibit number for the shotgun as an addendum to the brief and she did not want to include incorrect information.  DSMF ¶ 222; PRDSMF ¶ 222.  AUSA Márquez-Marín was also concerned about EAUSA Novas' role in this process.[259]  DSMF ¶ 222; PRDSMF ¶ 221.

AUSA Cannon, copying Chief Pérez and SUSA Hernández, replied that this information was available in the transcripts and on the docket, to which AUSA Márquez-Marín had access.  *Stip.* ¶ 231; DSMF ¶ 223; PRDSMF ¶ 223.  He noted that

---

[259]  AUSA Márquez-Marín's qualification of the DOJ's paragraph two hundred and twenty-one addresses the text of the DOJ's paragraph two hundred and twenty-two, so the Court views it as a qualification of the latter paragraph.  AUSA Márquez-Marín qualifies her response to reflect that the incorrect exhibit number was only one of her concerns with respect to AUSA Cannon's actions and that she was also concerned about EAUSA Novas' role in the process.  PRDSMF ¶ 221.  The Court included this added fact in accordance with its obligation to view contradicting evidence in the light most favorable to AUSA Márquez-Marín.

the firearm was admitted as Exhibit 25 and the photo of the firearm was admitted as Exhibit 16. *Stip.* ¶ 231; DSMF ¶ 223; PRDSMF ¶ 223. AUSA Cannon also noted that although the exhibit list was on the trial docket, he was sending it to her. *Stip.* ¶ 231; DSMF ¶ 223; PRDSMF ¶ 223. He stated in conclusion: "I appreciate being part of this process, but it's not my responsibility, as far as I know, to review the docket for things to include in your brief. If I'm mistaken, I would ask [SUSA Hernández] and [Chief Pérez] to please correct me." *Stip.* ¶ 231; DSMF ¶ 223; PRDSMF ¶ 223.

Meanwhile, SUSA Hernández wrote to EAUSA Novas, who had not been included in the latest email exchanges. *Stip.* ¶ 232; DSMF ¶ 224; PRDSMF ¶ 224. She forwarded those exchanges and stated in part, "I refer this matter to your attention since it involves an appeal." *Stip.* ¶ 232; DSMF ¶ 224; PRDSMF ¶ 224. SUSA Hernández noted that AUSA Cannon, "copied herein," wanted to ensure that the appellate brief contained all pertinent information and that he was available to respond to any questions and that AUSA Cannon had "expressed his interest in doing the oral argument of this appeal, if necessary." DSMF ¶ 224; PRDSMF ¶ 224.

At 3:14 p.m. on Friday, July 10, 2015, EAUSA Novas wrote to Chief Pérez, copying SUSA Hernández and AUSA Cannon:

> We need to discuss this Monday. The first draft of this brief, which was submitted to AUSA Cannon for review the day before it was due was sub-standard in all respects (facts, substance and proofreading). Moreover, I find AUSA [Márquez-Marín's] attitude towards a colleague who went out of his way to assist in the process quite disconcerting. In particular please refer to her sarcastic remark when he included his supervisor in the chain of emails ("this is a first but not surprising"). I understand that this brief is due on July 13, please make sure that all the changes suggested by AUSA Cannon are incorporated in the final draft.

*Stip.* ¶ 233; DSMF ¶ 225; PRDSMF ¶ 225.  In response, on the following Monday, July 13, 2015, at 9:02 am., Chief Pérez told EAUSA Novas that he had already informed AUSA Cannon that all his changes would be incorporated.  *Stip.* ¶ 233; DSMF ¶ 226; PRDSMF ¶ 226.

Also, on Monday, July 13, 2015, at 11:53 a.m., AUSA Márquez-Marín wrote to AUSA Cannon.  *Stip.* ¶ 234; DSMF ¶ 227; PRDSMF ¶ 227.  She thanked him for the correct exhibit list and exhibit numbers.  DSMF ¶ 227; PRDSMF ¶ 227. She also asked him to send the language that he wanted to include in the brief to address the cases he listed.  DSMF ¶ 227; PRDSMF ¶ 227.  AUSA Cannon responded at 2:19 p.m. that same day and referred her to his prior emails.  *Stip.* ¶ 234; DSMF ¶ 227; PRDSMF ¶ 227.

On that same Monday at 6:10 p.m., AUSA Márquez-Marín wrote to AUSA Cannon, copying Chief Pérez.  *Stip.* ¶ 235; DSMF ¶ 228; PRDSMF ¶ 228.  She indicated that she was supposed to leave the office at 3:00 p.m. and that she had waited until 3:30 p.m. for him to return the draft of the brief she had given him the previous week.  *Stip.* ¶ 235; DSMF ¶ 228; PRDSMF ¶ 228.  She also stated that at 3:30 p.m., she had been informed by Chief Pérez that AUSA Cannon had given him a draft with AUSA Cannon's comments after 3:00 p.m.  *Stip.* ¶ 235; DSMF ¶ 228; PRDSMF ¶ 228.  She suggested that "since the case [wa]s due [the next day]," she would have to file a request for a one-day extension with the First Circuit.  *Stip.* ¶ 235; DSMF ¶ 228; PRDSMF ¶ 228.  AUSA Márquez-Marín filed a motion for an extension on July 13, 2015, in which she asked for a one-day extension.  *Stip.* ¶ 236;

DSMF ¶ 228; PRDSMF ¶ 228.  The First Circuit granted the motion.  *Stip.* ¶ 236; DSMF ¶ 228; PRDSMF ¶ 228.

After receiving AUSA Márquez-Marín's email, AUSA Cannon responded to her at 7:31 p.m. on July 13, 2015, copying SUSA Hernández and Chief Pérez.  *Stip.* ¶ 237; DSMF ¶ 229; PRDSMF ¶ 229.  He wrote:

> You and your supervisor should discuss what to do regarding an extension.  As for the timing, I spent substantial time reviewing your initial draft of the brief and submitted both a hard copy of my edits and a long email (see Email of July 7, 2015 below) that included suggestions on case law and responses to the defendant's brief that I believed were necessary.  You ignored most, if not all, of my suggestions related to the substance of the brief and provided me a "final draft" on Friday.  That same day, I again sent an email (see July 10, 2015 email) that included substantial changes that I believed needed to be made.  You responded by sending a condescending email about my involvement and blaming me for not providing you with the correct exhibit numbers for the firearm and a photo that was introduced.  The "final brief" contains an abundance of typos, missing citations, and generally is not ready for filing in my opinion.  The edits I gave to [Chief Pérez] were just a start because he believed it would be helpful for me to actually mark up the brief when I spoke to him this afternoon.  There is nothing that was not contained in my emails from last week that has prevented you from making the necessary changes.  Finally, to be candid, in my 5.5 years as an AUSA, I've never been treated so unprofessionally as you have treated me during the last week.  Your insistence on blaming me for not meeting the deadline of this brief is offensive and insulting.

*Stip.* ¶ 237; DSMF ¶ 229; PRDSMF ¶ 229.  At 7:37 p.m., AUSA Cannon forwarded to EAUSA Novas and SUSA Hernández his correspondence with AUSA Márquez-Marín.[260]  *Stip.* ¶ 238; PSAMF ¶ 275; DRPSAMF ¶ 275; DSMF ¶ 230; PRDSMF ¶ 230.  He wrote:

---

[260]     The DOJ denies AUSA Márquez-Marín's additional paragraph two hundred and seventy-five, arguing that the cited authority shows only one email that AUSA Cannon sent EAUSA Novas and that AUSA Cannon's statements were made to AUSA Márquez-Marín and then forwarded, not made to EAUSA Novas directly.  DRPSAMF ¶ 275.  The Court reviewed the cited authority and agrees with

> See below for the latest.  I'm no longer sure how to handle this.  Frankly, it's become unprofessional and distracting.  If you would like, I'm happy to request an extension and write this brief myself.  I would want a few weeks but if we think the [First] Circuit would allow, it may be our best option.  [Chief Pérez] has been receptive to my comments and emails, so I'm happy to work with him on it.

*Stip.* ¶ 238 (some alterations in original); DSMF ¶ 230; PRDSMF ¶ 230.  At 7:43 p.m., twelve minutes after AUSA Cannon's 7:31 p.m. email, AUSA Márquez-Marín replied to AUSA Cannon:

> I must say that in my 14 years as an AUSA, I never had an experience like this with a new coworker.  Also in the recent years that I have been doing appeals my experience with the AUSAs that handled the cases at the district court has been quite different and not hostile.  This makes me wonder what is really going on?

*Stip.* ¶ 239; DSMF ¶ 232; PRDSMF ¶ 232.  A minute later AUSA Márquez-Marín sent a copy of her reply to Chief Pérez, copying SUSA Hernández—the same supervisors who were copied on AUSA Cannon's 7:31 p.m. email to her.  *Stip.* ¶ 239; DSMF ¶ 232; PRDSMF ¶ 232.  In response to AUSA Cannon's email, at 7:46 p.m., EAUSA Novas wrote Chief Pérez, copying SUSA Hernández and AUSA Cannon.  DSMF ¶ 231; PRDSMF ¶ 231.  She wrote, "I am extremely surprised and disappointed that it appears that this brief is not near completion."  DSMF ¶ 231; PRDSMF ¶ 231.  She also stated that AUSA Márquez-Marín's unprofessional behavior towards her colleague would have to be addressed.  DSMF ¶ 231; PRDSMF ¶ 231.  She instructed Chief Pérez to take over the brief from AUSA Márquez-Marín

---

the DOJ on both points.  The Court struck these portions of the paragraph and included the remaining parts, which correspond with Joint Stipulation paragraph two hundred and thirty-eight.  *See Stip.* ¶ 238.

and told him that AUSA Cannon was willing to work with him.  DSMF ¶ 231; PRDSMF ¶ 231.

> At 8:21 p.m., AUSA Cannon replied to AUSA Márquez-Marín:
>
> I have no idea what you are insinuating, but I've just tried to provide some insight and assistance.  You don't seem to want my help or to incorporate my comments, and that is both surprising and disappointing.

*Stip.* ¶ 240; DSMF ¶ 233; PRDSMF ¶ 233.  At 8:36 p.m., SUSA Hernández forwarded to EAUSA Novas AUSA Márquez-Marín's 7:43 p.m. email to AUSA Cannon.  *Stip.* ¶ 241; DSMF ¶ 234; PRDSMF ¶ 234.

The next morning, July 14, 2015, EAUSA Novas emailed Chief Pérez, copying United States Attorney Rodríguez and FAUSA Henwood, and asked him to meet with AUSA Márquez-Marín to explain to her that her performance on the brief was sub-standard and that her sarcastic comments to AUSA Cannon (in the email of the previous day at 7:43 p.m. and previously in her email dated July 10, 2015, at 2:15 p.m.) were unnecessary.  *Stip.* ¶ 242; DSMF ¶ 235; PRDSMF ¶ 235.  Of AUSA Cannon, she wrote, "He has been, and continues to be, willing to assist to make sure the quality of the final brief is up to the standards this office expects."  *Stip.* ¶ 242; DSMF ¶ 235; PRDSMF ¶ 235.  She also reiterated her instruction that Chief Pérez take over the file from AUSA Márquez-Marín and told him to request a brief extension of time if necessary to finalize the brief.  *Stip.* ¶ 242; DSMF ¶ 235; PRDSMF ¶ 235.  She repeated that AUSA Cannon would assist.  *Stip.* ¶ 242; DSMF ¶ 235; PRDSMF ¶ 235.  Chief Pérez and AUSA Cannon then worked on the *Manso-Cepeda*

brief and filed the brief on July 15, 2015. *Stip.* ¶¶ 243-44; DSMF ¶ 236; PRDSMF ¶ 236.

On July 17, 2015, Chief Pérez met with AUSA Márquez-Marín as instructed by EAUSA Novas to address EAUSA Novas' concerns about AUSA Márquez-Marín's work on the *Manso-Cepeda* brief and her treatment of AUSA Cannon. *Stip.* ¶ 245; DSMF ¶ 237; PRDSMF ¶ 237.

AUSA Cannon eventually argued the *Manso-Cepeda* case before the First Circuit Court of Appeals, which affirmed the judgment of the district court in favor of the government and against Mr. Manso-Cepeda in *United States v. Manso-Cepeda*, 810 F.3d 846 (1st Cir. 2016). PSAMF ¶ 276; DRPSAMF ¶ 276. The oral argument in the *Manso-Cepeda* appeal was AUSA Cannon's first oral argument before the First Circuit.[261] PSAMF ¶ 276; DRPSAMF ¶ 276. Today, AUSA Cannon is a supervisor in the USAO, having been named to that position in 2018. PSAMF ¶ 277; DRPSAMF ¶ 277.

### w.   *United States v. Ronald Gall*

At the July 17, 2015, meeting with Chief Pérez, AUSA Márquez-Marín asked to be relieved from the last appeal that had been assigned to her, *United States v. Ronald Gall.* *Stip.* ¶ 245; DSMF ¶ 237; PRDSMF ¶ 237. Chief Pérez told AUSA Márquez-Marín that he had no authority to remove her from the case; the request had to be made to United States Attorney Rodríguez. *Stip.* ¶ 245; DSMF ¶ 237;

---

[261]   The DOJ qualifies AUSA Márquez-Marín's additional paragraph two hundred and seventy-six, stating that AUSA Cannon had argued a case before the First Circuit through a written submission before this case. DRPSAMF ¶ 276. The Court altered the paragraph to clarify that this argument was AUSA Cannon's first oral argument before the First Circuit.

PRDSMF ¶ 237.  On July 20, 2015, AUSA Márquez-Marín sent an email to United States Attorney Rodríguez, copying FAUSA Henwood, EAUSA Novas, her attorney, and an EEO investigator.  *Stip.* ¶ 247; DSMF ¶ 238; PRDSMF ¶ 238.  In this email, with the subject line "Retaliation," AUSA Márquez-Marín (1) notified United States Attorney Rodríguez of several instances of alleged harassment and reprisal since she returned to work, (2) asked if management would give her copies of certain emails, and (3) requested reassignment of the *Gall* appeal.  DSMF ¶ 238; PRDSMF ¶ 238.

The next day, Chief Pérez informed AUSA Márquez-Marín that United States Attorney Rodríguez had authorized her withdrawal from the *Gall* appeal.  *Stip.* ¶ 248.  On July 23, 2015, United States Attorney Rodríguez replied to AUSA Márquez-Marín's July 20, 2015, email.  *Stip.* ¶ 249; DSMF ¶ 239; PRDSMF ¶ 239.  She reiterated that AUSA Márquez-Marín's request to be taken off the *Gall* appeal had been approved.  *Stip.* ¶ 249; DSMF ¶ 239; PRDSMF ¶ 239.  She denied AUSA Márquez-Marín's request for emails but said that if AUSA Márquez-Marín believed she had been retaliated against for protected activity, she could contact the EEO staff.  *Stip.* ¶ 249; DSMF ¶ 239; PRDSMF ¶ 239.  On July 30, 2015, Chief Pérez memorialized the July 17 meeting in an email memorandum to United States Attorney Rodríguez.  *Stip.* ¶ 246.  Chief Pérez did so as per EAUSA Novas' request.  *Stip.* ¶ 246.

### x.    The 2015 EEO Pre-Complaint and Complaint

On July 29, 2015, AUSA Márquez-Marín filed another EEO pre-complaint.  *Stip.* ¶ 250; DSMF ¶ 240; PRDSMF ¶ 240.  She alleged discrimination based on

parental status and physical disability, as well as retaliation and harassment/hostile work environment, and complained generally about her treatment during her reintegration into the office starting in the spring of 2015.  DSMF ¶ 240; PRDSMF ¶ 240.  She stated that "[t]he persons who have engaged in this conduct and/or promoted it are EAUSA [Novas], FAUSA Henwood, and [United States Attorney] Rodríguez.  DSMF ¶ 240 (some alterations in original); PRDSMF ¶ 240.

On August 20, 2015, AUSA Márquez-Marín filed a second formal EEO complaint.[262]  *Stip.* ¶ 251; PSAMF ¶ 293; DRPSAMF ¶ 293; DSMF ¶ 241; PRDSMF ¶ 241.  This complaint was assigned case number USA-2015-02051.  *Stip.* ¶ 251; PSAMF ¶ 293; DRPSAMF ¶ 293; DSMF ¶ 241; PRDSMF ¶ 241.  On the complaint form itself, when asked to identify the basis for her complaint, she checked the following boxes: disability (physical), reprisal, and parental status.  *Stip.* ¶ 251; DSMF ¶ 241; PRDSMF ¶ 241.  In the narrative section, she wrote that after she began to reintegrate to work at the USAO in May 2015 following her second time teleworking, she was "subjected to an extraordinary hostile environment as part of a continuing pattern of retaliation."  *Stip.* ¶ 251; DSMF ¶ 241; PRDSMF ¶ 241.  She enumerated a number of matters, specifically alleging retaliation for prior EEO activity, workplace hostility, and disability and parental status discrimination.  *Stip.* ¶ 251; PSAMF ¶ 294; DRPSAMF ¶ 294; DSMF ¶ 241; PRDSMF ¶ 241.[263]

---

[262]    The DOJ admits that on August 20, 2015, AUSA Márquez-Marín filed a second formal EEO complaint but denies that she complied with the exhaustion requirement, which it asserts is a question of law, not fact.  DRPSAMF ¶ 293.  The Court agrees with the DOJ and did not include the exhaustion language in its statement of facts.

[263]    This citation is an example of how the summary judgment practice can send the Court down a rabbit hole.  The parties filed a joint stipulation, which contains paragraphs two hundred and fifty-one and two hundred and fifty-three.  Paragraph two hundred and fifty-one refers to the contents of

On September 15, 2015, the EOUSA's EEO and Diversity Management staff sent United States Attorney Rodríguez notice of AUSA Márquez-Marín's second formal EEO complaint. *Stip.* ¶ 252; DSMF ¶ 242; PRDSMF ¶ 242.

---

AUSA Márquez-Marín's second EEO complaint and further states, "A true and correct copy of [AUSA] Márquez[-Marín's] formal EEO complaint is attached as Exhibit 113." *Stip.* ¶ 251. Paragraph two hundred and fifty-three refers to the EEO decision to accept the complaint and further states, "A true and correct copy of the acceptance letter is attached at Exhibit 114." *Stip.* ¶ 253. By stipulation, the parties therefore place the actual complaint and the exact language of the issues that the EEO agreed to pursue before the Court for purposes of the motion for summary judgment. The complaint alleges retaliation for prior EEO activity, workplace hostility, and disability and parental status discrimination. *See Stip.*, Attach. 2, *Ex. 113 (EEO Compl.)*. The EEO's acceptance letter itemizes the seven specific issues that the EEO agreed to investigate, which are the same issues outlined in the complaint. *See Stip.*, Attach. 2, *Ex. 114.*

In the DOJ's paragraph two hundred and forty-one, the DOJ states the information reflected above and also says that AUSA Márquez-Marín "enumerated a number of matters." DSMF ¶ 241 (citing *EEO Compl.*). AUSA Márquez-Marín admits the DOJ's paragraph two hundred and forty-one. The DOJ also lists the seven issues that the EEO agreed to investigate in its paragraph two hundred and forty-three, which AUSA Márquez-Marín admits. DSMF ¶ 243; PRDSMF ¶ 243.

Then, in AUSA Márquez-Marín's additional paragraph two hundred and ninety-four, she states:

> In her second EEO complaint, [AUSA] Márquez[-Marín] questioned the heightened supervision to which she was subjected by [EAUSA] Novas. [AUSA] Márquez[-Marín] alleged retaliation for prior EEO activity, workplace hostility, as well as disability and parental status discrimination. The EEO accepted issues had to do primarily with her mistreatment by [EAUSA] Novas, who had interfered with her work, engaged in efforts to demonstrate the deficiency thereof, and spread false rumors that her output was substandard and that she, [AUSA] Márquez[-Marín], had violated policy, when she had not. The issues accepted for investigation are set forth in Defendant's Statement of Fact, at paragraph 243.

PSAMF ¶ 294. Contrary to Local Rule 56(c), AUSA Márquez-Marín fails to provide any citation to the record for the contents of her additional paragraph two hundred and ninety-four. PSAMF ¶ 294. In its response, the DOJ admits that AUSA Márquez-Marín sets forth the issues the EEO accepted in its paragraph two hundred and forty-three. DRPSAMF ¶ 294. But it denies the remainder of the paragraph because it was not supported by a record citation. DRPSAMF ¶ 294.

The Court is faced with parsing the intersection among the Joint Stipulation, the DOJ's statements of fact, which AUSA Márquez-Marín admits, and AUSA Márquez-Marín's own unsupported statement of fact, which DOJ denies. The Court views this controversy as unnecessary because there is abundant evidence elsewhere in the record that when AUSA Márquez-Marín complained about interference with her work and derogatory accusations, she was in part referring to EAUSA Novas. Nevertheless, the Court did not consider the objected-to portion of AUSA Márquez-Marín's additional paragraph two hundred and ninety-four because she failed to comply with Local Rule 56(c) by omitting any record citation.

185

On November 5, 2015, AUSA Márquez-Marín's attorney was notified of the DOJ's acceptance of claims in case number USA-2015-02051. *Stip.* ¶ 253; DSMF ¶ 243; PRDSMF ¶ 243. Accepted for investigation was the question of whether management officials at the USAO discriminated against AUSA Márquez-Marín based on physical disability and parental status and retaliated against her for engaging in EEO activity by subjecting her to a hostile work environment when they allegedly (a) forced her to take annual leave without justification on or about June 1, 2015; (b) delayed the transfer she requested as a reasonable accommodation for her disability from on or about April 2015 through July 13, 2015; (c) sent her hostile emails criticizing her work on or about June 10, 2015; (d) accused her of failing to comply with work requirements and policies on or about June 10, 2015; (e) made unjustified allegations that she was assigned only weak cases on or about July 16, 2015; (f) analyzed her work record with the intention of finding deficiencies in her work on or about July 16, 2015; and (g) interfered with her work and spread rumors that the quality of her work was substandard. DSMF ¶ 243; PRDSMF ¶ 243. The acceptance letter stated, "If you believe that we have not correctly identified the issues, please notify [the author], in writing, within five (5) calendar days after you receive this letter and specify why you believe we have not correctly identified the issues." *Stip.* ¶ 253; DSMF ¶ 243; PRDSMF ¶ 243. The DOJ issued a USAP entitled "Procedures for Processing Formal EEO Complaints" effective on June 13, 2006, and issued an updated version on August 30, 2013. *Stip.* ¶ 254. Neither AUSA Márquez-

Marín nor Attorney Berkan provided a response in accordance with the instructions given.  DSMF ¶ 243; PRDSMF ¶ 243.

### y.      The 2015-16 SLC Position

On November 10, 2015, Officer López sent to USAO employees a vacancy announcement for the SLC position.  *Stip.* ¶ 255; DSMF ¶ 244; PRDSMF ¶ 244.[264] Two days later, AUSA Márquez-Marín wrote to FAUSA Henwood to let him know that she wanted to be considered.  *Stip.* ¶ 255; DSMF ¶ 244; PRDSMF ¶ 244.  Legal assistant Migdalia Carballo called AUSA Márquez-Marín on January 13, 2016, to arrange an interview for the position for the following week.  *Stip.* ¶ 256; DSMF ¶ 245; PRDSMF ¶ 245.  Afterwards, Ms. Carballo sent AUSA Márquez-Marín an email invitation that indicated that the interviews would be conducted by FAUSA Henwood, EAUSA Novas, and Civil Division Chief Ramírez.  *Stip.* ¶ 256; DSMF ¶ 245; PRDSMF ¶ 245.

Two days after Ms. Carballo's contact, AUSA Márquez-Marín wrote to FAUSA Henwood.  *Stip.* ¶ 257; DSMF ¶ 246; PRDMSF ¶ 246.  She protested his inclusion, as well as that of EAUSA Novas, on the interview panel, stating, "as everybody knows, I filed EEO complaints for retaliation directly against you and [EAUSA Novas].  Also, as recently as this week, I provided testimony against both of you." *Stip.* ¶ 257; DSMF ¶ 246; PRDMSF ¶ 246.  Since in AUSA Márquez-Marín's opinion, FAUSA Henwood and EAUSA Novas had "serious conflicts of interest," AUSA Márquez-Marín asked

---

[264]      AUSA Márquez-Marín labeled this response paragraph two hundred and thirty-four.  Given the fact that it appears after paragraph two hundred and forty-three and before paragraph two hundred and forty-five, the Court views it as her response to the DOJ's paragraph two hundred and forty-four and relabeled it accordingly.

that they refrain from participating in her interview.  *Stip.* ¶ 257; DSMF ¶ 246; PRDMSF ¶ 246.  FAUSA Henwood responded that management could not agree to AUSA Márquez-Marín's request, as the same committee had to conduct all of the initial interviews for the SLC position.  *Stip.* ¶ 258; DSMF ¶ 246; PRDMSF ¶ 246. On January 20, 2016, the day of her interview, AUSA Márquez-Marín wrote to FAUSA Henwood: "I am sick with the flu and will not be able to attend the interview scheduled for today . . ..  In any event, I am formally withdrawing my application for the SLC position."  *Stip.* ¶ 259; DSMF ¶ 247; PRDMSF ¶ 247.  José Ruiz, who stepped down from the Criminal Division Chief position, was selected for the SLC position. *Stip.* ¶ 260; DSMF ¶ 248; PRDMSF ¶ 248.

### z.  The EOUSA's Evaluation and Review Staff Evaluation

During the last week of January 2016, the EOUSA's Evaluation and Review Staff (EARS) conducted an evaluation at the USAO.  DSMF ¶ 249; PRDMSF ¶ 249. EARS evaluations are conducted at each USAO usually every four to five years, and the one-week reviews cover both litigation and administrative activities.  DSMF ¶ 249; PRDSMF ¶ 249.  The EARS teams are made up of administrative and attorney staff from the EOUSA and other USAOs.  DSMF ¶ 249; PRDSMF ¶ 249.  During the evaluation process, the EARS evaluators ask employees to complete extensive, written questionnaires that allow employees to provide comments, both at the end of each section and at the end of the questionnaires.  DSMF ¶ 249; PRDSMF ¶ 249. EARS evaluators also conduct interviews of USAO employees.  DSMF ¶ 249; PRDSMF ¶ 249.  The team leader for the USAO's EARS evaluation was David

Gaouette.  DSMF ¶ 250; PRDSMF ¶ 250.  At the time, he was the EAUSA in the District of Colorado on detail to the EOUSA as part of the EARS staff.  DSMF ¶ 250; PRDSMF ¶ 250.

Before the EARS evaluation, as part of the gathering of information about the USAO, EAUSA Gaouette learned that AUSA Márquez-Marín had pending EEO matters.  DSMF ¶ 251; PRDSMF ¶ 251.  To avoid any conflicts or ethical issues, EAUSA Gaouette contacted Attorney Berkan to ask if it would be permissible for him to speak with AUSA Márquez-Marín as part of the EARS process.  DSMF ¶ 251; PRDSMF ¶ 251.  Attorney Berkan granted permission.  DSMF ¶ 251; PRDSMF ¶ 251.  AUSA Márquez-Marín appeared for a scheduled interview, but after keeping AUSA Márquez-Marín waiting the whole morning, the EARS evaluators decided not to interview AUSA Márquez-Marín.[265]  DSMF ¶ 251; PRDSMF ¶ 251.  AUSA Márquez-Marín nevertheless attempted to convince them to interview her.  DSMF ¶ 251; PRDSMF ¶ 251.  She said, "Let's not talk about anything in connection to EEO. I want to become a whistleblower and I want to provide you information about mismanagement."  DSMF ¶ 251; PRDSMF ¶ 251.  The evaluators, however, persisted in their refusal.  DSMF ¶ 251; PRDSMF ¶ 251.  AUSA Márquez-Marín concluded that the EARS team "didn't want to hear any reports of mismanagement, corruption, or any other sort of information that [she] had against the U[nited States] Attorney or the upper management."  DSMF ¶ 251; PRDSMF ¶ 251.

---

[265]    AUSA Márquez-Marín interposes a qualified response to DOJ's paragraph two hundred and fifty-one, adding facts to provide context.  PRDSMF ¶ 251.  The Court incorporated AUSA Márquez-Marín's facts in accordance with its obligation to view contested facts in the light most favorable to her.

### aa.    The DOJ's Decision on AUSA Márquez-Marín's First EEO Complaint

On February 11, 2016, the DOJ's Complaint Adjudication Office (CAO) issued a "Final Decision" on AUSA Márquez-Marín's first EEO complaint, finding that the record failed to demonstrate that she had been subject to discrimination or retaliation.[266]  DSMF ¶ 252; PRDSMF ¶ 252.

### bb.    2016 Developments

On February 17, 2016, Officer López sent an email to USAO supervisors in which she stated that she was distributing the 2015 performance work plans so that the supervisors could complete their evaluations of AUSAs.  *Stip.* ¶ 261; DSMF ¶ 257; PRDSMF ¶ 257.  Included in her email was a reminder about the relevant rating criteria.  *Stip.* ¶ 261; DSMF ¶ 257; PRDSMF ¶ 257.  AUSA Márquez-Marín was due to receive an evaluation from the USAO's Appellate Division given her work on appeals during 2015.  *Stip.* ¶ 262; DSMF ¶ 258; PRDSMF ¶ 258.  Chief Pérez was the rating official, and, despite the fact she had supervised AUSA Márquez-Marín's work for a short interval, EAUSA Novas was the reviewing official.[267]  *Stip.* ¶ 262; PSAMF ¶ 295; DRPSAMF ¶ 295; DSMF ¶ 258; PRDSMF ¶ 258.

---

[266]    AUSA Márquez-Marín objects to any reference to the CAO's decision and especially to any reference to its findings.  PRDSMF ¶¶ 252-56.  In general, the Court agrees with AUSA Márquez-Marín that the DOJ's findings are not admissible in this proceeding because she is entitled to a de novo review.  The Court included the fact that the DOJ internally denied her first EEO complaint to set forth the full history of the case.  The Court struck the remainder of the DOJ's paragraphs two hundred and fifty-two through two hundred and fifty-six.

[267]    AUSA Márquez-Marín admits the DOJ's paragraph two hundred and fifty-eight but notes that, as of February 2016, EAUSA Novas had supervised her work for a short period.  PRDSMF ¶ 258.  In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included this additional fact in the DOJ's paragraph two hundred and fifty-eight.

When Chief Pérez initially completed his evaluation for AUSA Márquez-Marín, he gave her an overall "outstanding" rating, with "outstanding" ratings on three individual elements ("Develops Appellate Litigation Strategy," "Reviewing and Advising Others," and "Productivity and Effectiveness in Dealing with Courts, Clients, and Others") and "successful" ratings on two individual elements ("Legal Research" and "Presenting Oral Argument"). DSMF ¶ 259; PRDSMF ¶ 259.

EAUSA Novas, however, stated that she could not support an "outstanding" rating for AUSA Márquez-Marín in the "Productivity and Effectiveness in Dealing with Courts, Clients, and Others" element.[268] DSMF ¶ 260; PRDSMF ¶ 260. In fact, she even questioned whether AUSA Márquez-Marín deserved a "successful" rating for that element. DSMF ¶ 260; PRDSMF ¶ 260. EASUA Novas was not concerned with AUSA Márquez-Marín's productivity or her relationships with defense counsel and the judges or court personnel. DSMF ¶ 260; PRDSMF ¶ 260. EAUSA Novas' concern centered on AUSA Márquez-Marín's effectiveness in dealing with others, specifically colleagues within the office. DSMF ¶ 260; PRDSMF ¶ 260. In particular, she had in mind matters such as (1) AUSA Márquez-Marín's ineffectiveness in dealing with FAUSA Henwood in the *Santiago-Lugo* case when he had sent her emails trying to help her with her research and (2) her interactions with AUSA Cannon in the *Manso-Cepeda* case. DSMF ¶ 260; PRDSMF ¶ 260. To EAUSA Novas,

---

[268]     AUSA Márquez-Marín admits the DOJ's paragraph two hundred and sixty (mislabeling it paragraph two hundred and fifty-nine, which the Court corrected) but adds facts to clarify the background. PRDSMF ¶ 260. In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court added AUSA Márquez-Marín's additional facts to its recitation of the facts for context.

"outstanding" meant that one exceeded in an exceptional way at a particular element. DSMF ¶ 260; PRDSMF ¶ 260. In her mind, AUSA Márquez-Marín had not met that standard. DSMF ¶ 260; PRDSMF ¶ 260. After his evaluation, EAUSA Novas insisted that Chief Pérez lower his initial evaluation of AUSA Márquez-Marín.[269] PSAMF ¶ 295; DRPSAMF ¶ 295. This time he acquiesced. PSAMF ¶ 295; DRPSAMF ¶ 295; DSMF ¶ 261; PRDSMF ¶ 261.

On March 8, 2016, AUSA Márquez-Marín received her evaluation for her 2015 work on appeals. *Stip.* ¶ 263; DSMF ¶ 261; PRDSMF ¶ 261. Her overall rating was "successful," and she received a "successful" rating in three of the five categories and an "outstanding" rating in two of five. DSMF ¶ 261; PRDSMF ¶ 261. One of the "successful" ratings was for the "Productivity and Effectiveness in Dealing with Courts, Clients, and Others" element. DSMF ¶ 261; PRDSMF ¶ 261. The white out was visible on the evaluation showing the change from "outstanding" to "successful" for this element, and this change had a concrete effect on AUSA Márquez-Marín's salary.[270] DSMF ¶ 261; PRDSMF ¶ 261. Chief Pérez wrote the narratives in the evaluation. DSMF ¶ 261; PRDSMF ¶ 261.

---

[269] The DOJ interposes a qualified response, seeking to add detail about EAUSA Novas' actions. DRPSAMF ¶ 295. The Court declines to accept the DOJ's qualified response as it does not negate AUSA Márquez-Marín's additional paragraph two hundred and ninety-five.
The DOJ denies AUSA Márquez-Marín's additional paragraph two hundred and ninety-six because AUSA Márquez-Marín fails to make a record citation. DRPSAMF ¶ 296. The Court agrees with the DOJ and did not include the paragraph.

[270] AUSA Márquez-Marín admits the DOJ's paragraph two hundred and sixty-one but adds facts to clarify the impact this change had on her salary. PRDSMF ¶ 261. In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court added AUSA Márquez-Marín's additional facts to its recitation of the facts for context.

On April 13, 2016, AUSA Márquez-Marín filed a complaint in this Court. DSMF ¶ 263; PRDSMF ¶ 263.  Twelve days later on April 25, 2016, United States Attorney Rodríguez gave AUSA Márquez-Marín a one-time cash award of $2000. *Stip.* ¶ 264; DSMF ¶ 264; PRDSMF ¶ 264.  This award was given during the APR process in lieu of a salary increase, since AUSA Márquez-Marín had already reached the maximum salary allowable for an employee who had received a "successful" rating, as she had on her 2015 evaluation.  *Stip.* 264; DSMF ¶ 264; PRDSMF ¶ 264. United States Attorney Rodríguez was not required to give AUSA Márquez-Marín any such reward.[271]  DSMF ¶ 264; PRDSMF ¶ 264.  In approximately early- to mid-2016, United States Attorney Rodríguez gave AUSA Márquez-Marín a forty-hour time-off award, an award routinely given to every AUSA in the USAO.[272]  DSMF ¶ 266; PRDSMF ¶ 266.  The effective date of the award was July 13, 2016.  DSMF ¶ 266; PRDSMF ¶ 266.

On May 19, 2016, after the filing of this lawsuit, the DOJ dismissed AUSA Márquez-Marín's formal EEO complaint in case number USA-2015-0251.[273]  DSMF

---

[271]   AUSA Márquez-Marín admits the DOJ's paragraph two hundred and sixty-four but denies the alleged inference that management was not engaged in retaliation against AUSA Márquez-Marín because of this fact.  PRDSMF ¶ 264.  The Court does not view the paragraph as making the inference AUSA Márquez-Marín suggests and thus rejects the denial.

[272]   AUSA Márquez-Marín admits the DOJ's paragraph two hundred and sixty-six but adds that a forty-hour time-off award is routinely given to each AUSA in the office.  PRDSMF ¶ 266.  In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court added AUSA Márquez-Marín's additional fact.  AUSA Márquez-Marín also says this paragraph is immaterial.  PRDSMF ¶ 266.  The Court disagrees.

[273]   AUSA Márquez-Marín admits the DOJ's paragraph two hundred and sixty-five but states that the dismissal of her EEO complaint is immaterial to any fact in controversy.  PRDSMF ¶ 265.  In general, the Court agrees with AUSA Márquez-Marín that the DOJ's findings are not admissible in this proceeding because she is entitled to a de novo review.  To set forth the full history of the case, the Court included the fact that the DOJ dismissed her second EEO complaint and that this was a final decision.  The Court struck the rest of the paragraph.

¶ 265; PRDSMF ¶ 265.  This dismissal constituted the DOJ's final decision on AUSA Márquez-Marín's formal EEO complaint in case number USA-2015-0251.   DSMF ¶ 265; PRDSMF ¶ 265.

### cc.   United States Attorney Rosa Emilia Rodríguez's Decision Not to Reappoint Appellate Division Chief Nelson Pérez on April 8, 2016

In April 2016, Chief Pérez's four-year term as Appellate Division Chief was over and on April 8, 2016, United States Attorney Rodríguez informed him that she had decided not to reappoint him to the position.[274]  PSAMF ¶ 297; DRPSAMF ¶ 297; DSMF ¶ 262; PRDSMF ¶ 262.  United States Attorney Rodríguez gave no reason for the decision.  PSAMF ¶ 297; DRPSAMF ¶ 297.  Chief Pérez believed that his non-reappointment was related to the fact that he provided testimony in AUSA Márquez-Marín's EEO cases.  PSAMF ¶ 298; DRPSAMF ¶ 298.  In February 2016, barely two months before his non-reappointment, Chief Pérez had given testimony in AUSA Márquez-Marín's EEO case.  PSAMF ¶ 299; DRPSAMF ¶ 299.  On February 1, 2016, the day before he was scheduled to testify in the investigation into AUSA Márquez-Marín's EEO complaint, Chief Pérez was called into United States Attorney Rodríguez's office.  PSAMF ¶ 300; DRPSAMF ¶ 300.  Present were the two people whom Chief Pérez characterized as United States Attorney Rodríguez's "two main managers": EAUSA Novas and FAUSA Henwood.  PSAMF ¶ 300; DRPSAMF ¶ 300.  United States Attorney Rodríguez testified, "[I have] people [I am] close to in the

---

[274]    The DOJ objects to the reference in AUSA Márquez-Marín's additional paragraph two hundred and ninety-seven that Chief Pérez had been a person in charge of appeals for twenty years before he was not reappointed on the ground that this asserted fact is not supported by the cited record.  DRPSAMF ¶ 297.  The Court agrees and did not include this asserted fact.

office that I trust; that's [FAUSA Henwood] and [EAUSA Novas], I trust them both. They're my left and my right hand . . .. [EAUSA Novas] has been with me from the beginning, so yes, I think in that sense she's close, but we don't socialize.  I don't socialize."[275]  PSAMF ¶ 301; DRPSAMF ¶ 301.

United States Attorney Rodríguez, who knew that Chief Pérez would be testifying the next day, emphasized to him that he was "part of management."[276] PSAMF ¶ 302; DRPSAMF ¶ 302.  Chief Pérez thought the message was clear and he understood that by telling him he was "part of management," United States Attorney Rodríguez was inducing him to testify in a particular way and not be truthful.[277] PSAMF ¶ 303; DRPSAMF ¶ 303.  In Chief Pérez's view, the highest-level law enforcement official in Puerto Rico was telling him not to be truthful.[278]  PSAMF ¶ 304; DRPSAMF ¶ 304.  He understood her to be saying that as part of management,

---

[275]    The DOJ denies AUSA Márquez-Marín's characterization of this comment in which she states that United States Attorney Rodríguez made it clear that these two individuals were her "principal loyalists."  DRPSAMF ¶ 301.  The Court agrees that the quoted language is the best indication of United States Attorney Rodríguez's meaning and struck the characterization.

[276]    The DOJ admits that United States Attorney Rodríguez told Chief Pérez that he was part of management the day before the hearing but interposes a qualified response to explain the statement. DRPSAMF ¶ 302.  The Court declines to accept the DOJ's qualification because it does not contradict the statement.

        Further, the DOJ denies that United States Attorney Rodríguez knew that Chief Pérez was scheduled to testify the next day in AUSA Márquez-Marín's EEO case.  DRPSAMF ¶ 302.  Chief Pérez testified that United States Attorney Rodríguez "absolutely" knew that he was about to testify and he interpreted her comment as her inducement for him to testify in a particular way. *See* PSAMF, Attach. 2, *Ex. I: Excerpts from the Dep. Testimony of Nelson Pérez, April 25, 2017* at 197:04-23.  This is sufficient to include the statement because the Court is required to view contested evidence in the light most favorable to AUSA Márquez-Marín.

[277]    The DOJ denies AUSA Márquez-Marín's additional paragraph three hundred and three on essentially the same ground as it denies paragraph three hundred and two.  DRPSAMF ¶ 303.  The Court's ruling is the same.

[278]    The DOJ denies AUSA Márquez-Marín's additional paragraph three hundred and four on essentially the same ground as it denies paragraphs three hundred and two and three hundred and three.  DRPSAMF ¶ 304.  The Court's ruling is the same.  The Court altered the paragraph slightly to clarify that these statements are based on Chief Pérez's understanding.

he had to protect her and he could not say things contrary to the office.  PSAMF ¶ 304; DRPSAMF ¶ 304.

### dd.    Developments from August 2016 Onward

On August 2, 2016, AUSA Márquez-Marín sent José Capó, who had been promoted to Chief of the Criminal Division, a motion in an environmental case. DSMF ¶ 267; PRDSMF ¶ 267.  Chief Capó referred the matter to Myriam Fernández, then a SUSA and head of the Financial Fraud and Corruption Unit (FFCU), the unit that oversees general crimes such as environmental crimes.  DSMF ¶ 267; PRDSMF ¶ 267.  Chief Capó later said that he made the referral to SUSA Myriam Fernández because he was in trial preparation and he authorized her to sign the proposed 5K motion on his behalf.[279]  DSMF ¶ 267; PRDSMF ¶ 267.  Chief Capó also asked SUSA Myriam Fernández to contact AUSA Stewart in Washington, D.C., to coordinate whatever was needed despite the fact that AUSA Márquez-Marín had been handling the case for a long time.  DSMF ¶ 267; PRDSMF ¶ 267.  Chief Capó did not copy AUSA Márquez-Marín on his referral email to SUSA Myriam Fernández.  DSMF ¶ 267; PRDSMF ¶ 267.  SUSA Myriam Fernández in turn spoke with AUSA Márquez-Marín.  DSMF ¶ 267; PRDSMF ¶ 267.

On August 18, 2016, AUSA Márquez-Marín emailed Officer López and Civil Division Chief Ramírez and asked to telework two hours a day to attend physical therapy.  *Stip.* ¶ 265; DSMF ¶ 268; PRDSMF ¶ 268.  In her email, she stated that she

---

[279]    In her qualified response to DOJ's paragraph two hundred and sixty-seven, AUSA Márquez-Marín adds information clarifying the background for Chief Capó's referral to SUSA Myriam Fernández.  PRDSMF ¶ 267.  In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court included those additional facts.

had been informed that day that OWCP had approved the physical therapies prescribed by her physician, Dr. Santiago. *Stip.* ¶ 265; DSMF ¶ 268; PRDSMF ¶ 268. She also stated that OWCP had given her until September 16 to take twelve therapies, and she had no sick leave. *Stip.* ¶ 265; DSMF ¶ 268; PRDSMF ¶ 268. Chief Ramírez brought AUSA Márquez-Marín's request to the attention of Jacqueline Novas, who was serving as Acting United States Attorney. *Stip.* ¶ 265; DSMF ¶ 268; PRDSMF ¶ 268. Acting United States Attorney Novas approved the request the same day. *Stip.* ¶ 265; DSMF ¶ 268; PRDSMF ¶ 268.

### ee.   SUSA Myriam Fernández and the Environmental Protection Agency

In October 2016, AUSA Márquez-Marín was invited to meet the new head of the Environmental Protection Agency (EPA) in Puerto Rico and the Special Agent in Charge from EPA Headquarters. *Stip.* ¶ 266; DSMF ¶ 269; PRDSMF ¶ 269. When AUSA Márquez-Marín arrived at the EPA, she was asked by Special Agent in Charge Vernesa Jones-Allen if she was still in charge of environmental crimes coordination at the USAO because a meeting in the New York metropolitan area was scheduled shortly thereafter and someone else was going to represent the USAO. *Stip.* ¶ 267; DSMF ¶ 270; PRDSMF ¶ 270. AUSA Márquez-Marín asked Special Agent Jones-Allen who was going to represent the Puerto Rico USAO and Special Agent Jones-Allen gave a physical description of SUSA Myriam Fernández. DSMF ¶ 271; PRDSMF ¶ 271. AUSA Márquez-Marín thought that Special Agent Jones-Allen might be referring to SUSA Myriam Fernández and wanted to confirm it was her.

DSMF ¶ 271; PRDSMF ¶ 271.  AUSA Márquez-Marín did not follow up with SUSA Myriam Fernández at the time.  DSMF ¶ 271; PRDSMF ¶ 271.

United States Attorney Rodríguez had in fact decided to send SUSA Myriam Fernández to the EPA meeting in the New York area.  DSMF ¶ 272; PRDSMF ¶ 272. The invitation from the EPA had been directed to United States Attorney Rodríguez and she later testified that since she could not attend herself and other United States Attorneys were going to be present, she felt it was important that a management officer from the Puerto Rico USAO attend in her place.[280]  DSMF ¶ 272; PRDSMF ¶ 272.  United States Attorney Rodríguez chose SUSA Myriam Fernández, who was, at the time of the meeting, the supervisor of the USAO's FFCU.  *Stip.* ¶ 268; DSMF ¶ 272; PRDSMF ¶ 272.  On October 6, 2016, SUSA Myriam Fernández attended the EPA meeting in the New York metropolitan area.  *Stip.* ¶ 268; DSMF ¶ 273; PRDSMF ¶ 273.  While there, SUSA Myriam Fernández affirmed before the participants that AUSA Márquez-Marín was the Puerto Rico USAO's environmental crimes coordinator.[281]  DSMF ¶ 273; PRDSMF ¶ 273.

SUSA Myriam Fernández testified that she intended to talk with AUSA Márquez-Marín about the EPA meeting upon her return from New York.[282]  DSMF

---

[280]   AUSA Márquez-Marín interposes a qualified response, emphasizing that this asserted fact is based on the testimony of United States Attorney Rodríguez.  PRDSMF ¶ 272.  The Court amended the paragraph to reflect that this is what United States Attorney Rodríguez testified.

[281]   AUSA Márquez-Marín interposes a qualified response to the DOJ's paragraph two hundred and seventy-three, stating that it is unclear whether SUSA Myriam Fernández's affirmation was spontaneous or in response to questioning.  PRDSMF ¶ 273.  The Court rejects this qualification because it does not add new facts and does not contradict the paragraph.

[282]   AUSA Márquez-Marín is skeptical of the credibility of SUSA Myriam Fernández's explanation of this event.  PRDSMF ¶¶ 274-76.  In accordance with its obligation to view contested facts in the light most favorable to AUSA Márquez-Marín, the Court reframed the DOJ's paragraph two hundred and seventy-four to reflect that this description is what SUSA Myriam Fernández declared under oath.

¶ 274; PRDSMF ¶ 274.  However, she said, immediately upon her return, she became consumed with other matters, namely investigations and cases that she was handling and that her supervisees in the FFCU were handling.  DSMF ¶ 274; PRDSMF ¶ 274. Accordingly, she said, she did not have a chance in the following weeks to discuss the EPA meeting with AUSA Márquez-Marín.  DSMF ¶ 274; PRDSMF ¶ 274.

Then, from approximately mid-October 2016 through mid-November 2016, SUSA Myriam Fernández received several communications from EPA officials (including Special Agent Jones-Allen and EPA counsel Hector Vélez) seeking to discuss the USAO's work with the EPA.  DSMF ¶ 274; PRDSMF ¶ 274.  SUSA Myriam Fernández testified that, having received these contacts, she wanted to talk with Special Agent Jones-Allen and EPA counsel Vélez to hear what they had to say before reaching out to AUSA Márquez-Marín to inform her of these contacts, to debrief about the October EPA meeting in New York, and to coordinate the USAO's work with the EPA going forward.  DSMF ¶ 274; PRDSMF ¶ 274.

SUSA Myriam Fernández testified that she spoke with Special Agent Jones-Allen and EPA counsel Vélez in approximately mid-November 2016; during these communications, the EPA officials asked to set up meetings and indicated that they were desirous of additional resources for EPA cases.  DSMF ¶ 275; PRDSMF ¶ 275. SUSA Myriam Fernández said she told them that she would see what she could do. DSMF ¶ 275; PRDSMF 275.  SUSA Myriam Fernández testified that she then mentioned this issue to several management officials, including United States Attorney Rodríguez, FAUSA Henwood, and Chief Ramírez.  DSMF ¶ 275; PRDSMF

275.  SUSA Myriam Fernández further testified that she was instructed to go talk with AUSA Márquez-Marín since she was the USAO's environmental crimes coordinator.  DSMF ¶ 275; PRDSMF 275.

On November 18, 2016, SUSA Myriam Fernández sent AUSA Márquez-Marín a litigation hold notice regarding an EEO complaint that had been filed by AUSA Cordero.  *Stip.* ¶ 269; DSMF ¶ 276; PRDSMF ¶ 276.  SUSA Myriam Fernández was the Puerto Rico USAO's litigation hold coordinator for this matter.  DSMF ¶ 276; PRDSMF ¶ 276.  SUSA Myriam Fernández testified that she did not deem this email an appropriate time to discuss environmental matters with AUSA Márquez-Marín as the litigation hold notice related to a completely different matter.  DSMF ¶ 276; PRDSMF ¶ 276.  Having received direction to talk with AUSA Márquez-Marín about environmental matters and wanting to ensure that she could get more involved in EPA cases in the future (she had not been involved in many environmental cases since becoming head of the FFCU in February 2016), SUSA Myriam Fernández approached AUSA Márquez-Marín on November 29, 2016.  DSMF ¶ 277; PRDSMF ¶ 277.  AUSA Márquez-Marín, however, believed that she was being de facto removed from the environmental crimes coordinator position.  DSMF ¶ 277; PRDSMF ¶ 277.

Following this encounter on November 29, 2016, AUSA Márquez-Marín emailed United States Attorney Rodríguez at 12:04 p.m. the same day.  *Stip.* ¶ 270; DSMF ¶ 278; PRDSMF ¶ 278.  AUSA Márquez-Marín noted the EPA officials' questioning her non-participation at the meeting in the New York area, as well as

SUSA Myriam Fernández's approach earlier that day.  DSMF ¶ 278; PRDSMF ¶ 278.

Summing up, AUSA Márquez-Marín wrote:

> I consider this another instance of reprisal of the kind I have been
> enduring for years now.  The timing is also curious especially now that
> my EEO case is at the District level and Discovery is ongoing.  I also
> have been identified as a witness of three other EEO cases in this Office.

DSMF ¶ 278; PRDSSMF ¶ 278.

 In an email at 12:41 p.m. on November 29, 2016, to her supervisor, Chief Capó,

SUSA Myriam Fernández described the encounter she had with AUSA Márquez-

Marín that day.  *Stip.* ¶ 271; DSMF ¶ 279; PRDSMF ¶ 279.  Later that day, at 3:52

p.m., FAUSA Henwood responded to AUSA Márquez-Marín on behalf of United

States Attorney Rodríguez.  *Stip.* ¶ 272; DSMF ¶ 280; PRDSMF ¶ 280.  He noted that

as environmental crimes coordinator, AUSA Márquez-Marín was "an important

member of [the USAO's] team on those investigations and matters."  DSMF ¶ 280;

PRDSMF ¶ 280.  He also explained that SUSA Myriam Fernández, as head of the

FFCU covering general crimes, was also expected to be up to date on all

environmental crime matters handled by the USAO.  DSMF ¶ 280; PRDSMF ¶ 280.

He stated that it would be incumbent on AUSA Márquez-Marín, SUSA Myriam

Fernández, and Civil Division Chief Ramírez to communicate regarding any civil or

criminal EPA matters AUSA Márquez-Marín was handling and wished her continued

success as the USAO's environmental crimes coordinator.  DSMF ¶ 280; PRDSMF

¶ 280.

AUSA Márquez-Marín replied to FAUSA Henwood the same day, November

29, 2016, at 4:47 p.m., also sending the message to United States Attorney Rodríguez,

Chief Ramírez, Chief Capó, and SUSA Myriam Fernández.  *Stip.* ¶ 273; DSMF ¶ 281; PRDSMF ¶ 281.  In her reply, AUSA Márquez-Marín mentioned that a few days earlier, SUSA Myriam Fernández had sent her the litigation hold notice for AUSA Cordero's EEO case.  DSMF ¶ 281; PRDSMF ¶ 281.  She concluded, "It is clear that you and all other managers copied in this message are involved in the hostile work environment that I have denounced with EEO and the District Court.  The timing of this incident is no coincidence and I will report it as what it is, more retaliation." DSMF ¶ 281; PRDSMF ¶ 281.

## II.   THE COMPLAINT

AUSA Márquez-Marín's Complaint contains two counts: (1) Count One is a claim for illegal retaliation and hostile work environment under Title VII of the Civil Rights Act of 1964; and (2) Count Two is a claim for reasonable accommodation and disability-based discrimination under the Rehabilitation Act of 1973.  *Compl.* ¶¶ 12.1-13.8.

## III.   THE PARTIES' POSITIONS

### A.   The DOJ's Position

In its memorandum, the DOJ collapses this extensive record into twenty-three specific allegations of discriminatory and retaliatory harassment:

(1)   the delay in AUSA Márquez-Marín's return to work;

(2)   the congratulatory email;

(3)   her assignment to death penalty cases;

(4)   the *Canales* assignment;

(5)   her removal from the *Loiza* and *Lloréns Torres* investigations;

(6)   her required attendance at the motion writing seminar;

(7)   her compensation;

(8)   not being informed about the option of telework during 2012 though early 2014;

(9)   an increase in her workload;

(10)   being charged sick leave when teleworking;

(11)   Chief Capó's supposed refusal to certify her time;

(12)   her 2013 productivity rating (including the method for analyzing her productivity);

(13)   the letter of admonishment;

(14)   the loss of her cellphone and management's plan to review videos;

(15)   efforts to lower her 2014 and 2015 evaluations;

(16)   a delay in her transfer to the Civil Division;

(17)   the February 2015 *Guzman* meeting;

(18)   the receipt of hostile emails and unjustified criticism after her return to the office in May 2015 (relating to comments about the nature and quality of her work, the June 10 meeting, and the *Santiago-Lugo* and *Manso-Cepeda* appeals);

(19)   EARS' decision not to interview her;

(20)   Chief Pérez's non-reappointment;

(21)   management's failure to consider her for supervisory positions;

(22)    attempts to remove her as environmental crimes coordinator; and

(23)    a climate of fear.

*Def.'s Mot.* at 27.[283]   The DOJ says that although AUSA Márquez-Marín contends that all twenty-three of these matters constitute retaliatory harassment, she acknowledges that only items 8-12 and 15-18 constitute disability-based harassment. *Id.*

The DOJ first states that the Court should not consider issues 1-2, 3 (in part), 4-6, 7 (in part), and 8-9 in assessing AUSA Márquez-Marín's claims. *Id.* at 28.  The DOJ notes that AUSA Márquez-Marín signed a settlement agreement in July 2010 that released claims related to her prior lawsuit and it contends that the settlement agreement "bars liability for claims relating to issue 1 above, as well as for [AUSA] Márquez[-Marín]'s claim that the USAO improperly set her salary upon reinstatement (part issue 7)." *Id.*  Second, the DOJ says that AUSA Márquez-Marín conceded at her deposition that she was "not seeking damages for events occurring before January 1, 2010." *Id.*  Third, DOJ says that AUSA Márquez-Marín failed to exhaust her administrative remedies as to issues 1-2, 5-6, and 8-9. *Id.*  Once these matters are eliminated from consideration, the DOJ argues, the uncontested facts demonstrate that she is unable to show she was subject to discrimination or retaliation. *Id.* at 29-30.

The DOJ runs through the familiar *McDonnell Douglas* burden-shifting analytic process from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973),

---

[283]    The pagination of the DOJ's motion and the DOJ's reply differ from the ECF pagination.  For uniformity, the Court refers to the ECF pagination.

for evaluating AUSA Márquez-Marín's claims.  *Def.'s Mot.* at 30-41.  The DOJ concludes that no reasonable factfinder could conclude that the alleged harassment was causally related to AUSA Márquez-Marín's disabilities or her protected activity. *Id.* at 41-43.  Finally, it argues that the *Faragher/Ellerth* affirmative defense precludes liability.  *Id.* at 43-45 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

## B.   AUSA Carmen Márquez-Marín's Opposition

In AUSA Márquez-Marín's response, she emphasizes that the "focus of this lawsuit is the period from 2014 to 2016, some 6 to 8 years after [AUSA] Márquez[-Marín] was reinstated by order of Visiting Judge . . . McAuliffe . . .." *Pl.'s Opp'n* at 2. Pointing to specific instances of allegedly retaliatory conduct by USAO management, AUSA Márquez-Marín argues that her case is about intent and context.  *Id.* at 2-4. She contends that before 2014 there had been an "uneasy peace" between management and herself, but after it became known that she was assisting Specialist Reyes in his retaliation claim, "things took a sharp turn . . .." *Id.* at 9.  Although AUSA Márquez-Marín concedes that events from 2004, when she was dismissed, to late 2013, when she was seen advising Specialist Reyes, would not be actionable, she argues that they provide essential background to the events from late 2013 onward, which she says are actionable.  *Id.* at 11-15.  She then reviews the evidence of events from 2004 to the fall of 2013, which she says reflect the USAO's ongoing hostility toward her after she returned to work on March 16, 2008.  *Id.* at 15-32.  She then details her factual allegations from 2014 onward, which she claims reflect the USAO's

hostile and discriminatory actions against her. *Id.* at 32-58. Finally, she disagrees with the DOJ that the *Faragher/Ellerth* affirmative defense bars her claims, arguing that the DOJ cannot demonstrate the second prong of the *Faragher/Ellerth* test— that she unreasonably failed to take advantage of the USAO's complaint procedure. *Id.* at 60.

### C.    The DOJ's Reply

In its reply, the DOJ points out that AUSA Márquez-Marín concedes that all events occurring before those encompassed by her July 2014 EEO formal complaint are background evidence and should not be considered for establishing the DOJ's liability. *Def.'s Reply* at 2. The DOJ disputes AUSA Márquez-Marín's accusation that United States Attorney Rodríguez and her inner circle of advisers acted against her after her return to work. *Id.* at 3-5. The DOJ also says that the evidence does not substantiate a claim of severe or pervasive harassment. *Id.* at 5-7. It then contests AUSA Márquez-Marín's interpretation of a series of events, including her compensation claim, the treatment of her sick leave, Chief Capó's failure to certify her time, the letter of admonishment, the USAO's annual evaluations, the delay in implementing the reasonable accommodation, her work on specific cases, the EARS evaluation, the non-reappointment of Chief Pérez, and her role as environmental coordinator. *Id.* at 8-15. The DOJ submits that it has a legitimate explanation for each of these matters and that AUSA Márquez-Marín fails to carry her resulting burden of proof to allow the case to go to a jury. *Id.* at 15-16. Finally, the DOJ reiterates its position on the *Faragher/Ellerth* defense. *Id.* at 17-18.

### D.    AUSA Carmen Márquez-Marín's Sur-Response

In her sur-response, AUSA Márquez-Marín disputes a number of the DOJ's direct challenges to her handling of the motion for summary judgment, including its accusation that she failed to disclose key documents, violated Federal Rule of Civil Procedure 26, engaged in an egregious violation regarding the theory of the case, and attempted an end-run around the exhaustion requirement. *Pl.'s Sur-resp.* at 1-8. AUSA Márquez-Marín also objects to the DOJ's introduction of new sworn declarations. *Id.* at 8-9.

### E.    The DOJ's Sur-Reply

In its sur-reply, the DOJ describes as unavailing AUSA Márquez-Marín's argument that she was entitled to use of exhibits from the prior trial without providing Rule 26 disclosures concerning her intention to use those exhibits. *Def.'s Sur-reply* at 1-3. The DOJ also rebuts AUSA Márquez-Marín's arguments about her use of pre-2014 events. *Id.* at 3-4. Furthermore, the DOJ says that AUSA Márquez-Marín "misses the point" about its argument concerning exhaustion of remedies. *Id.* at 4-6. Finally, the DOJ disagrees with AUSA Márquez-Marín about the significance of its supplemental declarations. *Id.* at 6-7.

## IV.   LEGAL STANDARD

A grant of summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those

whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de PR, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

Once the moving party "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 Fed. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must show "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), while disregarding "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)).

The United States Supreme Court's opinion in *McDonnell Douglas*, 411 U.S. 792, "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The First Circuit uses this burden-shifting

framework in cases in which the plaintiff does not produce direct evidence of discrimination. *See, e.g.*, *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 8 (1st Cir. 2015); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823-24 (1st Cir. 1991). The *McDonnell Douglas* burden-shifting framework has three steps:

> Under this framework, the employee must present prima facie evidence of unlawful employment discrimination. The burden of production then shifts to the employer, who must rebut with a legitimate, nondiscriminatory reason for the adverse employment action identified in the employee's prima facie case. Finally, the burden shifts back to the employee, who must produce evidence that the employer's explanation is pretextual.

*Flood*, 780 F.3d at 8 (citing *Fuhrmann v. Staples Office Superstore E. Inc*, 2012 ME 135, ¶ 13, 58 A.3d 1083, 1089). To establish a prima facie case for retaliation, a plaintiff must show that (1) "she engaged in protected conduct under Title VII," (2) "she suffered an adverse employment action," and (3) "a causal connection existed between the protected conduct and the adverse action." *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996).

Although the parties have used the *McDonnnell Douglas* burden-shifting framework to present their arguments, the First Circuit has observed that that "[o]n summary judgment . . . a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." *Flood*, 780 F.3d at 8 (some alterations in original) (quoting *Fennell*, 83 F.3d at 535).

## V.     DISCUSSION

### A.     An Overview

This case, while extraordinarily dense and contentious factually, presents rather straightforward legal issues.  To summarize, the Court concludes that AUSA Márquez-Marín is entitled to present her case against the DOJ to a jury for its resolution of contested facts.  The DOJ and AUSA Márquez-Marín see the same actions from such different perspectives that this Court is unable to resolve who is right within the constraints of summary judgment.

In general, the DOJ presents itself as treating AUSA Márquez-Marín exactly as it would have treated any other similarly-situated employee, praising her when she did something well and pointing out when she did not.

By contrast, having successfully demonstrated to a jury that the USAO in Puerto Rico and its United States Attorney illegally retaliated against her, AUSA Márquez-Marín warily reentered the office, convinced that the top echelon of the USAO did not want her back and worried they would seek an opportunity to oust her from her job, this time legally.  In her successful trial, AUSA Márquez-Marín proved to the satisfaction of a jury that United States Attorney Rodríguez, then the FAUSA, had treated her unfairly and had retaliated against her.  AUSA Márquez-Marín was worried that upon her return to the USAO, United States Attorney Rodríguez would neither forgive nor forget and would make her professional life difficult.  Like all USAOs, the Puerto Rico USAO has a hierarchy with a limited number of attorneys charged to supervise the legal work of the line attorneys and, over time, it has had

inevitable changes in personnel.  But AUSA Márquez-Marín viewed the inner circle of management personnel as acolytes of United States Attorney Rodríguez who did her bidding in seeking to rid the office of a troublesome attorney.

Complying with its duty to view disputed facts in the light most favorable to AUSA Márquez-Marín, the Court cannot know who is right, only that AUSA Márquez-Marín's perceptions, if credited, generate factual issues that must be resolved by a factfinder.  The Court highlights one example.

In 2015, Chief Pérez assigned AUSA Márquez-Marín to work on an appellate brief in *United States v. Manso-Cepeda*.  The day before the brief was due, AUSA Márquez-Marín sent AUSA Cannon a draft brief, seeking his comment.  Knowing that the brief was due the next day, AUSA Cannon treated the draft brief as AUSA Márquez-Marín's finished product and he was apparently appalled at its inadequacy. AUSA Cannon went to considerable effort to rewrite the brief and he returned it to AUSA Márquez-Marín with corrections to her grammar, punctuation, and reasoning. When AUSA Márquez-Marín received AUSA Cannon's redlined brief, she was insulted, thinking that it was disrespectful for AUSA Cannon, who had limited appellate experience, to so vigorously attack her work product, particularly when she had not asked him to rewrite the brief but only to comment on whether her legal analysis was correct.

In the ordinary case, this type of miscommunication would be resolved by the two attorneys speaking to each other, explaining their respective positions, and working things out.  Not all lawyers work the same way.  Some attorneys create

finished products and obtain supervisory review long before any due date; others are deadline-driven and do their best work under time pressure. Appellate Chief Pérez's favorable opinion of AUSA Márquez-Marín suggests that the Appellate Division of the USAO in Puerto Rico was willing to accommodate both approaches.

But, here, the backdrop of AUSA Márquez-Marín's prior lawsuit colors the events. AUSA Cannon not only rewrote AUSA Márquez-Marín's draft brief to her annoyance, but also scanned the draft brief and his redlined comments and sent them to EAUSA Novas, who was not in his supervisory chain. When she found out about EAUSA Novas' involvement, AUSA Márquez-Marín's suspicions were aroused because AUSA Márquez-Marín viewed EAUSA Novas as one of the people in high administration who was singling her out and anxious to find fault with her work in order to do United States Attorney Rodríguez's bidding. Why EAUSA Novas became involved at all is not clear, since she was Chief Pérez's supervisor, and it would seem an issue of this sort would go to AUSA Márquez-Marín's immediate supervisor, not the supervisor of her supervisor. But the record says that EAUSA Novas asked AUSA Cannon to see AUSA Márquez-Marín's brief and his edits.

Once AUSA Márquez-Marín learned that AUSA Cannon had supplied the redlined brief to EAUSA Novas, she became suspicious not only of EAUSA Novas but also of AUSA Cannon. Already irritated with his rewriting her brief and now concerned that he had been coopted by EAUSA Novas and was seeking to discredit her, she became snippy with him and he, in turn, fired back at her. This entire episode, including her suspicious and intemperate response to AUSA Cannon,

became in part the basis for EAUSA Novas downgrading Chief Pérez's outstanding rating of AUSA Márquez-Marín in the winter of 2016 and the resulting absence of any salary increase for that year.

One way to look at this whole business favors the DOJ. An AUSA prepared a late and error-ridden brief, asked a fellow AUSA for help, and when he helped, she snapped at him. Furthermore, she failed to follow USAO protocol by obtaining supervisory approval of her work. Another way of looking at this episode is to see it as evidence that the USAO administration was singling out a particular AUSA, looking to discredit her, found an opportunity to do so, and made the most of it, using it in part to criticize her professionalism and her work product and mark her down in the annual evaluation. Furthermore, the EAUSA and the AUSA failed to follow USAO protocol by jumping the chain of command in an effort to criticize her.

In the context of this summary judgment, the Court cannot resolve which of these perceptions of the same facts is correct. A factfinder must make the call. The Court has applied the same analysis to each of the contested factual issues in this case from the salary disparity between AUSA Márquez-Marín and then AUSA Hernández to the dispute about SUSA Myriam Fernández's insertion above AUSA Márquez-Marín in the environmental crimes area. The Court cannot resolve whether the multitude of factual disputes is grounded on the USAO's standard operating procedure or on its retaliatory or discriminatory motives against AUSA Márquez-Marín.

The Court addresses several issues.

### B.     Pre-Late 2013 Evidence

The Court accepts the DOJ's point and AUSA Márquez-Marín's concession that evidence that predates late 2013, when Chief Capó observed AUSA Márquez-Marín and Specialist Reyes talking by the elevator, may not provide an independent basis for the imposition of liability on the DOJ.  *Def.'s Mot.* at 28; *Pl.'s Opp'n* at 15.  At the same time, a plaintiff may present evidence of employer actions that would be time-barred so long as one act is timely and so long as the acts are part of the same employment practice.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *Nieves-Borges v. El Conquistador P'ship, L.P., S.E.*, 936 F.3d 1, 8-9 (1st Cir. 2019).  Moreover, time barred evidence "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue . . .."  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *see Rathbun v. Autozone, Inc.*, 361 F.3d 62, 76 (1st Cir. 2004)  ("A discriminatory act or practice that is not the basis for a timely charge of discrimination nonetheless may constitute relevant background evidence in a proceeding in which the same type of discriminatory act or practice has been timely challenged").

This means that the DOJ's initial arguments in its motion for summary judgment are no longer viable, including whether the Court should consider events before the July 2010 settlement agreement and events before January 1, 2010, given AUSA Márquez-Marín's discovery representations for purposes of imposing liability against the DOJ for those acts.  *See Def.'s Mot.* at 28.  Similarly, the DOJ's failure to

exhaust administrative remedies arguments about events before the late fall of 2013 are now moot. *Id.* at 28-29.

### C.   Hostile Work Environment Claim: Severe and Pervasive

The DOJ's main basis for its dispositive motion is that AUSA Márquez-Marín is unable to demonstrate that that its actions were sufficiently severe and pervasive to sustain a hostile work environment claim. *Def.'s Mot.* at 30-33. The First Circuit has provided guidance on how the severe and pervasive element of a hostile work environment claim is to be analyzed. In *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14 (1st Cir. 2006), the First Circuit observed that an employee "must demonstrate 'that the complained-of conduct was so severe or pervasive that it altered the terms of her employment.'" *Id.* at 19 (quoting *Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006)). The First Circuit continued:

> 'There is no mathematically precise test' [the First Circuit] can use to determine when this burden has been met, instead, [the First Circuit] evaluate[s] the allegations and all the circumstances, considering 'the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.'

*Id.* (internal quotation marks omitted) (quoting *Pomales*, 447 F.3d at 83). The First Circuit stressed that "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). In *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17 (1st Cir. 2011), the First Circuit wrote that the role of the courts is "to distinguish between

the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Id.* at 44 (quoting *Noviello*, 398 F.3d at 92).

Applying these standards to AUSA Márquez-Marín's hostile work environment claim, the Court concludes that she presents a sufficient litany of actions by the USAO in Puerto Rico to survive summary judgment and present her case to a jury. As salient an indication as any of the need for factfinding is the record in this case where the parties present the Court with over eight hundred material facts and stipulations, requiring the Court to resolve in excess of two hundred disputes. Nor are the hundreds of factual disputes, qualifications, and additions merely the stuff of hypervigilant lawyering. The disputes are grounded on a sharp dichotomy between how the parties view the facts.

It is true that the First Circuit excepted those employer actions that fall within "the appropriate and necessary duties of their jobs." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 87 (1st Cir. 2016). But in the overall context of this case, this standard focuses the disputed issue: whether the actions of USAO management against AUSA Márquez-Marín were within the ordinary scope of their supervisory duties or part of a campaign to harass her for her successful lawsuit and her vocal insistence on her legal rights.

Moreover, "[a]ssessing whether the work environment is hostile or abusive 'must be answered by reference to "all the circumstances."'" *Colón-Fontánez*, 660 F.3d at 43-44 (quoting *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))). Here, "all the circumstances"

includes an employment relationship between the USAO and AUSA Márquez-Marín that has existed for one year shy of two decades and that has been disputatious for all but a couple of those years.  As the Court indicated earlier, both sides to this relationship see it very differently on all the controversies between them and, viewing the facts in the light most favorable to AUSA Márquez-Marín, the Court is unable to rule on this record that she should not be entitled to a trial on the merits.

In arriving at this conclusion, the Court readily agrees with the DOJ that, when the burden-shifting *McDonnell Douglas* analysis is performed, the DOJ proffers legitimate business reasons for its actions and meets its burden of production.  *See Alvarado v. Donahoe*, 687 F.3d 453, 458 (1st Cir. 2012).  The question shifts to whether AUSA Márquez-Marín "show[s] that h[er] employer's stated reasons are pretextual and proffered to disguise retaliatory animus."  *Id.* at 458 (citing *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010)).  Here again, the Court concludes that, when viewing contested facts in the light most favorable to AUSA Márquez-Marín, she raises enough material factual issues to require jury resolution of this longstanding controversy.

### D.    Causal Relationship

The DOJ's second point is that "no reasonable jury could find that [AUSA] Márquez[-Marín]'s working environment was causally related to her protected activity . . .."  *Def.'s Mot.* at 41.  The DOJ argues that AUSA Márquez-Marín proffers no motive on the part of Chief Capó, EAUSA Novas, or the other high administrators for discriminating against or harassing her.  *Id.* at 41-43.

217

But the Court views this as a factual issue that must be resolved by a factfinder. AUSA Márquez-Marín presents a USAO divided between the ins and outs. The ins, favored by United States Attorney Rodríguez, are rewarded by promotion and authority. The outs, disfavored by United States Attorney Rodríguez, are denied promotion, sanctioned, and removed from office. One common denominator among the ins is that they closely scrutinize and criticize AUSA Márquez-Marín, and a common denominator among the outs is that they support her.

A couple of examples suffice. From AUSA Márquez-Marín's perspective, United States Attorney Rodríguez hired Jacqueline Novas without her applying for a job with the USAO. Although she began as an AUSA and Special Counsel to the United States Attorney, in short order she was elevated to EAUSA and given the responsibility to supervise her former supervisor Appellate Division Chief Pérez. In that position, she scrutinized AUSA Márquez-Marín's work product, found fault, and lowered the annual evaluations of AUSA Márquez-Marín over the objection of Chief Pérez. As AUSA Márquez-Marín sees it, Jacqueline Novas' rise in the USAO was related to her willingness to use her supervisory authority to act against AUSA Márquez-Marín.

Chief Pérez, by contrast, was a vocal supporter of AUSA Márquez-Marín. The record reflects that in no uncertain terms, he informed EAUSA Novas that he was going to rate AUSA Márquez-Marín as outstanding despite EAUSA Novas' obvious desire to mark her down. He also testified for AUSA Márquez-Marín in February 2016 during the EEO investigation. By April 2016, the next time he was up for

reappointment as Appellate Division Chief, United States Attorney Rodríguez did not reappoint him, which he believed was related to his support of AUSA Márquez-Marín.

This view of the record is not the only view. The USAO in Puerto Rico is a large office and a complicated bureaucracy. It is no surprise that a United States Attorney would promote the attorneys with whom she works well. The record reflects that EAUSA Novas is well-educated and experienced and, absent the controversies in this case, there is nothing noteworthy about her rise within the USAO. The decision not to reappoint Nelson Pérez as Appellate Division Chief was, as he noted, fully within the United States Attorney's authority and may simply have been a natural ebb and flow of job classification. It is also unremarkable that some AUSAs are not as adept as others and these AUSAs merit increased scrutiny to make sure the legal work of the United States is of the highest caliber. In addition, the focus of this order has naturally been on AUSA Márquez-Marín, who has been but one employee in a large office, and decisions must have been made without reference to her or for broader reasons. Nevertheless, the evidence, when viewed in the light most favorable to AUSA Márquez-Marín, reveals that a similar pattern exists with other personnel decisions within the USAO.

The bottom line is that these differing perspectives are grounded in differing assessments of admissible evidence and raise factual issues this Court may not resolve within the confines of summary judgment practice. Thus, the Court concludes that the conflicting evidence in this case would warrant a jury verdict for either side, once the jury considers the evidence, measures the credibility of the participants, and

is properly instructed on the law.  Whatever a jury might find, the Court concludes that AUSA Márquez-Marín has raised sufficient evidence, when the record is viewed in the light most favorable to her, to merit a resolution of these disputes by trial, not by summary process.

### E.    The *Faragher/Ellerth* Defense

Relying on two Supreme Court cases, the DOJ raises the *Faragher/Ellerth* affirmative defense to AUSA Márquez-Marín's claims.  *Def.'s Mot.* at 43 (citing *Faragher*, 524 U.S. at 807-08; *Ellerth*, 524 U.S. at 765).  In *Nieves-Borges*, the First Circuit reiterated the two-part affirmative defense: "[T]he employer may prevail if it demonstrates a two-part affirmative defense: that its own actions to prevent and correct harassment were reasonable and that the employee's actions in seeking to avoid harm were not reasonable."  936 F.3d at 6 (quoting *Chaloult v. Interstate Brands Corp.*, 540 F.3d 64, 66 (1st Cir. 2008)).

On the facts in this case, the *Faragher/Ellerth* defense seems inapplicable. Skipping over the first prong, whatever else may be in dispute about this situation, it cannot be reasonably claimed that AUSA Márquez-Marín slept on her rights.  The record here reveals just the opposite.  AUSA Márquez-Marín fought every step of the way and constantly objected to their actions from demanding reasonable accommodation to objecting to less than stellar evaluations to questioning criticism of her work product.  In fact, on this record, an inference could be made that underlying the USAO's negativity toward AUSA Márquez-Marín was that she was so

quick to assert her legal rights for every USAO employment decision, a habit that may have been particularly galling after her civil jury trial victory.

In any event, on this record viewed in the light most favorable to AUSA Márquez-Marín, the Court concludes that the DOJ has not sustained its *Faragher/Ellerth* affirmative defense.

## VI.   CONCLUSION

The Court DENIES the Defendant's Motion for Summary Judgment (ECF No. 92).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of May, 2020

CAST OF INDIVIDUALS
(in alphabetical order, by last name)

1. Victor Acevedo: Assistant United States Attorney (AUSA) in 2014 and 2015

2. Alexander Alum: AUSA in 2014 and 2015

3. Scott Anderson: Senior Litigation Counsel (SLC) in 2015

4. Dina Ávila: AUSA at some point between 2008 and 2016

5. Michael Bagge: AUSA at some point between 2008 and 2016

6. Mariana Bauza: AUSA in 2010

7. Antonio Bazán: SLC in 2008

8. Tsedey Behanu: EEO investigator with the EOUSA in 2014

9. Marilyn Benitez: Supervisory Information Technology Specialist in 2014

10. Judith Berkan: AUSA Márquez-Marín's attorney throughout

11. Vanessa Bonano: Special Assistant United States Attorney (SAUSA) in March 2014

12. Wallace Bustelo: SAUSA until May 31, 2014; HHS-OIG Special Agent before SAUSA position and after May 31, 2014

13. Evelyn Canáls: AUSA in 2014 and 2015

14. Nicholas Cannon: AUSA in 2014 and 2015

15. José Capó Iriate: AUSA until late March 2013; Supervisory Assistant United States Attorney (SUSA) and head of the Violent Crimes Unit from April 7, 2013, until between June 4, 2015, and September 2015; Chief of the Criminal Division starting between June 4, 2015, and September 2015

16. Migdalia Carballo: Legal assistant in 2015

17. Sylvia Carreño-Coll: SAUSA until around July 2011

18. Luke Cass: AUSA in 2014 and 2015

19. Agnes Cordero: AUSA at some point between 2008 and 2016

20. Darlye Coronado: Legal assistant in 2012

21. Juan De Angel: Human Resources Specialist at some point between 2008 and 2016

22. Judge Aida Delgado-Colón: Chief Judge of the United States District Court for the District of Puerto Rico in 2014

23. María Domínguez Victoriano: First Assistant United States Attorney (FAUSA) from around June 2006 until around February 19, 2015

24. Carole Fernández: AUSA with the Southern District of Florida and counsel for the Puerto Rico USAO during AUSA Márquez-Marín's 2007 trial

25. Mike Fernández: SUSA in February 2010

26. Myriam Fernández: AUSA until February/March 2013; SUSA and Deputy Chief of the Narcotics Unit from February/March 2013 until February 2016; SUSA and head of the Financial Fraud and Corruption Unit starting in February 2016

27. Ivette Figueroa: United States Attorney Rodríguez's assistant in 2015

28. Normary Figueroa: SAUSA in 2013 and 2014

29. David Gaouette: EARS evaluation team leader and Executive Assistant United States Attorney (EAUSA) in the District of Colorado on detail to the EOUSA in January 2016

30. Humberto (Bert) García: United States Attorney from mid-2002 until June 2006

31. Guillermo Gil: United States Attorney until 2002; SAUSA in 2008

32. Elba Gorbea: AUSA in 2015

33. Timothy Henwood: Chief of White Collar from at latest July 2014 until February 2015; FAUSA after February 2015

34. Jenifer Hernández: AUSA from December 16, 2001, until May 2013; SUSA and Deputy Chief of the Narcotics Unit after May 2013

35. Vernesa Jones-Allen: Special Agent in Charge from EPA Headquarters in 2016

36. Judge Joseph Laplante: Judge of the United States District Court for the District of New Hampshire starting in 2007

37. Dennise Longo: AUSA in 2014 and 2015

38. Carmen Pura López: Human Resources Officer in 2008 through 2016

39. Carmen Márquez-Marín: Assistant United States Attorney from December 16, 2001, until August 27, 2004, and starting again on March 17, 2008; Environmental Crimes Coordinator starting in June 2013 (concurrent)

40. Justin Martin: AUSA in 2011

41. Judge Steven McAuliffe: Chief Judge of the United States District Court for the District of New Hampshire from 2004 through 2011

42. Idalia Mestey: AUSA at some point between 2008 and 2016

43.  Ginette Milánes: AUSA in 2008

44.  Damaris Morales: Budget Officer in 2014

45.  Jacqueline Novas: AUSA and Special Counsel to the United States Attorney from at latest March 2008, until January 12, 2015; EAUSA and Special Counsel to the United States Attorney starting on January 12, 2015; Acting United States Attorney temporarily around August 18, 2016

46.  Max Pérez: AUSA in 2014 and 2015

47.  Nelson Pérez: Chief of the Appellate Division from at latest April 11, 2008, until April 8, 2016; AUSA after April 8, 2016

48.  José Pizarro: Deputy Chief of the Civil Division in 2008

49.  Hector Ramírez: AUSA until late 2013; Chief of the Civil Division from late 2013

50.  Francisco Reyes Caparrós: Intelligence Specialist from 2009 until February 2015

51.  Ilianys Rivera: AUSA in 2008 through 2012

52.  Rosa Emilia Rodríguez: EAUSA from at latest 2001 until mid-2002; FAUSA from mid-2002 until 2007; United States Attorney from 2007 (appointed in 2006) until 2019

53.  Alexis Ruiz: AUSA Márquez-Marín's legal assistant in 2014

54.  José Ruiz: Chief of the Criminal Division from at latest March 2008, until around January 2016; SLC starting around January 2016

55.  Dr. Dwight Santiago Pérez: AUSA Márquez-Marín's physician in 2014 through 2016

56.  Jacqueline Schesnol: Assistant General Counsel at EOUSA, General Counsel's Office in 2015

57.  Howard Stewart: AUSA with DOJ's Environmental and Natural Resources Division in 2013 through 2016

58.  Rosemary Torres: Human Resources Specialist in 2015

59.  Warren Vázquez: SUSA and head of the Violent Crimes Unit from at latest March 2008 until April 6, 2013

60.  Hector Vélez: EPA counsel in 2016

61.  Lisa Western: USAO Administrative Officer in 2013 through 2015

62.  Neil White: Attorney in the EOUSA in 2008